BUCHALTER
A Professional Corporation
DYLAN WISEMAN (SBN: 173669)
BRANDON CARR (SBN: 280959)
TIFFANY NG (SBN: 301436)
55 Second Street, Suite 1700
San Francisco, CA 94105
Tel: (415)227-0900
Email: dwiseman@buchalter.com

Attorneys for Defendants
RUIFENG BIZTECH INC., GANGYOU WANG,
ALEX WONG, ALAN LI, RUI SHAO, and
RF BIOTECH LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., a California corporation,<br><br>               Plaintiff,<br><br>      vs.<br><br>RUIFENG BIZTECH INC., a California corporation, GANGYOU WANG, an individual, ALEX WONG, an individual, ALAN LI, an individual, RUI SHAO, an individual, and RF BIOTECH LLC, a California limited liability company;<br><br>           Defendants. | CASE NO. 3-20-CV-04808-WHA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER PENDING PLAINTIFF'S IDENTIFICATION OF ITS ALLEGEDLY MISAPPROPRIATED TRADE SECRETS**<br><br>Date:      December 3, 2020<br>Time:     8:00 a.m.<br>Judge:    Hon. William Alsup<br>Courtroom: 12, 19th Floor |

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**NOTICE IS HEREBY GIVEN** that on December 3, 2020, at 8:00 a.m., or as soon thereafter as the Court's schedule permits, before the Honorable William Alsup, in Courtroom 12 of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102.

Defendants RUIFENG BIZTECH INC., GANGYOU WANG, ALEX WONG, ALAN LI, RUI SHAO, and RF BIOTECH LLC (collectively, "Defendants") will and hereby do move this Court for a protective order pursuant to California Code of Civil Procedure § 2019.210 and Federal Rules of Civil Procedure, rule 26 prohibiting Plaintiff QUINTARA BIOSCIENCES, INC. ("Quintara") from conducting discovery relating to the allegedly misappropriated trade secrets until it obtains an order from the Court establishing it has identified the allegedly misappropriated trade secrets with reasonable particularity.

The basis for this motion is that: (1) Plaintiff has asserted a trade secrets complaint and Quintara's September 29, 2020 Preliminary Trade Secret Disclosure ("Disclosure") has not identified the allegedly misappropriated trade secrets with reasonable particularity; and (2) unless and until Quintara obtains an order confirming its compliance with Rule 26 and California Code of Civil Procedure section 2019.210, it should be precluded from conducting discovery relating to the allegedly misappropriated trade secrets.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the pleadings in this action, the Declarations of Gangyou Wang, Alan Li, Dehua Zhao, and Dylan W. Wiseman, and such other matters and argument as the Court may consider at the time of the hearing hereon.

DATED: October 28, 2020                    BUCHALTER, A Professional Corporation

By: _____
DYLAN W. WISEMAN
Attorneys for Defendants, RUIFENG
BIZTECH INC., GANGYOU WANG, ALEX
WONG, ALAN LI, RUI SHAO, and RF
BIOTECH LLC

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

# TABLE OF CONTENTS

I. INTRODUCTION .............................................................................................. 6

II. STATEMENT OF THE ISSUES TO BE DECIDED ........................................ 7

III. BACKGROUND FACTS .................................................................................. 7

    A. The Parties' Relationship ...................................................................... 7

    B. Quintara's Allegedly Misappropriated Trade Secrets............................ 8

IV. ARGUMENT .................................................................................................. 10

    A. Legal Standard ................................................................................... 10

        1. The Northern District's Pragmatic Practice of Applying Code of Civil Procedure Section 2019.210 Under Rule 26. ............................................. 10

        2. Section 2019.210 Reasonable Particularity Requirement. ....................... 12

    B. Quitnara's Disclosure Fails to Satisfy the Section 2019.210 Reasonable Particularity Requirement ...................................................................... 14

        1. Customer and Vendor Related Information (Topic Nos. 1-2, 6). ............. 16

        2. Quintara's Business Plans (Topic Nos. 3-5). ............................................. 17

        3. Technical and Scientific Information (Topic Nos. 7-10). ......................... 18

    C. The Court Should Issue a Protective Order ........................................ 21

V. CONCLUSION ................................................................................................ 22

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abba Rubber, Inc. v. Seaquist*,
  235 Cal. App. 3d 1, 21 (1991)............................................................................ 14

*Advanced Modular Sputtering, Inc. v. Superior Court*,
  132 Cal. App. 4th 826, 835 (2005) ...................................... 10, 11, 12, 14, 18

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
  819 F.Supp.2d 1001, 1017 (E.D. Cal. 2011).............................................. 10

*Albert's Organics, Inc. v. Holzman*,
  2020 WL 4368205, *3 (N.D. Cal. July 30, 2020)....................................... 9

*Applied Materials, Inc. v. Advanced Micro—Fabrication Equipment (Shanghai) Co.*,
  No. C 07-5248 JW (PVT), 2008 WL 183520, at *1 (N.D. Cal. Jan. 18, 2008)................ 10, 21

*Brescia v. Angelin*,
  172 Cal. App. 4th 133 (2009).............................................................. 12, 20

*Coleman v. Schwarzenegger*,
  Nos. CIV S-90-0520 LKK JFM P, C01-1351 THE, 2007 WL 4276554, at *1 (E.D. Cal. Nov. 29, 2007) .......................................................................................... 10

*Computer Economics, Inc. v. Gartner Group Inc.*,
  50 F.Supp.2d 980, 985 (S.D.Cal.l999)....................................................... 21

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
  No. 117CV00808DADEPG, 2018 WL 3062160, at *5 (E.D. Cal. June 19, 2018) ................ 15

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
  No. 15-CV-01267-SC, 2015 WL 4149066, at *5 (N.D. Cal. July 9, 2015)...................... 18

*Little v. City of Seattle*,
  863 F.2d 681, 685 (9th Cir. 1988) ......................................................... 20

*Loop AI Labs, Inc. v. Gatti*,
  195 F.Supp.3d 1107, 1112 (N.D. Cal. July 6, 2016).................................. 9, 14, 18

*MAI Sys. Corp. v. Peak Computer, Inc.*,
  991 F.2d 511, 522 (9th Cir.1993)............................................................ 11

*Perlan Therapeutics, Inc. v. Superior Court*,
  178 Cal. App. 4th 1333, 1350 (2009) ...................................................... 15

*Phoenix Techs, Ltd. v. Device VM, Inc.*,
  2010 WL 8590525, at *4 (N.D. Cal. Mar. 17, 2010).......................... 9, 10, 11, 18

*Poynt Corporation v. Innowi, Inc.*,
  2019 WL 935499, *3 (N.D. Cal. Feb. 26, 2019) ........................................... 9

*Soc. Apps, LLC v. Zynga, Inc.*
  2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012) ...................................... 9

4

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

*Space Data Corp. v. Alphabet, Inc.*
  2018 WL 10454866, at *2 (N.D. Cal. Feb. 1, 2018)..................................................... 10, 11, 21

*Universal Analytics v. MacNeal–Schwendler Corp.*,
  707 F. Supp. 1170, 1177 (C.D. Cal.1989), *aff'd*, 914 F.2d 1256 (9th Cir.1990)...................... 11

*Whyte v. Schlage Lock Co.*,
  101 Cal. App. 4th 1443, 1454 (2002) ................................................................ 11, 16

18 U.S.C. §
1839.......................................................................................................... 13

California Code of Civil Procedure, section
2019.210 ..................................................... 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 20, 21

Civ. Code, §
3426.......................................................................................................... 5
3426.1........................................................................................................ 13
3426.1, subd. (d)(1).......................................................................................... 12
3426.5........................................................................................................ 5

Federal Rule of Civil Procedure
26(c) .................................................................................................... 10, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As the Court will recall, this is a garden-variety partnership dispute masquerading as a "trade secrets" claim so that Quintara can invoke federal question jurisdiction.

Defendants seek a protective order to prevent Quintara from conducting discovery related to its alleged misappropriated trade secrets until Quintara obtains an order that it has identified the allegedly misappropriated trade secrets with reasonable particularity. Quintara's September 29, 2020 Disclosure ("Disclosure") (Declaration of Dylan W. Wiseman in Support of Motion for Protective Order ("Wiseman Protective Order Decl."), Exhibit 2) fails to comply with the Northern District's long-standing, pragmatic practice of applying California Code of Civil Procedure, section 2019.210 both before and after the enactment of the Defend Trade Secrets Act ("DTSA").[1] Section 2019.210 provides that a plaintiff alleging misappropriation of trade secrets is required to identify the trade secret with reasonable particularity before conducting discovery relating to the trade secret.

Quintara's Disclosure is defective for several reasons. First, it pertains to the "trade secrets at issue," and not the allegedly misappropriated trade secrets. Second, it claims to be "preliminary in nature, based on the pleadings and available information to date." Third, Quintara reserves for itself the unilateral right to "supplement or amend the trade secret disclosure." Most importantly, although Quintara's Disclosure lists 10 topics, including customers and vendors related information, business plans, and technical and scientific information, the description of each of these topics is scarce and vague. Quintara deemed it appropriate to list its 10 topics with no

---

[1] Section 2019.210 provides:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

supporting documentation, even after the Court entered the parties' Stipulated Protective Order. Quintara's Disclosure fails to set forth the allegedly misappropriated trade secrets with sufficient specificity so they can be distinguishable from the prior art and information not already generally known by those skilled in the industry. Further, the categories found in Quintara's Disclosure contain qualifying terms such as "including" or "includes." Quintara has indicated that there is no need to revise its defective Disclosure because Quintara has not started conducting discovery. Quintara's evasive approach ignores the Court's Case Management Order, which provides that all non-expert discovery must be completed by May 14, 2021. Quintara's approach is not supported by the law and severely impacts Defendants' ability to adequately defend themselves. Quintara's hide-the-ball tactics also hamper the Court's ability to frame the issues and determine the applicable scope of discovery.

## II.     STATEMENT OF THE ISSUES TO BE DECIDED

1.     Has Quintara identified with reasonable particularity its allegedly misappropriated trade secrets under the Northern District's pragmatic approach embracing Section 2019.210?

2.     Should the Court enter a protective order to prevent Quintara from conducting discovery relating to the trade secret until it has obtained an order that it complied with Section 2019.210?

## III.    BACKGROUND FACTS

### A.     The Parties' Relationship

Quintara is in the business of DNA sequence analysis. (Compl., Dkt. No. 1, at ¶ 13.) On December 28, 2013, Quintara and Ruifeng entered into a Cooperation Agreement. (Declaration of Gangyou Wang in Support of Defendants' Opposition to Plaintiff's Ex Parte Application For Order to Show Cause and Temporary Restraining Order, Dkt. No. 17, Parts 5-6, ¶ 12, Ex A.) The pertinent terms of the agreement include: (a) Ruifeng would "*invest* 1 million US dollars for the purchase of new equipment and office space leasing for both parties;" (b) **Ruifeng owned 51% of the joint venture** with Ruifeng managing the joint venture's bank accounts, while Quintara would own 49% of the joint venture and manage the operational aspects of the business. *Id.*, emphasis added.

Ruifeng and Quintara worked together as partners and they collectively decided not to form a separate entity. *Id.*, ¶ 20.

Both companies worked collaboratively for years, shared resources, and shared access to each other's computer networks until March 9, 2020 when Quintara indicated it would not honor the contracts between Quintara and Ruifeng. *Id.*, ¶¶ 23, 32. In other words, Ruifeng had access to and partial ownership of all information or technology developed as part of the joint venture. Declaration of Dehua Zhao in Support of Motion for Protective Order ("Zhao Protective Order Decl."), ¶ 7; Declaration of Alan Li in Support of Motion for Protective Order ("Li Protective Order Decl."), ¶ 4.

**B.    Quintara's Allegedly Misappropriated Trade Secrets**

On July 17, 2020, Quintara filed its Complaint, which set forth nine (9) categories of its allegedly misappropriated trade secrets. (Compl., Dkt. No. 1, ¶ 42.)

On September 9, 2020 the Court denied Quintara's TRO and OSC re: Preliminary Injunction. (Dkt. No. 19.) Ignoring the truth, and the practical realities of its partnership with Ruifeng, Quintara claimed that its "trade secrets" were at risk, and asked the Court to lock Ruifeng out of its own computer network. On September 15, 2020, the parties submitted their Stipulated Protective Order (Dkt. No. 21), which was approved with conditions by the Court on September 17, 2020. (Dkt. No. 23.)

Counsel for the parties had their Rule 26(f) conference on Friday, September 18, 2020. During the course of the Rule 26(f) conference, Defendants' counsel took the position that Quintara must first comply with Section 2019.210 before conducting discovery relating to the trade secret. Declaration of Dylan W. Wiseman in Support of Motion for Protective Order ("Wiseman Protective Order Decl."), ¶ 3. Defendants' counsel indicated that the Northern District had embraced the practical and pragmatic practice of applying Section 2019.210 both before and after the DTSA's enactment. *Id*.

During the conference, Quintara's counsel took the position that Section 2019.210 was not applicable to federal practice under the *Erie* Doctrine, and invited Defendants' counsel to provide

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

authority for the applicability of Section 2019.210. *Id.*

On September 22, 2020, Defendants wrote to Quintara's counsel and identified five recent cases in which the Northern District had applied Section 2019.210. Wiseman Protective Order Decl., ¶ 5, Exh. 1.

In response to Defendants' cited authority, and after the parties' Rule 26(f) conference, on September 29, 2020, Quintara served its Disclosure. Wiseman Protective Order Decl., ¶ 5, Exh. 2. Even with the Protective Order in place, Quintara deemed it appropriate to repackage the generic descriptions found in the Complaint in its Disclosure and further deemed it appropriate to provide no documentary evidence to support its Disclosure. Notably, Quintara did not even designate its Disclosure under the Stipulated Protective Order's protections.

On October 1, 2020, counsel for Defendants sent a ten page meet and confer letter identifying the defects found in Quintara's Disclosure. Wiseman Protective Order Decl., ¶ 6, Exh. 3. Defendants asked Quintara to provide any authority permitting service of its so-called "preliminary" disclosure. *Id.* Indeed, Quintara had unsuccessfully sought a TRO and OSC re: preliminary injunction claiming its "trade secrets" were misappropriated and asked that Ruifeng be locked out of its own computer network, yet its Disclosure hedged, claiming the understanding of the allegedly misappropriated trade secrets was "preliminary."

Defendants' October 1, 2020 letter also raised additional concerns. In particular, the Disclosure claimed "[t]he following trade secrets are subjects [sic] of this action . . . ." Section 2019.210 pertains to misappropriated trade secrets, not those which may or may not be relevant. Wiseman Protective Order Decl., Exh. 2, p. 2.

Likewise, Defendants' October 1, 2020 letter asked Quintara to confirm that the Disclosure pertained only to information which was exclusively owned by Quintara before the joint venture ceased cooperating on March 9, 2020. *Id.*, Exh. 3, p. 2. Obviously, if the joint venture had access to the information, or if it were developed by Ruifeng, it cannot comprise Quintara's "trade secret." Declaration of Gangyou Wang in Support of Protective Order ("Wang Protective Order Decl."), ¶ 4.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER PENDING PLAINTIFF'S IDENTIFICATION OF ITS ALLEGEDLY MISAPPROPRIATED TRADE SECRETS - No. 3:20-cv-04808-WHA**

BN 41951866v12

Defendants' ten page October 1, 2020 meet and confer letter also identified the specific defects for Quintara's various categories. Wiseman Protective Order Decl., Exh. 3 pp. 3-10. In response, Quintara's lawyers sent a ***one paragraph*** email stating that it had yet to conduct discovery and "[w]hen that happens we will meet and confer before we move to compel . . . . If you want to file any motions in this regard, you are free to do so." Wiseman Protective Order Decl., ¶ 7, Exh, 4. This motion ensued.

## IV.     ARGUMENT

### A.     Legal Standard

#### 1.     The Northern District's Pragmatic Practice of Applying Code of Civil Procedure Section 2019.210 Under Rule 26.

The Northern District has a long-standing, pragmatic practice of applying Section 2019.210 both before and after the enactment of the DTSA. See *Loop AI Labs, Inc. v. Gatti*, 195 F.Supp.3d 1107, 1112 (N.D. Cal. July 6, 2016); *Soc. Apps, LLC v. Zynga, Inc*. 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012) ("[s]ection 2019.210 does not conflict with any Federal Rule of Civil Procedure but rather assists the court and parties in defining the appropriate scope of discovery."); *Phoenix Techs, Ltd. v. Device VM, Inc*., 2010 WL 8590525, at *4 (N.D. Cal. Mar. 17, 2010).

Following the DTSA's enactment, in *Albert's Organics, Inc. v. Holzman*, 2020 WL 4368205, *3 (N.D. Cal. July 30, 2020), the Court concluded:

> While [§ 2019.210] does not strictly apply in this federal proceeding, similar procedures may be imposed as a means of managing discovery disputes in the event the parties are unable to agree to a reasonable approach."). The framework described in California Code of Civil Procedure § 2019.210 is appropriate to apply in this case as a means of managing discovery.

Likewise, in *Poynt Corporation v. Innowi, Inc*., 2019 WL 935499, *3 (N.D. Cal. Feb. 26, 2019), the Court took the same pragmatic approach toward discovery and concluded "[i]n order to move this case along efficiently, the Court directs that the DTSA claim be addressed through the CCP's 2019.210 process."

California's leading case on Section 2019.210 is *Advanced Modular Sputtering, Inc. v.*

*Superior Court*, 132 Cal. App. 4th 826, 835 (2005). *Advanced Modular Sputtering* involved a dispute between competitors in the industry of putting a thin layer of evenly applied film over silicon wafers during the semiconductor manufacturing process. 132 Cal. App. 4th at 930. The court in *Advanced Modular Sputtering* addressed the purpose behind Section 2019.210:

> First, [section 2019.210] promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Id*. at 833-834. Requiring Quintara to identify its trade secrets with reasonable particularity to comply with Section 2019.210 will narrow and clarify the basic issues between the parties, thereby furthering the goal of efficiency for the court and litigants. *See, e.g.*, *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F.Supp.2d 1001, 1017 (E.D. Cal. 2011) (finding that district courts have the inherent power to apply Section 2019.210 to constrain discovery and facilitate case management); *Applied Materials, Inc. v. Advanced Micro—Fabrication Equipment (Shanghai) Co.*, No. C 07-5248 JW (PVT), 2008 WL 183520, at *1 (N.D. Cal. Jan. 18, 2008) (finding that district courts have inherent discretion to manage discovery by requiring Section 2019.210 compliant trade secret identifications); *Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM P, C01-1351 THE, 2007 WL 4276554, at *1 (E.D. Cal. Nov. 29, 2007) (finding that "under Federal Rule of Civil Procedure 26(c), and in the inherent discretion of a court to manage its own discovery, a court may *sua sponte* enter a protective order for good cause shown."). The Northern District has recognized that Section 2019.210 serves "to permit the defendant to learn the boundaries of the secret and investigate defenses or to permit the court to understand the designation and fashion discovery." *Space Data Corp. v. Alphabet, Inc*. 2018 WL 10454866, at *2 (N.D. Cal. Feb. 1, 2018) (citing *Phoenix Techs, Ltd. v. DeviceVM, Inc*., *supra*, 2010 WL 8590525, at *3.)

## 2. Section 2019.210 Reasonable Particularity Requirement.

A plaintiff alleging misappropriation of trade secrets is required to produce trade secret disclosures sufficient to "allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Phoenix Technologies, Ltd. V. DeviceVM, Inc.*, *supra*, 2010 WL 8590525, at *2; *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir.1993) (holding that a trade secrets plaintiff "must identify the trade secrets and carry the burden of showing that they exist."); *Universal Analytics v. MacNeal–Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal.1989), *aff'd*, 914 F.2d 1256 (9th Cir.1990) (finding that adequate disclosures distinguish trade secrets "from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade") (citation omitted).

The Northern District has recognized that the court has "broad discretion to determine whether the 'particularity' requirement under Section 2019.210 is satisfied." *Space Data Corp. v. Alphabet Inc.*, *supra*, 2018 WL 10454866, at *1 (denying plaintiff relief from non-dispositive pretrial order precluding discovery for failing to comply with Section 2019.210).

For commercial disputes, such as fights over customer lists, business plans, pricing or similar records, a party's designation under Section 2019.210 must "differentiate between truly secret information" and "information which has been publicly disclosed." *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1454 (2002) (citations omitted). For example, in *Whyte*, the category "[i]nformation about Schlage's new products" was deemed to be "too broad to enforce." *Id.* This standard should apply to Categories 1 through 6 of Quintara's Disclosure.

For scientific or technical disputes, when assessing a party's compliance with Section 2019.210's "reasonable particularity" requirement, the court in *Advanced Modular Sputtering* calls for courts to examine closely the nature of the dispute and the types of industries involved.

> The degree of "particularity" that is "reasonable" will differ, depending on the alleged trade secrets at issue in each case. Where, as here, the alleged trade secrets *consist of incremental variations on, or advances in the state of the art in a highly specialized*

*technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.* Nothing in section 2019.210 precludes the trial court from considering relevant *evidence, including expert witness declarations*, on the adequacy of a designation to describe the alleged trade secrets and distinguish *them from prior art*.

*Id.*, at 836, emphasis added.

Thus, because of the highly specialized and technical nature of this dispute, the level of "reasonable particularity" to comply with Section 2019.210 is heightened.

The court in *Advanced Modular Sputtering* explained:

The letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with " 'sufficient particularity' " to limit the permissible scope of discovery by distinguishing the trade secrets " 'from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.'

*Id.* at 835 (citations omitted).

In *Brescia v. Angelin*, 172 Cal. App. 4th 133 (2009), the dispute involved a formula for a "high protein, low carbohydrate qualities of the pudding" which the plaintiff contended were "unlike any pudding on the market." *Id.* at 139. The *Brescia* Court explained the reason why, in cases involving incremental advances in the state of the art, a party's compliance with Section 2019.210 is crucial:

[T]he burden on the trade secret claimant is to provide a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons in the field. The defendant may then use that level of detail to determine the limits of the trade secret by investigating whether the information disclosed is within the public domain (meaning it is not a trade secret (Civ. Code, § 3426.1, subd. (d)(1), or to develop the defenses of independent development or ready ascertainability (meaning there was no misappropriation). Because section 2019.210 was intended to codify *Diodes*, the statute should be interpreted consistent with it. Thus, at its inception, section 2019.210 was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the defendant to investigate how it might differ from matters already known and to allow the court to craft relevant discovery.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

*Id*. at 148. Categories Nos. 7 through 10 of Quintara's Disclosure are subject to the standard applicable to technical and scientific disputes.

**B. Quintara's Disclosure Fails to Satisfy the Section 2019.210 Reasonable Particularity Requirement**

The scope of Quintara's Disclosure is deficient. There are several defects which permeate nearly every category of Quintara's Disclosure.

First, Defendants are unable to ascertain whether the alleged trade secrets are limited to what was solely the property of Quintara before March 9, 2020, or if the topics pertain to information which was also the property of or in the possession of the joint venture. (Wang Protective Order Decl., ¶ 3; Zhao Protective Order Decl., ¶ 7; see Li Protective Order Decl., ¶ 4.)

Second, Quintara burdened this Court with its trade secret claim under the DTSA. Quintara decided not to file this partnership dispute in California's courts under the California Uniform Trade Secrets Act ("CUTSA"). California's definition is ***vastly different*** from the DTSA's definition. This chart depicts the major differences:

| CUTSA (Civil Code § 3426.1) | DTSA (18 U.S.C. § 1839) |
|---|---|
| (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:<br><br>(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and<br><br>(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. | (3) the term "<u>trade secret</u>" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—<br><br>(A) the <u>owner</u> thereof has taken reasonable measures to keep such information secret; and<br><br>(B) the information derives independent economic value, actual or potential, from not being generally known to, *and not being readily ascertainable through proper means by*, another person who can obtain economic |

14

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

| CUTSA (Civil Code § 3426.1) | DTSA (18 U.S.C. § 1839) |
|---|---|
| | value from the disclosure or use of the information. (Emphasis added). |

In 1985, when California enacted its CUTSA, it specifically removed the "and not being readily ascertainable by proper means" language which was found in the National Conference of Commissioners on Uniform State Laws Model Uniform Trade Secrets Act. *Abba Rubber, Inc. v. Seaquist*, 235 Cal. App. 3d 1, 21 (1991) (discussing the California Legislature's rationale for removing the "readily ascertainable by proper means" standard from California's definition of a "trade secret.")  However, when Congress enacted the DTSA in 2016, the "readily ascertainable through proper means" language remained in the definition of a "trade secret."  As a result, under the DTSA, if the information is "readily ascertainable through proper means," it cannot be a trade secret.  Nonetheless, Quintara's Disclosure fails to differentiate any of its categories with what is readily available through proper means, such as Google searches, reference material, or trade publications.

In addition, the Disclosure improperly provides "The following trade secrets are subjects [sic] of this action . . . ."  Disclosure, 1:11.  Section 2019.210 does not call for a plaintiff to identify with reasonable particularity the trade secrets which are the "subject of the action," but rather those actual trade secrets which were allegedly misappropriated.  Quintara has not, nor can it, provide any authority that the proper subject matter of Section 2019.210 is the universe of possible trade secrets.  Quintara's interpretation would defeat the purpose of having plaintiffs identify with reasonable particularity what forms the basis of the misappropriation claim.  *Advanced Modular Sputtering, supra*, 132 Cal. App. 4th at 833-834.

In addition, Quintara's use of "catch-all" descriptions such as "include" have been rejected as "so vague and unspecific as to constitute no disclosure at all since Defendants cannot 'ascertain at least the boundaries' of the alleged trade secrets."  *Loop AI Labs, Inc. v. Gatti, supra*, 195 F. Supp. 3d at 1116); see also *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,

No. 117CV00808DADEPG, 2018 WL 3062160, at *5 (E.D. Cal. June 19, 2018) ("Plaintiffs' repeated use of the catch-all phrases 'e.g.' and 'includes,' is too vague, and thus fails to clearly define the boundaries of each alleged trade secret.").

Likewise, the preamble to Quintara's Disclosure improperly reserves its unilateral right to "supplement or amend the trade secret disclosure." Disclosure, 1:10. *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 (2009) ("Perlan is not entitled to include broad, catch-all language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement.")

Despite these systemic defects, Quintara refused to modify its Disclosure and invited Defendants to bring this motion.

### 1.     Customer and Vendor Related Information (Topic Nos. 1-2, 6).

As set forth above, Quintara's Disclosure Categories 1 through 6 should be evaluated under the standard applicable to commercial disputes. Categories Nos. 1-2 and 6 pertain to customers or vendors. Quintara states the following:

> 1.     Customer Database. Quintara's customer database is trade secret information. The database includes names, addresses, and contact information of each and every Quintara customer.

> 2.     Customer Profile Database. Quintara's customer profile database is Quintara's trade secret, and contains services and products each customer has purchased from Quintara, the amount of money it has spent with Quintara, and analysis of what other products and services of Quintara that each customer may also be interested in based on its purchase behavior.

> 6.     External Vendors Database. Quintara's external vendors database, which includes but is not limited to records and profile information of vendors, partners, and consultants for products and pricing, is Quintara's trade secret.

Quintara's Disclosure categories Nos. 1-2 and 6 pertain to "Quintara's customer database," "Quintara's customer profile database" and Quintara's "external vendors database." Wiseman Protective Order Decl., Exh. 2. However, Quintara never maintained a database or any type of customer resource management platform. Li Protective Order Decl., ¶ 12. Instead, the joint venture kept an Excel spreadsheet which was available to employees of both companies. *Id*., ¶ 13. The

Excel spreadsheet was regularly updated by the sales personnel of both Ruifeng and Quintara showing both companies' customers, and was discussed frequently at the joint venture's sales meetings. *Id.* Other than the Excel spreadsheet showing both companies' customers, neither company had any other customer lists. *Id.* Both Quintara and Ruifeng serviced the same customers, namely research institutions, universities, and life sciences research firms, for years. *Id.*, ¶ 14. In fact, Quintara's own website identifies several of its customers. *Id.*, ¶ 14. Quintara and Ruifeng also used the same vendors for several years. *Id.*, ¶ 20. It is no secret that these vendors dominate the market share in DNA sequencing. *Id.*, ¶ 21. As set forth in the Li Protective Order Decl., even under the more relaxed of from *Whyte v. Schlage Lock*, Quintara's Disclosure remains deficient.

With the protective order in place, Quintara could have produced the "databases," and identified what information consists of its sole and exclusive property which it contends is not readily ascertainable by proper means. Quintara refused to do so. Defendants are now made to guess about the existence of "databases," including their content.

**2. Quintara's Business Plans (Topic Nos. 3-5).**

Topic Nos. 3-5 pertain to Quintara's business plans. Quintara states the following in its Disclosure:

> 3. Marketing Plan. Quintara's confidential plans for marketing its existing products and services are Quintara's trade secrets.
>
> 4. Design Plans. Design information and commercialization plans for potential new products and services currently in development are Quintara's trade secrets.
>
> 5. Business Plans. Quintara's confidential plans for business development, marketing and sales ("Business Plans") are Quintara's trade secrets.

*Whyte v. Schlage Lock Co.*, *supra*, 101 Cal. App. 4th at 1454 determined the category "[i]nformation about Schlage's new products" was deemed to be "too broad to enforce."

Defendants have no knowledge of any marketing, design, or business plans in existence throughout the years when Ruifeng and Quintara worked together as a joint venture. Li Protective Order Decl., ¶ 16. If Quintara kept and maintained any written plans addressing the "marketing

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER PENDING PLAINTIFF'S IDENTIFICATION OF ITS ALLEGEDLY MISAPPROPRIATED TRADE SECRETS - No. 3:20-cv-04808-WHA**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

[of] its existing products and services" or for its "business development, marketing and sales," the only relevant guidance on those issues shared with Defendants from Quintara was "keep making sales." *Id.*, ¶ 16. In fact, during Mr. Li's employment as a Sales Executive for Quintara, he had no budget to implement any such plans. *Id.* Even if such plans existed, from Quintara's description, Defendants have no way to ascertain which "existing products and services" were the subject of Quintara's Marketing Plan. *Id.* With respect to Quintara's "Design Plan," Defendants are not aware of any designed "potential new products and services" at Ruifeng's Hayward, California office. Wang Protective Order Decl., ¶ 5. It is also unclear what is meant by the "[D]esign information and commercialization plans." Li Protective Order Decl., ¶ 17. Likewise, Quintara does not identify and does not provide any detail about its "potential new products and services currently in development." *Id.*

With the protective order in place, Quintara could have simply attached copies of the applicable plans to its Disclosure and identified the trade secrets within those plans, yet it declined to do so. Rather, Defendants are being made to guess about the fact and subject matter of Quintara's various plans.

### 3. Technical and Scientific Information (Topic Nos. 7-10).

Topic Nos. 7-10 pertain to Quintara's technical and scientific information. Quintara states the following in its Disclosure without any support from industry experts:

> 7. Computer Informatics. The computer informatics software developed by Quintara is Quintara's trade secret, and includes informatics for Sanger Sequencing automation, image processing, and data quality control, as well as for automatic data delivery; and informatics for mobile online order tracking.

> 8. Custom Reagents and Protocols. The customized reagents and protocols for Sanger Sequencing services developed in-house by Quintara are Quintara's trade secrets. These include workflow, lab protocol, and reagent kits, suited for different kinds of customer samples.

> 9. Reagent Kits. Quintara's new product designs for special reagent kits for DNA amplification, DNA cleanup, and DNA sequencing are Quintara's trade secrets. Quintara is currently testing and very close to launching one version of these special kits; the

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

potential market size for this product is estimated at over $300 million.

10.     DNA Donor Technology. Quintara's new DNA Donor Technology for effective and precise CRISPER-based genome editing is Quintara's trade secret.

In cases "involving technical or scientific information such as this one, plaintiffs have supported their trade secret disclosures with declarations by expert witnesses which attempt to distinguish the alleged trade secrets from information already known in the field." *Loop AI Labs Inc. v. Gatti, supra*, 195 F. Supp. 3d at 1113; *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *5 (N.D. Cal. July 9, 2015); *Phoenix Techs., Ltd. v. DeviceVM, Inc.*, *supra*, 2010 WL 8590525, at *4 (discussing plaintiff's expert declaration submitted with supplemental briefing in which expert rebutted assertions by defense expert that claimed trade secrets were not reasonably particular). Quintara's truncated, one page Disclosure regarding Topic Nos. 7 through 10 is patently deficient and falls short of the established disclosure standards.

For Topic No. 7, the Disclosure does not indicate that the "computer informatics software" is distinguishable from the prior art, and is different from matters of general knowledge to those skilled in the field. *Advanced Modular Sputtering, supra*, 132 Cal. App. 4th at 835. Quintara also does not identify what features of the "software developed by Quintara" it claims are its trade secrets. Zhao Protective Order Decl., ¶ 20. Presumably, some of those features would be apparent from using the software, and thus apparent to the end user. *Id*. It may also be that some of the software has copyright protection. *Id*. Without greater specificity, Defendants cannot determine whether the "software developed by Quintara" is distinguishable from the prior art or unknown to those who are skilled in the field. *Id*., ¶¶ 18-20.

Topic 7 also "includes" "informatics for Sanger Sequencing automation." *Id*., ¶ 21. That description is vague and non-exclusive. *Id*. Given the age of the Sanger technology, and the considerable body of academic and scientific work based on Sanger's technology, Quintara's brief description sheds no light on whether the Sanger automation informatics software is different from

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

what is available in this industry or unknown to those skilled in the field. *Id*., ¶ 21. Notably, Topic 7 does not identify what the "automation" associated with Sanger's technology is. *Id*., ¶ 22. Automation is typically a concern when sequencing multiple batches of DNA samples. *Id*. A number of commercial and non-commercial software packages already exist which score the quality of the samples and remove lower quality samples. *Id*. On its face, Quintara's Disclosure does not provide enough detail to permit those skilled in the field from determining if it can be distinguished from the prior art. *Id.*

Topic No. 8 pertains to "customized" reagents and protocols which "*include* workflow, lab protocol, and reagent kits, suited for different kinds of customer samples." *Id*., ¶ 23. The Sanger technology has been available since the 1970s, and is widely known and parts of which are subject to patents which have now expired. *Id*., ¶ 24. Merely because something is "custom" does not lead to the conclusion it can be distinguished from the prior art or is unknown to those skilled in the field. *Id*., ¶ 25. Furthermore, reagent kits are commonly purchased from two very well-known vendors – Thermo Fisher Scientific or Integrated DNA Technologies, which hold a considerable portion of the U.S. market share. *Id*., ¶ 26.

Quintara does not describe the manner in which its customized reagents or protocols are somehow modified, nor does it identify which part of the Sanger process has been allegedly modified. *Id*. Likewise, Quintara's customization "includes" "workflow, lab protocol and reagent kits, [sic] suited for different kinds of customer samples." *Id*. Quintara does not explain how its "workflow" and "lab protocols" are in any way different from what is commonplace in the industry. *Id*. The "reagent kits suited for different kinds of customer samples" does not describe what reagent kits are modified, how they have been modified, what the purpose of the modification is, or what "kinds of customers" the "customized" reagent kits used. *Id*.

Topic No. 9 pertains to Quintara's "new product designs for special reagent kits for DNA amplification, DNA cleanup, and DNA sequencing." *Id*., ¶ 27.

Quintara does not specify how its "new product designs for special reagent kits for DNA amplification" are distinguishable from the prior art, or unknown to those who are skilled in the

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12

field. *Id.*, ¶ 28. Nor does the term "special" in conjunction with "reagent kits" address the vague nature of Quintara's category. *Id.* Quintara's description that its "new product designs" for "DNA cleanup" is equally vague. *Id.*, ¶ 29. There are widely used cleanup reagent products, which have existed for years. *Id.* Quintara's statement that "Quintara is currently testing and very close of launching one version of these special kits; the potential market size for this product is estimated at over $300,000," adds nothing to the level of specificity for Quintara's efforts to identify the allegedly misappropriated trade secrets with reasonable particularity. *Id.*, ¶ 30.

Topic No. 10 pertains to "DNA Donor Technology for effective and precise CRISPER-based genome editing." *Id.*, ¶ 31. Nothing in Topic No. 10 provides "a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons in the field." *Brescia, supra*, 172 Cal. App. 4th at 148.

The CRISPR-Cas9 technology has been widely reported recently as the Nobel Prize in Chemistry in 2020 was awarded on October 7, 2020 to Emmanuelle Charpentier and Jennifer A. Doudna for their 2012 work in developing the CRISPR-Cas9, a method used to edit DNA. Zhao Protective Order Decl., ¶ 36. Since its origin in 2012, the CRISPR-Cas9 system has been the subject of tens of thousands of scholarly articles. *Id.*, ¶ 35. The genomes of all model plants and animals have been modified with CRISPR-Cas9, and creative new tools continue to expand the capabilities of this system. *Id.* Topic No. 10 suffers the same defects as Topic No. 9, and fails to identify what information is distinct from the prior art, unknown to those skilled in the field, and cannot be readily ascertained by proper means. *Id.*, ¶ 36.

**C.    The Court Should Issue a Protective Order**

Federal Rule of Civil Procedure 26(c) permits the Court to issue a protective order to, among other things, "protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding, specifying terms for, or limiting the scope of discovery. Courts also have "wide discretion in controlling discovery." See *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Defendants seek an order precluding Quintara from conducting discovery relating to the alleged trade secrets until it obtains an order from the Court that it complied with Section 2019.210.

*Space Data Corp. v. Alphabet Inc.*, *supra*, 2018 WL 10454866, at *1 (denying plaintiff relief from non-dispositive pretrial order precluding discovery for failing to comply with Section 2019.210). In *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, No. C 07-5248 JW PVT, 2008 WL 183520 (N.D. Cal. Jan. 18, 2008), the Court imposed the requirement that "Plaintiff disclose to Defendants all trade secrets it is alleging have been misappropriated solely as a matter of case management in order to: 1) assist both the parties and the court in determining the appropriate scope of discovery and in determining whether particular discovery requests fall within that scope; and 2) avoid any disputes regarding whether or not Plaintiff is using the discovery process as a means to obtain the Defendant's trade secrets." *Id*. at *1, citing *Computer Economics, Inc. v. Gartner Group Inc.*, 50 F.Supp.2d 980, 985 (S.D.Cal.l999) (discussing the rationale underlying CCP § 2019.210 (which at the time was numbered 2019(d)).

## V.     CONCLUSION

Quintara opted to burden this Court with its routine partnership dispute, claiming that under the DTSA its "trade secrets" were misappropriated. Indeed, Quintara even sought an Ex Parte TRO asking the Court to deprive Defendants of information contained on Ruifeng's own computer network. Now, Quintara refuses to identify its trade secrets with any meaningful level of particularity. Quintara's claims are too broad, and could encompass the joint venture's property, information which is readily ascertainable by proper means, and information which is known to those skilled in the field. Quintara should be precluded from conducting discovery "relating to the trade secret" until it obtains an order that it complied with Section 2019.210.

DATED:  October 28, 2020                          BUCHALTER
                                                  A Professional Corporation


                                          By:  _____
                                                  DYLAN W. WISEMAN
                                                  Attorneys for Defendants
                                                  RUIFENG BIZTECH INC., GANGYOU
                                                  WANG, ALEX WONG, ALAN LI, RUI
                                                  SHAO, and RF BIOTECH LLC

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 41951866v12