BUCHALTER
A Professional Corporation
DYLAN WISEMAN (SBN: 173669)
BRANDON CARR (SBN: 280959)
TIFFANY NG (SBN: 301436)
55 Second Street, Suite 1700
San Francisco, CA 94105
Tel: (415)227-0900
Email: dwiseman@buchalter.com

Attorneys for Defendants
RUIFENG BIZTECH INC., GANGYOU WANG,
ALEX WONG, ALAN LI, RUI SHAO, and
RF BIOTECH LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> RUIFENG BIZTECH INC., a California corporation, GANGYOU WANG, an individual, ALEX WONG, an individual, ALAN LI, an individual, RUI SHAO, an individual, and RF BIOTECH LLC, a California limited liability company; <br><br> Defendants. | CASE NO. 3-20-CV-04808-WHA <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE:** <br><br> **(1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND** <br><br> **(2) FRAUD ALLEGATIONS** <br><br> **FROM PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** <br><br> Date:       February 11, 2021 <br> Time:       8:00 a.m. <br> Judge:      Hon. William Alsup <br> Courtroom: 12, 19th Floor |
| RUIFENG BIZTECH INC., a California corporation and GANGYOU WANG, an individual; <br><br> Counter-Claimant, <br><br> vs. <br><br> QUINTARA BIOSCIENCES, INC., a California corporation, RICHARD SHAN, an individual and XUELING ZHAO, an individual; <br><br> Counter-Defendants. | |

BN 43032230v13

1

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on February 11, 2021, at 8:00 a.m., or as soon thereafter as the Court's schedule permits, before the Honorable William Alsup, in Courtroom 12 of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102:

Defendants RUIFENG BIZTECH INC., GANGYOU WANG, ALEX WONG, ALAN LI, RUI SHAO, and RF BIOTECH LLC (collectively, "Defendants") will and hereby do move this Court for an order pursuant to Federal Rules of Civil Procedure Rule 12(f) and the Court's December 22, 2020 Order re: Motions for Protective Order And Re Sealing Requests:

(1)  Striking Plaintiff QUINTARA BIOSCIENCES, INC.'s ("Quintara" or "Plaintiff") missapropriation of trade secret allegations (and claim since there are no remaining allegations) in its First Amended Complaint:

- FAC, ¶ 8 [p. 1, line 22, "misappropriation of trade secrets"];
- FAC, ¶¶ 69-72 [p. 15, line 26 – p. 17, line 20]; and
- FAC, ¶¶ 89-98 [p. 20, line 23 – p. 21, line 28]).

(2) Striking the following allegations related to Plaintiff's fraud claim (a claim the Court found may not be included in Plaintiff's First Amended Complaint):

- FAC, ¶ 8 [p. 1, line 22, "fraud"];
- FAC, ¶¶ 13-48 [p. 2, line 6 - p. 12, line 16];
- FAC, ¶¶ 64, 65 [p. 14, line 28 – p. 15, line 12];
- FAC, ¶¶ 73-77 [p. 17, line 22 – p. 19, line 10];
- FAC, ¶ 82 [p. 20, line 2, "fraudulently"];
- FAC, ¶ 87 [p. 20, line 17, "fraudulently"]; and
- FAC, ¶ 106 [p. 22, line 27, "fraudulent"].

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Dylan W. Wiseman, the Proposed Order, the pleadings in this

1   action, and such other matters and argument as the Court may consider at the time of the hearing

2   hereon.

3

4   DATED:  January 5, 2021          BUCHALTER, A Professional Corporation

5

6                        By: _____

                         DYLAN W. WISEMAN

7                          Attorneys for Defendants, RUIFENG

                         BIZTECH INC., GANGYOU WANG, ALEX

8                          WONG, ALAN LI, RUI SHAO, and RF

                         BIOTECH LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A Professional Corporation
Sacramento

BN 43032230v13             3

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 7

II.     STATEMENT OF THE ISSUES TO BE DECIDED............................................ 8

III.    FACTS ................................................................................................................ 8

        1.      Quintara's Trade Secrets Disclosure ...................................................... 8

        2.      Quintara's Motion for Leave to File an Amended Complaint .............. 10

IV.     ARGUMENT .................................................................................................... 10

        1.      The Court May Strike Plaintiff's Trade Secret Claim and Improper Fraud
                Allegations ........................................................................................... 10

        2.      Quintara's Amended Disclosure Is Facially Non-Compliant With the ............... 11

November 18, 2020 Court Order ......................................................................... 11

        3.      Quintara's Disclosure Fails to Satisfy the Section 2019.210 Reasonable
                Particularity Requirement ..................................................................... 13

                A.      Business and Sales Topics: Categories 1 Through 6. .............. 14

                B.      Technical and Scientific Information: Topics 7 Through 10. ................. 16

                        a)      Computer Informatics. ................................................ 18

                █       ██████████████████████████████████████████ ......... 19

                █       ██████████████████ ......................................................... 19

                █       ██████████████████████ .............................................. 20

                █       ██████████████████████ .............................................. 20

        4.      Plaintiff's Fraud Allegations in the Amended Complaint Should Be Stricken. ... 21

V.      CONCLUSION ................................................................................................ 23

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF
TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED
COMPLAINT; No. 3:20-cv-04808-WHA**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

*Advanced Modular Sputtering Inc. v. Superior Court*,
  132 Cal. App. 4th 826 (2005)...................................................................... 16, 17, 18, 19, 20, 21

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*
  (E.D.Cal. 2011) 819 F.Supp.2d 1001 ................................................................... 14, 18

*Am. Credit Indem. Co. v. Sacks*
  (1989) 213 Cal.App.3d 622 (1989) ............................................................................. 15

*Art of Living Found. v. Doe*,
  2012 U.S. Dist. LEXIS 61582, 2012 WL 1565281, at *23 (N.D. Cal. May 1, 2012) .............. 11

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
  2018 U.S. Dist. LEXIS 10905, 2018 WL 514923, at *3-5 (N.D. Cal. Jan. 23, 2018)............... 11

*Brescia v. Angelin*,
  172 Cal. App. 4th 133 (2009)............................................................................... 17, 20

*California ex rel. State Lands Comm'n v. United States*,
  512 F. Supp. 36 (N.D. Cal. 1981) ................................................................................. 22

*Cellular Accessories For Less, Inc. v. Trinitas, LLC*,
  No. CV12-06736 DDP (SHx) (CD Cal. Sep. 16, 2014) 2014 WL 4627090 ........................... 15

*Cisco Sys. v. Chung*
  (N.D.Cal. Dec. 21, 2020, No. 19-cv-07562-PJH) 2020 U.S.Dist. LEXIS 240028 ................... 11

*Courtesy Temp. Serv., Inc. v. Camacho*
  (1990) 222 Cal.App.3d 1278................................................................................... 15

*Dietz v. Bouldin*,
  136 S. Ct. 1885 (2016) ................................................................................................. 11

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No.
  117CV00808DADEPG, 2018 WL 3062160, at *5 (E.D. Cal. June 19, 2018)........................ 13

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527
  (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) ......................................... 10, 21

*JobScience, Inc. v. CVPartners, Inc.*,
  No. C 13-04519 WHA, 2014 WL 1724763 (N.D. Cal. May 1, 2014)........................... 9, 11, 24

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 210 (2011) ............................................................................................. 14

*Loop AI Labs Inc. v. Gatti*
  (N.D.Cal. 2016) 195 F. Supp. 3d 1107 ....................................................................... 13, 14

*MAI Sys. Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993)................................................................................... 13

BUCHALTER
A Professional Corporation
Sacramento

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
   2018 U.S. Dist. LEXIS 17776, 2018 WL 692022, at *4 (N.D. Cal. Feb. 2, 2018) ................... 11

*Perlan Therapeutics, Inc. v. Superior Court*,
   178 Cal. App. 4th 1333 (2009)........................................................................................... 17

*Phoenix Techs., Ltd. v. DeviceVM, Inc.*,
   No. 09-4697-EDL, 2010 WL 8590525, at *2 (N.D. Cal. Mar. 17, 2010)............................... 13

*Sidney- Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983)........................................................................................ 10, 21

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010)............................................................................................. 14

*Swarmify, Inc. v. Cloudfare, Inc.*,
   No. C 17-06957 WHA 2018 WL 4680177 (N.D. Cal. Sept., 28, 2018) ......................... 8, 11, 12

*Universal Analytics v. MacNeal–Schwendler Corp.*,
   707 F. Supp. 1170 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990).............................. 13

*Waymo LLC v. Uber Techs., Inc.*,
   2017 U.S. Dist. LEXIS 182197, 2017 WL 5000352, at *7-9 (N.D. Cal. Nov. 2, 2017) ........... 11

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010)............................................................................................... 10

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002).................................................................................... 14, 15

*Yusov v. Yusuf*,
   92 F.2d 784 (9th Cir. 1989)................................................................................................ 11

**Statutes**
18 U.S.C. §
1839(3)(B)........................................................................................................................ 15

Civ. Code, §
2019.210 ...................................................................................................... 11, 14, 17, 23
Section 3426.1(d) .............................................................................................................. 13
3426.1, subd. (d)(1) ........................................................................................................... 17

Federal Rule of Civil Procedure
12(f)............................................................................................................................ 10, 21

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF
TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED
COMPLAINT; No. 3:20-cv-04808-WHA**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Unlike diamonds, business relationships do not always last forever.  Instead of resolving this garden variety partnership dispute through mediation or a state court action, Quintara concocted a trade secret claim to file this case in federal court.  But, what is as clear as a diamond, is that Quintara has no trade secret claim and that it has violated this Court's order to disclose its alleged trade secrets with reasonable particularity.

What is also clear is that the Court and Defendants provided Quintara with multiple opportunities to allege its trade secrets with sufficient particularity.  Defendants asked several times for a compliant Code of Civil Procedure § 2019.210 disclosure.  Plaintiff refused – necessitating a motion.  After Quintara lost Defendants' December 3, 2020 Motion for a Protective Order Pending Plaintiff's Identification of Its Allegedly Misappropriated Trade Secrets ("Motion for Protective Order"), the Court issued its November 18, 2020 Order re: Discovery and Scheduling ("November 18, 2020 Order").  The November 18, 2020 Order required Quintara to provide a detailed statement of its alleged trade secrets.  Quintara disregarded the Court's November 18, 2020 Order.  In response to Defendants' eleven (11) page meet and confer letter to Quintara explaining why Quintara's Amended Disclosure was deficient, Plaintiff wrote back a one paragraph response that said "So we disagree with the arguments set forth in the letter."  Accordingly, Plaintiff's trade secrets allegations should be stricken (FAC, ¶¶ 8, 69-72, 89-98) and the misappropriation of trade secrets claim dismissed since there are no remaining allegations to support the claim.

The Court also found that Quintara's fraud claim failed, which is based upon its fanciful narrative.  (Dkt. No. 48).  However, yet again ignoring this Court's order, Quintara kept many irrelevant allegations in its First Amended Complaint about the alleged fraud (FAC, ¶¶ 8, 13-48, 64, 65, 73-77, 82, 87, 106).  None of those allegations are relevant to any element of Quintara's remaining claims, and are irrelevant as "background facts," because the Court has already determined there was no reasonable reliance for any of the various "sham" business transactions.  Quintara's lengthy, convoluted narrative is irrrelevant, highly prejudicial, and unduly time

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

consuming for a jury and the Court to consider in this simple partnership dispute.  Accordingly, these allegations should also be stricken.

## II.      STATEMENT OF THE ISSUES TO BE DECIDED

1.      Has Quintara alleged a trade secret in compliance with the Court Order issued on November 18, 2020?

2.      May Quintara plead irrelevant allegations about its fraud claim notwithstanding this Court's order that its fraud claim fails?

## III.     FACTS[1]

### 1.      <u>Quintara's Trade Secrets Disclosure</u>

On July 17, 2020, Quintara filed its Complaint, alleging Defendants misappropriated its trade secrets.  (Compl., Dkt. No. 1, ¶ 42.)  Everything alleged in the complaint about the trade secrets was superficial and conclusory.[2]

After meeting and conferring, as set forth in detail in Defendants' Motion for Protective Order, on September 29, 2020, Quintara served its Preliminary Disclosure.  (Dkt. No. 31-1, Ex. 2.) Quintara's Preliminary Disclosure fell short of the "reasonable particularity" standard under Section 2019.210.  Quintara provided no documentary evidence to support its Disclosure.  Even with the parties' Stipulated Protective Order in place, Quintara did not designate its Preliminary Disclosure under the Stipulated Protective Order's protections.

Due to the lack of substantive response from Quintara during the meet and confer process, on October 28, 2020 Defendants were forced to bring their Motion for Protective Order.  (Dkt. No. 31.)  On November 18, 2020, the Court granted Defendants' Motion for Protective Order ordering Quintara to serve an Amended Disclosure.  (Dkt. No. 40.)

On December 2, 2020, Quintara served its Amended Disclosure.  Quintara's Amended

---

[1] The history of the parties' relationship and facts have been described by Defendants in various briefs throughout this litigation.  (See Dkt. Nos. 17, 31.)

[2] Counter-Claimants and Defendants have grave concerns that Quintara has been prosecuting its Defend Trade Secrets Act claim in "bad faith," thereby justifying an award for Defendants' attorneys' fees and costs.  *Swarmify, Inc. v. Cloudfare, Inc.*, No. C 17-06957 WHA 2018 WL 4680177 (N.D. Cal. Sept., 28, 2018).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

Disclosure contains the same defects identified in Defendants' Motion for Protective Order. (Dkt. No. 31.)  Again, Quintara did not attach any evidence about its trade secrets even though the Amended Disclosure was designated for "trial counsel's eyes only."  (Wiseman Declaration in Support of Motion for Protective Order Pending Plaintiff's Identification of Its Allegedly Misappropriated Trade Secrets ("Wiseman Decl."), Exh. A.)[3]  Quintara's Amended Disclosure fails to describe with reasonable particularity any protectable trade secrets.

On December 4, 2020, Defendants again wrote a substantive eleven (11) page meet and confer letter to Quintara explaining why Quintara's Amended Disclosure was deficient.  (*Id.*, Exh. B.)

That very afternoon, Quintara's lead counsel sent a one paragraph response that said "So we disagree with the arguments set forth in the letter."  (*Id.*, Exh. C.)  This was the extent of the analysis on Quintara's side.

On December 8, 2020, Quintara made available its junior associate to meet and confer telephonically.  (Wiseman Decl., ¶ 6.)  The call lasted for 9 minutes.  (*Id.*, Exh. D.)  After the call, both sides exchanged confirming email messages.  (*Id.*, Exhs. E and F.)  Quintara took the position that its Amended Disclosure was completely sufficient and refused to amend any portion of it.  (*Id.*, ¶ 6.)  The parties reached an impasse.

On December 18, 2020, Defendants filed a second Motion for Protective Order Pending Plaintiff's Identification of Its Allegedly Misappropriated Trade Secrets and For Monetary Sanctions. (Dkt. No. 50.)  On December 22, 2020, the Court entered an order stating "[i]f defendants believe the disclosure unsatisfactory, they may refuse discovery and move to strike the trade secrets claims.  *See, e.g.*, *JobScience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 1724763 (N.D. Cal. May 1, 2014)."  (Dkt. No. 53).  Accordingly, Defendants hereby move to strike Plaintiff's trade secrets claim.

---

[3] Exhibit A to the Wiseman Decl. is filed under seal pursuant to the November 18, 2020 Order, making it for trial counsel's eyes only.  Also, Defendants apologize for the scope of their prior sealing motion.  Quintara's counsel insisted that the entirety of Defendants' December 18, 2020 motion be sealed.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

### 2.   Quintara's Motion for Leave to File an Amended Complaint

On December 8, 2020, the Court issued an order on Plaintiff's motion to file an amended complaint which stated (in part): "Quintara's fraud claim still fails . . . . The amended complaint is due December 22, 2020."  (Dkt. No. 48 at p. 3.) .  On December 22, 2020, Plaintiff filed its First Amended Complaint.  (Wiseman Decl., ¶ 10, Exh. H.)  Despite the Court's order, the First Amended Complaint contains allegations related to Quintara's fraud claim and multiple references to the alleged "fraud."  (FAC, ¶¶ 8, 13-48, 64, 65, 73-77).  On December 28, 2020, Defendants' counsel met and conferred with Plaintiff's counsel requesting that Plaintiff remove the above allegations from its First Amended Complaint.  (Wiseman Decl., ¶¶ 11, 12.) Quintara's counsel declined to accept Defendants' counsel's request to meet and confer telephonically.  This motion ensued.

## IV.   ARGUMENT

### 1.   The Court May Strike Plaintiff's Trade Secret Claim and Improper Fraud Allegations

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010).  A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (internal quotation marks omitted).  A matter is "impertinent" if it "do[es] not pertain, and [is] not necessary, to the issues in question."  *Id.* (internal quotation marks omitted).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

A motion to strike may also dispose of Plaintiff's trade secret claims:

BN 43032230v13                                    10

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

Judges "faced with deficient disclosures under Section 2019.210 have routinely entertained defense motions to defeat trade secret misappropriation claims after commencement of discovery, whether styled as a 'motion to strike,' 'motion for summary judgment,' or something else. *See, e.g., Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2018 U.S. Dist. LEXIS 17776, 2018 WL 692022, at *4 (N.D. Cal. Feb. 2, 2018) (Judge William Orrick) (examining adequacy of Section 2019.210 disclosure on motion for summary judgment); *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2018 U.S. Dist. LEXIS 10905, 2018 WL 514923, at *3-5 (N.D. Cal. Jan. 23, 2018) (Judge Edward Davila) (same); *Waymo LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 182197, 2017 WL 5000352, at *7-9 (N.D. Cal. Nov. 2, 2017) (Judge William Alsup) (granting overlapping motions to strike and for summary judgment on trade secret misappropriation claim); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist. LEXIS 64350, 2014 WL 1724763, at *2-4 (N.D. Cal. May 1, 2014) (Judge William Alsup) (granting motion to strike and dismissing trade secret misappropriation claim); *Art of Living Found. v. Doe*, 2012 U.S. Dist. LEXIS 61582, 2012 WL 1565281, at *23 (N.D. Cal. May 1, 2012) (Judge Lucy Koh) (inviting motion for summary judgment on trade secret misappropriation claim)."

*Swarmify, Inc. v. Cloudflare, Inc.* (N.D.Cal. May 31, 2018, No. C 17-06957 WHA) 2018 U.S.Dist. LEXIS 91333, at *5; *Cisco Sys. v. Chung* (N.D.Cal. Dec. 21, 2020, No. 19-cv-07562-PJH) 2020 U.S.Dist. LEXIS 240028 (motion to strike procedurally permissible); *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (It is well-established that a district court maintains "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). Such authority includes the court's ability to enforce its prior orders. *Yusov v. Yusuf*, 92 F.2d 784, 787 (9th Cir. 1989).

## 2.   Quintara's Amended Disclosure Is Facially Non-Compliant With the November 18, 2020 Court Order

Given the dubious nature of Quintara's alleged trade secrets, Quintara was required to provide a detailed statement of trade secrets. The Court's Order stated (Dkt. No. 40):

For each trade secret, plaintiff must file, and serve on counsel, a statement, under seal, that should include: (1) a summary of the specific trade secret; (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

Quintara did not come close to doing this.  Rather, Quintara provided a garbled narrative about its services and general information about its business plans and the computer programs it uses.  None of the business plans, "recipes and protocols" or the "composition and methods for reagent kits" that Quintara contends constitute its trade secrets were produced with the Amended Disclosure.  In other words, the Amended Disclosure in no way tells Defendants anything "secret" and includes generic information available on the internet.

The Amended Disclosure, which was supposed to elaborate on the purported trade secrets promised in the First Amended Complaint (FAC, ¶¶ 69-72, 89-98), falls flat.  Contrary to the Court's instructions, Quintara opted to group its Amended Disclosure into a "summary of the trade secrets."  (Amended Disclosure, p. 1:5-18.)  Likewise, rather than identify "each trade secret," and the "background of the trade secret and a description of how each trade secret has derived independent, actual or potential economic value by virtue of not being generally known to the public," Quintara opted to provide a narrative about the qualifications of its principals.  (Amended Disclosure, pp. 1:20-2:22.).  Quintara did not follow the Court's instructions, nor did Plaintiff allege a trade secret.

This experience has been nothing more than a game of hide the ball,[4] and resulted in Defendants' bringing their Motion for a Protective Order which chronicled the Amended Disclosure's deficiencies and explained why Defendants cannot differentiate the alleged trade secrets from the prior art and cannot distinguish the claimed trade secrets from what is generally known to those skilled in the field.  (Dkt. No. 50.)  Quintara did not attach <u>any</u> of its "trade secrets" to its disclosure (e.g., its marketing and business plans that it claims are trade secrets) even though it marked its disclosure "attorneys-eyes" only.  It is this type of objective specious claim of trade secret protection which fuels Defendants' concerns that Quintara is prosecuting its trade secrets claim in "bad faith." *Swarmify, Inc. v. Cloudfare, Inc*., *supra*, 2018 WL 4680177, *6.

---

[4] Indeed, Defendants also had to bring a Motion to Exclude All Evidence Not Disclosed in Plaintiff's Initial Disclosure or Alternatively to Compel Full and Faithful Compliance with FRCP 26.  (Dkt. No. 36.)  On December 8, 2020, the Court issued its Order RE: Motion to Exclude and Vacating Hearing.  (Dkt. No. 47.)  Keeping up with its hide the ball tactics, Quintara has yet to produce a single document in response to Defendants' November 10, 2020 Request for Production of Documents (Set One).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

Quintara's Amended Disclosure is also fraught with improper qualifying language (e.g., the trade secrets *include"*).  (Wiseman Decl., Exh. A, pp. 1:7, 1:16, 2:12, 2:19-24, 3:2-6, 4:8-10, 4:24-27, 5:21-6:5, 7:12-25, 8:3-9:26; 10:22-12:23; 12:18-21.)  The use of "catch-all" descriptions such as "include" have been rejected as "so vague and unspecific as to constitute no disclosure at all since Defendants cannot 'ascertain at least the boundaries' of the alleged trade secrets."  *Loop AI Labs, Inc. v. Gatti*, 195 F.Supp.3d 1107, 1116 (N.D. Cal. July 6, 2016); see also *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 117CV00808DADEPG, 2018 WL 3062160, at *5 (E.D. Cal. June 19, 2018) ("Plaintiffs' repeated use of the catch-all phrases 'e.g.' and 'includes,' is too vague, and thus fails to clearly define the boundaries of each alleged trade secret.").

### 3.   Quintara's Disclosure Fails to Satisfy the Section 2019.210 Reasonable Particularity Requirement

A plaintiff alleging misappropriation of trade secrets[5] is required to produce trade secret disclosures sufficient to "allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits."  *Phoenix Techs., Ltd. v. DeviceVM, Inc.*, No. 09-4697-EDL, 2010 WL 8590525, at *2 (N.D. Cal. Mar. 17, 2010); s*ee also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) (holding that a trade secrets plaintiff "must identify the trade secrets and carry the burden of showing that they exist."); *Universal Analytics v. MacNeal–Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990) (finding that adequate disclosures distinguish trade secrets "from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade") (citation omitted).  Quintara has not done so.  (Dkt. No. 50.)

A trade secret is not: 1. General knowledge in the trade or special knowledge of those

---

[5] Section 3426.1(d) of the California Civil Code defines a trade secret as: information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

13

persons who are skilled in the trade; 2. Ideas or concepts are not, in and of themselves, trade secrets; 3. Proprietary ways of doing the same thing that others in the same field do are not trade secrets; 4. Plans, flows, inputs, outputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works.  In other words, background information comprising, for example, the features and functions, the business requirements and the high level design specifications that are incorporated into software and are evident in the operation of the software are not trade secrets.  *Agency Solutions.Com, LLC v. TriZetto Group, Inc.* (E.D.Cal. 2011) 819 F.Supp.2d 1001, 1017.

"The sine qua non of a trade secret, then, is the plaintiff's possession of information of a type that can, at the possessor's option, be made known to others, or withheld from them, i.e., kept secret."  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010), disapproved on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 210 (2011).  As explained by the court in *Silvaco Data Systems*, trade secret law protects the right to maintain the confidentiality of facts, not ideas.  (*Id.* at 220-221).

As explained below, Plaintiff's disclosure is deficient and falls short of the reasonable particularity standard because "[i]n large part, it reads like an inventory of categories of Plaintiff's scientific or strategic business information."  *Loop AI Labs Inc. v. Gatti* (N.D.Cal. 2016) 195 F. Supp. 3d 1107, 1112.  "Rather than a 'reasonably particular' list of trade secrets, Plaintiff's disclosure resembles an effort to categorize every piece of information or know-how that could potentially have value to the company."  (*Id.*)  The vast majority of Plaintiff's disclosures consist of paragraphs in which Plaintiff simply lists categories of alleged trade secrets in broad terms.

## A.   Business and Sales Topics: Categories 1 Through 6.

For commercial disputes, such as fights over customer lists, business plans, pricing or similar records, a party's designation under Section 2019.210 must "differentiate between truly secret information" and "information which has been publicly disclosed."  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1454 (2002) (citations omitted).  For example, in *Whyte*, the category "[i]nformation about Schlage's new products" was deemed to be "too broad to enforce."  *Id.*  Trade

Secrets Topics 1 through 6 of Quintara's Amended Disclosure are subject to this standard.

Here, Quintara **admits** that its information cannot be differentiated from what is publicly disclosed:

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

Under the DTSA's definition of a "trade secret," information is only entitled to trade secret protection if it is "not being readily ascertainable by proper means . . ." 18 U.S.C. § 1839(3)(B). Quintara summarily claims it took years of effort for it to build its customer database "brick by brick," but it provides zero information or facts to support such a conclusion. Nor has Quintara provided any information or facts about why its customer list or customer profile database is a trade secret, as opposed to known research and commercial institutions that obviously use Quintara's services and who are publicly listed. Quintara had the opportunity to disclose such information, but it choose not to do so. Everything provided is vague and nebulous: " ██████████████████ ████████████████████████████████████████████████ What prevented Plaintiff from naming them in a sealed document? Plaintiff's categorical descriptions render it impossible for Defendants to conduct public domain or other research to challenge the alleged secrecy of the information at issue.

Quintara's circular description of its marketing plans, development plans, and business plans are equally devoid of any content which would differentiate it from trade secret information.

---

6 Quintara's customer list and database which purportedly includes basic information like ███ ████████████████████ are not trade secrets. *See, e.g., Courtesy Temp. Serv., Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1287 (a customer list is a trade secret if the "nature and character of the subject customer information, i.e., billing rates, key contacts, specialized requirements and markup rates, is sophisticated information and irrefutably of commercial value and not readily ascertainable to other competitors"); *Am. Credit Indem. Co. v. Sacks* (1989) 213 Cal.App.3d 622 (1989) (customer list was trade secret because employer winnowed potential customers down to the elite 6.5% who were most likely to purchase a specific type of insurance); *Cellular Accessories For Less, Inc. v. Trinitas, LLC,* No. CV12-06736 DDP (SHx) (C.D. Cal. Sep. 16, 2014) 2014 WL 4627090 ("[T]he chief factual issue in determining whether a customer list is a trade secret is the amount of effort involved in compiling it.").

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

*Whyte v. Schlage Lock Co.*, *supra,* 101 Cal. App. 4th at 1454.  In particular, Quintara defines its

"Marketing Plans" as ████████████████████████

████████████████████████ Quintara's description of its Development Plans is equally circular: ████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████ Quintara's description of its development plan is also fraught with qualifying

language, examples with no specifics, and vagaries and conclusions.  (*Id.,* p. 4:8-21.)  Quintara's

disclosure about its plans is devoid of any specifics about why the plans are trade secrets ████

████████████████████████████████████████████

██████████████████████████ Yet, Quintara

provides no facts about any of these items beyond these superficial descriptions.

Quintara did not attach anything to its Amended Disclosure, including its customer lists,

marketing plans, development plans, vendor lists, customer lists, or any of its plans even though

the Amended Disclosure is "attorneys-eyes" only.  Quintara claims it has "secret" plans to market

to customers and "secret" plans to develop new products – but no details or facts are disclosed

about the "plans" in order to evaluate the claimed trade secrets.  Quintara has had many

opportunities to do so, both after requests from Defendants' counsel and the Court's Order (Dkt.

No. 40).  Trial is quickly approaching and Plaintiff has not disclosed a protectable trade secret.

### B.    Technical and Scientific Information: Topics 7 Through 10.

For scientific or technical disputes, when assessing a party's compliance with Section

2019.210's "reasonable particularity" requirement, the court in *Advanced Modular Sputtering Inc.*

*v. Superior Court*, 132 Cal. App. 4th 826 (2005) calls for courts to examine closely the nature of

the dispute and the types of industries involved.

> The degree of "particularity" that is "reasonable" will differ, depending on the
> alleged trade secrets at issue in each case. Where, as here, the alleged trade secrets
> *consist of incremental variations on, or advances in the state of the art in a highly*

*specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.* Nothing in section 2019.210 precludes the trial court from considering relevant *evidence, including expert witness declarations*, on the adequacy of a designation to describe the alleged trade secrets and distinguish *them from prior art.*

*Id.*, at 836, emphasis added.

Thus, because of the highly specialized and technical nature of this dispute, the level of "reasonable particularity" to comply with Section 2019.210 is heightened. The court in *Advanced Modular Sputtering* explained:

The letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.'

*Id.* at 835 (citations omitted).

In *Brescia v. Angelin*, 172 Cal. App. 4th 133 (2009), the dispute involved a formula for the "high protein, low carbohydrate qualities of the pudding" which the plaintiff contended was "unlike any pudding on the market." *Id.* at 139. The *Brescia* Court explained the reason why, in cases involving incremental advances in the state of the art, a party's compliance with Section 2019.210 is crucial:

[T]he burden on the trade secret claimant is to provide a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons in the field. The defendant may then use that level of detail to determine the limits of the trade secret by investigating whether the information disclosed is within the public domain (meaning it is not a trade secret (Civ. Code, § 3426.1, subd. (d)(1), or to develop the defenses of independent development or ready ascertainability (meaning there was no misappropriation). Because section 2019.210 was intended to codify *Diodes*, the statute should be interpreted consistent with it. Thus, at its inception, section 2019.210 was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the defendant to investigate how it might differ from matters already known and to allow the court to craft relevant discovery.

*Id.* at 148. Trade Secrets Topics 7 through 11 of Quintara's Amended Disclosure are subject to the standard applicable to technical and scientific disputes.

As set forth in *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1344 (2009) "[t]he tactical advantages a plaintiff gains from non-identification are too tempting for a

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF
TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED
COMPLAINT; No. 3:20-cv-04808-WHA

plaintiff to voluntarily provide such identification.  In a typical case, the plaintiff ... provide[s] little more than a list of high-level, generic categories in which its alleged secrets are said to reside.  It is also common for a trade secret plaintiff to alter its list of trade secret claims as the case proceeds—sometimes dramatically, by replacing entire categories of information or technology, or by re-combining slippery, multi-element 'combination trade secret' claims into new subsets."  *Id.* As a result, "[t]rade secret plaintiffs rarely provide a precise and complete identification of the alleged trade secrets at issue without a court order requiring them to do so."  *Id.*

### a)   Computer Informatics.

As to Trade Secret Topic 7 regarding Computer Informatics, Quintara admits that some of the functions, which it does not identify, are available publicly: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Amended Disclosure, p. 5:17-20.)  That admission underscores the deficiencies in Quintara's description of Trade Secret Topic 7.  Quintara also fails to identify what the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are which are different from the prior art and unknown to those skilled in the field.

Quintara claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  However, Quintara identifies no specific features or functions which it claims to have developed that are unknown to those skilled in the field, or distinct from the state of the art.  *Advanced Modular Sputtering v. Superior Court, supra,* 132 Cal. App. 4th at 835.  Again, the mere fact that Quintara customized commercially available software packages does not render those add-ons its trade secret.  *Agency Solutions*, *supra,* 819 F.Supp. 2d at 1020.

In Trade Secret Topic 7, Quintara also fails to identify which, if any, features or elements of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are unknown to those skilled in the field and distinct from the prior art.  *Advanced Modular Sputtering v. Superior Court, supra,* 132 Cal. App. 4th at 835.  Based on Quintara's

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 43032230v13                                   18

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

Amended Disclosure for Trade Secret Topic 7, there are no new or novel innovations that are not known to those skilled in the field.  Defendants have failed to explain whether the add-ons are anything different than those used by other DNA sequencing firms.

As to Trade Secret 8, Quintara acknowledges that "

*Advanced Modular Sputtering v. Superior Court, supra,* 132 Cal. App. 4th at 835. but the Amended Disclosure does not identify which features or elements of the protocols are not known by those skilled in the field, and are distinct from the prior art.  Quintara has had multiple chances to explain, but has not done so.

Topic 9 pertains to the

However, Quintara's Amended Disclosure does not identify any of the                or the are involved so that Defendants are able to determine if they differ from what is known to those skilled in the field, and if they are distinct from the prior art.  *Advanced Modular Sputtering v. Superior Court, supra,* 132 Cal. App. 4th at 835.  Everything in Quintara's Amended Disclosure is vague and generalized.

As to Trade Secret 10, Quintara's description of the ██████████████ provides an interesting history of its claimed trade secret, but is devoid of any specifics.  The ██████████████████████████████████████████████████████ approximately 35 listed items.  Notably, there is no information regarding any of the approximately 35 listed items.

Despite the Court's order to explain Quintara's trade secret with reasonable particularity, the question remains, what is it about the ██████████████████████ ██████████ for the listed items that Quintara claims to be its trade secret?  Quintara has not alleged any facts showing its claimed trade secrets differ from what is known to those skilled in the field, and are distinct from the prior art.  *Advanced Modular Sputtering v. Superior Court, supra,* 132 Cal. App. 4th at 835.

As set forth in *Brescia, supra*, 172 Cal. App. 4th at 148, "[T]he burden on the trade secret claimant is to provide a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons in the field."  It is not Defendants' burden to cull through which combinations of ██████████████████████ for the thirty-five listed items amount to Quintara's alleged trade secret.  The trial court in *Brescia* ordered the plaintiff to "succinctly and particularly lay out the trade secrets without surplussage" instead of "essentially hiding the alleged trade secret in plain sight by putting lots of clutter around it."  172 Cal. App. 4th at 140.  Quintara's ██████████████ description is woefully insufficient.

As to trade secret 11, even though Quintara's Complaint does not address it, Quintara's Amended Disclosure claims that ██████████████████████████████████ ████████████████████████████████ (Amended Disclosure, p. 13:2.)  Because Quintara's Amended Disclosure is for trial counsel's eyes only, counsel for Defendants conducted a Google search for ██████████████████, which produced 17,700,000 responsive articles.  (Wiseman Decl., Exh. B, pp. 8-9.)

Quintara's Amended Disclosure also states that ████████████████████

████████████████████████████████████████████████████████

███████████████ Adding "███████ to the prior Google search, it

produced 1,240,000 responsive articles.  (Wiseman Decl., Exh. B, p. 9.)

Quintara has failed to identify which elements of its claimed ███████████

differ from what is known to those skilled in the field, and are distinct from the prior art.  *Advanced*

*Modular Sputtering v. Superior Court, supra,* 132 Cal. App. 4th at 835.

### 4.   **Plaintiff's Fraud Allegations in the Amended Complaint Should Be Stricken.**

The Court found that Quintara's fraud claim fails.  (Dkt. No. #48).  The Court concluded

that "Quintara's reliance on Wang's representations [was] unjustified" because Quintara suspected

the "unwritten one-million dollar loan," the "illusory joint-ownership collaboration agreement,"

and the "lease name swap" to be "illicit, knew to be aimed at misleading United States immigration

officials, and knew those officials reached the same conclusion in 2017."  (Dkt. No. 48, pp. 2:21-

3:11.)   The Court further ruled that Quintara's allegations regarding its founders' cultural

background "twice misses the mark," and that Quintara's individual founders are not the plaintiffs

in this lawsuit.  (Dkt. No. No. 48, p. 3:13-15.)

Despite such explicit rulings, Quintara only made one change to its First Amended

Complaint in paragraph 78: "Count one is dismissed without leave to amend pursuant to order of

ECF 49.  Plaintiff reserves the right to appeal the dismissal."

Before responding to a pleading, a party may move to strike any "redundant, immaterial,

impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  A matter is "immaterial" if it "has no

essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy,*

*Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994)

(internal quotation marks omitted).  A matter is "impertinent" if it "do[es] not pertain, and [is] not

necessary, to the issues in question."  *Id.* (internal quotation marks omitted).  "[T]he function of a

12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating

spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*,

697 F.2d 880, 885 (9th Cir. 1983).  "[W]hen the motion may have the effect of making the trial of the action less complicated, or … streamlining the ultimate resolution of the action, the motion to strike will be well taken."  *California ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981).

Quintara did not remove any of its underlying allegations concerning its fraud claim. Specifically, Quintara did not remove its justifiable reliance allegations.  (FAC, ¶¶ 73-77.)  Quintara did not remove its allegations discussing Mr. Wang's immigration status and process which form the premise and are related to its fraud claim.  (FAC, ¶¶ 14, 15, 21, 23, 33-41, 42, 46, 64, 65, 75, 76, 77.)  Quintara did not remove irrelevant allegations regarding the Court-rejected "Oral Loan Agreement"  (FAC, ¶¶ 13-21), the "Sham Collaboration Agreement" (FAC, ¶¶ 22-26), the "Sham Service Contract" (FAC, ¶¶ 27-32), the "Sham Lease Switch" (FAC ¶¶ 42-45), and the "Termination of the Oral Loan Agreement" (FAC, ¶¶ 46-48.)  Quintara left the word "fraud," "fraudulently" and fraudulent" throughout its amended complaint (FAC, ¶¶ 8, 82, 87, 106.)

None of the aforementioned allegations, which pertain to the joint venture partners' conduct in the years prior to March of 2020 relate to Quintara's remaining claims in its First Amended Complaint.  Quintara's conversion claim is premised upon allegations that "Defendants took possession of the Tangible Assets when they locked out Quintara in March 2020."  (FAC, ¶ 80.) Quintara's breach of duty of loyalty claim alleges that three of Quintara's former employees "conspired with G. Wang to take Quintara's Tangible Assets and Confidential Information to form a competing company under Ruifeng, which was later named RF Biotech LLC."  (FAC, ¶ 85.) Quintara's trade secret claim alleges that Defendants "misappropriated all the equipment of Quintara that Defendants converted through the March 9, 2020 lock out of Quintara."  (FAC, ¶ 61.) Quintara's interference with contractual relations and prospective economic advantage claim alleges that [R]ecently RF Biotech sent emails to each and every customer of Plaintiff claiming that it had taken over all of Plaintiff's 'accounts' in the Bay Area and asked the customers to submit their DNA sequencing samples to RF Biotech instead of Plaintiff."  (FAC, ¶ 102.)  Lastly, Quintara's Business & Professions Code section 17200 claim alleges that it "suffered harm in the

form of Defendants' taking its tangible and intangible properties," all of which allegedly occurred in Mach of 2020.  (FAC, ¶ 107.)  Even though Quintara's fraud claim was dismissed with prejudice, the Amended Complaint contains multiple references to the alleged "fraud."  (FAC, ¶¶ 8, 82, 87, 106.)

The remaining claims in this lawsuit have nothing to do with Mr. Wang's immigration status or Quintara's founders' cultural background.  These allegations unnecessarily confuse the issues and would complicate the trial of the claims by requiring the introduction of extensive evidence of Mr. Wang's immigration issues, potentially adding weeks to the trial.

Also, Quintara cannot find a "back door" justification to make relevant its implausible story around Mr. Wang's immigration status and process, the "Oral Loan Agreement," the "Sham Collaboration Agreement," the "Sham Service Contract," the "Sham Lease Switch," or the "Termination of the Oral Loan Agreement."  This court has already concluded that "A multi-million dollar technology company that proceeds through seven years of expansion, business deals, corporate and employee tax filings, along with unwritten million dollar loans, illusory collaboration agreements, and suspect real estate deals without consulting counsel has deliberately buried its head in the sand."  (Dkt No. 49.)

Accordingly, these allegations are irrelevant.  Moreover, Quintara's inclusion of the aforementioned allegations creates serious risks of prejudice to Defendants, delay, and confusion of the issues.  The allegations characterizing all agreements between Quintara and Mr. Wang as a "sham" creates serious risks of prejudice to Defendants.  Doing so is merely an end-round around this Court's terminal disposition of Quintara's fraud claim.

## V.    CONCLUSION

Quintara has had multiple opportunities to disclose its alleged misappropriated trade secrets in compliance with Code of Civil Procedure § 2019.210, after requests from Defendants and an order from the Court.  Quintara's Amended Disclosure makes generalizations, but does not reveal anything that amounts to protectable trade secrets.  Quintara fails to distinguish its "trade secrets" from information which is readily ascertainable by proper means, and information which is known

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**

1  to those skilled in the field.  The Court no longer seeks for Defendants to play tee ball with Quintara

2  (Dkt. No. 53), and Quintara should suffer the same fate as the plaintiff in *JobScience, Inc. v.*

3  *CVPartners, Inc.*, *supra,* No. C 13-04519 WHA, 2014 WL 1724763.

4          Finally, Quintara's allegations concerning fraud should be stricken as the Court has already

5  found that Quintara's fraud claim may not proceed.  Given that this Court has already disposed of

6  Quintara's fraud claim, the allegations which support Quintara's dismissed claim are irrelevant,

7  unduly time-consuming, immaterial and impertinent.

8

9  DATED:  January 5, 2021                          BUCHALTER
                                                     A Professional Corporation
10

11                                         By:  _____
12                                                DYLAN W. WISEMAN
                                                  Attorneys for Defendants
13                                                RUIFENG BIZTECH INC., GANGYOU
                                                  WANG, ALEX WONG, ALAN LI, RUI
14                                                SHAO, and RF BIOTECH LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A Professional Corporation
Sacramento

BN 43032230v13                                    24

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE: (1) MISAPPROPRIATION OF TRADE SECRETS CLAIM; AND (2) FRAUD ALLEGATIONS FROM PLAINTIFF'S FIRST AMENDED COMPLAINT; No. 3:20-cv-04808-WHA**