UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., <br><br>    Plaintiff, <br><br>    v. <br><br> RUIFENG BIZTECH INC., et al., <br><br>    Defendants. | No. C 20-04808 WHA <br><br> **ORDER RE MOTION TO STRIKE AND VACATING HEARING** |

## INTRODUCTION

A prior order directed plaintiff to disclose its asserted trade secrets with sufficient particularity before it could proceed to discovery. For the most part, plaintiff has failed to do so. The disclosure is **STRICKEN IN PART**. The parties will proceed to summary judgment on the surviving asserted trade secrets. The remainder of this case is **STAYED**.

## STATEMENT

Prior orders detail this case (Dkt. Nos. 19, 28, 49), though most of the story is not relevant here. In brief, a crumbling joint-business venture provoked this suit. Plaintiff's federal trade-secret misappropriation claim predicated our supplemental jurisdiction. A September 9 order denied preliminary injunctive relief due to plaintiff's delay. October 16 and December 10 orders settled the pleadings, but defendants did not challenge the allegations of trade-secret misappropriation there.

Rather, following defendants' motion for a protective order, a November 18 order directed plaintiff to disclose its asserted trade secrets before it would be permitted discovery. Plaintiff filed such a disclosure, but defendants maintained its inadequacy. Instead of issuing a further protective order, though, the undersigned judge invited defendants to take a stand: accept the disclosure and comply with discovery; or move to strike the disclosure, withhold discovery, and accept the consequences if wrong. Defendants have chosen the latter (Dkt. Nos. 40, 53, 57). This order is appropriate for disposition on the papers.

## ANALYSIS

"[A] district court has wide discretion in controlling discovery." *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011). Though state procedure does not govern here, in the trade secret context the undersigned judge has often borrowed the tried and true California Code of Civil Procedure § 2019.210 under the district court's Rule 16 case-management authority. The provision requires:

> In any action alleging the misappropriation of a trade secret . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity . . . .

*Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 2445515, at *2 (N.D. Cal., May 31, 2018); *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014). A November 18 order directed plaintiff to disclose for each asserted trade secret:

> (1) a summary of the specific trade secret;
>
> (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public;
>
> (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally
>
> (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent.

(Dkt. No. 40).

This disclosure requirement is reasonable. It does not require utmost detail and supporting explanation. It should not drive us into the actual merits of the trade secret. The point is to nail down the asserted trade secrets with sufficient particularity to permit us to discern the reasonable bounds of discovery, to give defendants enough notice to mount a cogent defense, and to prevent plaintiff from indulging in shifting sands:

> Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff. A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery.

*Jobscience*, 2014 WL 852477, at *5. Ordinary categories of confidential information, such as business financial records, will require less supporting matter. But asserted secrets within specialized fields will require "a more exacting level of particularity . . . to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Advanced Modular Sputtering, Inc. v. Sup. Ct.*, 132 Cal. App. 4th 82, 836 (2005); *See Brescia v. Angelin*, 172 Cal. App. 4th 133, 147–150 (2009). Plaintiff's disclosure straddles the line.

Beginning with the two adequately described secrets, plaintiff asserts its customer profile and vendor databases. The customer profile database:

> [I]ncludes a relational database and many computer spreadsheets which were exported from the database and stored on local file servers. The database contains each customer's *purchases and payment history* over the years, including the products purchased, the dates of the purchases, the prices paid, and any *customer feedbacks* for the purchases. In some instances, the database also includes an analysis of additional products and services that Quintara may offer to the customer.

Plaintiff uses this "detailed business transaction history" in "communication with customers and for internal business planning by the company's accounting team, customer account managers, and sales team." And, the vendor database includes "the contact and business information for these third-party service providers which are essential for Quintara's business operations" along with "Quintara's purchasing plans with specific vendors and the financial arrangements between Quintara and such vendors."

3

These are minimal descriptions, to be sure, but adequate given the subject matter. The wisdom gained from years of interactions with customers and vendors may be trade secret. *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521–22 (1997). As plaintiff explains, it used the customer profile to respond to customer feedback and tailor product proposals. So too the vendor database allowed plaintiff to tailor its purchases and negotiate favorable terms based on past dealing. Moreover, this order emphasizes that these profile databases are distinct among the other categories of asserted secrets here because the underlying transactions are inherently party-specific. That is, we will be able to distinguish between plaintiff's transaction data and defendants' transaction data, or indeed public transaction data, in discovery and summary judgment, because the underlying communications, invoices, and receipts will identify *plaintiff*, rather than another. For these types of secrets, plaintiff adequately discloses the information type, its background, and its value. And, the distinctiveness of the underlying data itself should prevent plaintiff from improperly claiming whatever it happens to find in discovery into defendants' files.

The remainder of the fifteen-page disclosure, however, asserting nine more secrets, fails to adequately delineate the asserted secrets. Those secrets come in two groups, business and marketing secrets and technical secrets. But plaintiff has, in all but a few instances, merely described *categories* of information that might be protectable as trade secret without actually disclosing *the trade secrets* themselves, as required. Emphasizing this point, plaintiff itself filed its trade secret disclosure (formerly marked "Trial Counsel's Eyes Only") *on the public docket* with minimal redactions in opposition to this motion (Dkt. No. 62). It must be emphasized, however, that unlike the customer and vendor profiles above, where plaintiff's high level descriptions sufficed, categorical descriptions of plaintiff's business plans and technical secrets offer no protection against plaintiff merely claiming whatever it finds in discovery. Some examples illustrate.

Among its business and marketing secrets, plaintiff specifies its customer database, containing the names, detailed contact information, and other identifying information, built over several years. Plaintiff asserts the compilation does not exist in the public domain, but in

contrast to the customer *profile* database above, describes no secret *information* that imparts value to this list. And, the assertion that plaintiff uses the list to automatically verify customer addresses and billing for orders merely describes the generic purpose of a contact list. Simply put, plaintiff fails to disclose even at a high level the secret sauce, let alone its background or development, that brings independent value and distinguishes its customer list from information that will likely be found in discovery because it is available via public sources.

Within its technical secrets, plaintiff specifies a wider variety of secret material. The first example, plaintiff asserts its "secret plans for developing new products and services," such as the "laboratory protocols and recipes, informatics, and marketing plans" for its "Turbo DNA Sequencing Service." The product goal, plaintiff says, is to complete two sequencing reactions within 45 and 90 minutes, respectively. Setting aside that plaintiff has potentially disclosed some aspects of this product already, with a soft launch between late 2019 and early 2020, plaintiff fails to distinguish its proposed product from industry practice. Presumably all providers of DNA sequencing services seek to do it faster; plaintiff cannot preempt the entire field just by claiming this trade secret. Again, "[w]here, as here, the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." Plaintiff neither describes, even at a high level, the actual secret sauce to its new product, nor the development of that secret as distinct from industry norm. *See Advanced Modular*, 132 Cal. App. 4th at 836.

Plaintiff next discloses several batches of "computer informatics," which appear to be house-customized computer code. Representative among these is a program named "SparkDNA," which "is a standalone software for plasmid map viewing, editing, and sequencing trace alignment." Plaintiff employed one full time employee along with two contractors to develop the code for a little over one year and for one hundred and twenty thousand dollars. As before, the question here is not whether this information *might* be protectable but whether plaintiff has disclosed this asserted trade secret as directed. The problem is that plaintiff does not disclose the matter that makes this code valuable. At this

5

level of vagary, plaintiff's disclosure essentially claims the entire sub-field of computer code for "plasmid map viewing, editing, and sequencing trace alignment," offering no description of what makes plaintiff's methods distinct from its competitors' methods. Atop this, plaintiff also fails to explain the background to this supposed trade secret.

Representative among plaintiff's remaining technical trade secrets is number eight, labeled "Customized Protocols and Reagents for Sanger DNA Sequencing." Plaintiff says that it "has been tweaking the protocols and reagents of its own Sanger sequencing operations for years and h[as] developed an optimal set of protocols and reagent recipes." With the exception of one, the contents of these protocols and recipes remain unstated. Yet again, this disclosure describes a *category* of information that may be protectable as trade secret. But it does not actually disclose, with any specificity, the underlying trade secret itself.

The lone exception here is that plaintiff does disclose its "cycle sequencing PCR protocol," and keeps this protocol under seal in its opposition filing. Indeed, plaintiff offers an "ABI Standard Protocol," apparently known in industry, to highlight the differences from its own protocol. Recall, however, the November 18 order directed plaintiff to disclose both the trade secret *and* describe the background of the secret and how it brings value by virtue of not being generally known. The bare assertion that plaintiff spent years developing a different protocol from the industry standard does not explain how it has incrementally advanced beyond the state of this art in its specialized field. *Advanced Modular*, 132 Cal. App. 4th at 836.

Rather than seriously contesting the above analysis, plaintiff first tries to reframe this dispute as a motion to dismiss. This misreads the November 18 order and the undersigned's prior orders on the topic (and the text of Section 2019.210 itself).

Plaintiff next seeks to bolster the merits of the asserted trade secrets themselves. But this mistakes the matter at hand. We will determine whether plaintiff's asserted trade secrets are, as a matter of law and fact, trade secrets at summary judgment. Now, we are concerned with plaintiff's disclosure, or to be clear, the lack thereof, of those asserted trade secrets.

This order is unsure whether to take plaintiff's last argument seriously. In response to an order to disclose its asserted trade secrets, plaintiff responds, several times, that "[d]efendants can also easily obtain copies of the [asserted trade secrets], by looking into the stolen computers and by conducting discovery." Assuming these remarks come of vigorous representation and not belligerence, they highlight the flaws in plaintiff's opposition here. Plaintiff seeks, in essence, to avoid its burden of proof. Its trade secret disclosure describes *categories* of protectable information. But high-level descriptions of business and marketing plans, or novel products and procedures do not reveal the underlying asserted trade secrets. Nothing about plaintiff's categorical descriptions will allow us to distinguish between, on the one hand, plaintiff truly discovering its material in defendants' possession and, on the other, plaintiff merely slapping the retroactive label of "trade secret" on information gained in discovery. This prevents us from framing the scope of discovery and defendants from mounting a knowing and reasoned defense. *Id.* at 833–34.

## CONCLUSION

The motion to strike is **GRANTED IN PART**. Plaintiff has failed to disclose most of its trade secrets with adequate particularity. It has for our purposes, however, adequately disclosed its asserted-trade secret customer profile and vendor databases. Plaintiff's trade secret misappropriation claim may proceed, including to discovery, on these asserted secrets only.

A prior order noted that plaintiff's trade-secret claim provides the sole basis for supplemental jurisdiction over this business dispute. The supplemental jurisdiction statute, 28 U.S.C. Section 1367, permits federal courts to efficiently address disputes raising both federal and state claims in one action. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). Section 1367, however, is not an invitation to disrupt the ordinary bounds of our jurisdiction. "Needless decisions of state law should be avoided . . . as a matter of comity." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). It is now clear that the parties' slew of state-law claims threatens to swallow the sole federal claim here.

All state-law claims and counterclaims are **STAYED**. The parties shall proceed through discovery on the trade-secret misappropriation claim. Given the narrowing of the present dispute, the current case management schedule (Dkt. No. 29) should do. To reproduce the most relevant dates here, fast discovery closes and opening expert reports are due **MAY 14**. Dispositive motions are due by **JULY 1**. The March 18 hearing is **VACATED**. The parties shall please re-notice their remaining, relevant disputes.

**IT IS SO ORDERED.**

Dated: March 13, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE