BUCHALTER
A Professional Corporation
DYLAN WISEMAN (SBN: 173669)
BRANDON CARR (SBN: 280959)
TIFFANY NG (SBN: 301436)
55 Second Street, Suite 1700
San Francisco, CA 94105
Tel: (415)227-0900
Email: dwiseman@buchalter.com

Attorneys for Defendants ALEX WONG and RUI SHAO

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> RUIFENG BIZTECH INC., a California corporation, GANGYOU WANG, an individual, ALEX WONG, an individual, ALAN LI, an individual, RUI SHAO, an individual, and RF BIOTECH LLC, a California limited liability company; <br><br> Defendants. <br><br> RUIFENG BIZTECH INC., a California corporation and GANGYOU WANG, an individual; <br><br> Counter-Claimants, <br><br> vs. <br><br> QUINTARA BIOSCIENCES, INC., a California corporation, RICHARD SHAN, an individual and XUELING ZHAO, an individual; <br><br> Counter-Defendants. | CASE NO. 3-20-CV-04808-WHA <br><br> **NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION; MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: December 16, 2021 <br> Time: 8:00 a.m. <br> Judge: Hon. William Alsup <br> Courtroom: 12, 19th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on December 16, 2021, at 8:00 a.m., or as soon thereafter as the Court's schedule permits, before the Honorable William Alsup, in Courtroom 12 of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102.

**PLEASE TAKE FURTHER NOTICE** pursuant to Cal. Code Civ. Proc § 877(b), Defendants Alex Wong ("Wong") and Rui Shao ("Shao") will and hereby do bring this Motion for Determination of Good Faith Settlement ("Motion").

This Motion is made on the grounds that Wong's and Shao's modest settlements with Plaintiff Quintara Biosciences, Inc. ("Quintara") were proportionate to their potential exposure to liability in this action and an adequate and equitable resolution of the claims between the Settling Parties.

This motion is based upon the accompanying Memorandum of Points and Authorities, the declaration of Dylan W. Wiseman in support thereof, the filings and records in this action, as well as any other matters on argument as may be allowed at the time of the hearing on this matter.

DATED: November 5, 2021         BUCHALTER
                                A Professional Corporation


                            By: */s/Dylan W. Wiseman*
                                DYLAN W. WISEMAN
                                Attorneys for Defendants ALEX WONG and
                                RUI SHAO

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. RELEVANT FACTUAL BACKGROUND

On or about October 28, 2021, Defendants Rui Shao ("Shao") and Alex Wong ("Wong") and Plaintiff Quintara Biosciences, Inc. ("Quintara") executed a Settlement Agreement and Mutual General Release ("Settlement Agreement") [Dkt. No 236, Exh. A] and on November 1, 2021, Quintara filed a "Notice of Settlement Regarding Defendants Alex Wong and Rui Shao." [Dkt. No. 235]; Declaration of Dylan Wiseman filed concurrently herewith ("Wiseman Decl."), ¶ 3. Further, on November 1, 2021, Quintara filed a Stipulation for Entry of Judgement, which Wong and Shao stipulated to as a term of the Settlement Agreement. [Dkt. No. 236, ¶ 2.6]; Wiseman Decl., ¶ 4.

The Settlement Agreement provides: "Notwithstanding the stipulated judgment, there is no admission of wrongdoing or liability by Wong and/or Shao, who specifically deny any wrongdoing whatsoever." (Wiseman Decl., Exhibit A [Settlement Agreement, ¶ 2.2.])

Quintara's First Amended Complaint ("FAC") alleged claims for Conversion, Breach of the Duty of Loyalty, Misappropriation of Trade Secrets under the Defend Trade Secrets Act ("DTSA"), Intentional Interference with Prospective Economic Advantage, and Unfair Competition. [Dkt. No. 54.] Quintara's DTSA claim alleged that it had eleven trade secrets. On March 13, 2021, the Court stayed all of Quintara's common law claims, and dismissed nine of its eleven trade secrets. [Dkt. No. 83.] Quintara's only two remaining trade secrets were its so-called Customer Profile Database and its Vendor Database. [Dkt. No. 83.]

As to Shao and Wong, there is no evidence they ever possessed, knew of, used, or disclosed Quintara's claimed two remaining trade secrets.

Shao, who has not worked for Defendant Ruifeng Biztech Inc. ("Ruifeng") since January 2021, was a laborer who was primarily charged with loading the DNA sequencing machine and working a nighttime shift filling orders. (*See e.g.*, Wiseman Decl., Exh. C [Deposition Transcript of Rui Shao ("Shao Depo"), p. 41:13-15: "We jointly completed the processing of samples in the late shift because we both were technicians."]; Wiseman Decl., ¶ 6.) Moreover, in Shao's role, he had no contact with vendors or customers and was unaware of the alleged trade secrets. (*See, e.g.*,

Wiseman Decl., Exh. D [Declaration of Rui Shao In Support of Defendants' Motion for Summary Adjudication ("Shao MSA Decl.") [ECF No. 163-3], ¶¶ 10-11: "First, when I was working at Quintara, I never knew it even had any such Customer Profile or Vendor Database. Second, I had no idea that what Quintara now claims to be its 'trade secret,' was actually kept on computers in Ruifeng's office."]; Wiseman Decl., ¶ 6).

Prior to and at the time of the alleged misappropriation, Wong was a lab manager and oversaw day-to-day sequencing operations. (*See, e.g.*, Wiseman Decl., Exh. E [Deposition Transcript of Alex Wong ("Wong Depo"), p. 35:14-22: "I oversee the daily operations for the sequencing part."]; Wiseman Decl., ¶ 9.) Wong also was not aware of Quintara's alleged Customer Profile or Vendor Databases. (*See, e.g.*, Wiseman Decl., Exh. F [Declaration of Alex Wong In Support of Defendants' Motion for Summary Adjudication ("Wong MSA Decl.") [ECF No. 163-5, ¶¶ 10-11]; Wiseman Decl., ¶ 9.)

Shao and Wong were such an afterthought to Quintara, that Quintara's CFO and damages expert did not even apportion any of its purported damages to them. (Wiseman Decl., ¶ 5, Exh. B [Deposition Transcript of Tomo Kimura, 327:19-24].) After the Court threw out Mr. Kimura's testimony regarding reasonable royalties, Quintara has also abandoned its lost profits claim regarding its Vendor Database. (*Id*., pp. 331:12-338:9.) Thus, having lost nine of its eleven claimed trade secrets, Quintara is heading to trial only on its two remaining trade secrets, only one of which gives rise to a claim for damages.

Quintara has agreed to accept $1,000 from each of Wong and Shao to settle its claims against them. (Wiseman Decl., Exhibit A [Settlement Agreement, ¶ 2.1].)

## II.   SETTLEMENT AGREEMENT

   **A.**   **Parties:** The Parties to this action are Quintara Biosciences, Inc., Ruifeng Biztech Inc., Gangyou Wang, Alex Wong, Alan Li, Rui Shao, and RF Biotech LLC.

   **B.**   **Settling Parties:** The Settling Parties are Quintara Biosciences, Inc., Alex Wong, and Rui Shao, as provided in further detail in the Settlement Agreement.

   **C.**   **Terms:** Pursuant to the specific terms and conditions in the Settlement Agreement, the Settling Parties have agreed to the following:

1.    Wong and Shao agree to pay Quintara $1,000 each.

2.    Notwithstanding the stipulated judgment, there is no admission or wrongdoing or liability by Wong and/or Shao, who specifically deny any wrongdoing whatsoever.

3.    Wong and Shao individually, or through counsel, agree to accept electronic service of trial subpoenas for this action, and if called as witnesses, to appear and testify truthfully at trial.

4.    Wong and Shao individually, or through counsel, agree to accept electronic service of discovery subpoenas for the concurrently pending state court action ("State Action"), and if called as witness will appear and testify truthfully in that action.

5.    Upon execution of the Settlement Agreement, a notice of settlement among the Settling Parties will be filed in the State Action. If Wong and Shao satisfy the conditions of paragraphs 3 and 4, above, Quintara shall dismiss Wong and Shao from the State Action, with prejudice. Should Wong and Shao violate the conditions of those paragraphs, the release of Wong and/or Shao by Quintara in the State Action shall be considered revoked, the Notice of Settlement filed in the State Action will be withdrawn, and the State Action will be re-started against Wong and Shao.

6.    Upon execution of the Settlement Agreement, a Stipulated Judgment ("Judgment") shall be entered against Wong and Shao in the amount of $1,000 each. Upon payment of the settlement amount, Quintara shall provide to Shao and Wong's counsel a Full Satisfaction of Judgment.

7.    The Settling Parties will bear their own attorneys' fees and costs in this action and the State Action.

8.    The Settling Parties agree to Mutual Releases in this action and the State Action.

## III.    LEGAL STANDARD

### A.    Federal Courts Apply California Substantive Law Regarding Good Faith Settlement Motions.

"Where a release, dismissal with or without prejudice, or a covenant not to sue or not to

enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort … [i]t shall discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Code Civ. Proc § 877(b). California Code of Civil Procedure section 877 is California substantive law applicable in federal actions. *Federal Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990) ("It is the substantive provisions of California law that are applicable (in this case section 877)").

### B. California's Code of Civil Procedure Section 877.6.

California Code of Civil Procedure section 877.6 provides that "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . ." Cal. Civ. Proc. Code § 877.6(a). To secure a determination of good faith settlement, the settling parties may "give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order." Cal. Civ. Proc. Code § 877.6(a)(2). "The application shall indicate the settling parties, and the basis, terms, and amount of the settlement." *Id.*

After the Court determines that a settlement was reached in good faith, joint tortfeasors are barred from asserting indemnity and/or contribution claims against the settling tortfeasors. Cal. Civ. Proc. Code § 877.6(c).

In *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488 (1985), the California Supreme Court set the standard for determining whether a settlement is made in "good faith" within the meaning of California Code of Civil Procedure section 877.6, where it held that a settlement is made in good faith if it is within a "reasonable range" of the settling party's proportionate share of liability to the plaintiff. *Tech -Bilt*, 38 Cal.3d at 499. Notably, *Tech-Bilt* emphasizes the following: "[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability. In order to encourage settlement, it is quite proper for a settling defendant to pay less than his proportionate share of the anticipated damages." *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 874-75 (1987) (mentioning, although not directly citing, *Tech-Bilt*).

In *Tech-Bilt*, the California Supreme Court enumerated several factors for courts to consider

in determining a good faith settlement. These factors include:

(1) a rough approximation of the plaintiff's total recovery and the settler's proportionate liability;

(2) the amount paid in settlement;

(3) a recognition that a settler should pay less in settlement than if the settler were found liable after a trial;

(4) the allocation of settlement proceeds among plaintiffs;

(5) the financial condition and the insurance policy limits of the settler; and

(6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. *Tech-Bilt*, 38 Cal. 3d at 499.

Not all of these factors necessarily apply to every case. *See, e.g., City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1262-1265 (1987). The court should also consider the policy in favor of settling litigation. *Stambaugh v. Superior Court*, 62 Cal. App. 3d 231, 238 (1976) (noting "a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace and quiet, or otherwise").

Furthermore, "practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Tech-Bilt*, 38 Cal. 3d at 499; *Abbott*, 43 Cal. 3d at 874; *see also Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864, 878 n. 9 (1990) (in determining whether a settlement is made in good faith, the court "will not necessarily have before it all of the evidence which may ultimately be offered at trial on a disputed issue"). In addition, any party asserting lack of good faith bears the burden to demonstrate that the settlement "is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499-500; Cal. Civ. Proc. Code § 877.6(d). Only such a demonstration could establish that a settlement is not made in good faith within the terms section 877.6. *Tech-Bilt*, 38 Cal. 3d at 500.

Finally, a good-faith settlement does not call for perfect or even nearly perfect apportionment of liability. *N. County Contractor's Ass'n v. Touchstone Ins. Servs.*, 27 Cal. App.

4th 1085, 1090 (1994). All that is necessary is that there be a "rough approximation" of the settlement amount and the settling party's proportionate liability. *Id.*, 27 Cal. App. 4th at 1090-91; *see also Horton v. Superior Court*, 194 Cal. App. 3d 727, 735 (1987) (citing *Tech-Bilt*, 38 Cal. 3d at 501) (the judge should try to "determine a 'rough approximation' of what the plaintiff would actually recover if the case should go to trial").

In sum, absolute precision is not required. To determine whether a settlement is "in the ballpark," a court is merely required to make an "educated guess" whether it approximates the settling defendant's share of liability and is not grossly disproportionate. *N. County Contractor's Ass'n.*, 27 Cal. App. 4th at 1090. The court may rely on affidavits, experts in the field, and personal experience. *Mattco Forge, Inc. v. Arthur Young & Co.*, 38 Cal. App. 4th 1337, 1349 (1995). Furthermore, California courts have recognized that good faith is a flexible concept. *Price Pfister, Inc. v. William Lyon Co.*, 14 Cal.App.4th 1643 (1993).

Any party asserting lack of good faith bears the burden of proof on that issue. Specifically, a party that seeks to dispute the good faith of a proposed settlement under the § 877.6 principles must demonstrate that the settlement "is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.*, 38 Cal.3d at 499-500; Cal. Civ. Proc. § 877.6(d).

**IV.    LEGAL ARGUMENT**

  **A.    The Settlement Agreement Is A Just, Fair, Adequate, and Equitable Resolution of All Claims Between the Settling Parties.**

The Court should find that the Settlement Agreement reached in this case is just, fair, adequate, and an equitable resolution of all claims between Quintara, Wong, and Shao. The Agreement was reached procedurally and substantively in good faith, the result of arms-length negotiations. The total settlement amount of $1,000 each from Wong and Shao is reasonable considering the dearth of evidence supporting Quintara's claims against Wong and Shao. Given that neither Shao nor Wong played no customer-facing role at Ruifeng, and Quintara has no damages available for its Vendor Database alleged trade secret.

Moreover, Quintara alleges that Wong and Shao took part in the alleged misappropriation

while they were working for Defendant Ruifeng. (*See, e.g.,* FAC, ¶¶ 52, 58.) Under California Labor Code section 2802,[1] Wong and Shao had a right to indemnity from Ruifeng. As such, their true exposures to liability were negligible if not none. Wong and Shao agreed to settle with Quintara for amounts *de minimis* in order to put this action, and the State Action, behind them.

### B. The Settlement Agreement Between Wong, Shao, and Quintara Satisfies the *Tech-Bilt Factors.*

The Settlement Agreement between Wong, Shao, Quintara satisfies the *Tech-Bilt* Factors. First, Wong and Shao are alleged to be joint tortfeasors, within the meaning of California Code of Civil Procedure section 877.6, who have settled with Quintara.

Wong and Shao each agreed to pay Quintara $1,000. Given the facts that: (1) Wong and Shao did not participate in the alleged locking-out of Quintara, (2) were unaware of Quintara's alleged trade secrets, and (3) were working for Ruifeng at the time of the alleged misappropriation and, therefore, have indemnity claims against Ruifeng under Labor Code section 2802, the small amounts they have agreed to pay to Quintara roughly approximate their proportionate liability— very little to none.

The Settlement amount Wong and Shao are paying is also reasonable considering parties should pay less in settlement than after trial, as well as considering the financial conditions of the Settling Parties. If Quintara's claims were to succeed at trial and Wong and Shao were found to be even just 1% liable, their apportioned shares of damages would likely exceed the $1,000 sums they are paying now. On the other hand, given the lack of evidence against them, and Labor Code section 2802, there is a significant chance that Wong and Shao would be adjudged with no liability. This Settlement Agreement reflects that Wong and Shao will be paying less in settlement than they potentially might have after trial, were they found to bear even a small portion of the total liability, and more than they would were they exonerated of liability and/or if they are found to be indemnified by Ruifeng. Further, Wong and Shao are individuals – respectively, current and former

---

[1] "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." California Labor Code § 2802(a).

employees of Ruifeng – not owners or officers of the corporation. They do not have the financial wherewithal to pay damages awards worth hundreds of thousands or millions of dollars. (Wiseman Decl., ¶ 13.) A cheap resolution to this matter benefits Wong and Shao as it provides them with quiet and comfort with respect to this litigation and it gives all the Settling Parties more certainty. (Wiseman Decl., ¶ 13.)

Finally, there was no collusion or fraud in reaching the settlement. The Settling Parties agreed to settlement terms after weeks of adversarial, arm's length negotiation between experienced counsel. (Wiseman Decl., ¶ 14.) There was never an intent to injure any other party. (Wiseman Decl., ¶ 15.) In fact, counsel for Wong and Shao spent several hours researching whether this Settlement Agreement could prejudice or benefit the non-settling defendants in the action, and determined that it could not. (Wiseman Decl., ¶ 15.)

**C.  The Settlement Is A Good Faith Settlement Under Both State and Federal Law and Should Act to Bar Claims Against Wong and Shao With Respect to Quintara.**

Based upon all the *Tech-Bilt* factors, Wong and Shao's settlement with Quintara should be considered a good faith settlement under Cal. Civ. Proc. Code § 877.6. Further, given the evidence that this settlement is fair and reasonable, Wong and Shao request that this Court determine that the Settlement is made in good faith under state and federal law. The settlement should bar all claims against Wong and Shao under both state and federal law for contribution, cost recovery or other liabilities associated with their contact with Quintara.

**D.  If Nobody Objects, Even A Bare Bones Motion for Good Faith Settlement Should be Approved.**

"The California Court of Appeal has held that it is incumbent upon the court deciding the motion for good faith settlement to consider and weigh the *Tech-Bilt* factors only when the good faith nature of a settlement is disputed." (*Michell v. United States* (S.D. Cal., Sep. 6, 2011, No. 09cv0387 BTM(JMA)) 2011 U.S. Dist. LEXIS 99942, at *8 [citation omitted].) "[W]hen no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient." (*Id.*) Accordingly, if

there is no opposition to this motion, this Court should approve this motion and the underlying Settlement Agreement, and grant the order requested hereby.

### E. Any Party Objecting to Lack of Good Faith Has the Burden of Proof As to That Issue.

In *Fisher v. Superior Court,* 103 Cal.App.3d 434, 447 (1980), the court held that once there is a showing made that a resolution is not unreasonable on its face, the burden of going forward with the evidence on the issue of "good faith" shifts to the non-settling tortfeasor. In the wake of Fisher, the California legislature enacted CCP § 877.6(d), which codified the rule as follows: "The party asserting the lack of good faith shall have the burden of proof on that issue." (See also *Kohn v. Superior Court*, 142 Cal.App.3d 323, 326 (1983)). Thus, opponents of a motion for good faith settlement have the burden of proving that the settlement is so far "out of the ballpark" in relation to the factors set forth by the moving party as to be inconsistent with the equitable objectives of § 877.6(d). (*Tech-Bilt*, *supra*, at 499-500.)

### F. The Court Should Enter an Order Barring Contribution Claims in Accordance With the Settlement Agreement.

Wong and Shao have presented evidence that the Settlement Agreement is procedurally and substantively in good faith and the result of arm's length negotiations, as detailed above. Accordingly, the Court should confirm that Wong and Shao are discharged from all liability for any contribution or equitable indemnity arising from or related to the subject matter of this litigation and issue an order barring future claims under federal and state law, as articulated in the proposed order filed herewith. Cal. Civ. Proc. Code § 877.6(c).

## V. CONCLUSION

Based on the forgoing, Wong and Shao respectfully request the Court enter an order:

1. Granting this Motion and making a determination that the Settlement Agreement was entered into in good faith under state and federal law and within the meaning of California Code of Civil Procedure §§ 877 and 877.6; and

///

///

2. Barring all claims for contribution, indemnity, or claims otherwise barred under Code of Civil Procedure §§ 877 and 877.6 as to Wong and Shao.

DATED: November 5, 2021

BUCHALTER
A Professional Corporation

By: */s/Dylan W. Wiseman*
DYLAN W. WISEMAN
Attorneys for Defendants ALEX WONG and RUI SHAO