UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

QUINTARA BIOSCIENCES, INC.,

    Plaintiff,

v.

RUIFENG BIZTECH INC., GANGYOU WANG, ALAN LI, and RF BIOTECH LLC,

    Defendants.

No. C 20-04808 WHA

**PROPOSED JURY INSTRUCTIONS AND SPECIAL VERDICT FORM FOR CHARGING CONFERENCE**

Appended hereto are the Court's proposed jury instructions and special verdict form, which take into account all arguments and submissions to date.

Any and all objections and proposed modifications must be raised at the charging conference set for **TOMORROW, JULY 13, at 7:00 A.M.** All objections not made at the charging conference will be waived. The case will go to the jury on the same day. Your objections must be based on the law and why the instructions as they stand are not in accordance with it. Mere argument without more will not suffice.

**IT IS SO ORDERED.**

Dated: July 12, 2023.

                                              WILLIAM ALSUP
                                              UNITED STATES DISTRICT JUDGE

**PROPOSED JURY INSTRUCTIONS**

1.

Members of the jury, it is now my duty to instruct you on the law that applies to this case. Each of you will receive a copy of these instructions to consult during your deliberations. These instructions have several parts. This first part will address guidelines for evaluating evidence, burden of proof, and related matters.

2.

It is your duty to find the facts from all the evidence in the case. To those facts you must apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathies. This means that you must decide the case solely on the evidence before you. Perform these duties fairly.

In following my instructions, you must follow all of them and not single out some and ignore others. You must not read into these instructions, or into anything the judge may have said or done, as suggesting what verdict you should return. That is a matter entirely up to you.

3.

I will now instruct you about what is evidence in this case. The evidence from which you are to decide what the facts are consists of:

(1) the exhibits that have been received into evidence;

(2) the sworn testimony of witnesses who appeared in court, on both direct and cross-examination, regardless of who called the witnesses;

(3) the sworn testimony of witnesses in depositions, read into evidence or shown by video; and

(4) any facts to which all lawyers have stipulated (*i.e.*, agreed upon) before you in court.

4.

Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you.

    (1)    Arguments and statements by lawyers are not evidence. Lawyers are not witnesses. What they said in opening statements, closing arguments, and elsewhere is not evidence. Your interpretation of the evidence controls.

    (2)    A suggestion in a question to a witness by lawyers or the judge is not evidence unless it is adopted by the answer of the witness.

    (3)    An objection to a question to a witness by a lawyer or argument in support of an objection is not evidence. If an objection to a question is sustained (*i.e.*, not overruled), you must disregard the question and any answer.

    (4)    A document that a witness or lawyer mentioned but was not admitted into evidence is not evidence.

    (5)    Anything you may have seen or heard when court was not in session is not evidence. Again, you are to decide the case solely on the evidence received at trial.

5.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw, heard, or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense. In determining what inferences to draw from evidence, you may consider, among other things, a party's failure to explain or deny that evidence.

6.

The law permits you to give equal weight to direct and circumstantial evidence, but it is for you to decide how much weight to give to any evidence.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. Nor does it depend on which side called the witnesses or produced the evidence. The testimony of one witness worthy of belief is sufficient to prove any fact.

7.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see, hear, or know things testified to;

(2) the memory of the witness;

(3) the manner of the witness while testifying;

(4) the interest of the witness in the outcome of the case, and any bias or prejudice;

(5) whether other evidence contradicted the testimony of the witness;

(6) the reasonableness of the testimony of the witness in light of all evidence; and

(7) any other factors that bear on believability.

8.

You have heard testimony from witnesses who testified about their opinions and the reasons for those opinions. Such opinion testimony should be judged like any other testimony. You may accept or reject opinion evidence and give it as much weight as you think it deserves, considering the witnesses' specialized knowledge, skill, experience, training, or education, the reasons provided for the opinion, and all the other evidence in the case.

Note that these witnesses' opinions are necessarily based on assumed sets of circumstances. In evaluating these opinions, you should take into account the extent to which you agree or do not agree with the circumstances assumed by these witnesses.

9.

Any witness may be discredited or impeached by contradictory evidence or by evidence that, at some other time, the witness has said or done something (or has failed to say or do something) that is inconsistent with the present testimony. If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness the credibility, if any, you think it deserves.

Discrepancies in a witness's testimony, or between a witness's testimony and that of other witnesses, do not necessarily mean that such a witness should be discredited. Inability to recall and innocent misrecollection are common. You should consider whether a discrepancy pertains to an important matter or only to something trivial.

A witness willfully false in one part of that witness's testimony, however, is to be distrusted in other parts. You may reject the entire testimony of a witness who has willfully testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors that witness's testimony in other particulars.

10.

You have heard evidence about an application for an L-1 visa, a green card, and other relevant dealings. I instruct you that attempted fraud by either side against immigration authorities would not be a defense to a trade secret misappropriation claim, but it may be considered by you in assessing the credibility of any witness if you find that witness participated in any such attempted fraud. Participation in sham agreements to deceive would reflect adversely on credibility.

11.

In these instructions, I will refer to a party's "burden of proof." Let me explain. When a party has the burden of proof on any issue, it means you must be persuaded by the evidence of the truth of that party's allegation with respect to that issue. But how persuaded must you be for that party to meet its burden?

In this case, you must decide whether certain facts have been proven by a *preponderance of the evidence*. A preponderance of the evidence means that the fact that is to be proven is

5

more likely true than not. To put it differently, if you were to put the evidence favoring one party and the evidence favoring the other party on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip toward its side, even if just slightly. If that party fails to meet this burden, then that party loses on the issue.

This standard is different from what you may have heard about in criminal proceedings where a fact must be proven *beyond a reasonable doubt*, and the proof need only be sufficient to tip the scale in favor of the party proving the fact. Keep this in mind.

12.

I will now instruct you on the law in this case. This trial concerns an alleged trade secret allegedly belonging to Quintara: a customer profile database. Quintara contends that defendant companies Ruifeng Biztech Inc. and RF Biotech LLC, as well as individual defendants Gangyou Wang and Alan Li, misappropriated this customer profile database. In brief, to prove its claim, Quintara must prove the following facts by a *preponderance of the evidence*:

(1) that Quintara was the owner of the alleged trade secret, and that defendants were not, at the time it was allegedly misappropriated;

(2) that the alleged trade secret qualified as an enforceable trade secret at the time it was allegedly misappropriated;

(3) that the alleged trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce;

(4) that the defendant(s) improperly acquired or used the alleged trade secret; and

(5) that such unlawful acquisition or use was a substantial factor in harming Quintara.

It is for you, the jury, to decide whether or not all of these elements have been proven. Do not be concerned with any parallel lawsuit in state court. You must decide the issues presented here, irrespective of anything that may or may not happen in some other court. I will now explain the elements of proof in more detail.

6

13.

Let's turn to what is a "trade secret?"  A trade secret involves information and can potentially cover any form of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes — whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.  But not everything that touches upon these subjects is a trade secret.

14.

There can be no trade secret misappropriation if the alleged trade secret is not owned by the party that is alleging trade secret misappropriation.  In other words, because Quintara is alleging misappropriation of the customer profile database, Quintara must prove, by a preponderance of the evidence, that it owned the customer profile database.

Conversely, there can be no trade secret misappropriation if an alleged trade secret is owned by a party that allegedly misappropriated it.  In other words, if Ruifeng or any other defendant had an ownership interest in the customer profile database at the time it was allegedly misappropriated, then Ruifeng or any other defendant would have been lawfully entitled to take and possess the customer profile database.

Putting these two parts together, in order for you to find trade secret misappropriation in this case, Quintara must prove, by a preponderance of the evidence, that it owned the customer profile database and that defendants did not.  For this reason, the working relationships between the parties have a bearing on whether or not any trade secret misappropriation took place in this case.

15.

A joint venture is a partnership.  A partnership is formed between individual partners and governed by oral or written agreement.  An oral agreement may be explicit or it may be implied from a course of dealing or conduct between partners.

7

On the one hand, property that belongs to an individual partner remains the property of that individual partner (and does not become the property of the partnership) unless the governing agreement provides otherwise. On the other hand, property owned by the partnership is owned by all individual partners unless the governing agreement provides otherwise.

Two people or two companies may do business with each other without becoming partners, such as, for example, a lender and a borrower. A hallmark of a partnership is a sharing of profits and losses of a joint venture — that is, a sharing in the risk of the venture.

Recall that you have heard evidence involving a "loan" and evidence involving a "joint venture." You must decide how much weight to give this evidence and how to characterize the true relationship between Quintara, Ruifeng, and their employees.

So, the first element that Quintara must prove is that it owned the customer profile database and that no defendant had any ownership interest in it.

16.

Turning to the second element of proof for a trade secret misappropriation claim, Quintara must prove that the alleged trade secret (*i.e.*, the customer profile database) qualified as an enforceable trade secret at the time of alleged misappropriation. To do so, Quintara must prove each of the following:

(1) that the alleged trade secret was *secret* at that time;

(2) that the alleged trade secret had actual or potential *independent economic value* at that time because it was secret; and

(3) that Quintara took *reasonable measures* up to the time of the alleged misappropriation to keep secret the alleged trade secret.

I will now explain these elements in greater detail.

17.

The secrecy required to prove that something is a trade secret does not have to be absolute secrecy in the sense that no one else in the world possessed the information at the

relevant time. It may have been disclosed to employees or non-employees involved in the owner's use of the trade secret as long as they were instructed to keep the information secret.

Information that is readily ascertainable by proper means by those in the same trade or profession at the time of the alleged misappropriation cannot qualify as secret. There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, reverse-engineered, or compiled without significant difficulty, effort, or expense.

Moreover, everyone has the right to use or to disclose information that they independently develop on their own without the benefit of someone else's trade secrets. Therefore, even if one company has a protectable trade secret in certain information, other companies are free to independently develop and use similar information on their own. They cannot, however, improperly acquire and then use or disclose someone else's trade secrets.

18.

A trade secret has independent economic value if it would have given the owner an actual or potential business advantage over others who did not know the information and who could have obtained economic value from its disclosure or use. In determining whether the information had actual or potential independent economic value because it was secret, you may consider the following:

(1) the extent to which the owner obtained or could have obtained economic value from the information in keeping it secret;

(2) the extent to which others could have obtained economic value from the information if it was not secret;

(3) the amount of time, money, or labor that the owner expended in developing the information; and

(4) the amount of time, money, or labor that defendants saved by using the information.

The presence or absence of any one or more of these factors is not necessarily determinative.

9

19.

Reasonable efforts to keep the information secret are the efforts that would have been made by a reasonable business or person in the same situation with the same knowledge and resources as the alleged owner, exercising due care to protect important information of the same kind. In determining whether or not the owner made reasonable efforts to keep the information secret, the following factors should be considered:

(1) whether hardware, documents, or computer files containing the information were marked with confidentiality warnings;

(2) whether the owner instructed its employees to treat the specific information as confidential;

(3) whether the owner unreasonably over-classified its business information as confidential such that employees might be unsure of what genuinely needed confidentiality;

(4) whether the owner restricted access to the information to persons who had a reason to know the information;

(5) whether the owner kept the information in a restricted or secured area; and

(6) whether the owner required employees or others with access to the information to sign confidentiality or nondisclosure agreements covering the information.

Again, the presence or absence of any one or more of these factors is not necessarily determinative.

20.

Turning to the third element of proof for a trade secret misappropriation claim, Quintara must prove that the alleged trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce. Use or intended use of a product or service in interstate commerce means that the product or service involves travel, trade, transportation, or communication between a place in one state and a place in another state. Use of a product or

1  service in foreign commerce means that the product or service involves travel, trade,
2  transportation, or communication between a place in the United States and a place outside of
3  the United States.

21.

Turning to the fourth element of proof for a trade secret misappropriation claim, Quintara must also prove that the alleged trade secret was acquired by defendants by improper means or used by a defendant without Quintara's consent, which I will now explain.

22.

Starting with acquisition by improper means, a defendant can be liable if, at the time of the alleged misappropriation, it knew or had reason to know that the trade secret was or had been acquired by improper means.

With respect to improper means, they include, but are not limited to, theft, misrepresentation, breach, or inducement of a breach of duty to maintain secrecy.  It is not improper, however, to acquire a trade secret or knowledge of the trade secret by any of the following:

(1)  independent efforts to invent or discover the information;
(2)  reverse engineering; that is, examining or testing a product to determine how it works by a person who has a right to possess the product;
(3)  observing the information in public use or on public display; or
(4)  obtaining the information from published literature, such as trade journals, reference books, internet sources, or other publicly-available works.

23.

Meanwhile, misappropriation by use requires actual use.  It is not enough to speculate that employees of an accused corporate defendant would inevitably have used the claimed trade secret in their work.  In this case, you have heard testimony that a defendant once worked for Quintara.  The mere fact that a defendant left Quintara to work for another defendant does not automatically mean that this defendant used Quintara's trade secret after they left Quintara.

1   Employees have the right to change employers and to apply their talents and skills in new jobs.

2   Doing so is lawful as long as they don't reveal or use information qualifying as a trade secret

3   of a prior employer.

4                                              24.

5   Turning to the fifth element of proof for a trade secret misappropriation claim, Quintara

6   must prove that misappropriation was a substantial factor in causing it harm. It must be more

7   than a remote or trivial factor. It does not have to be the only cause for harm to Quintara.

8                                              25.

9   If you find Quintara has not proven its claim for trade secret misappropriation, your

10  verdict must be for defendants, and you do not consider damages. If you find, however, that

11  Quintara has proven its claim for trade secret misappropriation, you must decide the issue of

12  damages. I will now instruct you on the law concerning such damages. By doing so, I am not

13  suggesting for whom your verdict should be on the question of liability. That is a question

14  entirely up to you.

15                                             26.

16  Federal trade secret law allows recovery of "actual losses" caused by the unlawful

17  acquisition or use of a trade secret. To decide the dollar amount of any actual losses sustained

18  by Quintara, you first determine the dollar value of the injury caused by the misappropriation.

19  Then you subtract from that amount Quintara's reasonable expenses that it would have

20  incurred had the misappropriation not occurred.

21                                             27.

22  Under the law, a corporation (like Ruifeng and RF Biotech) is considered to be a person.

23  It can only act through its employees, agents, directors, or officers. Therefore, a corporation is

24  responsible for the acts of its employees, agents, directors, and officers performed within the

25  scope of authority.

26                                             28.

27  If you find any defendant used a trade secret and that defendant is liable for damages,

28  you must also decide whether that defendant's misappropriation was willful and malicious.

1  Conduct is "willful" if done with a purpose or willingness to commit the act or engage in the
2  conduct in question, and the conduct was not reasonable under the circumstances at the time
3  and was not undertaken in good faith. Conduct is "malicious" if done with an intent to cause
4  injury or was "despicable" and done with a willful and knowing disregard for the rights of
5  others. Conduct is "despicable" when it is so vile or wretched that it would be looked down
6  upon and despised by ordinary decent people. Someone acts with knowing disregard when
7  they are aware of the probable consequences of their conduct and deliberately fail to avoid
8  those consequences.

29.

10  If you find any defendant's misappropriation was willful and malicious, then after a short
11  recess, a short supplemental proceeding shall be held in which the parties may present
12  evidence of that defendant's financial condition, followed by brief argument by each side, so
13  that you may award exemplary damages. Exemplary damages are distinct from the damages
14  mentioned previously and are intended to punish and to deter misappropriation of trade secrets.
15  You will return to the jury room to fill out a one-question supplemental verdict form on the
16  amount of exemplary damages Quintara should recover from that defendant.

30.

18  I will now turn to the third and final part of the instructions. When you begin your
19  deliberations, you should elect one member of the jury as your foreperson. That person will
20  preside over the deliberations and speak for you here in court.

21  You will then discuss the case with your fellow jurors to reach agreement if you can do
22  so. Your verdict as to the charge must be unanimous. Each of you must decide the case for
23  yourself, but you should do so only after you have considered all of the evidence, discussed it
24  fully with your fellow jurors, and listened to the views of your fellow jurors.

31.

26  Do not be afraid to change your opinion if the discussion persuades you that you should.
27  Do not come to a decision simply because other jurors think it is right. It is important that you
28  attempt to reach a unanimous verdict but, of course, only if each of you can do so after having

13

made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict. I will give you a verdict form to guide your deliberations.

32.

When you retire to your assigned room to deliberate, you will have with you the following things:

(1) a work copy of these jury instructions for each of you;

(2) a work copy of the verdict form for each of you;

(3) the official verdict form; and

(4) all of the exhibits received into evidence.

33.

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by notes. When you go into the assigned room, the courtroom deputy clerk will bring to you the trial exhibits received into evidence to be available for your deliberation.

34.

At no time may you conduct your own research about: the definition of the claims alleged, the meaning of any term, the law governing the claims alleged, the process of jury deliberations, or any other topic. You may not consult any law books, internet sources, non-jurors, or any other resources for information on how to reach a verdict or understand the law. If you have a question, you must direct it, in writing, to me.

35.

The courtroom deputy clerk will be outside the jury room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy clerk, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me

except by a signed writing via the courtroom deputy clerk, and I will respond to the jury concerning the case only in writing or here in open court.

If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to me.

36.

If you do not reach a verdict by the end of the day, please place your work materials in the brown envelope provided and cover up any easels with your work notes so that if my staff needs to go into the room, they will not even inadvertently see any of your work in progress.

You have been required to be here each day when trial was in session from 7:45 A.M. to 1:00 P.M. Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason. For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine. I do, however, recommend that you continue to start your deliberations by 7:45 A.M. If you do not reach a verdict by the end of today, then you will resume your deliberations on the next court day.

It is very important that you let us know via the courtroom deputy clerk in advance what hours you will be deliberating so that the lawyers and parties may be present in the courthouse at any time you are deliberating.

37.

You may only deliberate when all of you are together. This means, for instance, that in the mornings before everyone has arrived or when someone steps out of the room to go to the restroom, you may not discuss the case. As well, the admonition that you are not to speak to anyone outside the room about this case still applies during your deliberations.

38.

After all of you have reached a unanimous agreement on a verdict, your foreperson will fill in, date, and sign the verdict form and advise me through the courtroom deputy clerk that

you have reached a verdict.  The foreperson should hold onto the filled-in verdict form and bring it into the courtroom when the jury returns the verdict.

Thank you for your careful attention.  This case is now in your hands.  You may now go to the assigned jury room and begin your deliberations.

# PROPOSED VERDICT FORM

**1.** Has Quintara proven, by a preponderance of the evidence, that the customer profile database was ***owned by Quintara***, and not by Ruifeng or any other defendant, at the time of the alleged misappropriation?

                        Yes _____            No _____

If you have answered "Yes" to Question 1, then go to Question 2. Otherwise, your work is done; skip to the end of this form and sign and date it.

**2.** Has Quintara proven, by a preponderance of the evidence, that the customer profile database qualified as an ***enforceable trade secret*** at the time of the alleged misappropriation?

                        Yes _____            No _____

If you have answered "Yes" to Question 2, then go to Question 3. Otherwise, your work is done; skip to the end of this form and sign and date it.

**3.** Has Quintara proven, by a preponderance of the evidence, that any of the following defendants ***misappropriated*** the customer profile database?

    a.  Ruifeng Biztech Inc.:           Yes _____           No _____

    b.  Gangyou Wang:                 Yes _____           No _____

    c.  Alan Li:                              Yes _____           No _____

    d.  RF Biotech LLC:                 Yes _____           No _____

If you have answered "Yes" to any of Questions 3a–d, then go to Question 4. Otherwise, your work is done; skip to the end of this form, sign it, and date it.

17

4. What *damages* do you find Quintara has proven by a preponderance of the evidence for trade secret misappropriation?

$_____

5. Was the trade secret misappropriation by defendant(s) *willful and malicious*?

Yes _____     No _____

\*   \*   \*

You have now reached the end of the Verdict Form and should review it to ensure it accurately reflects your unanimous determinations. The foreperson should then sign and date the Verdict Form in the spaces below, and notify the courtroom deputy clerk that you have reached a verdict.

The foreperson should retain possession of the Verdict Form and bring it when the jury is brought back into the courtroom.

Dated: _____, 2023.     By: _____.
                                              Foreperson

18

**PROPOSED SUPPLEMENTAL VERDICT FORM**

1. What *exemplary damages* do you find Quintara has proven by a preponderance of the evidence for trade secret misappropriation?

$$\text{\$_____}$$

\*   \*   \*

You have now reached the end of the Supplemental Verdict Form and should review it to ensure it accurately reflects your unanimous determinations. The foreperson should then sign and date the Supplemental Verdict Form in the spaces below, and notify the courtroom deputy clerk that you have reached a verdict.

The foreperson should retain possession of the Supplemental Verdict Form and bring it when the jury is brought back into the courtroom.

Dated: _____, 2023.    By: _____.
                                                Foreperson