**LILAW INC.**
J. James Li, Ph.D. (SBN 202855, lij@lilaw.us)
Richard D. Lambert (SBN 251148, lambertr@lilaw.us)
Tamara M. Rider (SBN 267951, ridert@lilaw.us)
Daniel R. Peterson (SBN 326798, petersond@lilaw.us)
1905 Hamilton Avenue, Suite 200
San Jose, California 95125
Telephone: (650) 521-5956
Facsimile: (650) 521-5955

Attorneys for Plaintiff QUINTARA BIOSCIENCES, INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., a California corporation,<br><br>        Plaintiff,<br>        v.<br><br>RUIFENG BIZTECH INC., a California corporation, GANGYOU WANG, an individual, ALEX WONG, an individual, ALAN LI, an individual, RUI SHAO, an individual, and RF BIOTECH LLC, a California limited liability company,<br><br>        Defendants. | Case No. 3:20-cv-04808-WHA<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**Court:**     **Courtroom 12, 19th Floor**<br>**Judge:**    **Hon. William Alsup**<br>**Date:**     **September 14, 2023**<br>**Time:**     **8:00 a.m.** |



## I. __INTRODUCTION__

Defendants' Motion[1] seeks an astonishing $4,500,000 in attorneys' fees in this case despite that such an amount is astronomically higher than the amount incurred by Plaintiff in litigating this matter. Aside from the incredibly inflated fee amount sought under the Defend Trade Secret Act codified as 18 U.S.C. § 1836 (the "DTSA"), the fact of the matter remains that Defendants have not even come close to satisfying their substantial burden to recover fees and costs under the DTSA and Defendants offer nothing more than contrived, invented, and unsupported claims of bad faith.

Indeed, Defendants come nowhere close to showing the requisite objective and subjective bad faith required to recover fees and costs under the DTSA, let alone with competent evidence, as no bad faith exists. Defendants conflate the legal standards for objective and subjective bad faith (in fact Defendants argue the same points in support of each prong thereby conflating the two despite numerous authorities holding the two are separate and distinct), opine on the adequacy of Plaintiff's evidence at trial, and make conclusory claims about Plaintiff's bad faith as well as that of Plaintiff's counsel. Such is par for the course by Defendants' current counsel – Reshma Kamath – who, as this Court has already acknowledged and determined, makes baseless and "bald" allegations in an effort to support her own agenda including those of racism and misogyny against this Court, Magistrate Judge Hixson, Plaintiff, and Plaintiff's counsel. ECF 374. The present Motion is no different and is, frankly, unsurprising considering how Ms. Kamath has conducted herself in this case.

Plaintiff brought this lawsuit based on genuine concerns of trade secret misappropriation. Indeed, the record shows that Plaintiff's concerns were well-founded and certainly not without any evidence and both the Court and Defendants' counsel readily acknowledged that the facts as to ownership of the trade secret were based on disputed facts, and thus, could not have been objectively or subjectively brought in bad faith. Plaintiff has at all times proceeded under the steadfast belief, supported by evidence, that Defendants misappropriated its customer database. Far from being meritless or motivated by improper purpose this action was firmly grounded and proper. Indeed,

---

[1] Plaintiff opposes the fees sought from both Defendants' current counsel as well as Defendants' former counsel on the same grounds, i.e., Defendants, and their counsel, have failed to satisfy the high standard showing objective and subjective bad faith in this action on the part of Plaintiffs.  *See* ECF 377-391.

PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS



LiLaw Inc.

Plaintiff presented substantial evidence as to its sole and exclusive ownership of the customer database and also presented significant proof as to the informal and loose relationship between the parties and that, at no time, was there any joint venture or partnership created.

Simply because the jury sided with Defendants at trial does not mean there was any bad faith in this case or that the action was frivolous and brought for an improper purpose; to the contrary, the fact that Plaintiff prevailed on motions to dismiss and summary judgment is *prima facia* evidence as to the fact that Plaintiff had sufficient evidence and acted in good faith. Defendants seem to believe that just by using (and **bolding**) "bad faith" repeatedly throughout the Motion will make this Court believe that such is true. Defendants and their counsel underestimate the intelligence of this Court.

Moreover, the jury found in favor of Defendants on the ownership issue which, as will be further explained below, was a complicated and convoluted issue as both the Court and counsel conceded at trial. But simply because the jury misunderstood or disagreed with Plaintiff's evidence, is hardly an indication of bad faith of any kind. In fact, the "ownership" issue was so opaque and hotly contested that Defendants chose not to seek summary judgment on the exact issue which further underscores the fact-intensive nature of the dispute.

And the absolute lack of competent evidence offered by Defendants likewise reveals that there was no bad faith of any kind on the part of Plaintiffs and the Motion merely serves to highlight that the claims were both objectively and subjectively brought in good faith. Simply because Defendants' previous counsel "questioned" whether such claims were being brought in bad faith (which he certainly does in every case so as to lay the foundation for this very Motion) is entirely insufficient as Defendants lack any competent evidence that the claims were made for an improper purpose or made with an improper motive.

The plain fact is that Defendants have not met the high burden to recover fees in this action and, even if they had (which they certainly did not), the requested amount is neither reasonable nor substantiated which should result in the denial of fees altogether. This result is well-established under California law. *See Chavez v. City of Los Angeles,* 47 Cal. 4th 970, 989-991 (2010); *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982); *Guillory v. Hill*, 26 Cal. App. 5th 802, 806 (2019)*; Muniz v. United Parcel Serv., Inc.*, 738 F. 3d 214, 226 (9th Cir. 2013).

PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS

LiLaw Inc.



Even if the Court were to find that Defendants' have met their burden (which they have not even come close to doing), Defendants' current counsel's purported time sheets are block billed, are fatally vague, and include work previously performed by prior counsel resulting in thousands of hours of duplication. More to the point, Defendants' counsel claims she spent 4,610 hours on this case since November 2021 or approximately twenty (20) months, this means that counsel claims, under penalty of perjury no less, to have spent approximately 230 hours per month which, assuming she worked seven (7) days a week and did not observe any holidays, means Ms. Kamath billed 7.7 hours per day, ***every day*** in this matter. This is simply not credible nor believable especially considering that Ms. Kamath repeatedly claimed to have "scheduling conflicts" due to her other cases thereby creating scheduling problems. *See* ECF 383-1 at p. 13 ("Trial until next week…")[2]

What's worse is that, save for trial and pre-trial matters (in which counsel violated the rules too many times to count), it is undisputed that all the work had already been completed as trial was scheduled to begin on September 21, 2021, two (2) months *prior* to Ms. Kamath even making an appearance in this case. Other than filing several frivolous motions seeking to vacate the Stipulated Protective Order and seeking an exception to the Court's vaccination order (each of which were denied), there was simply nothing for counsel to do. Ms. Kamath cannot double-dip and charge for work performed by previous counsel as such is certainly not reasonable; yet Ms. Kamath does just that and in doing so provides vague yet humungous billing entries without any justification. Indeed, counsel's records are so incredibly vague and inflated that the Court is well-within its discretion to deny fees altogether. *Muniz*, 738 F. 3d at 226.

Defendants also apparently seek an award of costs; however, and yet again, Defendants and Ms. Kamath have violated the rules and have not, as required by Local Rule 54-1(a), served and filed a bill of costs let alone followed the specific procedures of Local Rule 54-1(a) which provides that: "The bill must state separately and specifically each item of taxable costs claimed. It must be supported by an affidavit, pursuant to 28 U.S.C. §1924, that the costs are correctly stated, were

---

[2] These 4,600 hours are also based on a reduction to the ***6,000*** hours Ms. Kamath claims to have spent reviewing the document production in this case over a 20-month period. *See* ECF 377-1 at 0027. Taking such into consideration, Ms. Kamath claims to have spent 10,000 hours in this case. Which, again, defies the bounds of reason and evidences a clear case of inflated bills to a degree perhaps never seen before.



LiLaw Inc.

necessarily incurred, and are allowable by law. Appropriate documentation to support each item claimed must be attached to the bill of costs." *See* L.R. 54-1(a). As such, and pursuant to Local Rule 54-1(c), Defendants have waived any right to recover costs. *See* L.R. 54-1(c).

Defendants' poor and futile attempts to put their own "spin" on the facts speaks volumes and makes it clear that Defendants, in fact, have no evidence of bad faith by Plaintiff in this action. Moreover, Defendants' counsel – who continues to violate the rules of this Court to this day with impunity and without consequence – repeatedly makes personal attacks towards counsel for Plaintiff that are simply belied by the record, are unprofessional, and juvenile. And this is hardly the first time Ms. Kamath has done so as previously held by this Court. ECF 374. That Defendants' counsel must resort to such absurd and unprofessional conduct speaks volumes as to the absolute lack of evidence produced by Defendants in support of the Motion and this Court should take notice. In sum, Defendants cannot recover fees and costs as they cannot come close to meeting their burden to prove they are entitled to fees, let alone in the amounts sought. Thus, Defendants Motion must be denied.

## II.    FACTUAL BACKGROUND

As will be explained in more detail below, since the filing of this action this case was hotly contested by Defendants. Indeed, Defendants filed a flurry of motions to dismiss the case (which proved to be unsuccessful) as well as refused to comply with their discovery obligations (which resulted in numerous discovery disputes being brought before the Magistrate which prompted the Magistrate to order the parties to review the rules of civility in the Northern District).

Even this Court commented on the exceptional amount of law and motion practice brought equally by the parties in this action. ECF 208 ("Defendants continue the barrage of motions in this dispute"). Thus, to the extent the Declaration of Dylan Wiseman seeks to persuade this Court that Plaintiff acted in bad faith by engaging in frivolous filing intending to increase costs and leverage a settlement, the record expressly proves that Defendants, were in fact, the party primarily responsible for the flurry of activity in this action. Thus, much of the conduct Defendants, their current counsel, and their former counsel claim to be evidence of bad faith was entirely self-inflicted.

///

///



LiLaw Inc.

LiLaw Inc.

**A. The Pleadings and Early Motion Practice by Defendants**

Plaintiff filed this action on July 17, 2020. ECF 1. Thereafter, Plaintiff moved *ex parte* for a preliminary injunction seeking to preclude Defendants from utilizing the trade secrets Defendants were alleged to have misappropriated. ECF 11. The Court denied Plaintiff's motion for a preliminary injunction. ECF 19. Thereafter, on September 8, 2020 Defendants moved to dismiss the Complaint pursuant to FRCP 12(b)(6) seeking to dismiss Plaintiff's claims for fraud and unfair business practices; critically, though, Defendants did not seek to dismiss Plaintiff's claims under the DTSA. ECF 18. On October 16, 2020 the Court issued an order on the Motion to Dismiss which granted in part and denied in part Defendants' Motion. ECF 28. Critically, the Court ordered that the claims under the DTSA were to remain. *Id*.

Following the Court's order on the Motion to Dismiss, on October 28, 2020, Defendants filed a motion for a protective order seeking to block discovery until Plaintiff provided its trade secret disclosure. ECF 31. The Court granted in part and denied in part Defendants' motion for a protective order and ordered that Plaintiff file and serve a disclosure by December 3, 2020. ECF 40. On December 2, 2020, Plaintiff filed and served its amended trade secret disclosure. ECF 44. Critically, included in the disclosure was a description of both the customer database and vendor database. *Id*. On January 5, 2021, Defendants filed a motion to strike Plaintiff's claims for misappropriation of trade secrets and fraud from the First Amended Complaint. ECF 57. On March 13, 2021, the Court issued an order on Defendants' motion to strike which was granted in part. ECF 87.

Of import here, though, is the fact that the Court's order expressly permitted the claims for trade secret misappropriation for the customer profile and vendor databases. *Id*. at 7:15-19. Thus, as of March 13, 2021 it was entirely clear which trade secrets were at issue in this case and those which Plaintiff would proceed with. Thus, any claim by Defendants' former counsel that the specifics of the trade secrets at issue in this case was a moving target throughout the case is belied by the record. Defendants' former counsel cannot simply put his own "spin" on the facts in order to create an appearance of bad faith simply because it suits his purposes now. The facts and record speak for themselves. Other than his own self-serving emails (which are certainly standard for former counsel



to send in every case for the exact reason he is using them now) the record in this case does not reflect any manner of bad faith on the part of Plaintiff.

### B.     Discovery Disputes and Orders

Throughout this case it was Defendants, not Plaintiffs, that obstructed discovery and required substantial assistance by the Magistrate. Defendants' obstreperous discovery tactics began immediately following the Court's order on Defendant's motion for a protective order (ECF 40) as Defendants took the position that discovery was effectively stayed until the Court ruled on their pending motion to strike. Defendants steadfast and nonsensical refusal to respond to discovery thus prompted Plaintiff to reach out to the Court by letter. ECF 59. Defendants' stonewalling only continued even following the Court's order on their motion to strike. Specifically, on March 17, 2021, Plaintiff was again forced to notify the Court of Defendants' refusal to comply with their discovery obligations as it related to Plaintiff's claims for trade secret misappropriation as to the customer profile and vendor databases. ECF 89.

Even following a hearing with the Magistrate on the issue, Defendants continued with their obstreperous discovery tactics thereby necessitating another letter brief to the Court which was provided on April 1, 2021. ECF 97. This April 1, 2021 request was with respect to Plaintiff's inspection of its own computers that were, at that time, in the possession of Defendants who were refusing Plaintiff access to such. *Id.* As was made clear in Plaintiff's April 1, 2021 letter brief, Plaintiff attempted to resolve the issue with Defendants without the need for Court intervention even offering up several solutions to address Defendants' concerns and Defendants refused to even discuss the matter and took the position that Plaintiff was not permitted to conduct such an inspection. *Id.*; *see also* ECF 115. Critically, the Magistrate and the Court agreed with Plaintiff and ordered that the inspection take place. ECF 122.

While these are just a small sampling of the matters indicating Defendants' abuse of the discovery process, these examples show that it was not just Plaintiff that was causing increased litigation costs due to discovery disputes as Defendants would have this Court believe; to the contrary, the record is clear that Defendants were likewise culpable. As Defendants are responsible for their own conduct, it is completely improper for them to now cast Plaintiff as the party acting in



LiLaw Inc.

bad faith. The Court need only look at the Magistrate's Order from June 9, 2021, wherein the Magistrate held as follows, to see that Defendants were equally culpable in the discovery disputes in this matter: "Having addressed thirteen discovery letters so far, with more pending, it is obvious to the undersigned—from the volume and tone of the letters—that there has been a breakdown in the civility and cooperation expected of all counsel and parties litigating in this district…." ECF 150.

### C. Defendants' Failed Motion for Summary Judgment

On June 30, 2021, Defendants filed a Motion for Summary Judgment as to Plaintiff's claim for misappropriation of trade secrets on the grounds that: (i) Plaintiff took no reasonable measures to protect the trade secrets; (ii) Plaintiff had not demonstrated a protectable trade secret in the customer and vendor databases; (iii) the databases did not have independent economic value; (iv) Plaintiff had no evidence of misappropriation; (iv) Plaintiff had no evidence that Defendants "used" the trade secrets; and (v) Plaintiff had not suffered any damages. ECF 163-1. Plaintiff opposed the Motion for Summary Judgment and provided clear and unequivocal evidence as to each of the foregoing matters. ECF 169. In fact, included in the Opposition by Plaintiff was clear evidence from its expert – John Berryhill – that many of the statements and arguments made by Defendants and their counsel at the time – Dylan Wiseman – were false and misleading. *Id*. These false and misleading statements by Defendants and their then-counsel were brought to light at the hearing on the motion and noted in the Court's Order ***denying*** the Motion for Summary Judgment. ECF 199 ("At the hearing on the motion for summary judgment, defense counsel stated that defendants' forensic expert had not found any relevant documents from Quintara's April 21 list on defendants' computers, with the sole exception of one file ("process_orders.xlsx") that had not been modified since January 27, 2020, which was before the lockout and dispute. ***That statement proved to be misleading as argument developed as defense counsel was eventually forced to admit that defendants last accessed the document January 23, 2021 — more than six months after the dispute arose (Opp. 16). Candor up front would have saved a lot of time at the hearing***.")

### D. Trial Delays Were the Result of Defendants and their Counsel

Trial in this matter was previously set to begin on September 21, 2021 and Plaintiff and counsel were prepared to try the matter on that date. *See* Li Decl. at ¶ 2. However, following a series



LiLaw Inc.

of motions and discovery issues, on August 26, 2021, the Court continued the trial from September 21, 2021 to December 6, 2021. ECF 208. Plaintiff and its counsel were prepared to try the matter on that date as well. *See* Li Decl. at ¶ 3. On November 9, 2021, the Court again continued the trial on this matter as result of the withdrawal of counsel for Defendants Ruifeng Biztech Inc., RF Biotech LLC, Gangyou Wang, and Alan Li. ECF 240. The Court gave these defendants until December 6, 2021 to find new counsel and scheduled a trial-setting conference for January 17, 2022. *Id*.

Thereafter, new counsel – Reshma Kamath – appeared on behalf of Defendants on or about November 9, 2021. *Id*. at ¶ 4. Upon Ms. Kamath's appearance, the parties began to meet and confer over a continued trial date and exchanged their respective schedules. Counsel for Plaintiff expressly informed Ms. Kamath that due to scheduling conflicts the trial would need to occur in February 2022 or August of 2022. *Id*.  Counsel for Plaintiff was prepared to try this case in February of 2022. *Id*.

Following Ms. Kamath's appearance, and after being informed by this Court on two (2) occasions regarding the Court's vaccination requirements, Ms. Kamath filed a motion seeking an exemption from the Court's vaccination requirements; such motion was denied on January 6, 2022. *Id*. at ¶ 5 and ECF 269. In the same order denying the motion for vaccination exemption, the Court vacated the trial date indefinitely and likewise vacated the pre-trial conference scheduled for February 9, 2022. *Id*. at ¶ 6. On April 14, 2022, this Court entered an order on Quintara's Motion to Continue which continued the trial in this matter from May 16, 2022 to December 5, 2022 due to scheduling conflicts on the part of trial counsel for Quintara. ECF 281. Ultimately, the Court scheduled trial in this matter for July 10, 2023 or twenty (20) months after the initial trial date of September 21, 2021. *Id*. and ECF 308. As the record makes clear, it was Defendants and their counsel, not Plaintiffs, that caused the delays in this action.[3]

## III.   LAW AND ARGUMENT

### A.   Legal Standard for an Award of Attorneys' Fees Under the DTSA and CUTSA

Both the DTSA and California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq*. permit, but do not require, a court to award fees to a "prevailing party" defending

---

[3] Even at the final pretrial conference Ms. Kamath repeatedly asked for trial to be continued or that the matter be remanded to the California Superior Court for determination.



LiLaw Inc.

against a claim of trade secret misappropriation made in "bad faith." *See* 18 U.S.C § 1836(b)(3)(D); Cal. Civ. Code § 3426.4. While neither the DTSA nor the CUTSA define the term "bad faith," courts that have considered the issue have generally "held that bad faith requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and subjective bad faith in bringing or maintaining the claim." *Direct Techs., Ltd. Liab. Co. v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016) (internal quotation marks and citation omitted); *see also FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1275 (2009) ("Although the Legislature has not defined 'bad faith,' our courts have developed a two-prong standard: (1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, i.e., for an improper purpose.").

Defendants have the burden to establish the "objective speciousness" of Plaintiff's trade secret misappropriation claims *and* Plaintiff's "subjective bad faith in bringing or maintaining the action" before the Court may exercise its discretion to award "reasonable attorney's fees and costs." *See FLIR Sys., Inc.*, 174 Cal. App. 4th at 1275; *see also Macom Tech. Solutions, Inc. v. Litrinium, Inc.*, 2020 U.S. Dist. LEXIS 99434 at *6 (C.D. Cal. Apr. 22, 2022); *Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc.*, 236 Cal. App. 4th 243, 253-55 (2015).

California Civil Code Section 3426.4 intends to be "a *deterrent* to *specious* claims of misappropriation" which means Defendants must show Plaintiff was more than just negligent in litigating its trade secret claims. *See Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1261 (2002). Rather, Defendants must show Plaintiff was "at least reckless or grossly negligent, if not intentional and willful," in pursuing specious trade secret claims. *See id.* Only after meeting these high burdens *may* the Court consider exercising its discretion to award fees and costs.

Defendants fall far short of meeting their burden of proof to obtain any attorneys' fees or costs relating to its defense of Plaintiff's trade secret claims given the lack of bad faith by Plaintiff. Moreover, if the Court somehow finds Plaintiff objectively *and* subjectively acted in bad faith, any award to Defendants would need to subject to a substantial reduction (or outright denial) given the ridiculous amount sought by Defendant which defy all bounds of rationality and reasonableness.

///

///

LiLaw Inc.



**B.    Defendants Cannot Show Plaintiffs Claims Were Objectively Specious**

"[O]bjective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *FLIR Sys., Inc.*, 174 Cal. App. 4th at 1276. Defendants' contentions as to the purported objective speciousness of Plaintiff's trade secret misappropriation claims boils down to empty insistence that Plaintiff had nothing to support its claims and, more specifically, that Plaintiff had no evidence that it was the exclusive owner of the trade secret that was tried before a jury. Defendants' failure, however, to defeat Plaintiff's trade secret claims on summary judgment indicates Plaintiff's claims were not objectively specious. Indeed, to make a showing that the claims were objectively specious, Defendants must show (which they have entirely failed to do) that Plaintiff's claims were made with "a *complete* lack of evidence to support the claim." *See FLIR Sys., Inc.*, 174 Cal. App. 4th at 1276 (stating a claim is objectively specious when there is "a *complete* lack of evidence") (emphasis added). Defendants have failed to come even close to meeting this high standard.

> **1.    That Plaintiff Prevailed on Defendants Motion for Partial Summary Judgment is *Prima Facia* Evidence that The Trade Secret Claim Had Merit and Evidentiary Support**

Defendants – unable to show that Plaintiff presented no evidence for its trade secret claims (because Plaintiff did so at trial) –make unsupported assertions and personal attacks. Defendants do so, though, without a scintilla of evidence. Defendants' failure to show the objective speciousness of Plaintiff's trade secrets claim warrants denial of their Motion. *See Pollara v. Radiant Logistics, Inc.*, 650 F. App'x 372, 374 (9th Cir. 2016) (affirming denial of attorneys' fees where the court did not find "*both* objective speciousness and subjective bad faith") (emphasis added).

The Court's previous consideration of Plaintiff's trade secret claims and determination that Plaintiff's claims withstood summary judgment signal that Plaintiff's claims are not objectively specious and that Plaintiff did not assert these claims in bad faith. *See Kim Laube & Co., Inc. v. Wahl Clipper Corp.*, 2014 WL 12461044, at *5 (C.D. Cal. 2014) (holding that plaintiffs' claim as to "the replaceable tip technology" was not objectively specious given the court's denial of the defendant's motion for summary judgment with respect to plaintiffs' trade secret claim); *Pixion, Inc. v.*



**LiLaw Inc.**

*PlaceWare Inc.*, 2005 WL 3955890, at *3 (N.D. Cal. 2005) (concluding plaintiffs' trade secrets claims were not objectively specious where the court denied defendant's summary judgment motion upon finding four of plaintiff's alleged trade secrets were protectable).

As was made clear in the Court's Order on the Motion for Summary Judgment, Plaintiff had sufficient evidence to continue to trial as the record showed evidence of misappropriation. ECF 199. This is especially true given that, among others, Defendants' Motion for Summary Judgment also claimed that: (i) Plaintiff took no reasonable measures to protect the trade secrets; (ii) Plaintiff had not demonstrated a protectable trade secret in the customer and vendor databases; (iii) the databases did not have independent economic value; (iv) Plaintiff had no evidence of misappropriation; (iv) Plaintiff had no evidence that Defendants "used" the trade secrets; and (v) Plaintiff had not suffered any damages. ECF 163-1.

Yet each of these issues form the basis for Defendants' claim of bad faith. ECF 163-1. Plaintiff opposed the Motion for Summary Judgment and provided clear and unequivocal evidence as to each of the foregoing matter. ECF 169. In fact, included in the Opposition by Plaintiff was clear evidence from its expert – John Berryhill – that many of the statements and arguments made by Defendants and their counsel at the time – Dylan Wiseman – were false and misleading. *Id*. These false and misleading statements by Defendants and their then-counsel were brought to light at the hearing on the motion and noted in the Court's Order **denying** the Motion for Summary Judgment. ECF 199.

Critically, Defendants did not move for summary judgment on any issue as to the ownership of the customer profile. In other words, Defendants' hang their "bad faith" hat on issues that even ***Defendants*** believed were anything but clear and obvious and required the finder-of-fact to resolve. Defendants cannot now genuinely contend that the facts were so clear, obvious, and transparent that Plaintiff acted in either objective or subjective bad faith when they themselves determined the exact opposite and elected not to seek summary judgment on any such basis, but multiple others. Moreover, as the Court's Order on Defendants' Motion for Summary Judgment makes clear it was, in fact, the Defendants that were misleading the Court and not Plaintiff as Defendants consistently claim throughout their Motion. *Id*. at 2:07-14 ("***That statement proved to be misleading***…") (emphasis

LiLaw Inc.

added).  As such, Defendants' counsel's continual personal attacks against Plaintiff's counsel are particularly hollow given the conduct of Defendants' various counsel throughout this case.

**2.** **Defendants Offer No Competent Evidence of Objective Bad Faith as The Matters Identified Only Serve to Bolster the Material Dispute as to Ownership of the Client Database**

In support of their position that Plaintiff acted in objective bad faith, Defendants claim a hodgepodge of disputed facts that only serve to highlight the disputed nature of the ownership of the customer database. Most of the statements are non-sensical. For instance, Defendants' current counsel blames Defendants former counsel – Dylan Wiseman – for entering into the Stipulated Protective Order and the parties for producing documents according to the agreed upon its terms. Defendants provide no reason as to how the Stipulated Protective Order (which was entered by the Court) evidences bad faith of any type yet chastises their former attorney and Plaintiff's counsel. *See* ECF 377 at 21:05-06 ("Buchalter was obviously trying to get its bread-and-butter from Defendants").

With respect to evidence of objective bad faith, Defendants focus on the evidence produced at trial with respect to ownership of the customer list.  Specifically, Defendants point to evidence with regards to the parties' agreements, salaries, equipment payments, and W-2s.[4] At trial, Plaintiff presented substantial evidence as to the reasons why such evidence was not reflective of the true nature and intent of the relationship between the parties.

During trial, Dr. Richard Shan testified as to the relationship between Plaintiff and Defendant and clearly explained that he was not a shareholder in Defendant Ruifeng, but did assist Defendant Wang by signing the paperwork to register the company on Wang's behalf to assist in Wang's visa application.  *See* Li Decl. at Exh. A at 279:02-19; 285:25-287:19 and Trial Exh. 66 attached to the Li Decl. as Exh. B. Dr. Shan further testified that in exchange for assisting Wang in establishing the company that Wang agreed to provide a loan to Plaintiff in the amount of $1,000,000 to purchase lab equipment and fund operations. Li Decl. at Exh. A at 279:23-280:07. However, as Dr. Shan testified, Mr. Wang never provided the loan to Plaintiff and that money was kept in his bank account and that the promised "loan" operated more like a credit line. *Id*. at 280:08-22. Dr. Shan was unequivocal that

---

[4] Once again, Ms. Kamath failed to follow the rules of civil procedure and wrongfully filed such financially sensitive information without proper redaction.  *Compare* Fed. R. Civ. P. 5.2 with ECF 379-3.



LiLaw Inc.

there was never a joint venture between Quintara and Defendant Ruifeng, Plaintiff and Defendants did not jointly own any business, and that the collaboration agreement did not form any partnership. *Id.* at 281:19-282:21. Dr. Shan also testified that no bank account for Ruifeng was ever created and the only shares issued by Ruifeng were to its Chinese parent company. *Id.* at 289:17-294:03.

Dr. Shan also testified that the "collaboration agreement" was intended to form a "new" company as was specifically stated in the document; yet no "new" company was ever formed, this new company never opened a bank account, and that the agreement was created at the fervent request of Defendant Wang and his immigration attorney and that ultimately Plaintiff and Defendants opted to create a service contract. *Id.* at Exh. A at 296:09-297:25 and Trial Exh. 2A attached to the Li Decl. as Exh. C. When asked about the Service Agreement, Dr. Shan testified that less than two (2) months after the collaboration agreement was executed the parties pivoted to a services agreement wherein Ruifeng would provide staff services in the form of six lab technicians in 2014 and 2015, set up the DNA sequences, and provide other assistance to Plaintiff. The Services Agreement further provided that Ruifeng was to be an independent contractor and had full control and authority in the performance of its obligations. *Id.* at Exh. A at 298:16-305:01 and Trial Exh. 6A attached to the Li Decl. as Exh. D; *see also* Trial Exh. 5 attached to the Li Decl. as Exh. E. As was made clear in Trial Exhibit No. 5 which was submitted in conjunction with Defendant Wang's immigration paperwork to the United Stated Citizenship and Immigrations Services, clearly stated that Defendant Ruifeng was an independent contractor doing the sequencing work which is far different than the joint venture Defendants claimed. *Id.* at 307:06-309:25 and Trial Exh. 5 attached to the Li Decl. as Exh. E.

Dr. Shan testified that, in reality, Ruifeng failed to perform many of its obligations under the Service Agreement and that, in fact, the tasks Ruifeng was obligated to provide were performed by Plaintiff and its employees though the employees were sometimes paid by Ruifeng. Li Decl. at Exh. A at 305:02-17; 307:07-308:11. Dr. Shan's testimony and the admitted exhibits at trial prove that the scope and nature of the relationship was anything but clear and Defendants' contentions to the contrary are belied by the record.

Dr. Zhao further offered further evidence and testimony of the opaque and convoluted nature of the relationship between Plaintiff and Defendants. And while Defendants argue that the



LiLaw Inc.

relationship was express and unequivocal, such is simply not supported by the record. As testified by Dr. Zhao, while she was paid a salary at certain points by Defendant Ruifeng, this was due to the fact that Dr. Zhao was providing administrative tasks for Ruifeng including serving as Defendant Wang's interpreter, translator, and assistant. *Id.* at Exh. F at 716:16-717:03. And Dr. Zhao testified clearly that the customer database at issue was developed by her *only* when she was employed by Quintara and never when she was being partially paid by Defendants. *Id.* at 716:16-20 ("Q. The SQL Database that you described yesterday, were you developing it both as Ruifeng and Quintara's employee in 2019? A. *No. I developed the database when I worked for Quintara.*"); *see also id.* at 717:04-22.

Thus, Dr. Zhao's testimony makes clear that while she did receive a salary from Defendants this was in exchange for providing administrative tasks for Ruifeng and Defendant Wang as well as teaching Ruifeng employees how to conduct the tests. Dr. Zhao's testimony also makes it perfectly clear that the ownership of the customer profile database was not developed while she received a salary from Ruifeng; rather, her testimony was explicit that the database was developed while she was employed by Plaintiff.

Alex Wong's testimony provides further proof as to the vague and confusing nature of the relationship between the parties. Specifically, Mr. Wong testified that while he was employed by Quintara as its lab manager his title was confusing to him because his paychecks were, for a time, being issued from Quintara, sometimes and Defendant Ruifeng, in 2015 or 2016 despite him being employed by Plaintiff to only be switched back to Quintara's payroll in 2019 or 2020. *See* Li Decl. at Exh. G at 543:05-544:01. In fact, Mr. Wong testified that his experience was not limited to only him, but the other employees of Quintara experienced the same situation wherein they were employees of Quintara but the paychecks for a period were issued by Ruifeng. *Id.* at 545:19-546:02.

Mr. Wong also testified that even after his payroll was switched and issued by Ruifeng that he still considered himself, used the title, and held himself out to the public as the lab manager for Plaintiff Quintara and not Defendant Ruifeng and that the switch in payroll did not change or modify his job duties or responsibilities in any way. *Id.* at 551:11-553:17. Mr. Wong also testified that even after the Services Agreement was executed, no one outside Quintara, especially customers, were aware of Ruifeng and that neither Ruifeng nor Defendant Wang provided him any instruction as to

LiLaw Inc.

how to run the lab and no one enforced the terms of the Service Agreement. *Id*. at 553:25-555:06. As such, Mr. Wong's testimony is further evidence of the convoluted relationship between the parties and likewise renders Defendants' contention that Plaintiff's claims were so obviously meritless entirely misplaced.

The dispute as to the uncertain and opaque nature of the relationship between the parties in fact versus what was contemplated and intended is underscored by the statements of Defendants' own counsel. Defendants' counsel, when questioned by the Court, could not even explain the relationship between the parties herself and described it as a "complete mishmash." *See* Li Decl. at Exh. G at 619:10-6:21 ("I don't think the profits were so neatly delineated. I think it was -- and that's ***why this case, as you stated, is messy***, because sometimes they would charge Ruifeng for purchasing equipment and DNA sequencers, and other times Ruifeng was paying for employees. ***So I think the way this collaboration actualized was a complete mishmash***.") (emphasis added).

That Defendants' counsel was unable to even articulate, in any manner, the specific and clear agreement and relationship between the parties, how Defendants profited from the relationship, or any other clear facts is proof perfect as to the convoluted nature of the relationship between the parties means it was anything ***but clear***. Indeed, how can Defendants claim that the facts were perfectly clear and that Plaintiff proceeded in objectively bad faith when Defendants' counsel could not remotely articulate the relationship to the Court and, herself, called the relationship "messy"?

Defendants' argument defies the bounds of reason and, in fact, the Court agreed. During the same exchange, and after hearing the positions by both Plaintiff and Defendants as to the nature, scope, and intention of the relationship between the parties, the Court noted his confusion on the issue and stated, on the record, that the relationship was anything but clear and that it was in the province of the jury to decide the issues. *See* Li Decl. at Exh. G at 626:06-18.

In addition to the foregoing, Defendants contend that Plaintiff (and its attorneys) acted in bad faith because the customer list was not password protected, subject to a multi-factor authentication, or encrypted. Yet Defendants cite absolutely no authority that any such measures are required under the DTSA; to the contrary, the DTSA merely requires that the plaintiff have taken reasonable measures to protect its trade secrets, and in any event ignores the trial court record. The testimony by Dr. Zhao



LiLaw Inc.

established that the customer profile database was accessible only by employees of Quintara and in order to be read, queried, or edited a login and password and proper privileges were required. *See* Li Decl. at Exh. G at 591:16-24.[5]

Thus, Defendants' claim that Plaintiff brought this matter in bad faith because the customer database lacked various protections that may be necessary for financial, medical, or other highly sensitive information falls short especially considering that Defendants offer no authority that such was required in order to satisfy the DTSA's requirements that reasonable protective measures be in place. Moreover, Defendants, by and through their former counsel – Mr. Wiseman – made this exact argument in the Motion for Summary Judgment and the Court rejected such an argument and denied the Motion for Summary Judgment in its entirety. *See* ECF 163-1 and ECF 199.

Defendants also contend that Plaintiff and its counsel acted in bad faith because they did not retain and designate an outside expert to testify to damages in this matter and instead utilized the company's Chief Financial Officer. Critically, and yet again, Defendants offer no authority that utilization of an in-house expert with respect to damages is improper or is remotely an indication of bad faith. More critically, Defendants did not object to Mr. Kimura's experience or education (he holds an MBA from Columbia) or that he was otherwise not qualified to serve as an expert during the trial. In fact, and while Defendants' former counsel attempted to exclude Mr. Kimura from testifying as an expert at trial following his deposition, such efforts were rejected by the Court. *See* ECF 208. As such, Defendants' argument in this regard is simply nonsensical and must be rejected.

Defendants likewise contend, in quite confusing fashion, that Plaintiff and its counsel were "**concocting 'trade secrets'**" through the testimony of its computer forensics expert John Berryhill. Again, in very confusing fashion, Defendants contend that Plaintiff's counsel instructed Mr. Berryhill to "look for trade secrets" however that is not remotely what Mr. Berryhill testified he was requested to do. Indeed, at trial, Mr. Berryhill stated that it was not within his purview to determine whether or not any specific file found on Defendants' computers was or was not a trade secret; rather, he was

---

[5] Furthermore, when cross-examining Plaintiff's expert Mr. Berryhill, Defendants' counsel continuously questioned why the examined images failed to have multi-factor authentication, but failed to realize that Mr. Berryhill examined *Defendants'* computer images, not Plaintiff's.

Case No. 3:20-cv-04808-WHA

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS**



LiLaw Inc.

asked, as a computer forensic expert, to determine whether or not the customer profile database or the vendor database appeared on any of the Defendants' computers. *See* Li Decl. at Exh. G at 462:03-465:08.

Defendants also claim that Plaintiff acted in subjective bad faith by not bringing the entire file reviewed and produced by Mr. Berryhill to trial. This is nonsense. Plaintiff brought more than twenty (20) binders to trial (as the Court and the Clerk may recall) that included **only** the files included in Mr. Berryhill's expert reports. *See* Li Decl. at ¶ 15. As such, Defendants claim is patently false. Lastly, Defendants claim that Plaintiff mislead the Court as to the materials provided to Mr. Berryhill and claims "**delay**" but offers no further analysis or argument. It is patently unclear as to what Defendants are referring to with regards to Mr. Berryhill's testimony or how it was misleading or was intended to "delay" the matter considering it occurred at trial and it is certainly confusing and unclear as to how such remotely supports a finding of bad faith even if true, which it certainly is not.

The trial record contradicts Defendants' contention that Plaintiff proceeded with its trade secret claims in objective bad faith. Defendants (likely intentionally) choose to brush aside the evidence Plaintiff offered. Defendants' decision to disregard or disagree with the evidence presented, however, is not enough to demonstrate that Plaintiff litigated an objectively specious trade secrets claims. *See Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1261 (stating that "the claim must have been *without substance*" to award reasonable attorneys' fees under Section 3426.4); *see also InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2016 WL 8861712, at *9-10 (C.D. Cal. 2016) (holding misappropriation claim was not objectively specious where "although [plaintiff] might not have provided winning evidence to the jury, there is not a complete lack of evidence" that plaintiff "had trade secrets" or "that [defendant] misappropriated [plaintiff's] trade secrets").

Defendants cannot meet their burden by arguing against the weight of the evidence especially when Defendants' counsel and this Court acknowledged during trial that the relationship between the parties was anything but clear and obvious.

### C. Defendants Offer No Competent Evidence that Plaintiff Brought or Maintained Its Trade Secret Claims in Subjective Bad Faith; Rather, Defendants Offer Speculation, Conjecture, and Self-Serving Statements

In order to determine whether fees are appropriate under the DTSA or CUTSA, the Court

LiLaw Inc.



must go further than finding that Plaintiff's trade secret claim was objectively specious; it must also find that Plaintiff's claims were commenced or maintained in subjective bad faith. Subjective bad faith under section 3426.4 "means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition." *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 847 (2012).

The test "is not what the plaintiff believed about its objectively specious claim, but for what *purpose* it pursued such a claim." *Cypress*, 236 Cal. App. 4th at 267 (emphasis in original). Critically, "bad faith means more than the simple inability to prove the necessary elements of a cause of action." *Weco Supply Co. v. Sherwin-Williams Co.*, 2013 WL 56639, at *3 (E.D. Cal. 2013); *SASCO*, 207 Cal. App. 4th at 847 ("The absence of evidence alone, even after discovery, does not support a finding of subjective bad faith.").

Moreover, a plaintiff's expenditure of effort and legal fees is often viewed as evidence of earnest intent to litigate. *See Universal Church, Inc. v. Universal Life Church/ULC Monastery*, 2019 WL 4601741, at *4 (S.D.N.Y. 2019) (no bad faith where plaintiff "tested its claims, presumably at considerable cost, and lost"); *Joao Control & Monitoring Systems, LLC v. Digital Playground, Inc.*, 2018 WL 1596068, at *6 (S.D.N.Y. 2018) (same). As the Court in *Joao* aptly held:

> Yet, labels and name-calling aside, the fact remains that Plaintiff's conduct in this case does not fit the typical pattern of "exceptional" cases meriting fee shifting. In the paradigmatic case, a plaintiff with no intention of testing the substance of its theories brings meritless claims to "extract a nuisance value settlement." Here, Plaintiff maintained this suit through claim construction…Plaintiff has pressed the merits of its patents vigorously over a period of years, presumably at substantial expense to itself (or to its counsel). While Plaintiff's faith in its patents was clearly misguided, its decision to continue with this suit weighs against the conclusion that this litigation was undertaken simply to score an easy settlement.

*Id.* at *6.

Defendants cannot show Plaintiff's subjective bad faith given that Plaintiff did not commence or continue litigation of its trade secret claims "for an improper purpose, such as harassment, delay, or to thwart competition." *See SASCO*, 207 Cal. App. 4th at 847. Indeed, "a genuine belief that one's claim has merit tends to show that it is being pursued for the proper purpose of vindicating a legal right honestly believed to have been infringed." *Cypress*, 236 Cal. App. 4th at 267.

///



LiLaw Inc.

Defendants – grasping at straws to satisfy their burden – twist and misstate the trial court record and rely almost exclusively on the same issues identified with respect to objective bad faith. In other words, Defendants offer nothing different – save for their unilateral proclamations – in support of their claim of subjective good faith as they did as to objective bad faith. This is fatal to the Motion as it is clear that Defendants cannot even produce competent evidence of subjective bad faith.

In fact, the only additional matter Defendants contend supports a finding of subjective bad faith that is different than those they raised in support of objective bad faith, is the following passage in which Defendants offer no evidence and, quite frankly, is too confusing and vague to even address:

> *Next*, Quintara and each of its attorneys, James Li, Tamara Rider, Daniel Peterson, and Richard Lambert demonstrated subjective bad faith, because the motive for filing the suit was for an **improper purpose** such as **harassment**. The attorneys often time misled the court such as not producing Quintara's version of the short statement of the case with defense prior to filing; not producing the trial binders before 5 p.m. PDT on the Friday before trial pursuant to the Court Order and then blaming "Bay Area traffic," not producing a COVID-letter from a doctor for James Li's sudden illness the day before the rescheduled settlement hearing; bringing up the state-court claims to the jury's attention when the judicial officer had specifically informed James Li and others during the final pre-trial conference not to bring up the state-court case; Mr. Peterson making up a complete falsity to the court waving an "employee handbook" that Defense had not included and Mr. Peterson claimed was there; Ms. Rider failing to sign a prior produced document, requesting Defense Counsel, Reshma Kamath, to sign on behalf of Quintara's[6] attorneys, and Reshma Kamath obliging for courtesy; the attorneys not extending the professional courtesy in stipulating to Defense exhibits while those were producing during discovery and Quintara attorneys had those specific exhibits since the Friday before the commencement of trial; Ms. Rider misleading the court that a motion for sanctions (when there was none) was filed after the 8-person unanimous jury verdict for Defendants/Defense was announced; *inter alia*. A true and correct copy of the e-mails are attached as "**EXHIBIT P**," and incorporated via reference, herein. Even prior to the eve of the final pre-trial conference, June 28, 2023, Quintara and its attorneys **arbitrarily and subjectively dropped the 'vendor database' DTSA claim** that the parties had litigated over for over two years.

ECF 377 at 32:09-30:10 (emphasis in original).

While the foregoing is so convoluted, lacks a single citation to the record, and is not even worthy of a response, Plaintiff feels obligated to set the record straight simply so that the Court is aware of how desperate Defendants and their counsel are to contrive bad faith when none exists. As to Defendants' claim of bad faith based on misleading the Court with regard to the short statement, this is patently untrue. The record is clear: Defendants' counsel provided a version at nearly 5:00 p.m.

---

[6] It remains utterly unclear what Ms. Kamath was requested "to sign on behalf of Quintara's attorneys[.]"



LiLaw Inc.

which did not conform to the Court's instructions, Defendants' counsel was notified of this and informed that Plaintiff could not agree to her draft and Ms. Kamath went ahead and filed anyway. Shortly thereafter, Plaintiff filed its version. And, on the first day of trial, the Court made it clear that Defendants' version was not in conformity with its instructions. *See* Li Decl. at ¶ 16 and Exh. H.

As to the binders, the Court should not forget that due to Defendants' exhibit list (wherein Ms. Kamath manufactured her own bates numbers for trial) there was mass confusion as to which exhibits Defendants were referring to and how they were numbered. *See* Li Decl. at ¶ 18 and ECF 350. It was because of this issue, created solely by Defendants' counsel, that the Court ordered the parties to exchange binders the Friday before trial as opposed to at trial as Plaintiff had anticipated. These circumstances, again solely the result of Defendant's counsel misconduct, resulted in having to accelerate the printing and, due to traffic, Plaintiff's binders were unable to be delivered by 5:00 p.m. However, Defendants' binders were also delivered late and did not even include proper tabs as required by the Court's order. *Id*. at ¶19.

As to a "doctor's note" proving Dr. Li's contracting of COVID-19 prior to the ***continued*** settlement conference (Defendants' counsel failed to attend in-person to the initial MSC in violation of the Court's order, was sanctioned, and is now in contempt as she has failed to pay as Ordered by the Court [ECF 374] but that is for a different motion on a different day) no request for such a note was ever made. Nevertheless, immediately upon Dr. Li's diagnosis, Plaintiff immediately notified Judge Hixson and explained the situation and offered for Dr. Li to attend by Zoom while another attorney attended in-person. *Id*. at ¶20 and ECF 299. Again, had Defendants' counsel attended the initial settlement conference in-person as ordered as her ***own clients*** did, this would be a non-issue and Defendants' counsel has no one to blame but herself.

The issues related to the "handbook" are unclear. However, Plaintiff assumes Defendant is referring to the issues with the Defendants' exhibit list which were presented to the Court at jury selection. *See* ECF 350. The issue was cleared up upon receipt of Defendants' exhibit binders wherein Plaintiff discovered that Defendants' counsel decided to use her own bates numbers for trial which were different than those used previously. Again, this was an issue of Ms. Kamath's own making and not that of Plaintiff or its counsel. Ms. Kamath, at some point, must take responsibility

LiLaw Inc.

and realize that much of what she complains and labels as bad faith was the result of her violation of the rules and not that of Plaintiff or its counsel as she habitually claims.[7]

Defendant also claims that Plaintiff and, more specifically, its counsel acted in bad faith by bringing a housekeeping matter to the Court's attention with respect to a sanctions order issued by Judge Hixson resulting from Ms. Kamath's failure to appear in-person at the settlement conference as ordered. Defendants claim that counsel for Plaintiff intentionally mislead the Court. This is patently false. Defendants' counsel is fully aware that her statement is untrue as she responded to both the sanction order by Judge Hixson (ECF 310) and recently to this Court's Order confirming the sanction. *See* ECF 374. It is anyone's guess what Defendants are claiming or how such remotely shows bad faith as Defendants provide no argument but only just bald and unilateral conclusions.

Lastly, with respect to Plaintiff's decision to drop its trade secret claim for the vendor profile also fails to show a scintilla of bad faith. Indeed, given the Court's time limitations set for the trial and allocated to each side, Plaintiff opted to forego that claim and focus its limited trial time on the customer profile database. It is hardly uncommon for a plaintiff to opt to forego certain claims when trial is imminent and again Defendants offer no authority whatsoever that stands for the proposition that such a decision is any type of proof of bad faith. In fact, Defendants provide absolutely ***zero*** authority that any of the matters identified above constitute proof of bad faith even circumstantially. Nor could they, given each of Defendants' contentions are belied by the record, were largely the result of Defendants' counsel's own misconduct, and were in gross disregard for the rules of this Court.

Defendants' conclusory, uncorroborated statements about Plaintiff's purported bad faith are not evidence of an improper purpose. In particular, Defendants provide no support at all for claiming that Plaintiff brought its trade secret claims as retaliation, for harassment, or for any improper purpose. Plaintiff cannot be found to have brought its trade secrets claims in bad faith simply because Defendants say so without any evidence and their desire to recover attorneys' fees and costs.

---

[7] Plaintiffs have absolutely no idea what Defendants are referring to when they claim "Ms. Rider failing to sign a prior produced document, requesting Defense Counsel, Reshma Kamath, to sign on behalf of Quintara's attorneys, and Reshma Kamath obliging for courtesy" and thus cannot fashion a response and Defendant provides no context or argument.



LiLaw Inc.

Plaintiff brought its claims in good faith in an effort to protect its trade secrets. This is a fact and a fact for which Defendants offer no competent evidence to the contrary. *Cypress*, 236 Cal. App. 4th at 267 ("[A] genuine belief that one's claim has merit tends to show that it is being pursued for the proper purpose of vindicating a legal right honestly believed to have been infringed."). Defendants' do not engage in a "factual inquiry" into Plaintiff's "subjective state of mind" by simply stating that Plaintiff acted with an improper purpose and in bad faith. *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 578 (2007) (stating that analysis of subjective bad faith requires asking "Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it?"). Defendants do not meet their burden with their musings.

### D. The Court Should Not Award Fees and Costs Even if it Finds Plaintiff Acted in Bad Faith Given the Circumstances of this Case

As shown in detail above, Plaintiff neither asserted nor pursued its trade secret claims in bad faith – and Defendants fail to meet its burden to show otherwise – but the Court should deny Defendants' Motion even if the Court disagrees with Plaintiff. The Court should exercise its discretion to deny Defendants' Motion even if the Court finds Defendants met their high burden to show Plaintiff acted in bad faith. *See Gemini Aluminum Corp.*, 95 Cal. App. 4th at 1262 ("An award of attorney fees for bad faith constitutes a sanction . . . and the trial court has broad discretion in ruling on sanctions motions." (citations omitted)); *see also EnerTrode, Inc. v. Gen. Capacitor Co.*, 2019 WL 1715170, at *10 (N.D. Cal. Apr. 17, 2019) ("[T]he decision of whether and to what extent to award attorneys' fees in a California trade secret case is committed to the trial court's discretion."). Here, no evidence exists to show Plaintiff improperly asserted and maintained its trade secret claims or acted in bad faith.

### 1. Defendants' Requested Fees Are Inflated, Unreasonable, Unsubstantiated, And Ultimately Unrecoverable

Defendants have not met their burden to show their request for $4,500,000 in fees and costs is reasonable even if Defendants shows that Plaintiff brought its trade secret claims in bad faith (which Defendants fail to do). *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (stating the party seeking an award of fees bears burden to prove and substantiate the amount requested); Cal.



LiLaw Inc.

Civ. Code § 3426.4. Moreover, given the incredibly inflated amounts sought by Defendants without sufficient documentation, the Court is well-within its discretion to deny fees entirely. *Muniz*, 738 F.3d at 226 ("It has long been the law in California that an unreasonably inflated fee request is a special circumstance authorizing the trial court to substantially reduce or deny fees altogether.").

Defendants request for $4,500,000 in attorneys' fees is unreasonable and inflated. A simple review of the documentation submitted by Defendants purporting to evidence the reasonableness of the hours spent is far too vague to satisfy Defendants' burden to justify and substantiate the requested amount. Moreover, counsel for Defendants provides no basis to justify her hourly rate of $450 per hour given her limited experience. In the absence of justification and evidence supporting the hourly rate, Defendants' counsel has yet again failed to substantiate the requested fee amount. *Edmonds v. Labrea Adams LLC*, 2020 WL 6115087, at *1 (C.D. Cal. 2020) (rejecting counsel's requested hourly rate where counsel "provided absolutely no documentary evidence (apart from a self-serving declaration) to support this rate"); *Drenckhahn v. Costco Wholesale Corp.*, 2012 WL 12952720, at *4 (C.D. Cal. 2012) ("The only basis for the $800/hour rate claimed by Harris is his own declaration. This self-serving declaration, without more, is insufficient.").

The Court need only conduct a cursory review of Defendants' counsel's submission to see that it is incredibly inflated, vague, block-billed and seeks to recover for hours that are not only unreasonable but unrecoverable. For example, there are numerous entries (undated) wherein Defendant's counsel claims that she spent 3 to 4 hours "informing" clients of routine matters such as a change of date. How does sending an email or making two phone calls take 3 to 4 hours? Likewise, Defendants' counsel claims it took her 1.5 hours to order a transcript which, regardless of the tremendous and unbelievable amount of time claimed, as a task delegated to staff, is generally not recoverable, and certainly not recoverable at an attorneys' hourly rate; yet this is only one example of numerous such entries. *See* ECF 377-1 at 0004.

There is also 4.75 hours allocated to a First Amended Complaint that was never filed and could not have been filed given that the matter was scheduled to go to trial immediately before counsel entered her first appearance. *Id.* Then again, there are also numerous entries (again undated) for counsel to "confer with clients and notify them of case occurrences as they occur" ranging from 3

LiLaw Inc.

to 5.5 hours. *Id.* at 0008-0009. There is also the alleged 6,000 hours spent by counsel reviewing the document production. *Id*. at 0027. Perhaps most ridiculous, though, Defendant includes lodging, meals, and gas as part her purported fees in this case where she elected to stay in California instead of returning home to Arizona. *Id*. at 0020-0021.

Thus, even if the Court were to find that Defendants' have met their burden (which they have not even come close to doing), Defendants' current counsel's purported time sheets are block billed, are fatally vague, and include work previously performed by prior counsel resulting in thousands of hours of duplication. Indeed, Defendants' counsel claims she spent 4,610 hours on this case since November 2021 or over the last twenty (20) months, this means that counsel claims to have spent approximately 230 hours per month which, assuming she worked seven (7) days a week and did not observe any holidays, means counsel billed 7.7 hours per day, ***every day*** in this matter. This is simply not believable especially considering that counsel repeatedly claimed to have "scheduling conflicts" due to her other cases thereby creating scheduling problems for the parties and the Court. *See* ECF 383-1 at p. 13 ("Trial until next week…"); *see also* ECF 307 (noting Ms. Kamath's unavailability).

What's worse is that, save for trial and pre-trial matters (in which counsel violated the rules too many times to count) it is virtually undisputed that all the work had already been completed as trial was scheduled to begin on September 21, 2021, two (2) months *prior* to Defendants' current counsel even making an appearance in this case. Other than filing several frivolous motions seeking to vacate the Stipulated Protective Order and seeking an exception to the Court's vaccination order (each of which were denied), there was simply nothing for counsel to do. Defendants' counsel cannot double-dip and charge for work performed by previous counsel which is certainly not reasonable; yet Defendants' counsel does just that and in doing so provides vague and inflated billing entries without any justification. Indeed, counsel's records are so incredibly vague and inflated that the Court is well-within its discretion to deny fees altogether. *Muniz*, 738 F.3d at 226.

### 2. Defendants' Have Waived Any Right to Recover Costs for Failing to Comply with Local Rule 54-1

Defendants also apparently seek an award of costs; however, and yet again, Defendants and their counsel have violated the rules (yet again) as Defendants did not, as required by Local Rule 54-

LiLaw Inc.



1(a), serve and file a bill of costs within fourteen (14) days of the judgment or follow the specific procedures of Local Rule 54-1(a) which provides that:

> No later than 14 days after entry of judgment or order under which costs may be claimed, a prevailing party claiming taxable costs must serve and file a bill of costs. The bill must state separately and specifically each item of taxable costs claimed. It must be supported by an affidavit, pursuant to 28 U.S.C. §1924, that the costs are correctly stated, were necessarily incurred, and are allowable by law. Appropriate documentation to support each item claimed must be attached to the bill of costs.

*See* L.R. 54-1(a). As such, and pursuant to Local Rule 54-1(c), Defendants have waived any right to recover costs. *See* L.R. 54-1(c)("Any party who fails to file a bill of costs within the time period provided by this rule will be deemed to have waived costs.").

As Defendants have failed to set forth the requested costs it seeks to recover in this matter, provide any documentation as to such costs, or provide any factual basis as to why the costs are recoverable and were reasonably incurred, there is no way for the Court to evaluate which, if any, of the costs sought (which is entirely unclear as it is not separately delineated from the fee request) and there is no way for Plaintiff to address the propriety, amount, and necessity of any of the costs sought to be recovered. Defendants and their counsel have continued to violate the rules and do so without consequence, they again failed to comply with the rules here and Local Rule 54-1(c) makes it clear that any right to recover costs by Defendant are waived. It would be fundamentally unfair for the Court to overlook Defendants' counsel's gross violation of the rules as it renders Plaintiff unable to fashion an appropriate response.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion.


DATED: August 10, 2023                    **LILAW INC.**

By /s/ J. James Li
      J. James Li
      Richard D. Lambert
      Attorneys for Plaintiff Quintara Biosciences, Inc.

PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS

