1 **LILAW INC.**
J. James Li, Ph.D. (SBN 202855, lij@lilaw.us)
2 Richard D. Lambert (SBN 251148, lambertr@lilaw.us)
Tamara M. Rider (SBN 267951, ridert@lilaw.us)
3 Daniel R. Peterson (SBN 326798, petersond@lilaw.us)
1905 Hamilton Avenue, Suite 200
4 San Jose, California 95125
Telephone: (650) 521-5956
5 Facsimile: (650) 521-5955

6 Attorneys for Plaintiff QUINTARA BIOSCIENCES, INC.

7

8
# UNITED STATES DISTRICT COURT
9
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11

12 QUINTARA BIOSCIENCES, INC., a California corporation,

13

14        Plaintiff,
       v.
15

16 RUIFENG BIZTECH INC., a California corporation, GANGYOU WANG, an individual,
ALEX WONG, an individual, ALAN LI, an
17 individual, RUI SHAO, an individual, and RF BIOTECH LLC, a California limited liability
18 company,

19        Defendants.

20

**Case No.  3:20-cv-04808-WHA**

**DECLARATION OF J. JAMES LI IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES
AND COSTS**

**Court:**     **Courtroom 12, 19th Floor**
**Judge:**    **Hon. William Alsup**
**Date:**     **September 14, 2023**
**Time:**     **8:00 a.m.**

21

22

23

24

25

26

27

28



I, J. James Li, state and declare:

1.      I am the lead counsel for Plaintiff in this case. I have personal knowledge as to the matters stated below.

2.      Trial in this matter was previously set to begin on September 21, 2021 and Plaintiff and counsel were prepared to try the matter on that date.

3.      However, following a series of motions and discovery issues, on August 26, 2021, the Court continued the trial from September 21, 2021 to December 6, 2021. ECF 208. Plaintiff and its counsel were prepared to try the matter on that date as well. On November 9, 2021, the Court again continued the trial on this matter as result of the withdrawal of counsel for Defendants Ruifeng Biztech Inc., RF Biotech LLC, Gangyou Wang, and Alan Li. ECF 240. The Court gave these defendants until December 6, 2021 to find new counsel and scheduled a trial-setting conference for January 17, 2022.

4.      Thereafter, new counsel – Reshma Kamath – appeared on behalf of Defendants on or about November 9, 2021. Upon Ms. Kamath's appearance, the parties began to meet and confer over a continued trial date and exchanged their respective schedules. Counsel for Plaintiff expressly informed Ms. Kamath that due to scheduling conflicts the trial would need to occur in February 2022 or August of 2022. Counsel for Plaintiff was prepared to try this case in February of 2022.

5.      Following Ms. Kamath's appearance, and after being informed by this Court on two (2) occasions regarding the Court's vaccination requirements, Ms. Kamath filed a motion seeking an exemption from the Court's vaccination requirements; such a motion was denied on January 6, 2022.

6.      In the same order denying the motion for vaccination exemption, the Court vacated the trial date indefinitely and likewise vacated the pre-trial conference scheduled for February 9, 2022.

7.      On April 14, 2022, this Court entered an order on Quintara's Motion to Continue which continued the trial in this matter from May 16, 2022 to December 5, 2022 due to scheduling conflicts on the part of trial counsel for Quintara. ECF 281. Ultimately, the Court scheduled trial in this matter for July 10, 2023 or twenty (20) months after the initial trial date of September 21, 2021.

8.      Attached hereto as Exhibit A are true and correct excerpts of the trial transcript for the proceedings held on July 10, 2023.



LiLaw Inc.

9. Attached hereto as Exhibit B is a true and correct copy of Trial Exhibit No. 66 which was entered into evidence during trial.

10. Attached hereto as Exhibit C is a true and correct copy of Trial Exhibit No. 2A which was entered into evidence during trial.

11. Attached hereto as Exhibit D is a true and correct copy of Trial Exhibit No. 6A which was entered into evidence during trial.

12. Attached hereto as Exhibit E is a true and correct copy of Trial Exhibit No. 5 which was entered into evidence during trial.

13. Attached hereto as Exhibit F are true and correct excerpts of the trial transcript for the proceedings held on July 12, 2023.

14. Attached hereto as Exhibit G are true and correct excerpts of the trial transcript for the proceedings held on July 11, 2023.

15. Plaintiff brought more than twenty binders that included only the files included in Mr. Berryhill's expert reports.

16. Defendants' counsel provided a version of the short statement at nearly 5:00 p.m. which did not conform to the Court's instructions, Defendants' counsel was notified of this and informed that Plaintiff could not agree to her draft and Ms. Kamath went ahead and filed anyway. Shortly thereafter, Plaintiff filed its version of the short statement. And, on the first day of trial, the Court made it clear that Defendants' version was not in conformity with its instructions.

17. Attached hereto as Exhibit H is a true and correct copy of an email string between myself and Ms. Kamath regarding Defendants' version of the short statement and her intent to file immediately despite such not conforming to the Court's instructions dated July 5, 2023.

18. As to the binders, the Court should not forget that due to Defendants' exhibit list (wherein Ms. Kamath manufactured her own bates numbers for trial) there was mass confusion as to which exhibits Defendants were referring to and how they were numbered.

19. It was because of this issue, created solely by Defendants' counsel, that the Court ordered the parties to exchange binders the Friday before trial as opposed to at trial as Plaintiff had anticipated. These circumstances, again solely the result of Defendant's counsel misconduct, resulted



LiLaw Inc.

in having to accelerate the printing and, due to traffic, Plaintiff's binders were unable to be delivered by 5:00 p.m. However, Defendants' binders were also delivered late and did not even include proper tabs as required by the Court's order.

20.     As to a "doctor's note" proving Dr. Li's contracting of COVID-19 prior to the **continued** settlement conference (Defendants' counsel failed to attend in-person to the initial MSC in violation of the Court's order, was sanctioned, and is now in contempt as she has failed to pay as Ordered by the Court [ECF 374]) no request for such a note was ever made. Nevertheless, immediately upon my diagnosis, Plaintiff immediately notified Judge Hixson and explained the situation and offered for me to attend by Zoom while another attorney attended in-person.

I declare under penalty of perjury under the laws of the United States and California that the foregoing is true and correct to the best of my knowledge. This declaration is executed on Thursday, August 10, 2023 in San Jose, California

/s/ J. James Li

J. James Li, Ph.D.

LiLaw Inc.



# Exhibit A

09:56AM 1    WITH PEOPLE EMPLOYED.

09:57AM 2    Q.   DID QUINTARA, WHERE YOU HELPED MR. WANG, GANGYOU WANG, TO

09:57AM 3    SET UP SOME KIND OF BUSINESS TO SPONSOR HIS VISA APPLICATION?

09:57AM 4    A.   SO I HELPED HIM REGISTER HIS U.S. SUBSIDIARY, SO, YEAH.

09:57AM 5    Q.   AND WHAT IS THE NAME OF THE U.S. SUBSIDIARY?

09:57AM 6    A.   HE'S RUIFENG BIZTECH.

09:57AM 7    Q.   THAT'S THE DEFENDANT, THE ENTITY THAT IS THE DEFENDANT IN

09:57AM 8    THIS CASE; IS THAT RIGHT?

09:57AM 9    A.   YEAH.

09:57AM 10   Q.   OKAY.

09:57AM 11   A.   BUT I'M NOT THE SHAREHOLDER OF THAT COMPANY.

09:57AM 12   Q.   OKAY.  SO HOW DID YOU HELP MR. WANG SET UP RUIFENG?

09:57AM 13   A.   SO YOU MEAN EXECUTION?  I JUST SIGNED THE PAPERWORK FOR

09:57AM 14   HIM.

09:57AM 15   Q.   TO REGISTER RUIFENG --

09:58AM 16   A.   YEAH, YEAH.

09:58AM 17   Q.   -- WITH THE CALIFORNIA STATE SECRETARY OF STATE; IS THAT

09:58AM 18   RIGHT?

09:58AM 19   A.   YES.

09:58AM 20   Q.   OKAY.  AND APPROXIMATELY WHEN DID YOU HELP MR. WANG SET UP

09:58AM 21   RUIFENG?

09:58AM 22   A.   I THINK PROBABLY THE END OF 2013.

09:58AM 23   Q.   OKAY.  AND DID MR. WANG PROMISE ANYTHING IN RETURN FOR

09:58AM 24   YOUR HELP TO SPONSOR THIS CITIZENSHIP, YEAH?

09:58AM 25   A.   YEAH, HE -- IN RETURN, HE PROMISE, LIKE, A MILLION DOLLAR

Page Separator – Page Intentionally Left Blank

09:56AM 1    WITH PEOPLE EMPLOYED.

09:57AM 2    Q.   DID QUINTARA, WHERE YOU HELPED MR. WANG, GANGYOU WANG, TO

09:57AM 3    SET UP SOME KIND OF BUSINESS TO SPONSOR HIS VISA APPLICATION?

09:57AM 4    A.   SO I HELPED HIM REGISTER HIS U.S. SUBSIDIARY, SO, YEAH.

09:57AM 5    Q.   AND WHAT IS THE NAME OF THE U.S. SUBSIDIARY?

09:57AM 6    A.   HE'S RUIFENG BIZTECH.

09:57AM 7    Q.   THAT'S THE DEFENDANT, THE ENTITY THAT IS THE DEFENDANT IN

09:57AM 8    THIS CASE; IS THAT RIGHT?

09:57AM 9    A.   YEAH.

09:57AM 10   Q.   OKAY.

09:57AM 11   A.   BUT I'M NOT THE SHAREHOLDER OF THAT COMPANY.

09:57AM 12   Q.   OKAY.  SO HOW DID YOU HELP MR. WANG SET UP RUIFENG?

09:57AM 13   A.   SO YOU MEAN EXECUTION?  I JUST SIGNED THE PAPERWORK FOR

09:57AM 14   HIM.

09:57AM 15   Q.   TO REGISTER RUIFENG --

09:58AM 16   A.   YEAH, YEAH.

09:58AM 17   Q.   -- WITH THE CALIFORNIA STATE SECRETARY OF STATE; IS THAT

09:58AM 18   RIGHT?

09:58AM 19   A.   YES.

09:58AM 20   Q.   OKAY.  AND APPROXIMATELY WHEN DID YOU HELP MR. WANG SET UP

09:58AM 21   RUIFENG?

09:58AM 22   A.   I THINK PROBABLY THE END OF 2013.

09:58AM 23   Q.   OKAY.  AND DID MR. WANG PROMISE ANYTHING IN RETURN FOR

09:58AM 24   YOUR HELP TO SPONSOR THIS CITIZENSHIP, YEAH?

09:58AM 25   A.   YEAH, HE -- IN RETURN, HE PROMISE, LIKE, A MILLION DOLLAR

09:58AM 1    LOAN SO THAT WE CAN USE.

09:58AM 2    Q.   OKAY.  HOW WAS A MILLION DOLLAR LOAN WAS GOING TO BE USED

09:58AM 3    AT THE TIME IN DECEMBER OF 2013?  WHAT WAS THE DISCUSSION ABOUT

09:58AM 4    THAT?

09:58AM 5    A.   THE DISCUSSION IS WE CAN USE IT TO BUY LAB EQUIPMENT, AND

09:58AM 6    WE CAN USE THIS MONEY TO PAY THE SALARIES TO THE EMPLOYEE LATER

09:58AM 7    ON WE ALLOCATE TO RUIFENG.

09:59AM 8    Q.   DID MR. WANG DISPENSE A MILLION DOLLARS TO

09:59AM 9    QUINTARA BIOSCIENCES?

09:59AM 10   A.   NO, NO.  THIS MONEY IS ALWAYS ON HIS BANK ACCOUNT, THE

09:59AM 11   RUIFENG BANK ACCOUNT.  WE JUST -- WHEN WE ARE USING THIS MONEY,

09:59AM 12   WE JUST DRAW FROM THE ACCOUNT.  IT'S MORE LIKE A CREDIT LINE.

09:59AM 13   Q.   MORE LIKE A CREDIT LINE?

09:59AM 14   A.   YEAH.

09:59AM 15   Q.   OKAY.  JUST HELP ME UNDERSTAND HOW THIS LOAN WAS LENT TO

09:59AM 16   OR MADE TO QUINTARA, OKAY?

09:59AM 17       HE NEVER WRITE A CHECK AND DISPENSED MONEY OF A MILLION

09:59AM 18   DOLLARS?

09:59AM 19   A.   NEVER.

09:59AM 20   Q.   BUT QUINTARA WOULD SPEND SOME MONEY, LET'S SAY, TO

09:59AM 21   PURCHASE EQUIPMENT?

09:59AM 22   A.   YES.

09:59AM 23   Q.   AND WOULD GET REIMBURSED BY HIM?

09:59AM 24           MS. KAMATH:  OBJECTION.  IMPROPER HYPOTHETICAL,

09:59AM 25   SPECULATIVE, COMPOUND, AND A MISLEADING BASIS.

Page Separator – Page Intentionally Left Blank

09:59AM  1              THE COURT:  THOSE ARE ALL OVERRULED.

09:59AM  2         BUT IT IS LEADING, SO I WILL SUSTAIN IT ON THE GROUNDS OF

10:00AM  3    LEADING.

10:00AM  4         SO THE JURY WILL DISREGARD THE LAST QUESTION AND ANSWER.

10:00AM  5              MR. LI:  OKAY.

10:00AM  6    Q.   SO CAN YOU GIVE US, ME AND THE JURY, AN IDEA OF HOW

10:00AM  7    QUINTARA OBTAINED THIS LOAN?  AND I UNDERSTAND THERE'S NEVER A

10:00AM  8    CHECK WRITTEN FOR $1 MILLION.

10:00AM  9    A.   UH-HUH.  SO, BASICALLY, LIKE, FOR EXAMPLE, IF WE

10:00AM 10    PURCHASE -- LIKE WE PURCHASE AKTA PURIFIER FROM GE HOUSECARE,

10:00AM 11    AND BASICALLY RUIFENG WRITES THE CHECK.

10:00AM 12         SO IN AN INSTANCE, HE OWNS THIS PIECE OF EQUIPMENT.  SO WE

10:00AM 13    USE RUIFENG'S MONEY, BUY THIS EQUIPMENT, AND RUIFENG PAYS FOR

10:00AM 14    THIS EQUIPMENT, AND THIS EQUIPMENT CAN BE USED BY BOTH QUINTARA

10:00AM 15    AND RUIFENG.

10:00AM 16    Q.   OKAY.  BUT YOU SAID SOMETHING ABOUT OWNERSHIP.  SO WHO

10:00AM 17    OWNS THE EQUIPMENT PURCHASED BY RUIFENG'S MONEY?

10:01AM 18    A.   SO IF THEY PAY FOR THE EQUIPMENT, THEY OWN IT.

10:01AM 19    Q.   OKAY.  AND REMEMBER THERE'S A TALK ABOUT THIS

10:01AM 20    COLLABORATION AGREEMENT ABOUT A JOINT VENTURE 50 PERCENT --

10:01AM 21    51 PERCENT OWNERSHIP FOR RUIFENG, 49 PERCENT.

10:01AM 22         DO YOU REMEMBER THAT DURING THE OPENING?

10:01AM 23    A.   YES, YES.

10:01AM 24    Q.   HAS QUINTARA EVER FORMED ANY FORM OF A JOINT VENTURE WITH

10:01AM 25    RUIFENG?

10:01AM  1    A.    NO.

10:01AM  2    Q.    HAS QUINTARA EVER JOINT OWNED ANY BUSINESS WITH RUIFENG?

10:01AM  3    A.    NO.

10:01AM  4    Q.    SO WHAT IS THE EXACT NATURE OF THIS COLLABORATION BETWEEN

10:01AM  5    RUIFENG AND QUINTARA TO SPONSOR MR. WANG'S VISA APPLICATION?

10:02AM  6    A.    IT'S BASICALLY --

10:02AM  7              MS. KAMATH:  OBJECTION.  CALLS FOR A NARRATIVE AS TO

10:02AM  8    THE EXACT NATURE OF.

10:02AM  9              THE COURT:  WELL, IT POSSIBLY DOES.  BUT I'M GOING

10:02AM 10    TO ALLOW IT UNTIL IT GETS OUT OF HAND.  OVERRULED.

10:02AM 11         GO AHEAD AND ANSWER THE QUESTION.

10:02AM 12              THE WITNESS:  OKAY.  SO BASICALLY RUIFENG PROVIDE

10:02AM 13    US, LIKE, $1 MILLION LOAN FOR EQUIPMENT PURCHASING, AND

10:02AM 14    QUINTARA RUN THE DNA SEQUENCING BUSINESS, ALWAYS DOES, AND

10:02AM 15    WHILE WE ALLOCATE SIX EMPLOYEES TO RUIFENG SO THAT MR. WANG GOT

10:02AM 16    A SIZEABLE OPERATION TO BACK UP HIS APPLICATION.

10:02AM 17         AND WE DO NOT, WE DO NOT HAVE ANY JOINT VENTURE OR

10:03AM 18    PARTNERSHIP FORMALLY FORMED WITH RUIFENG.

10:03AM 19         AND IN TERMS OF THE OWNERSHIP, QUINTARA OWNED MOST OF THE

10:03AM 20    EQUIPMENT, BUT RUIFENG ALSO OWNS SOME OF THE EQUIPMENT, THE

10:03AM 21    EQUIPMENT PURCHASED BY THEIR MONEY.

10:03AM 22    BY MR. LI:

10:03AM 23    Q.    OKAY.  AT SOME POINT THIS COLLABORATION ENDS; IS THAT

10:03AM 24    RIGHT?

10:03AM 25    A.    IT'S AROUND 2018 OR THE BEGINNING OF 2019.

Page Separator – Page Intentionally Left Blank

10:07AM  1    Q.   AND ON MARCH 9TH, 2020 --

10:07AM  2    A.   UH-HUH.

10:07AM  3    Q.   -- THERE WAS SOMETHING THAT HAPPENED WITH --

10:07AM  4    A.   HE LOCKED -- HE CHANGED THE LOCK OF THE LAB SO PEOPLE --

10:07AM  5    OUR PEOPLE COULD NOT ACCESS TO THE LABORATORY.

10:07AM  6    Q.   AND WHAT DID YOU DO AFTER THAT?

10:07AM  7    A.   WE TRIED TO -- WE WENT TO HAYWARD POLICE DEPARTMENT, BUT

10:08AM  8    WE WERE, WE WERE -- WE GOT LOCKED, SO WE COULDN'T -- BASICALLY

10:08AM  9    IT SHUT DOWN OUR BUSINESS.

10:08AM 10    Q.   OKAY.  AND DID YOU RESUME -- DID YOU RESORT TO ANY LEGAL

10:08AM 11    MEANS?

10:08AM 12    A.   OH, I THINK WE HIRED A LAWYER AND THE LAWYER CONTACTED

10:08AM 13    THEM.

10:08AM 14    Q.   OKAY.  BUT EVENTUALLY AT SOME POINT THE LAWSUIT WAS FILED;

10:08AM 15    RIGHT?

10:08AM 16    A.   YEAH, YEAH, AND THEN WE TRANSFERRED THE LAWSUIT TO YOU.

10:08AM 17    Q.   OKAY.  SO WHEN WAS THE LAWSUIT FILED, APPROXIMATELY?

10:08AM 18    A.   I THINK IT IS JULY.

10:08AM 19    Q.   2020?

10:08AM 20    A.   2020.

10:08AM 21    Q.   OKAY.  NOW, I'M GOING TO GO THROUGH SOME EXHIBITS, OKAY?

10:08AM 22    AND THE FIRST EXHIBIT I WANT TO SHOW YOU, THIS COMES FROM THE

10:08AM 23    WITNESS BINDER, AND IT'S TRIAL EXHIBIT 66 FOR IDENTIFICATION.

10:09AM 24         (HANDING.)

10:09AM 25         DO YOU RECOGNIZE EXHIBIT 66?  JUST FLIP THROUGH IT.

10:09AM    1          (PAUSE IN PROCEEDINGS.)

10:10AM    2     BY MR. LI:

10:10AM    3     Q.   JUST FLIP THROUGH IT.  WE DON'T HAVE A LOT OF TIME.  JUST

10:10AM    4     FLIP THROUGH IT AND LET ME KNOW IF YOU RECOGNIZE IT.

10:10AM    5          LET ME HELP YOU OUT.  CAN I DIRECT YOUR ATTENTION TO THE

10:10AM    6     SECOND PAGE OF EXHIBIT 66, WHICH HAS A BATES NUMBER, WHAT WE

10:10AM    7     CALL A BATES NUMBER IS HU 1575.

10:10AM    8          LET ME HELP YOU.

10:10AM    9     A.   THAT'S OKAY.

10:10AM   10     Q.   YEAH.  SO SECOND PAGE.

10:10AM   11     A.   UH-HUH.

10:10AM   12     Q.   THE BATES NUMBER IS HERE.

10:11AM   13     A.   OKAY.

10:11AM   14     Q.   AND SO FOR THE RECORD, IT'S BATES NUMBER 1575.

10:11AM   15          DO YOU SEE YOUR OWN SIGNATURE --

10:11AM   16     A.   YES.

10:11AM   17     Q.   -- ON THAT PAGE?

10:11AM   18          YES.  OKAY.

10:11AM   19          DO YOU REMEMBER SIGNING THIS DOCUMENT?

10:11AM   20     A.   YES.

10:11AM   21     Q.   AND SO NOW DO YOU REMEMBER SEEING THIS DOCUMENT BEFORE?

10:11AM   22     A.   YES.

10:11AM   23     Q.   YEAH.  SO THERE'S ANOTHER SIGNATURE ON THE SAME PAGE.

10:11AM   24          DO YOU RECOGNIZE THAT SIGNATURE?

10:11AM   25     A.   IT'S JUST HIS -- MR. WANG'S LAWYER, MR. HU.

10:11AM  1    Q.  AND YOU SIGNED THIS DOCUMENT ON BEHALF OF WHO?  ON BEHALF

10:11AM  2    OF YOURSELF OR ON BEHALF OF THE ENTITY?

10:12AM  3    A.  RUIFENG.

10:12AM  4    Q.  YOU SIGNED THIS DOCUMENT ON BEHALF OF RUIFENG?

10:12AM  5    A.  YES.

10:12AM  6    Q.  OKAY.  DO YOU UNDERSTAND WHY YOU SIGNING THIS DOCUMENT ON

10:12AM  7    BEHALF OF RUIFENG?

10:12AM  8    A.  BECAUSE MR. WANG PUT ME AS HIS SECRETARY.

10:12AM  9    Q.  CORPORATE SECRETARY OF RUIFENG?

10:12AM  10   A.  YEAH, YEAH.

10:12AM  11   Q.  OKAY.  IF YOU LOOK AT THE SAME PAGE UNDER THE HEADING NAME

10:12AM  12   OF APPLICANT, PETITIONER, OR RESPONDENT.

10:12AM  13       DO YOU SEE THE NAME OF A COMPANY OR ORGANIZATION, DO YOU

10:12AM  14   SEE RUIFENG BIZTECH INC.?

10:12AM  15   A.  YES.

10:12AM  16   Q.  OKAY.  SO DO YOU UNDERSTAND YOU WERE SIGNING THIS DOCUMENT

10:13AM  17   ON BEHALF OF RUIFENG AS THE PETITIONER OR APPLICANT FOR

10:13AM  18   MR. WANG'S VISA?

10:13AM  19   A.  YES.

10:13AM  20       MR. LI:  YOUR HONOR, I'D LIKE TO ADMIT EVIDENCE --

10:13AM  21   ADMIT EXHIBIT 66 INTO EVIDENCE AS PARTY OPPONENT ADMISSION.

10:13AM  22       THE COURT:  ANY OBJECTION?

10:13AM  23       MS. KAMATH:  NO OBJECTION, YOUR HONOR.

10:13AM  24       THE COURT:  EXHIBIT 66 IS RECEIVED.  THANK YOU.

10:13AM  25       MR. LI:  ALL RIGHT.

Page Separator – Page Intentionally Left Blank

| | |
|---|---|
| 10:15AM  1 | AT 8A OR IN PART 4? |
| 10:15AM  2 | MR. LI:  WHICH IS -- THE FIRST SIGNATURE ON TOP. |
| 10:15AM  3 | THERE ARE TWO SIGNATURES. |
| 10:15AM  4 | THE COURT:  ALL RIGHT. |
| 10:15AM  5 | MR. LI:  THE FIRST ONE ON TOP IS THE WITNESS. |
| 10:15AM  6 | THE SECOND ONE IS THE LAWYER'S SIGNATURE. |
| 10:15AM  7 | THE COURT:  ALL RIGHT.  WHERE IS IT NOW OVER THERE? |
| 10:15AM  8 | WE'RE LETTING THEM SEE THESE SIGNATURES. |
| 10:16AM  9 | BY MR. LI: |
| 10:16AM  10 | Q.  SO, NOW SITTING HERE, DO YOU REMEMBER SIGNING THIS |
| 10:16AM  11 | PETITION ON BEHALF OF RUIFENG FOR MR. WANG'S L-1 IMMIGRATION |
| 10:16AM  12 | VISA? |
| 10:16AM  13 | A.  YES. |
| 10:16AM  14 | Q.  AND IN THAT SUBMISSION, DID YOU SUBMIT ANY COLLABORATION |
| 10:16AM  15 | AGREEMENT WHICH SHOWS JOINT VENTURE OF ANY ENTITY? |
| 10:16AM  16 | A.  NO. |
| 10:16AM  17 | Q.  OKAY.  NOW I'M GOING TO TAKE A LOOK AT PAGE 16.  OKAY.  IT |
| 10:16AM  18 | HAS HU 1589 ON THE BOTTOM.  LET ME HELP YOU. |
| 10:17AM  19 | CAN I HELP YOU? |
| 10:17AM  20 | A.  YEAH, YEAH. |
| 10:17AM  21 | (PAUSE IN PROCEEDINGS.) |
| 10:17AM  22 | MR. LI:  OH.  THE BATES NUMBER IS CUT OFF. |
| 10:17AM  23 | THE COURT:  WHICH PAGE? |
| 10:17AM  24 | MR. LI:  IT'S 16 OF -- THE BATES NUMBER IS CUT OFF |
| 10:17AM  25 | UNFORTUNATELY ON THIS PRINTOUT. |

10:17AM  1          IT IS HU 1589, AND IT STARTS WITH SECTION 1.  OKAY.  IT

10:18AM  2     STARTS WITH SECTION 1.  COMPLETE THIS SECTION IF FILING FOR AN

10:18AM  3     INDIVIDUAL PETITION.  IT'S HU 1589.  ACTUALLY, IT'S AT THE

10:18AM  4     BOTTOM.

10:18AM  5          (HANDING.)

10:18AM  6     Q.   ALL RIGHT.  CAN YOU SEE THAT?

10:18AM  7     A.   OKAY.

10:18AM  8     Q.   AND UNDER THE SUBSECTION 10, THERE'S A TABLE.  AND IT

10:18AM  9     SAYS, "COMPANY STOCK OWNERSHIP AND MANAGERIAL CONTROL OF EACH

10:18AM 10     COMPANY THAT HAS A QUALIFYING RELATIONSHIP."

10:18AM 11          AND IT SAYS, "HEI LON JING," H-E-I, L-O-N, J-I-N-G,

10:19AM 12     "RUIFENG," R-U-I-F-E-N-G, "HUNGYE," H-U-N-G-Y-E, "TRADE CO.

10:19AM 13     LIMITED IN CHINA OWNS 100 PERCENT OF ALL OF THE OUTSTANDING

10:19AM 14     SHARES OF THE U.S. PETITIONER RUIFENG BIZTECH INC. AND HAS FULL

10:19AM 15     MANAGERIAL CONTROL OF IT."

10:19AM 16          DO YOU SEE THAT?

10:19AM 17     A.   YES.

10:19AM 18     Q.   SO IS THAT THE SECTION THAT SPELLS OUT THE WHOLLY OWNED

10:19AM 19     SUBSIDIARY RELATIONSHIP BETWEEN RUIFENG AND ITS PARENT COMPANY

10:19AM 20     IN CHINA?

10:19AM 21     A.   YES.

10:19AM 22     Q.   AND DOES QUINTARA HAVE ANY OWNERSHIP OF RUIFENG?

10:19AM 23     A.   NO.  ZERO.

10:19AM 24     Q.   I'M GOING TO PUBLISH THAT PARTICULAR PAGE TO THE JURY.  WE

10:20AM 25     HAVE TO DO IT THE OLD FASHIONED WAY.  I APOLOGIZE FOR THAT.

10:20AM  1          (HANDING.)

10:20AM  2          (PAUSE IN PROCEEDINGS.)

10:20AM  3     BY MR. LI:

10:20AM  4     Q.   NOW I'M GOING TO PAGE 19 WITH BATES NUMBER HU 1592.

10:20AM  5          LET ME HELP YOU.  DID YOU FIND IT?

10:20AM  6     A.   YEAH.

10:20AM  7     Q.   OKAY.  YOU FOUND IT.

10:21AM  8          SO UNDER SECTION 4 ENTITLED FEASIBILITY ANALYSIS AND A

10:21AM  9     BUSINESS PLAN PRESENTATION, THERE'S AN INVESTMENT PLAN.

10:21AM 10          SO AS OF THIS TIME -- THIS DATE OF THIS IS MARCH 2014 --

10:21AM 11     DOES RUIFENG HAVE A BUSINESS PLAN?

10:21AM 12     A.   I DON'T THINK SO.  IT IS STILL THINKING AT THAT TIME.

10:21AM 13     Q.   OKAY.  OKAY.  LET'S GO TO PAGE 67 TO PAGE 70, WHICH IS

10:22AM 14     HU 1640 TO 43.  IT SHOULD BE RUIFENG'S MINUTES, BOARD OF

10:22AM 15     DIRECTOR MINUTES.

10:22AM 16          DR. SHAN, DO YOU RECOGNIZE THESE THREE PAGES, HU 1640 TO

10:22AM 17     43?

10:22AM 18     A.   YES.

10:22AM 19     Q.   OKAY.  WHAT IS THE THREE PAGES?

10:22AM 20     A.   THIS PAGE IS THE COMPANY STRUCTURE UPON ME AS THE

10:23AM 21     CORPORATION AGENT.

10:23AM 22          (PAUSE IN PROCEEDINGS.)

10:23AM 23              THE WITNESS:  ME AS A SECRETARY OF THIS CORPORATION.

10:23AM 24     BY MR. LI:

10:23AM 25     Q.   OKAY.  LET'S DO THE -- DO YOU SEE YOUR NAME LISTED IN THIS

10:23AM  1    CORPORATE REGISTRATION?

10:23AM  2    A.    YEAH, IN THE SECOND PARAGRAPH.

10:23AM  3    Q.    OKAY.  YOU WERE LISTED AS WHAT?

10:24AM  4    A.    DEPARTMENT AGENT FOR SERVICE OF PROCESS.

10:24AM  5    Q.    OKAY.  AND DO YOU ALSO SEE THE ELECTION OF OFFICERS?  DO

10:24AM  6    YOU SEE A NAME LISTED THERE?

10:24AM  7    A.    YES.

10:24AM  8    Q.    AND YOU ARE LISTED AS WHAT?

10:24AM  9    A.    SECRETARY.

10:24AM  10   Q.    OKAY.  AND GO TO THE NEXT PAGE, HU 1641.

10:24AM  11         DO YOU SEE AT THE BOTTOM THERE'S A STATEMENT WHERE IT SAYS

10:24AM  12   ESTABLISHING BANK ACCOUNT?

10:24AM  13   A.    YES, I SAW THIS.

10:24AM  14   Q.    AND DID RUIFENG ESTABLISH A BANK ACCOUNT?

10:24AM  15   A.    I GUESS SO.  I DON'T REMEMBER VERY CLEARLY.

10:24AM  16   Q.    OKAY.  ALL RIGHT.

10:24AM  17   A.    YEAH.

10:24AM  18   Q.    THEN GO TO HU 1642.

10:25AM  19         DO YOU SEE THAT THERE'S A -- AT THE BOTTOM THERE'S

10:25AM  20   AUTHORIZATION OF AN ISSUANCE OF SHARES.  OKAY.  IT STATES, "THE

10:25AM  21   CORPORATION SHALL ISSUE AND SELL A TOTAL OF 500,000 SHARES OF

10:25AM  22   ITS AUTHORIZED COMMON STOCK TO THE FOLLOWING PERSON IN A NUMBER

10:25AM  23   AND FOR THE CONSIDERATION SET FORTH OPPOSITE THEIR NAME,

10:25AM  24   RESPECTIVELY?"

10:25AM  25         AND THE NEXT PAGE, THE ONLY SHAREHOLDER LISTED IS THIS

10:25AM  1    CHINESE PARENT COMPANY.

10:25AM  2        DO YOU SEE THAT?

10:25AM  3    A.   YES, I SAW.

10:25AM  4    Q.   AND IS THAT TRUE AS FAR AS YOU KNOW AT THE TIME?

10:25AM  5    A.   YES.

10:25AM  6    Q.   OKAY.  AND AT THE BOTTOM OF THIS PAGE, DO YOU SEE A

10:25AM  7    SIGNATURE?

10:25AM  8    A.   YES.

10:25AM  9    Q.   AND WHOSE SIGNATURE IS THAT?

10:26AM  10   A.   IT'S MR. WANG'S SIGNATURE.

10:26AM  11   Q.   OKAY.  LET'S PUBLISH THESE THREE PAGES.

10:26AM  12             THE COURT:  I'M GOING TO GIVE YOU A LITTLE BIT OF

10:26AM  13   LATITUDE, AND THE SAME THING WITH THE OTHER SIDE AT VARIOUS

10:26AM  14   TIMES.

10:26AM  15        TAKE ONE SENTENCE ONLY AND EXPLAIN TO THE JURY WHY WE'RE

10:26AM  16   GOING INTO THIS.

10:26AM  17             MR. LI:  WHY?

10:26AM  18             THE COURT:  WHY WE'RE GOING INTO THIS IMMIGRATION

10:26AM  19   THING INSTEAD OF GOING INTO THE TRADE SECRETS.  YOU'RE BACK IN

10:26AM  20   ANCIENT HISTORY ON IMMIGRATION, AND I'D LIKE TO UNDERSTAND, AND

10:26AM  21   THE JURY IS DYING TO KNOW, WHY WE'RE TAKING THEIR TIME UP ON

10:26AM  22   IMMIGRATION.  ONE SENTENCE.

10:26AM  23             MR. LI:  THIS IS TO ADDRESS DEFENDANTS' CONTENTION

10:26AM  24   THAT THEY CO-OWNED THIS TRADE SECRET JUST BECAUSE THERE WAS

10:27AM  25   COLLABORATION, AND SO THIS, THROUGH THIS HISTORY YOU'LL

10:27AM  1    UNDERSTAND THERE'S NO CO-OWNERSHIP OF ANYTHING, AND THERE'S ONE

10:27AM  2    COMPANY OWNED BY THEM, THAT'S RUIFENG 100 PERCENT, AND THEN

10:27AM  3    ANOTHER COMPANY OWNED BY US, THAT'S QUINTARA.

10:27AM  4         THE COURT:  ALL RIGHT.

10:27AM  5    WHAT THE LAWYER SAID IS NOT EVIDENCE.  IT'S JUST TO TRY TO

10:27AM  6    HELP YOU UNDERSTAND WHY WE'RE HEARING SOME OF THIS EVIDENCE.

10:27AM  7    WITH THAT UNDERSTANDING, YOU MAY PROCEED.

10:27AM  8         MR. LI:  (HANDING.)

10:27AM  9    OKAY.  SO I'M PUBLISHING THE MINUTES OF THE ACTION OF THE

10:27AM  10   BOARD OF DIRECTORS MINUTES OF RUIFENG BIZTECH.

10:27AM  11        (PAUSE IN PROCEEDINGS.)

10:27AM  12        MR. LI:  NOW I'M GOING TO GO TO THE NEXT EXHIBIT.

10:28AM  13        THE COURT:  WELL, BEFORE YOU DO THAT, ARE WE DONE

10:28AM  14   WITH THIS EXHIBIT?

10:28AM  15        MR. LI:  YES.

10:28AM  16        THE COURT:  YOU NEED TO COLLECT FROM THE JURY ALL OF

10:28AM  17   THE PAGES.  THIS IS THE OFFICIAL DOCUMENT, AND THOSE PAGES HAVE

10:28AM  18   GOT TO BE PUT BACK IN THE RIGHT PLACE.

10:28AM  19        MR. LI:  OKAY.  I'M GOING TO ASK MY ASSOCIATE TO

10:28AM  20   ASSEMBLE THIS.

10:28AM  21        THE COURT:  ALL RIGHT.  YES, YOU MAY DO THAT AFTER

10:28AM  22   ALL THE JURY HAS LOOKED AT WHATEVER THEY WANT TO LOOK AT THAT

10:28AM  23   YOU'VE PASSED AROUND.

10:28AM  24    SEAT NUMBER 1 THERE, IS THAT SOME OF YOUR -- IS THAT THE

10:28AM  25   EXHIBIT?

Page Separator – Page Intentionally Left Blank

10:29AM   1       Q.   OKAY.

10:29AM   2                 THE COURT:  OKAY.  YOU ONLY MOVED IN EXHIBIT 2.

10:29AM   3            IS THERE ANY OBJECTION TO 2A?

10:29AM   4                 MS. KAMATH:  NO.

10:30AM   5                 THE COURT:  EXHIBIT 2A IS ALSO RECEIVED.

10:30AM   6            (PLAINTIFF'S EXHIBIT 2A WAS RECEIVED IN EVIDENCE.)

10:30AM   7                 THE COURT:  GO AHEAD.

10:30AM   8       BY MR. LI:

10:30AM   9       Q.   LET'S JUST LOOK AT THE ENGLISH VERSION OF THIS AGREEMENT.

10:30AM  10       IT'S ENTITLED COLLABORATION AGREEMENT.

10:30AM  11            DO YOU SEE THAT?

10:30AM  12       A.   YES.

10:30AM  13       Q.   AND IS THIS -- AND IS THIS A DATE, DECEMBER 28TH, 2013?

10:30AM  14       A.   YES.

10:30AM  15       Q.   IS THIS A COLLABORATION AGREEMENT BOTH ME AND COUNSEL

10:30AM  16       TALKED ABOUT DURING THE OPENING?

10:30AM  17       A.   YES.

10:30AM  18       Q.   AND DIRECT YOUR ATTENTION TO NUMBER 3, PARAGRAPH 3 OF THIS

10:31AM  19       AGREEMENT.  IT SAYS, QUOTE, "PARTY A SHALL OWN 51 PERCENT

10:31AM  20       SHARES OF THE NEW COMPANY AND MANAGE THE COMPANY'S BANK

10:31AM  21       ACCOUNT."

10:31AM  22            OKAY.  DO YOU SEE THAT?

10:31AM  23       A.   YES.

10:31AM  24       Q.   AND WHO IS PARTY A?

10:31AM  25       A.   PARTY A IS RUIFENG AND MR. WANG.

10:31AM 1    Q.   AND WHAT IS THE NEW COMPANY?

10:31AM 2    A.   THERE'S NO NEW COMPANY.

10:31AM 3    Q.   OKAY.  THAT'S A COMPANY TO BE FORMED?

10:31AM 4    A.   YEAH.

10:31AM 5    Q.   AND WAS THE COMPANY EVER FORMED?

10:31AM 6    A.   NEVER.

10:31AM 7    Q.   AND PARTY A IS SUPPOSED TO MANAGE THIS NEW COMPANY'S BANK

10:31AM 8    ACCOUNT.

10:31AM 9         AND DID THE NEW COMPANY EVER HAVE ITS OWN BANK ACCOUNT?

10:31AM 10   A.   THERE'S NO COMPANY.  I DON'T KNOW WHERE THE BANK ACCOUNT.

10:32AM 11   Q.   OKAY.  SO WHAT IS THE PURPOSE OF SIGNING THIS

10:32AM 12   COLLABORATION AGREEMENT IN DECEMBER 2013?

10:32AM 13   A.   I THINK THIS PROBABLY MR. WANG GOT SOME KIND OF

10:32AM 14   INSTRUCTIONS FROM HIS IMMIGRATION LAWYER, LIKE THEY WANT TO DO

10:32AM 15   THIS AS A JOB VENTURE TYPE OF THING.

10:32AM 16        BUT QUICKLY I THINK THEY CHANGE THEIR MIND.  I THINK LATER

10:32AM 17   ON THEY WANT TO USE IT AS A SERVICE CONTRACT MODEL.

10:32AM 18   Q.   OKAY.  THE SERVICE CONTRACT MODEL, CAN YOU EXPLAIN THE

10:32AM 19   DIFFERENCE BETWEEN A SERVICE CONTRACT MODEL OF COLLABORATION

10:32AM 20   AND THE MODEL UNDER THIS COLLABORATION AGREEMENT?

10:32AM 21   A.   OH, IT'S VERY DIFFERENT.  I THINK THIS ONE THEY CALL FOR

10:32AM 22   MORE LIKE A JOB VENTURE, LIKE A NEW COMPANY, JUST NEVER FORM

10:33AM 23   NEW COMPANY.

10:33AM 24        SERVICE CONTRACT MODEL IS JUST RUIFENG BEING A SERVICE

10:33AM 25   CONTRACTOR.

Page Separator – Page Intentionally Left Blank

10:33AM 1   Q.   OKAY.  NOW I'M GOING TO MOVE ON TO THE NEXT EXHIBIT,

10:33AM 2   EXHIBIT 3.

10:33AM 3        AND WE WOULD LIKE TO MOVE EXHIBIT 3 INTO EVIDENCE.  I

10:33AM 4   DON'T THINK THERE WOULD BE AN OBJECTION.

10:33AM 5             MS. KAMATH:  NO.

10:33AM 6             THE COURT:  IS THERE A 3A AS WELL?

10:33AM 7             MR. LI:  ALL RIGHT.

10:33AM 8             THE COURT:  IS THERE A 3A AND A 3?

10:33AM 9             MR. LI:  NO, JUST A 3.

10:33AM 10            THE COURT:  ANY OBJECTION TO 3?

10:33AM 11            MS. KAMATH:  NO, YOUR HONOR.

10:33AM 12            THE COURT:  ALL RIGHT.  THANK YOU.  IT'S IN

10:33AM 13  EVIDENCE.

10:33AM 14       (PLAINTIFF'S EXHIBIT 3 WAS RECEIVED IN EVIDENCE.)

10:33AM 15  BY MR. LI:

10:33AM 16  Q.   OKAY.  I'M GOING TO SHOW YOU HAD ADMITTED EXHIBIT IS 3.

10:33AM 17       (HANDING.)

10:34AM 18       SO DO YOU RECOGNIZE EXHIBIT 3?

10:34AM 19  A.   YES.

10:34AM 20  Q.   AND WHAT IS EXHIBIT 3?

10:34AM 21  A.   THIS IS THE SERVICE AGREEMENT I THINK THAT THEY INTEND TO

10:34AM 22  USE FOR MR. WANG'S L-1 APPLICATION.

10:34AM 23  Q.   OKAY.  SO THE TITLE, DO YOU SEE THE TITLE, SERVICES

10:34AM 24  AGREEMENT?

10:34AM 25  A.   UH-HUH.

10:34AM 1    Q.   AND WHAT'S THE DATE OF THIS AGREEMENT?

10:34AM 2    A.   IT IS FEBRUARY 21ST, 2014.

10:34AM 3    Q.   SO THAT WAS LESS THAN TWO MONTHS FROM THE COLLABORATION

10:34AM 4    AGREEMENT?

10:34AM 5    A.   TWO MONTHS, YEAH.

10:34AM 6    Q.   OKAY.  AND UNDER THIS AGREEMENT -- SO I'M READING THE

10:34AM 7    PARAGRAPH, THE SECOND PARAGRAPH, QUOTE, "RUIFENG BIZTECH SHALL

10:34AM 8    PROVIDE STAFF SERVICES TO QUINTARA BIOSCIENCES WHICH INCLUDE

10:34AM 9    RECRUITING SIX LAB TECHNICIANS FOR QUINTARA BIOSCIENCES IN 2014

10:35AM 10   AND SIX PART OR FULL-TIME TECHNICIANS IN 2015.

10:35AM 11   QUINTARA BIOSCIENCES WILL PROVIDE TECHNICAL TRAINING AND

10:35AM 12   SUPERVISE THE STAFF."

10:35AM 13        DO YOU SEE THAT?

10:35AM 14   A.   YES.

10:35AM 15   Q.   WAS THAT THE ESSENCE OF COLLABORATION AS OF FEBRUARY 21,

10:35AM 16   2014, THE DATE OF THIS AGREEMENT?

10:35AM 17   A.   YES.

10:35AM 18   Q.   AND LET ME PUBLISH THIS SIMPLE DOCUMENT TO THE JURY.

10:36AM 19        (HANDING.)

10:36AM 20        UNFORTUNATELY I HAVE TO DO ANOTHER BIG DOCUMENT.  THIS IS

10:36AM 21   EXHIBIT 6A.  I'D LIKE TO MOVE EXHIBIT 6A INTO EVIDENCE.

10:36AM 22             THE COURT:  OKAY.  ANY OBJECTION.

10:36AM 23             MS. KAMATH:  NO, YOUR HONOR.

10:36AM 24             THE COURT:  ALL RIGHT.  RECEIVED IN EVIDENCE.

10:36AM 25        (PLAINTIFF'S EXHIBIT 6A WAS RECEIVED IN EVIDENCE.)

BY MR. LI:

Q.   ALL RIGHT.  I'M SHOWING YOU EXHIBIT 6A, WHICH HAS BEEN

ADMITTED INTO EVIDENCE.

     (HANDING.)

     (PAUSE IN PROCEEDINGS.)

BY MR. LI:

Q.   I'LL HELP DIRECT YOUR ATTENTION TO FACILITATE THIS AND

DIRECT YOUR ATTENTION TO PAGE 3, WHICH IS HU 2257.

     DO YOU SEE -- THERE ARE TWO SIGNATURES, AND THE TOP

SIGNATURE, DO YOU RECOGNIZE THAT SIGNATURE?

A.   YES.

Q.   WHOSE SIGNATURE IS THAT?

A.   THAT'S SUE ZHAO'S SIGNATURE.

Q.   THAT'S YOUR WIFE'S SIGNATURE?

A.   YES.

Q.   AND THE DATE IS DECEMBER 8TH, 2015?

A.   YES.

Q.   AND THE BOTTOM SIGNATURE, DO YOU RECOGNIZE THAT?

A.   YES.  IT'S THE IMMIGRATION LAWYER, MR. HU'S SIGNATURE.

Q.   OKAY.  AND DO YOU UNDERSTAND WHAT THE DOCUMENT IS?  I KNOW

YOU DID NOT SIGN IT.

A.   YEAH.  IT'S PROBABLY TO APPLY FOR A GREEN CARD FOR

MR. WANG.

Q.   THIS IS FOR THE IMMIGRATION VISA, A GREEN CARD FOR

MR. WANG; RIGHT?

10:38AM 1  A.  YEAH.

10:38AM 2  Q.  AND I'LL DIRECT YOUR ATTENTION TO -- JUST A SECOND --

10:38AM 3  PAGE 60 OF THE DOCUMENT, WHICH HAS A BATES NUMBER 2314.

10:39AM 4      LET ME HELP YOU.

10:39AM 5  A.  I'VE GOT IT.

10:39AM 6  Q.  DID YOU FIND IT?

10:39AM 7  A.  YEAH.

10:39AM 8  Q.  DO YOU RECOGNIZE THIS DOCUMENT FROM 2314 TO 2318?

10:39AM 9  A.  YES, THIS IS A CONTRACT FOR SERVICE AGREEMENT.

10:40AM 10     IT'S NOT MY SIGNATURE, BUT I RECOGNIZE THIS DOCUMENT.

10:40AM 11 Q.  YOU SAY IT'S NOT YOUR SIGNATURE.

10:40AM 12     WELL, LET ME GO TO PAGE 2318, OKAY.

10:40AM 13     DO YOU SEE THAT THERE ARE TWO SIGNATURES.  ON THE LEFT

10:40AM 14 IT'S SHAN QUN, S-H-A-N, Q-U-N.

10:40AM 15 A.  YEAH.

10:40AM 16 Q.  AND IT'S A COMPUTER GENERATED LETTER.

10:40AM 17     IS THAT YOUR SIGNATURE?

10:40AM 18 A.  NO.

10:40AM 19 Q.  IT'S NOT YOUR SIGNATURE.  OKAY.  SOMEONE ELSE PUT THAT IN

10:40AM 20 THERE.

10:40AM 21     DID YOU PUT THIS IN THERE?

10:40AM 22 A.  NO.

10:40AM 23 Q.  AND THE NEXT IS GANGYOU WANG'S SIGNATURE; IS THAT RIGHT?

10:40AM 24 A.  YES.

10:40AM 25 Q.  TAKE A LOOK AT THIS.  THERE ARE SOME CLAUSE DEFINING THE

10:41AM 1    DUTIES OF THE PARTIES.  UNDER SECTION 2, WHICH IS ON THE FIRST

10:41AM 2    PAGE OF THE AGREEMENT, UNDER TITLE SERVICES TO BE PERFORMED --

10:41AM 3    I GUESS THAT'S A TYPO -- TO BE PERFORMED, IT SAYS, "CONTRACTOR

10:41AM 4    AGREES TO PERFORM THE FOLLOWING SERVICES FOR CLIENT."

10:41AM 5        DO YOU UNDERSTAND WHO IS THE CONTRACTOR HERE?

10:41AM 6    A.   RUIFENG.

10:41AM 7    Q.   OKAY.  AND THE CLIENT?

10:41AM 8    A.   THE CLIENT IS QUINTARA.

10:41AM 9    Q.   THE CLIENT IS QUINTARA.  OKAY.

10:41AM 10       SO BASICALLY THIS SPELLS THE DUTY OF RUIFENG UNDER THIS

10:41AM 11   CONTRACT; IS THAT YOUR UNDERSTANDING?

10:41AM 12   A.   YES.

10:41AM 13   Q.   OKAY.  "THE CONTRACTOR WILL SET UP THE MACHINES REQUIRED

10:41AM 14   BY DNA SEQUENCING SERVICES."

10:41AM 15       DID RUIFENG PERFORM THAT CLAUSE, THAT DUTY?

10:42AM 16   A.   NO.

10:42AM 17   Q.   WHAT DID RUIFENG DO IN RELATION TO SETTING UP THE MACHINES

10:42AM 18   FOR DNA SEQUENCING?

10:42AM 19   A.   THEY DIDN'T SET UP THE SEQUENCER.

10:42AM 20   Q.   DID THEY PAY, ULTIMATELY PAY FOR SOME DNA SEQUENCER?

10:42AM 21   A.   YES, THEY PAY FOR SOME SEQUENCER.  BUT THEY DIDN'T SET UP,

10:42AM 22   YEAH.

10:42AM 23   Q.   OKAY.  AT THAT TIME, APPROXIMATELY HOW MANY SEQUENCERS DID

10:42AM 24   QUINTARA HAVE AT THE TIME?

10:42AM 25   A.   WE HAVE ABOUT TOTAL EIGHT SEQUENCERS AROUND THAT TIME.

10:42AM   1   Q.   OKAY.  HOW MANY OF THOSE EIGHT SEQUENCERS WERE PAID FOR BY

10:42AM   2   RUIFENG?

10:42AM   3   A.   PROBABLY TWO.  I DON'T REMEMBER.

10:42AM   4   Q.   OKAY.  AND DID RUIFENG ACTUALLY SET UP THOSE SEQUENCERS?

10:42AM   5   A.   NO.  WE SET IT UP.

10:43AM   6   Q.   OKAY.  AND THEN THE SECOND TASK RUIFENG IS SUPPOSED TO

10:43AM   7   PERFORM IS "CLONED THE DNA SAMPLES WILL BE DELIVERED TO RUIFENG

10:43AM   8   DAILY BY 6:00 P.M.  CONTRACTOR WILL PROCESS THE SAMPLES DAILY

10:43AM   9   ACCORDING TO PRE-DEFINED LAB PROCEDURES AGREED UPON BY CLIENT."

10:43AM   10      DID RUIFENG ACTUALLY PROCESS THOSE SAMPLES?

10:43AM   11  A.   NO.  NO.  IT'S OUR TECHNICIAN.

10:43AM   12  Q.   PROCESSING THE SAMPLES?

10:43AM   13  A.   YEAH.

10:43AM   14  Q.   BUT DID RUIFENG PAY FOR THE SALARIES OF SOME OF THE

10:43AM   15  TECHNICIANS?

10:43AM   16  A.   FOR SOME OF THE TECHNICIANS, YEAH.

10:43AM   17  Q.   FOR PROCESSING SAMPLES?

10:43AM   18  A.   YES.

10:43AM   19  Q.   OKAY.  AND JUST LOOK AT ALL OF THE TASKS SPELLED OUT UNDER

10:44AM   20  SERVICES TO PERFORM.  DID RUIFENG ACTUALLY PERFORM ANY OF THE

10:44AM   21  TASKS?

10:44AM   22  A.   NOT REALLY.

10:44AM   23  Q.   OKAY.  AND I'LL DIRECT YOUR ATTENTION TO PAGE HU 2315

10:44AM   24  UNDER PARAGRAPH 9, INDEPENDENT CONTRACTOR STATUS.

10:44AM   25      ARE YOU THERE?

10:44AM 1    A.    YES.

10:44AM 2    Q.    OKAY.  SO IT SAYS, QUOTE, "THE PARTIES INTEND CONTRACTOR,"

10:44AM 3    WHICH IS RUIFENG, "TO BE AN INDEPENDENT CONTRACTOR IN THE

10:44AM 4    PERFORMANCE OF THE SERVICES," AND THEN THEY SPELL OUT CERTAIN

10:45AM 5    THINGS THE CONTRACTOR IS SUPPOSED TO DO.  RIGHT?

10:45AM 6    A.    YES.

10:45AM 7    Q.    THE FIRST THING IS "THE CONTRACTOR WILL HAVE THE RIGHT TO

10:45AM 8    CONTROL AND DETERMINE THE METHODS AND THE MEANS OF PERFORMING

10:45AM 9    THE CONTRACTUAL SERVICES."

10:45AM 10        DO YOU SEE THAT?

10:45AM 11   A.    YES.

10:45AM 12   Q.    AND DID RUIFENG CONTROL, DETERMINE THE METHODS AND THE

10:45AM 13   MEANS OF PERFORMING THE DNA SEQUENCING?

10:45AM 14   A.    NO.

10:45AM 15   Q.    THEN THE NEXT PAGE, THE FIRST LINE SAYS, "CONTRACTOR HAS A

10:45AM 16   RIGHT TO PERFORM SERVICES FOR OTHERS DURING THE TERM OF THIS

10:46AM 17   AGREEMENT."

10:46AM 18        DID RUIFENG EVER PERFORM DNA SEQUENCINGS FOR OTHERS OTHER

10:46AM 19   THAN QUINTARA?

10:46AM 20   A.    NOT THAT I KNOW OF, NO.

10:46AM 21   Q.    AND THEN IT SAYS, "CONTRACTOR HAS A RIGHT TO HIRE

10:46AM 22   ASSISTANT AS SUBCONTRACTORS OR TO USE EMPLOYEES TO PROVIDE THE

10:46AM 23   SERVICES REQUIRED BY THIS AGREEMENT."

10:46AM 24        DID RUIFENG EVER HIRE ASSISTANTS AND USE THOSE EMPLOYEES

10:46AM 25   TO PROVIDE SERVICE REQUIRED BY THIS AGREEMENT?

10:46AM  1    A.   NO, NOT WHAT I KNOW.

10:46AM  2    Q.   WHAT ACTUALLY HAPPENED?

10:46AM  3              MS. KAMATH:  CALLS FOR A NARRATIVE.

10:46AM  4              THE COURT:  OVERRULED.

10:46AM  5              MS. KAMATH:  SPECULATIVE.

10:46AM  6              THE COURT:  OVERRULED.

10:46AM  7         YOU NEED TO TESTIFY FROM PERSONAL KNOWLEDGE AND EXPLAIN

10:47AM  8    WHAT -- EXPLAIN THE ANSWER TO COUNSEL'S QUESTION OF WHAT

10:47AM  9    ACTUALLY HAPPENED.

10:47AM 10              THE WITNESS:  WHAT ACTUALLY HAPPENED IS MOST OF THE

10:47AM 11    TASKS WERE PERFORMED BY QUINTARA'S TECHNICIAN, ALTHOUGH SOME OF

10:47AM 12    THE TECHNICIANS WERE PAID BY RUIFENG'S LOAN.

10:47AM 13    BY MR. LI:

10:47AM 14    Q.   SO THOSE TECHNICIAN WHO WERE PAID BY RUIFENG'S MONEY WERE

10:47AM 15    CONSIDERED AS RUIFENG'S WORK?  THAT'S THE ONLY EXTENT THAT

10:47AM 16    RUIFENG PERFORMED ITS CONTRACT?

10:47AM 17    A.   YEAH, YEAH.

10:47AM 18    Q.   OKAY.  NOW I'M GOING TO GO TO EXHIBIT 19.

10:48AM 19              THE COURT:  IS THERE GOING TO BE ANY OBJECTION TO

10:48AM 20    19?

10:48AM 21              MS. KAMATH:  NO OBJECTION.

10:48AM 22              THE COURT:  THANK YOU.  IT WILL BE ADMITTED INTO

10:48AM 23    EVIDENCE.

10:48AM 24              MR. LI:  SO WE'RE MOVING IT INTO EVIDENCE.

10:48AM 25              THE COURT:  IT'S ADMITTED IN EVIDENCE.

Page Separator – Page Intentionally Left Blank

10:46AM  1    A.    NO, NOT WHAT I KNOW.

10:46AM  2    Q.    WHAT ACTUALLY HAPPENED?

10:46AM  3              MS. KAMATH:  CALLS FOR A NARRATIVE.

10:46AM  4              THE COURT:  OVERRULED.

10:46AM  5              MS. KAMATH:  SPECULATIVE.

10:46AM  6              THE COURT:  OVERRULED.

10:46AM  7         YOU NEED TO TESTIFY FROM PERSONAL KNOWLEDGE AND EXPLAIN

10:47AM  8    WHAT -- EXPLAIN THE ANSWER TO COUNSEL'S QUESTION OF WHAT

10:47AM  9    ACTUALLY HAPPENED.

10:47AM  10             THE WITNESS:  WHAT ACTUALLY HAPPENED IS MOST OF THE

10:47AM  11   TASKS WERE PERFORMED BY QUINTARA'S TECHNICIAN, ALTHOUGH SOME OF

10:47AM  12   THE TECHNICIANS WERE PAID BY RUIFENG'S LOAN.

10:47AM  13   BY MR. LI:

10:47AM  14   Q.    SO THOSE TECHNICIAN WHO WERE PAID BY RUIFENG'S MONEY WERE

10:47AM  15   CONSIDERED AS RUIFENG'S WORK?  THAT'S THE ONLY EXTENT THAT

10:47AM  16   RUIFENG PERFORMED ITS CONTRACT?

10:47AM  17   A.    YEAH, YEAH.

10:47AM  18   Q.    OKAY.  NOW I'M GOING TO GO TO EXHIBIT 19.

10:48AM  19             THE COURT:  IS THERE GOING TO BE ANY OBJECTION TO

10:48AM  20   19?

10:48AM  21             MS. KAMATH:  NO OBJECTION.

10:48AM  22             THE COURT:  THANK YOU.  IT WILL BE ADMITTED INTO

10:48AM  23   EVIDENCE.

10:48AM  24             MR. LI:  SO WE'RE MOVING IT INTO EVIDENCE.

10:48AM  25             THE COURT:  IT'S ADMITTED IN EVIDENCE.

Page Separator – Page Intentionally Left Blank

10:49AM   1     Q.   -- FOR HIS L-1 REVOCATION CASE?

10:49AM   2     A.   YEAH.

10:49AM   3     Q.   AND SO DID MR. WANG WANT THE COLLABORATION TO CONTINUE

10:50AM   4     UNTIL THE APPEAL WAS OVER?

10:50AM   5     A.   YES, YES.

10:50AM   6     Q.   OKAY.  NOW I'M GOING TO EXHIBIT 5.

10:50AM   7          THE COURT:  CAN I ASK A QUESTION THAT MAY BE THE

10:50AM   8     JURY IS WONDERING?  I THOUGHT THE WITNESS SAID THERE WAS NO

10:50AM   9     COLLABORATION AND THE COLLABORATION AGREEMENT NEVER CAME INTO

10:50AM  10     EFFECT.

10:50AM  11          BUT NOW THE QUESTIONS AND ANSWERS ARE ASSUMING THAT THE

10:50AM  12     COLLABORATION DID, IN FACT, OCCUR.

10:50AM  13          MR. LI:  YOU WANT ME TO ASK THE QUESTION?

10:50AM  14          THE COURT:  NO.

10:50AM  15     I'M GOING TO LET YOU ANSWER.

10:50AM  16          MR. LI:  OKAY.

10:50AM  17          THE COURT:  BUT THIS IS JUST NOT AS EVIDENCE, BUT

10:50AM  18     HELP --

10:50AM  19          MR. LI:  THE COLLABORATION, YOUR HONOR, DID OCCUR,

10:50AM  20     BUT CERTAINLY DID NOT OCCUR AS THE FIRST AGREEMENT IN

10:50AM  21     DECEMBER 2013.

10:50AM  22          THE COURT:  WELL, IS THERE A SUBSEQUENT WRITTEN

10:51AM  23     COLLABORATION AGREEMENT?

10:51AM  24          MR. LI:  THERE IS THEN THIS SERVICE CONTRACT, WHICH

10:51AM  25     IS 2015, WHICH IS CLOSE TO WHAT HAPPENED.

10:51AM  1      THE COURT:  OH.  IF I'VE GOT IT RIGHT, YOU'RE SAYING

10:51AM  2   THE COLLABORATION AGREEMENT THAT IS IN WRITING WAS A NULLITY,

10:51AM  3   BUT THE SERVICE AGREEMENT THAT CAME LATER WAS A REAL THING AND

10:51AM  4   THAT WAS REFERRED TO AS A COLLABORATION?

10:51AM  5      MR. LI:  THAT'S RIGHT.  IT WAS AT LEAST PARTIALLY

10:51AM  6   CONFORM TO WHAT IN REALITY HAPPENED.

10:51AM  7      THE COURT:  ALL RIGHT.

10:51AM  8      NOW, I'M NOT SAYING THAT THAT OCCURRED OR DID NOT OCCUR,

10:51AM  9   BUT I WANT THE JURY TO FOLLOW THE THREAD OF THE POINTS THAT ARE

10:51AM  10  BEING MADE HERE.

10:51AM  11     ALL RIGHT.  CONTINUE ON.

10:51AM  12         MR. LI:  ALL RIGHT.  MOVE EXHIBIT 5 INTO EVIDENCE.

10:51AM  13         THE COURT:  ANY OBJECTION?

10:51AM  14         MS. KAMATH:  NO, YOUR HONOR.

10:51AM  15         THE COURT:  ALL RIGHT.  THANK YOU.  RECEIVED.

10:51AM  16     (PLAINTIFF'S EXHIBIT 5 WAS RECEIVED IN EVIDENCE.)

10:52AM  17     (PAUSE IN PROCEEDINGS.)

10:52AM  18  BY MR. LI:

10:52AM  19  Q.  DO YOU RECOGNIZE EXHIBIT 5, DR. SHAN?

10:52AM  20  A.  YES.

10:52AM  21  Q.  AND WHAT IS EXHIBIT 5?

10:52AM  22  A.  IT'S THE COOPERATION AGREEMENT.

10:52AM  23  Q.  AND DO YOU RECOGNIZE YOUR SIGNATURE DOWN THERE?

10:52AM  24  A.  YEAH.

10:52AM  25  Q.  AND THE DATE, WHAT IS THE DATE?

Page Separator – Page Intentionally Left Blank

10:49AM 1    Q.   -- FOR HIS L-1 REVOCATION CASE?

10:49AM 2    A.   YEAH.

10:49AM 3    Q.   AND SO DID MR. WANG WANT THE COLLABORATION TO CONTINUE

10:50AM 4    UNTIL THE APPEAL WAS OVER?

10:50AM 5    A.   YES, YES.

10:50AM 6    Q.   OKAY.  NOW I'M GOING TO EXHIBIT 5.

10:50AM 7              THE COURT:  CAN I ASK A QUESTION THAT MAY BE THE

10:50AM 8    JURY IS WONDERING?  I THOUGHT THE WITNESS SAID THERE WAS NO

10:50AM 9    COLLABORATION AND THE COLLABORATION AGREEMENT NEVER CAME INTO

10:50AM 10   EFFECT.

10:50AM 11             BUT NOW THE QUESTIONS AND ANSWERS ARE ASSUMING THAT THE

10:50AM 12   COLLABORATION DID, IN FACT, OCCUR.

10:50AM 13             MR. LI:  YOU WANT ME TO ASK THE QUESTION?

10:50AM 14             THE COURT:  NO.

10:50AM 15   I'M GOING TO LET YOU ANSWER.

10:50AM 16             MR. LI:  OKAY.

10:50AM 17             THE COURT:  BUT THIS IS JUST NOT AS EVIDENCE, BUT

10:50AM 18   HELP --

10:50AM 19             MR. LI:  THE COLLABORATION, YOUR HONOR, DID OCCUR,

10:50AM 20   BUT CERTAINLY DID NOT OCCUR AS THE FIRST AGREEMENT IN

10:50AM 21   DECEMBER 2013.

10:50AM 22             THE COURT:  WELL, IS THERE A SUBSEQUENT WRITTEN

10:51AM 23   COLLABORATION AGREEMENT?

10:51AM 24             MR. LI:  THERE IS THEN THIS SERVICE CONTRACT, WHICH

10:51AM 25   IS 2015, WHICH IS CLOSE TO WHAT HAPPENED.

10:51AM 1      THE COURT:  OH.  IF I'VE GOT IT RIGHT, YOU'RE SAYING

10:51AM 2   THE COLLABORATION AGREEMENT THAT IS IN WRITING WAS A NULLITY,

10:51AM 3   BUT THE SERVICE AGREEMENT THAT CAME LATER WAS A REAL THING AND

10:51AM 4   THAT WAS REFERRED TO AS A COLLABORATION?

10:51AM 5      MR. LI:  THAT'S RIGHT.  IT WAS AT LEAST PARTIALLY

10:51AM 6   CONFORM TO WHAT IN REALITY HAPPENED.

10:51AM 7      THE COURT:  ALL RIGHT.

10:51AM 8      NOW, I'M NOT SAYING THAT THAT OCCURRED OR DID NOT OCCUR,

10:51AM 9   BUT I WANT THE JURY TO FOLLOW THE THREAD OF THE POINTS THAT ARE

10:51AM 10  BEING MADE HERE.

10:51AM 11     ALL RIGHT.  CONTINUE ON.

10:51AM 12     MR. LI:  ALL RIGHT.  MOVE EXHIBIT 5 INTO EVIDENCE.

10:51AM 13     THE COURT:  ANY OBJECTION?

10:51AM 14     MS. KAMATH:  NO, YOUR HONOR.

10:51AM 15     THE COURT:  ALL RIGHT.  THANK YOU.  RECEIVED.

10:51AM 16     (PLAINTIFF'S EXHIBIT 5 WAS RECEIVED IN EVIDENCE.)

10:52AM 17     (PAUSE IN PROCEEDINGS.)

10:52AM 18  BY MR. LI:

10:52AM 19  Q.   DO YOU RECOGNIZE EXHIBIT 5, DR. SHAN?

10:52AM 20  A.   YES.

10:52AM 21  Q.   AND WHAT IS EXHIBIT 5?

10:52AM 22  A.   IT'S THE COOPERATION AGREEMENT.

10:52AM 23  Q.   AND DO YOU RECOGNIZE YOUR SIGNATURE DOWN THERE?

10:52AM 24  A.   YEAH.

10:52AM 25  Q.   AND THE DATE, WHAT IS THE DATE?

10:52AM  1    A.    IT'S FEBRUARY 14TH, 2019.

10:52AM  2    Q.    AND WHAT WAS THE CIRCUMSTANCES UNDER WHICH THIS EXHIBIT AT

10:53AM  3    5 WAS SIGNED?

10:53AM  4    A.    THIS IS AROUND THE TIME THAT WE ALREADY WANT TO END THIS

10:53AM  5    COLLABORATION, LIKE THE SERVICE AGREEMENT WITH MR. WANG, AND HE

10:53AM  6    PRINTED OUT THE OLD JOINT VENTURE IDEA.

10:53AM  7          THIS IS ACTUALLY VERY SIMILAR TO THE COPY THAT YOU SHOWED

10:53AM  8    ME IN 2013.  BUT THIS NEVER -- NOTHING HAPPENED.

10:53AM  9    Q.    SO WAS HE TELLING YOU OR ASKING YOU THAT WE COULD END THIS

10:53AM 10    CONTRACT, SERVICE CONTRACT BASED COLLABORATION?

10:53AM 11    A.    AND THE CONTRACT SERVICE, YEAH.

10:53AM 12    Q.    BUT WE SHOULD START A REAL JOINT VENTURE?

10:53AM 13    A.    YEAH, SOMETHING LIKE THAT.

10:53AM 14    Q.    OKAY.  AND YOU SEE NUMBER 3, PARAGRAPH 3, IT SAYS,

10:53AM 15    "PARTY A ACCOUNTS FOR 51 PERCENT OF THE SHARES OF THE NEW

10:54AM 16    COMPANY."

10:54AM 17          DO YOU SEE THAT?

10:54AM 18    A.    YES.

10:54AM 19    Q.    AND WHAT IS THE NEW COMPANY?

10:54AM 20    A.    THERE'S NO NEW COMPANY.  JUST NO NEW COMPANY.

10:54AM 21    Q.    THAT'S A COMPANY TO BE FORMED IN THE FUTURE?

10:54AM 22    A.    YES.

10:54AM 23    Q.    OKAY.  WAS THAT COMPANY EVER FORMED WITH A JOINT OWNERSHIP

10:54AM 24    BETWEEN QUINTARA AND RUIFENG?

10:54AM 25    A.    NEVER.

Page Separator – Page Intentionally Left Blank

```
1
2
3                    CERTIFICATE OF REPORTERS
4
5
6
7         WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE
8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10   HEREBY CERTIFY:
11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13   ABOVE-ENTITLED MATTER.
14
15
16   _____
     IRENE RODRIGUEZ, CSR, CRR
17   CERTIFICATE NUMBER 8076
18
19   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
20   CERTIFICATE NUMBER 9595
21        DATED:  JULY 10, 2023
22
23
24
25
```

# Exhibit B



# Notice of Entry of Appearance
## as Attorney or Accredited Representative
**Department of Homeland Security**

**DHS
Form G-28**
OMB No. 1615-0105
Expires 02/29/2016

---

## Part 1. Information About Attorney or Accredited Representative

Name and Address of Attorney or Accredited Representative

**1.a.** Family Name *(Last Name)* | HU

**1.b.** Given Name *(First Name)* | HENRY

**1.c.** Middle Name | R

**2.** Name of Law Firm or Recognized Organization
LAW OFFICES OF HENRY R HU

**3.** Name of Law Student or Law Graduate

**4.** State Bar Number | CA 164165

**5.a.** Street Number | 520

**5.b.** Street Name | S EL CAMINO REAL

**5.c.** Apt. ☐ Ste. ☒ Flr. ☐ | 510

**5.d.** City or Town | SAN MATEO

**5.e.** State | CA   **5.f.** Zip Code | 94402

**5.g.** Postal Code

**5.h.** Province

**5.i.** Country
United States

**6.** Daytime Phone Number ( 6 5 0 ) 6 8 5 - 8 1 8 9

**7.** E-Mail Address of Attorney or Accredited Representative
lawhenryhu@gmail.com

## Part 2. Eligibility Information For Attorney or Accredited Representative

(Check applicable items(s) below)

**1.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following State(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia.

**1.a.** CALIFORNIA

**1.b.** I *(choose one)* ☒ **am not** ☐ **am** subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law. (If you are subject to any order(s), explain fully in the space below.)

**1.b.1.**

**2.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals pursuant to 8 CFR 292.2. Provide the name of the organization and the expiration date of accreditation.

**2.a.** Name of Recognized Organization

**2.b.** Date Accreditation expires
*(mm/dd/yyyy)* ▶

**3.** ☐ I am associated with

**3.a.**

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative is at his or her request. If you check this item, also complete **number 1 (1.a. - 1.b.1.) or number 2 (2.a. - 2.b.)** in **Part 2** *(whichever is appropriate)*.

**4.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2)(iv).



Form G-28 02/28/13 N

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
**TRIAL EXHIBIT 066**
Case No. 3:20-cv-04808
Date Entered_____
By_____
Deputy Clerk

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY
HU_00001574

## Part 3. Notice of Appearance as Attorney or Accredited Representative

This appearance relates to immigration matters before (select one):

1. [X] USCIS - List the form number(s)

1.a. `I-907`

2. [ ] ICE - List the specific matter in which appearance is entered

2.a.

3. [ ] CBP - List the specific matter in which appearance is entered

3.a.

**I hereby enter my appearance as attorney or accredited representative at the request of:**

4. **Select only one:** [ ] Applicant  [X] Petitioner
   [ ] Respondent (ICE, CBP)

**Name of Applicant, Petitioner, or Respondent**

5.a. Family Name *(Last Name)*

5.b. Given Name *(First Name)*

5.c. Middle Name

5.d. Name of Company or Organization, if applicable
   `Ruifeng Biztech Inc`

**NOTE:** Provide the mailing address of Petitioner, Applicant, or Respondent and not the address of the attorney or accredited representative, **except when a safe mailing address is permitted** on an application or petition filed with Form G-28.

6.a. Street Number and Name  `2600 Hilltop Dr Bldg B`

6.b. Apt. [ ]  Ste. [X]  Flr. [ ]  `333`

6.c. City or Town  `Richmond`

6.d. State `CA`   6.e. Zip Code `94806`

7. Provide A-Number and/or Receipt Number

Pursuant to the Privacy Act of 1974 and DHS policy, I hereby consent to the disclosure to the named Attorney or Accredited Representative of any record pertaining to me that appears in any system of records of USCIS, ICE, or CBP.

8.a. Signature of Applicant, Petitioner, or Respondent

8.b. Date  *(mm/dd/yyyy)* ▶  `3 5 14`

## Part 4. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before the Department of Homeland Security. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

1. Signature of Attorney or Accredited Representative

2. Signature of Law Student or Law Graduate

3. Date  *(mm/dd/yyyy)* ▶  `3/5/2014`

## Part 5. Additional Information

1.

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001575

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Form I-907, Request for
# Premium Processing Service

**START HERE - Type or Print** (Use black ink)

## Part 1. Information About You *(Person filing this petition)*

Family Name *(Last Name)*      Given Name *(First Name)*      Full Middle Name

**If filed on behalf of a company:** Company or Business Named in the Related Case

Riofemg Biztech Inc.

**Mailing Address** - Street Number and Name / P.O. Box Number

2600 Hilltop Drive, Building B, Suite 333

**Company Contact Information:**

Name of Company Contact          Title/Position

Qun Shan                         Corporate Secretary

City           State/Province    Zip/Postal Code   Country

Richmond       CA                94806             USA

IRS Tax # *(if any)*

46-4255570

**You** *(the person submitting this request):*

☐ Are the petitioner who is filing or has filed a petition eligible for Premium Processing.

☒ Are the attorney or accredited representative for the petitioner who is filing or has filed a petition eligible for Premium Processing. *(Complete and submit Form G-28, if Form G-28 has not been submitted with the petition.)*

☐ Are the applicant who is filing or has filed an application eligible for Premium Processing.

☐ Are the attorney or accredited representative for the applicant who is filing or has filed an application eligible for Premium Processing. *(Complete and submit Form G-28, if Form G-28 has not been submitted with the application.)*

Phone Number *(Area/Country Code)*      Fax Number *(Area/Country Code)*      E-Mail Address *(if any)*

(650) 685-8189                          (650) 685-8190                        lawhenryhu@gmail.com

### For USCIS Use Only

| Request Physically Received by USCIS | Receipt |
|---|---|
| Date | |
| Date | |
| Returned | |
| Date | |
| Date | |
| Resubmitted | |
| Date | |
| Date | |

**To Be Completed by**
*Attorney or Representative, if any*

☒ Fill in box if Form G-28 is attached to represent the applicant.

ATTY State License #

CA 164165

## Part 2. Information About Request

**1.** Form Number of Related Petition/Application

I-129

**2.** Receipt Number of Related Petition/Application

**3.** Classification/Eligibility Requested

L-1A

**4.** Petitioner/Applicant in the Relating Case

Ruifeng Biztech Inc.

**5.** Beneficiary in the Relating Case

Gangyou Wang



Form I-907 (Rev. 11/23/10) Y

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                                    HU_00001576

## Part 3. Original Signature

I understand that U.S. Citizenship and Immigration Services (USCIS) will issue a refund of the Premium Processing fee to the addressee above in **Part 1** of this request if USCIS does not take an action on the relating premium processing eligible case within 15 calendar days after this request has been physically received at the appropriate USCIS office. Case actions include a referral for investigation of suspected fraud or misrepresentation, or:

The issuance of:

    **1.** An approval notice;

    **2.** A request for evidence; or

    **3.** A notice of intent to deny.

I certify, under penalty of perjury under the laws of the United States of America, that the information provided with this request is all true and correct. USCIS may obtain any information from the records of the related case that USCIS needs to determine eligibility for the benefit being sought.

**Signature**

**Title** *(if applicable)*
Attorney at Law

**Print Your Name**
Henry R. Hu, Esq.

**Date** *(mm/dd/yyyy)*
3 / 5 / 2014

**Company Name and Address**
Ruifeng Biztech Inc. 2600 Hilltop Dr., Building B Suite 333, Richmond, CA 94086

**Daytime Phone Number** *(Area Code and Number)*
(510) 685-4066

## Part 4. Original Signature of Attorney or Accredited Representative *(Note if attorney is signing above in Part 3)*

I declare that I prepared this application at the request of the above person, and it is based on all information of which I have knowledge.

☒ Same individual as signing above in **Part 3**. *(If this box is checked, provide your firm name and address and daytime phone number below and submit Form G-28, if Form G-28 has not been submitted with the petition or application. If this box is not checked, provide the requested information below.)*

**Signature**

**Print Your Name**
Henry R. Hu, Esq.

**Date** *(mm/dd/yyyy)*
3 / 5 / 2014

**Firm Name and Complete Address**
Law Offices of Henry R. Hu, 520 S El Camino Real, Suite 510, San Mateo, CA 94402

**Daytime Phone Number** *(Area Code and Number)*
(650) 685-8189



Form I-907 (Rev. 11/23/10) Y Page 2

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



## Notice of Entry of Appearance
## as Attorney or Accredited Representative
### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 02/29/2016

## Part 1. Information About Attorney or Accredited Representative

Name and Address of Attorney or Accredited Representative

**1.a.** Family Name *(Last Name)* : HU

**1.b.** Given Name *(First Name)* : HENRY

**1.c.** Middle Name : R

**2.** Name of Law Firm or Recognized Organization
LAW OFFICES OF HENRY R HU

**3.** Name of Law Student or Law Graduate

**4.** State Bar Number : CA 164165

**5.a.** Street Number : 520

**5.b.** Street Name : S EL CAMINO REAL

**5.c.** Apt. ☐ Ste. ☒ Flr. ☐ 510

**5.d.** City or Town : SAN MATEO

**5.e.** State : CA **5.f.** Zip Code : 94402

**5.g.** Postal Code :

**5.h.** Province :

**5.i.** Country : United States

**6.** Daytime Phone Number ( 650 ) 685 - 8189

**7.** E-Mail Address of Attorney or Accredited Representative
lawhenryhu@gmail.com

## Part 2. Eligibility Information For Attorney or Accredited Representative

(Check applicable items(s) below)

**1.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following State(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia.

**1.a.** CALIFORNIA

**1.b.** I *(choose one)* ☒ am not ☐ am subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law. (If you are subject to any order(s), explain fully in the space below.)

**1.b.1.**

**2.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals pursuant to 8 CFR 292.2. Provide the name of the organization and the expiration date of accreditation.

**2.a.** Name of Recognized Organization

**2.b.** Date Accreditation expires *(mm/dd/yyyy)* ▶

**3.** ☐ I am associated with

**3.a.**

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative is at his or her request. If you check this item, also complete **number 1 (1.a. - 1.b.1.) or number 2 (2.a. - 2.b.) in Part 2** *(whichever is appropriate).*

**4.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2)(iv).



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001578

## Part 3. Notice of Appearance as Attorney or Accredited Representative

This appearance relates to immigration matters before (select one):

1. ☒ USCIS - List the form number(s)
1.a. `I-129`

2. ☐ ICE - List the specific matter in which appearance is entered
2.a. [ ]

3. ☐ CBP - List the specific matter in which appearance is entered
3.a. [ ]

**I hereby enter my appearance as attorney or accredited representative at the request of:**

4. Select only one: ☐ Applicant ☒ Petitioner
☐ Respondent (ICE, CBP)

**Name of Applicant, Petitioner, or Respondent**

5.a. Family Name *(Last Name)* [ ]
5.b. Given Name *(First Name)* [ ]
5.c. Middle Name [ ]
5.d. Name of Company or Organization, if applicable
`Ruifeng Biztech Inc`

**NOTE:** Provide the mailing address of Petitioner, Applicant, or Respondent and not the address of the attorney or accredited representative, **except when a safe mailing address is permitted** on an application or petition filed with Form G-28.

6.a. Street Number and Name `2600 Hilltop Dr Bldg B`
6.b. Apt. ☐ Ste. ☒ Flr. ☐ `333`
6.c. City or Town `Richmond`
6.d. State `CA` 6.e. Zip Code `94806`

7. Provide A-Number and/or Receipt Number
[ ]

Pursuant to the Privacy Act of 1974 and DHS policy, I hereby consent to the disclosure to the named Attorney or Accredited Representative of any record pertaining to me that appears in any system of records of USCIS, ICE, or CBP.

8.a. Signature of Applicant, Petitioner, or Respondent
*[signature]*

8.b. Date *(mm/dd/yyyy)* ▶ `3/5/14`

## Part 4. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before the Department of Homeland Security. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

1. Signature of Attorney or Accredited Representative
*[signature]*

2. Signature of Law Student or Law Graduate
[ ]

3. Date *(mm/dd/yyyy)* ▶ `3/5/2014`

## Part 5. Additional Information

1. _____

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001579

OMB No. 1615-0009; Expires 10/31/2013

# I-129, Petition for a
## Nonimmigrant Worker

Department of Homeland Security
U.S. Citizenship and Immigration Services

---

**START HERE - Type or print in black ink.**

## Part 1. Petitioner Information

*(If the employer is an individual, complete **Number 1**; Organizations complete **Number 2**.) Use the mailing address of the petitioner.*

| | Receipt |
|---|---|

1. Legal Name of Employer:

   **a.** Last Name *(Family Name)*

   [                    ]

   **b.** First Name *(Given Name)*      **c.** Full Middle Name

   [            ]                  [            ]

2. Company or Organization:

   Name of Company or Organization

   Ruifeng Biztech Inc.

3. Mailing Address:

   **a.** C/O: *(In Care Of, if any)*

   Qun Shan, Corporate Secretary

   **b.** Street Number and Name      **c.** Suite/Apt. Number

   2600 Hilltop Drive, Building B      333

   **d.** City      **e.** State/Province

   Richmond      CA

   **f.** Country      **g.** Zip/Postal Code

   USA      94806

   **h.** Telephone Number (include area code) *(Do not leave spaces or type any special characters)*

   (510) 685-4066

   **i.** E-Mail Address      **j.** Federal Employer Identification Number

   bwgs@163.com      46-4255570

   **k.** Individual Tax Number      **l.** Social Security Number

   N/A      N/A

---

Class: _____

# of Workers: _____

Job Code: _____

Validity Dates: _____

From: _____

To: _____

☐ **Classification Approved**
   ☐ Consulate/POE/PFI Notified At
   ☐ Extension Granted
   ☐ COS/Extension Granted

**Partial Approval** *(explain)*

**Action Block**

---



Form I-129 (Rev. 11/23/10)N

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001580

## Part 2. Information About This Petition *(See instructions for fee information.)*

**1. Requested Nonimmigrant Classification** *(Write classification symbol):*  L-1A

**2. Basis for Classification** *(Check one):*

[X] **a.** New employment.

[ ] **b.** Continuation of previously approved employment without change with the same employer.

[ ] **c.** Change in previously approved employment.

[ ] **d.** New concurrent employment.

[ ] **e.** Change of employer.

[ ] **f.** Amended petition.

**3.** Provide the most recent petition/application receipt number for the beneficiary. If none exists, indicate "N/A."

N/A

**4. Requested Action** *(Check one):*

[ ] **a.** Notify the office in **Part 4** so each beneficiary can obtain a visa or be admitted. (**NOTE:** *A petition is not required for an E-1, E-2, H-1B1 Chile/Singapore, or TN visa.*)

[X] **b.** Change each beneficiary's status and extend their stay since he, she, or they are all now in the U.S. in another status *(see instructions for limitations)*. This is available only where you check "New Employment" in **Item 2**, above.

[ ] **c.** Extend the stay of each beneficiary since he, she, or they now hold this status.

[ ] **d.** Amend the stay of each beneficiary since he, she, or they now hold this status.

[ ] **e.** Extend the status of a nonimmigrant classification based on a Free Trade Agreement. *(See Free Trade Supplement for TN and H1B1 to Form I-129.)*

[ ] **f.** Change status to a nonimmigrant classification based on a Free Trade Agreement. *(See Free Trade Supplement for TN and H1B1 to Form I-129.)*

**5. Total number of workers in petition** *(See instructions relating to when more than one worker can be included.):*  1



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                    HU_00001581

## Part 3. Beneficiary Information: Information about the beneficiary/beneficiaries you are filing for. *Complete the blocks below. Use the continuation sheet to name each beneficiary included in this petition.*

**1.** If an Entertainment Group, Give the Group Name

N/A

**a.** Family Name *(Last Name)*

WANG

**b.** Given Name *(First Name)*

Gangyou

**c.** Full Middle Name

**d.** All Other Names Used *(include aliases, maiden name and names from all previous marriages)*

None

**e.** Date of Birth *(mm/dd/yyyy)*

02/13/1963

**f.** Gender

☒ Male  ☐ Female

**g.** U.S. Social Security Number *(if any)*

**h.** A-Number *(if any)*

A-

**i.** Country of Birth

China

**j.** Province of Birth

Heilongjiang

**k.** Country of Citizenship

China

**2.** If in the United States, complete the following:

**a.** Date of Last Arrival *(mm/dd/yyyy)*

02/02/2014

**b.** I-94 Number *(Arrival Departure Document)*

18775099930

**c.** Current Nonimmigrant Status

B2

**d.** Date Status Expires *(mm/dd/yyyy) or D/S*

08/01/2014

**e.** Student & Exchange Visitor Information System (SEVIS) Number *(if any)*

**f.** Employment Authorization Document (EAD) Number *(if any)*

**g.** Passport Number

G33673387

**h.** Date Passport Issued *(mm/dd/yyyy)*

03/13/2009

**i.** Date Passport Expires *(mm/dd/yyyy)*

03/12/2019

**j.** Current U.S. Address (if applicable)

922 Taylor Street, Albany, CA 94706

## Part 4. Processing Information

**1.** If the beneficiary or beneficiaries named in **Part 3** is/are outside the United States or a requested extension of stay or change of status cannot be granted, state the U.S. consulate or inspection facility you want notified if this petition is approved.

**a.** Type of Office *(Check one)*:  ☒ Consulate  ☐ Pre-flight inspection  ☐ Port of Entry

**b.** Office Address *(City)*

Shenyang

**c.** U.S. State or Foreign Country

China

**d.** Beneficiary's Foreign Address

1 Xusheng St., Xiangfang District, Harbin, Heilongjiang, China



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001582

## Part 4. Processing Information *(Continued)*

**2.** Does each person in this petition have a valid passport?

☐ Not required to have passport          ☐ No - Go to **Page 7, Part 9** and write your explanation          ☒ Yes

| | | | |
|---|---|---|---|
| **3.** | Are you filing any other petitions with this one? | ☒ No | ☐ Yes - How many? ☐ |
| **4.** | Are applications for replacement/initial I-94s being filed with this petition? | ☒ No | ☐ Yes - How many? ☐ |
| **5.** | Are applications by dependents being filed with this petition? | ☐ No | ☒ Yes - How many? 2 |
| **6.** | Is any beneficiary in this petition in removal proceedings? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |
| **7.** | Have you ever filed an immigrant petition for any beneficiary in this petition? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |

**8.** If you indicated you were filing a new petition in **Part 2** within the past 7 years, has any beneficiary in this petition:

| | | |
|---|---|---|
| **a.** Ever been given the classification you are now requesting? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |
| **b.** Ever been denied the classification you are now requesting? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |

| | | | |
|---|---|---|---|
| **9.** | Have you ever previously filed a petition for this beneficiary? | ☒ No | ☐ Yes - explain on **Page 7, Part 9** |
| **10.** | If you are filing for an entertainment group, has any beneficiary in this petition not been with the group for at least 1 year? | ☐ No | ☐ Yes - explain on **Page 7, Part 9** |
| **11a.** | Has any beneficiary in this petition ever been a J-1 exchange visitor or J-2 dependent of a J-1 exchange visitor? | ☒ No | ☐ Yes |

**11b.** If yes to **11a,** provide the dates the beneficiary maintained status as a J-1 exchange visitor or J-2 dependent. Also, provide evidence of this status by attaching a copy of either a DS-2019, Certificate of Eligibility for Exchange Visitor status, a Form IAP-66, or a copy of the passport that includes the J visa stamp.

N/A

---

## Part 5. Basic Information About the Proposed Employment and Employer *(Attach the supplement relating to the classification you are requesting.)*

**1.** Job Title

President

**2.** LCA or ETA Case Number

N/A

**3.** Address where the beneficiary(es) will work if different from address in **Part 1.** *(Street number and name, city/town, state, zip code)*

same as in part 1

**4.** Is an itinerary included with the petition? ☒ No ☐ Yes     **5.** Will the beneficiary work off-site? ☐ No ☒ Yes


HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY          HU_00001583

## Part 5. Basic Information About the Proposed Employment and Employer (*Attach the supplement relating to the classification you are requesting.*) *(Continued)*

6. Will the beneficiary(ies) work exclusively in the CNMI?  ☒ No   ☐ Yes

7. Is this a full-time position?

   ☐ No   ☒ Yes   If "No," Hours per week: [          ]

8. Wages per week or per year:

   $100,000/yr.

9. Other Compensation *(Explain)*

   None

10. Dates of intended employment *(mm dd yyyy)*:   From: 03/18/2014   To: 03/17/2017

11. Type of Business

    Biotech products distribution, international trading and investment, etc.

| 12. Year Established | 13. Current Number of Employees in the U.S. | 14. Gross Annual Income | 15. Net Annual Income |
|---|---|---|---|
| 2013 | 10-14 proj | new company | new company |

## Part 6. Certification Regarding the Release of Controlled Technology or Technical Data to Foreign Persons in the United States

(For H-1B, H-1B1 Chile/Singapore, L-1, and O-1A petitions only. This section of the form is not required for all other classifications. See **Page 3** of the Instructions before completing this section.)

**Check Box 1 or Box 2 as appropriate:**

With respect to the technology or technical data the petitioner will release or otherwise provide access to the beneficiary, the petitioner certifies that it has reviewed the Export Administration Regulations (EAR) and the International Traffic in Arms Regulations (ITAR) and has determined that:

☒ 1. A license is not required from either U.S. Department of Commerce or the U.S. Department of State to release such technology or technical data to the foreign person; or

☐ 2. A license is required from the U.S. Department of Commerce and/or the U.S. Department of State to release such technology or technical data to the beneficiary and the petitioner will prevent access to the controlled technology or technical data by the beneficiary until and unless the petitioner has received the required license or other authorization to release it to the beneficiary.


HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001584

## Part 7.  Signature  *Read the information on penalties in the instructions before completing this section.*

I certify, under penalty of perjury that this petition and the evidence submitted with it are true and correct to the best of my knowledge. I authorize the release of any information from my records, or from the petitioning organization's records that U.S. Citizenship and Immigration Services needs to determine eligibility for the benefit being sought. I recognize the authority of USCIS to conduct audits of this petition using publicly available open source information. I also recognize that supporting evidence submitted may be verified by USCIS through any means determined appropriate by USCIS, including but not limited to, on-site compliance reviews.

If filing this petition on behalf of an organization, I certify that I am authorized to do so by the organization.

**Signature**

**Daytime Phone Number** *(Area/Country Code)*

510-685-4066

**Print Name**

Qun Shan, Corporate Secretary

**Date** *(mm/dd/yyyy)*

3/5/14

**NOTE:** If you do not completely fill out this form and the required supplement, or fail to submit required documents listed in the instructions, the person(s) filed for may not be found eligible for the requested benefit and this petition may be denied.

## Part 8.  Signature of Person Preparing Form, If Other Than Above

I declare that I prepared this petition at the request of the above person and I certify that it is true and correct to the best of my knowledge.

**Signature**

**Daytime Phone Number** *(Area/Country Code)*

650-685-8189

**Print Name**

Henry R. Hu, Esq.

**Date** *(mm/dd/yyyy)*

3/5/2014

**Firm Name and Address**

Law Offices of Henry R. Hu
520 S El Camino Real, Suite 510, San Mateo, CA 94402



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001585

## Part 9.  Explanation Page

N/A

**Signature**

**Print Name**

Qun Shan, Corporate Secretary

**Date** *(mm/dd/yyyy)*

3/5/14

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001586

OMB No.1615-0009. Expires 10/31/2013

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**L Classification**
**Supplement to Form I-129**

| | |
|---|---|
| 1. Name of the petitioner | 2. Name of the beneficiary |
| Ruifeng Biztech Inc. | Gangyou Wang |

3. This petition is *(Check one)*:

    ☒ **a.** An individual petition    ☐ **b.** A blanket petition

4a. Does the petitioner employ 50 or more individuals in the U.S.?    ☒ No  ☐ Yes

    **b.** If yes, are more than 50% of those employees in H-1B or L nonimmigrant status?    ☐ No  ☐ Yes

---

## Section 1.    Complete This Section If Filing For An Individual Petition

1. Classification sought *(Check one)*:

    ☒ **a.** L-1A manager or executive    ☐ **b.** L-1B specialized knowledge

2. List the beneficiary's and any dependent family member's prior periods of stay in an H or L classification in the United States for the last **7** years. Be sure to list only those periods in which the beneficiary and/or family members were physically present in the U.S. in an H or L classification. **NOTE:** Submit photocopies of Forms I-94, I-797 and/or other USCIS issued documents noting these periods of stay in the H or L classification. If more space is needed, go to **Page 7, Part 9**.

| Subject's Name | Period of Stay *(mm/dd/yyyy)* | |
|---|---|---|
| | From | To |
| Gangyou Wang | None | |
| | | |
| | | |
| | | |

3. Name of employer abroad

    Heilongjiang Ruixing Hongye Trade Co., Ltd.

4. Address of employer abroad *(Street number and name)*

| Street Number and Name | City/Town |
|---|---|
| 1-1-1-3 Xusheng Street, Xiangfang Dist. | Harbin |

| State/Province | Country | Zip/Postal Code |
|---|---|---|
| Heilongjiang | China | |

5. Dates of beneficiary's employment with this employer. Explain any interruptions in employment.

| Dates of Employment *(mm/dd/yyyy)* | | Explanation of Interruptions |
|---|---|---|
| From | To | |
| 11/2011 | present | No interruption. |
| | | |
| | | |
| | | |
| | | |



Form I-129 Supplement L (Rev. 11/23/10)N Page 20

---

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY    HU_00001587

## Section 1. Complete This Section If Filing For An Individual Petition *(Continued)*

**6.** Description of the beneficiary's duties abroad for the 3 years preceding the filing of the petition. (If the beneficiary is currently employed by the petitioner, describe the beneficiary's duties abroad for the 3 years preceding the beneficiary's admission to the U.S.)

> As President and Board Chairman, Mr. Wang presides over board meetings, confers with VPs and other managers to compare notes and discusses issues pertaining to company's business. He develops overall corporate business, financial and marketing operational and managerial plans, policies and decisions such as reviewing budgetary, business development and marketing progress reports, approving or disapproving company budgets, profit distribution, added investment, business plans in collaboration with accounting and financial professionals, issuing directives or memos to the department managers, approving or disapproving reviewing periodic business plans and other major documents submitted by subordinate managers for his review. He adjusts, revises and perfects company business development plans, strategies and policies, and then presented them for circulation among the company managers to solicit their inputs. He exercises corporate major personnel authorities regarding the hiring, promotion and/or dismissal of department managers and officers; and regularly evaluates their job performance. He reviews and directs major financial operations to evaluate company overall performance; and reviews and approves corporate major financial and tax statements to ensure that company financial objectives are achieved. He also develops and conducts major corporate public relations and promotion strategies, policies and procedures for its business operations; and performs other managerial duties.

**7.** Description of the beneficiary's proposed duties in the United States.

> Mr. Wang will establish company's marketing, financial, budgetary, investment, and business plans and policies for the corporate management and department managers to implement. He will direct the department managers in the establishment and improvement of systematized company's business financing, procurement, purchase, export, promotion, marketing and distribution of products. He will direct company officers in planning business objectives and financial goals to maximize company's initial capital investment. He will be formulating hiring plans and hire department managers and initial employees for the company's setup and business operations. He will then supervise and evaluate performance of department managers. He will allocate supervisory responsibilities to department managers on a regular basis according to the company general business plan. He will regularly review, comment and approve or disapprove business activity progress reports and documents submitted to him by department managers; etc

**8.** Summary of the beneficiary's education and work experience.

> | | |
> |---|---|
> | 09/1982-07/1966: | Graduated from Heilongjiang University, China |
> | 08/1986-01/1988 | Clerk, Jiulong Commerce and Trading Co., Harbin, Heilongjiang |
> | 02/1988-01/1997 | Deputy Manager, Jiulong Commerce and Trading Co., Harbin, Heilongjiang |
> | 02/1997-02/2002 | President, Tengfei Salt Field |
> | 03/2002-06/2003 | Director, Harbin Hei Auo Trade Co., Ltd. |
> | 07/2003-01/2006 | President, Harbin Longxing Materials Supplying Department; |
> | 02/2006-07/2008 | President, Heilongjiang Longxing Weiye Trade Co., Ltd |
> | 08/2008-09/2011 | President, Heilongjiang Longrui Trade Co., Ltd |
> | 10/2011-Present | President/Board Chairman, Heilongjiang Rui Xing Hongye Trade Co.,Ltd |



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001588

## Section 1. Complete This Section If Filing For An Individual Petition *(Continued)*

**9.** The U.S. company is to the company abroad: *(Check one)*

☐ **a.** Parent    ☐ **b.** Branch    ☒ **c.** Subsidiary    ☐ **d.** Affiliate    ☐ **e.** Joint Venture

**10.** Describe the stock ownership and managerial control of each company that has a qualifying relationship. Provide the Federal Employer Identification Number for each U.S. company that has a qualifying relationship.

| Company stock ownership and managerial control of each company that has a qualifying relationship | Federal Employer Identification Number for each U.S. company that has a qualifying relationship |
|---|---|
| Heilongjiang Ruixing Hongye Trade Co.,Ltd. in China owns 100% | 46-4255570 (Rifeng |
| of all the outstanding shares of the US petitioner: Ruifeng | Biztech Inc.) |
| Biztech Inc., and has full managerial control of it. | |
| | |
| | |

**11.** Do the companies currently have the same qualifying relationship as they did during the 1-year period of the alien's employment with the company abroad?

☐ No *(Attach explanation)*      ☒ Yes

**12.** Is the beneficiary coming to the United States to open a new office?

☐ No *(Attach explanation)*      ☒ Yes *(Attach explanation)*

**Please see** attached Business Plan

**13.** If you are seeking L-1B specialized knowledge status for an individual, answer the following question:

**a.** Will the beneficiary be stationed primarily offsite (at the worksite of an employer other than the petitioner or its affiliate, subsidiary, or parent)?

☐ No      ☐ Yes

If you answered "Yes" to the preceding question, describe how and by whom the beneficiary's work will be controlled and supervised. Include a description of the amount of time each supervisor is expected to control and supervise the work. Use an attachment if needed.

```



```

If you answered "Yes" to the preceding question, also describe the reasons why placement at another worksite outside the petitioner, subsidiary or parent is needed. Include a description of how the beneficiary's duties at another worksite relate to the need for the specialized knowledge he or she possesses. Use an attachment if needed.

```



```



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY      HU_00001589

## Section 2.    Complete This Section If Filing A Blanket Petition

List all U.S. and foreign parent, branches, subsidiaries and affiliates included in this petition. *(Attach a separate sheet(s) of paper if additional space is needed.)*

| Name and Address | Relationship |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

## Section 3.    Additional Fees

**NOTE:** On or after **March 8, 2005**, a U.S. employer seeking initial approval of L nonimmigrant status for a beneficiary, or seeking approval to employ an L nonimmigrant currently working for another U.S. employer, must submit an additional **$500** fee. This additional **$500** Fraud Prevention and Detection fee was mandated by the provisions of the H-1B Visa Reform Act of 2004.

For petitions postmarked on or after August 14, 2010, through September 30, 2014, an additional fee of $2,250 must be submitted if you responded "yes" to both questions **4a** and **4b** at the top of this supplement. This $2,250 fee was mandated by the provisions of Public Law 111-230 and must be submitted by separate check or money order.

**These fees, when applicable, may not be waived.** You must include payment of the applicable fee(s) with your submission of this form. Failure to submit the fee(s), when required, will result in rejection or denial of your submission. *Each of these fee(s), if applicable, must be paid by separate check(s) or money order(s).*


HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001590

(Certified Translation)

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address: 1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049
Email: bwgs@163.com
Company Web: www.wgyrf.com
Telephone: 0086-451-87964388

## Business Plan
## of
## Heilongjiang Rui Xing Hongye Trade Co., Ltd.

### 1. Profile of Heilongjiang Rui Xing Hongye Trade Co., Ltd. - Investor

Heilongjiang Rui Xing Hongye Trade Co., Ltd. is a business and trade company established and registered with Harbin Industry and Commerce Administration based on the Law of Business Administration of the People's Republic of China and the Enterprise Promotion Law of the People's Republic of China. It was established on October 24, 2011 with registered capital of 1 million yuan. The company is specialized in oil business and trade, scientific and technological development. As of 2013, the company has 36 permanent employees with sales revenues of ¥72233265.85 yuan, profit of ¥6510289.32 yuan, and the company's total assets of ¥60000000.00 yuan.

Main business:

Petroleum products - heavy oil, the company is one of the best suppliers of Nestle China who primarily source and purchase heavy oil from my company.

Coal chemical products – our company is the most trusted supplier of coal tar to Guhoning Carbon Co., Ltd. In Inner Mongolia.

Research Achievements – our company has developed the patented technology of non-barrier accessible wired or wireless phones and other patented products, which is the world's most advanced, simple, easy to remember, and the most efficient means of communication. It was granted a patent certificate in 2011 by China patent Bureau.

### 2. The purpose of setting up our subsidiary

In order to achieve the sustainable development needs of the company and strengthen communication and exchanges with corporate customers in the U.S., as well as to expand the company's operations in the United States, Heilongjiang Xing Rui Hongye Trade Co., Ltd. has set up a wholly-owned subsidiary - "Ruifeng Biztech Inc." in December 2013 which is located at 2600 HILLTOP DRIVE, BUILDNG B. SUITE 333, RICHMOND, CA 94806 and is dealing in biotechnology, DNA sequencing, oil commerce and other business activities.

### 3. Subsidiary's development plans

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001591

(A) Establish a sound corporate governance structure

President of the newly formed subsidiary will be responsible for the implementation of the corporate system, which consists of the business, biotechnology and financial administration departments, and plans to recruit fourteen employees.

(B) Expand the business through diversification

U.S. subsidiary plans to engage in biotechnology development, investment and transactions of oil products, so that the company will become a diversified international group company.

4.  Feasibility analysis and business plan presentation

(A)    Investment plan

Chinese parent company, Heilongjiang Rui Xing Hongye Trade Co., Ltd., will directly make an investment of 3 million U.S. dollars in its subsidiary, "Ruifeng Biztech Inc." Combined with the initial investment, operating costs, cash flow and reserves and other factors, we plan to make the investment in several stages.

The first phase of investment has already been made in February 2014 in the amount of $2 million for our Richmond business in DNA sequencing products and services. Second phase of investment of $1,000,000 will be made in February 2015 for use in DNA sequencing network expansion.

(B )    U.S. investment projects plan

1      Heilongjiang Rui Xing Hongye Trade Co., Ltd. has its U.S. subsidiary located in California, which has leased laboratory and office in Richmond with the rental price $5,851.97 per month. The laboratory and office building leased occupy 4300 square feet, with 700 square feet of the premises used as our office, and the rest 3600 square feet used as the laboratory .

2      Investment Feasibility Analysis of DNA sequencing.

U.S. "Forbes" journal, at the end of December 2010, formally published the current cover story titled "gene sequencing technology developing fast." The article introduced one of the gene entrepreneurs – Jonathan Rothberg - and the powerful gene sequencing instrument he invented. The invention may be a revolution in medicine, food, energy, and even consumer products, thereby forming a business potential of up to $ 100 billion in the technology market.

3    DNA sequencing upfront investment costs

Laboratory and office building leasing price of U.S. $5,851.97 per month, investment of $800,000 in equipment for purchase of DNA sequencing, $100,000 for DNA sequencing working capital, DNA sequencing upfront investment limited to $1,000,000, $1,000,000 used for staff employment and relocation and other investments.

4    DNA sequencing operating costs

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

Operating an area of 4300 square feet DNA sequencing laboratory needs to hire 12 employees in the U.S. with local wages estimated at $98,000 a month, with laboratory and office lease price of $5,851.97 per month, reagents and other consumables $21,360 per month. The total monthly expenses would be about $125,211.97.

5    DNA sequencing expected sales

Monthly turnover or business revenues are approximately $200,000, minus laboratory and office leasing fee of $5,851.97 per month, reagents and other consumables $21,360 a month. So the monthly gross profit would be approximately $172,788.03.

6    DNA sequencing profit

DNA sequencing monthly profit: Gross profit $172,788.03 - monthly wages $98,000 = $74,788.03 per month.

DNA sequencing annual profit: Monthly profit $74788.03 x 12 months = $897,456.36 / year.

7    DNA sequencing net profit

DNA sequencing corporate income tax: The annual profit of $897,456.36/year x 30% = $269,236.908 / year.

DNA sequencing annual net profit: annual profit of $ 897,456.36/year - $269236.908/year = $628,219.452/ year.

DNA sequencing annual net profit of $628,219.452 would contribute to the government tax of $269,236.908, creation of 14 American jobs. The total investment of two million dollars would receive DNA sequencing annual investment returns at the rate of 31.5%.

Heilongjiang Rui Xing Hongye Trade Co., Ltd. plans to increase investment in February 2015 by another one million dollars for the construction of our U.S. subsidiary's Boston laboratory. In the coming five years, the U.S. company will achieve profits of more than 1.24 million U.S. dollars per year, of which more than $520,000 will be used to pay taxes to the government, resulting in an annual profit rate of 41.33%, plus more than 28 long-term employment positions.

Due to the huge DNA sequencing market, high profits in return, the company will gradually expand the scale of operations to New York, Washington, North Carolina through its increased investment according to the changing conditions.

Heilongjiang Rui Xing Hongye Trade Co., Ltd. has management capacity, economic strength, and management experience, and is able to provide financial support for the development of our subsidiaries with a solid foundation.

   5.  Introduction of Transferee Mr. Gangyou Wang

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

Mr. Gangyou Wang has been appointed to serve as President of Ruifeng Biztech Inc.. Mr. Wang was admitted to the Heilongjiang University in 1982 to study economics, graduating in 1986 with a bachelor degree.

In August 1986, Mr. Wang was assigned by the school to work as a clerk at Jiulong Commerce and Trading Co. in Harbin City, Heilongjiang Province, primarily responsible for the drafting of a joint venture contract and articles of association of the company documents. During his employment there, Mr. Wang was inquisitive, and quickly become familiar with the company's business operations, working in market research promoted from the administrative department. He was responsible for marketing, advertising and creative planning to provide pre-and post-impact assessment for the company. He was also engaged in customer service, advertising, marketing and sales work. Mr. Wang was passionate about the challenging market development work, familiar with the product marketing and sales. In February 1988, Mr. Wang became prominent because of his good job performance as vice president of operations with Jiulong Commerce and Trading Co. in Harbin City, Heilongjiang Province. That company was engaged in the sale of industrial salt.

Mr. Gangyou Wang worked for Jiulong Commerce and Trading Co. in Harbin City, Heilongjiang for 11 years, having successfully developed more than 50 new customers and established a good working relationship with them, causing sales revenues of up to 500 million yuan.

In January 1997, Mr. Wang left that company in order to better develop his career. With his many years of sales experience and an accurate estimate of the market outlook, in February 1997, he established Tengfei Salt Field in Huifang Ocean Industry Development Zone, Tengfei Materials Supplying Department, in Harbin, where he served as its president. With his excellent business ability, he established friendly trade and business relations. With Harbin First Machine Tool Factory, Harbin tractor factory, Harbin Dongan Engine Manufacturing Company, etc. totaling more than 50 corporate customers. Mr. Wang successfully established more extensive business cooperation networks. His business achieved sales income of 3.5 million yuan.

In July 2003, with his many years of sales experience, Mr. Wang created Harbin Longxing Materials Supplying Department and served as its president. The company mainly engaged in the sale of fuel oil, supplying heavy oil for Nestle Shuangcheng factory, Qiqihar Paper Mill, the first heavy machinery plant in Qiqihar, Heilongjiang Province Longdi Group, and established good working relationships with them. In February 2006, Mr. Wang established Heilongjiang Longxing Weiye Trade Co., Ltd. In August 2008, Mr. Wang created Heilongjiang Longrui Trade Co., Ltd.

In October 2011, Mr. Wang set up Heilongjiang Rui Xing Hongye Trade Co., Ltd.. With its increasing good reputation in the industry, the company continuously builds and improves the customer networks while receiving a lot of customer services from them as well.

6. The primary duties of Mr. Gangyou Wang at parent company in China

Mr. Wang was primarily responsible for the overall management of Heilongjiang Rui Xing Hongye Trade Co., Ltd. with following main responsibilities:

1, convene and preside over the shareholders' meetings, to discuss and decide on the company's organizational development strategy and investment projects and other major events;

2, develop and organize the implementation of global business development plans, annual operating plans, and make timely adjustments according to changes in the market environment, is responsible for the completion of annual business objectives.

3, take overall charge of the company's daily operations.

4, responsible for the company's business management teams, lead the team to achieve business objectives trade throughout the year.

5, responsible for the maintenance of major customers and contacts, develop new customers, develop new markets.

6, lead delegations to Europe, France, Germany, Italy, the Netherlands and other countries for more than a dozen visits to discuss business cooperation, familiarize with overseas markets demand and trade environment.

Mr. Wang is familiar with business and marketing operations, thus the Board of Directors of Heilongjiang Rui Xing Hongye Trade Co., Ltd. has decided to send Mr. Wang to serve as President of Ruifeng Biztech Inc. in the U.S. for the following main reasons:

(1) Experience in entrepreneurship

Mr. Wang owns businesses since 1997, having successfully launched the business at Tengfei Salt Field, Huifang Ocean Industry Development Zone, Tengfei Materials Supplying Department, in Harbin. Mr. Wang was good at operations and business development, and has accumulated profound experience. His business experience will help him to quickly carry out the work of the U.S. marketing business to jump start its business.

(2) Very strong marketing capability .

Mr. Wang has accumulated a wealth of experience in development and product marketing. Each section of his work experience involves market development. While serving as President, Mr. Wang will preside over the development and implementation of marketing strategy, develop product marketing, market development aspects of development planning, react to American commodities market demand and future trends.

(2) Ability to analyze market opportunities

Mr. Wang, through nearly 17 years of entrepreneurial experience, will be able to grasp market opportunities with a keen analytical skills. He is good at the analysis of the changing global economic environment in order seek appropriate business opportunities. His ability to analyze market opportunities makes the company to be ready to seize business opportunities, thus promoting the sound development of the company.

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

7. <u>Mr. Gangyou Wang's main duties at subsidiary in the United States</u>

Mr. Wang's main duties at the U.S. subsidiary are as follows:

(1)    execute Board resolutions and implement the Board's annual business plans and objectives of the subsidiary;

(2)    preside over the company's daily operations and management to ensure the realization of business objectives;

(3)    review, study and approve the development direction of the company;

(4)    oversee the company's major investment projects through inspection and solution of practical problems in the implementation process, and direct coordination between the parties involved;

(5)    develop and oversee the implementation of the company's overall development strategy;

(6)    direct market research, improve the corporate governance system;

(7)    responsible for supervision, guidance, and coordination of business operations among various departments;

(8)    oversee maintenance of business contacts with old customers and developing new customers;

(9)    develop basic management system of the company;

(10)    hire and appoint new employees, develop salary system linked with employees' job performance, and establish subsidiary's management team;

(11)    responsible for submitting to the Board on a regular basis the company's operating status reports.

8. <u>U.S. company's future development plans</u>

After U.S. subsidiary gets on to the normal business track in its planned biotechnology DNA sequencing business, the company will then further develop its business in the U.S. solar photovoltaic equipment supply transactions, so that the company may become a diversified international group company. For this purpose, the U.S. company has established the first three years of business plans and goals as follows:

The first year (November 2013 - October 2014)

Mainly to complete setup of company registered in the United States, including office lease, subsidiary incorporation, recruiting new employees and team building, visiting clients and conducting business development, and other cooperation projects with local businesses.

As President of the company, Mr. Wang will go to the United States and, according to the company's business development needs, determine the required staffing, interviewing, hiring and training new employees, develop systems for responsibilities allocations among departments, and setting goals for them. Mr. Wang will use local newspapers to publish company's job opportunities and will initially employ 15 staff members, namely: 3 managers, a market researcher, an investment specialist, two sales representatives, three engineers, two technical staff, 1 administrative and 1 accountant. Completion of the preparatory work of our team to

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY    

build and operate the company may take about two months. Chinese parent company Heilongjiang Rui Xing Hongye Trade Co., Ltd. has completed its first phase of direct investment of $2 million in its U.S. subsidiary, Ruifeng Biztech Inc..

In the second year ( November 2014 , November 2015 )

After a year of development, Ruifeng Biztech Inc.'s business will gradually expand. The company will become familiar with the U.S. market. Mr. Wang will verify and assess company's business development and select representatives with management capabilities for promotion to be department managers for company departments which will need to continue to recruit sales development representatives by increase in staff hiring 3-4 employees, i.e. 2-3 sales representatives, and 1 researcher.

As the business department becomes more familiar with transactions in the U.S. market, the customers, and the market conditions, the company will thus be able to open up new sales channels based on the prior established sales network and customer channels to promote, through the business department, our products and services at trade fairs and seek new business partners.

As President, Mr. Wang will primarily exercise his managerial authority to guide the overall work of the subsidiary, monitoring the management effectiveness, maximizing investment returns and improve job efficiency in order to maximize the interests of the company. He will consult with other company officials to develop business objectives, according to changes in the business environment. He will communicate and consult with the members of the Board to adjust the business plans, business development reports and timely submission of financial statements of subsidiaries to the parent company; guiding and coordinating the various department functions.

Third year (December 2015 - December 2016)

After two years of development, the company's operations will be gradually getting on the right track and will succeed in establishing more stable and cooperative relations with the U.S. business partners. The company will then expand the business scale, subdivide departments and functions, will be set up a customer service department to provide customers with complete technical support services. Meanwhile, the business department will be maintaining old customers and will make further efforts to open up and strengthen new markets, and to seek more business partners to achieve sales goals.

As President, Mr. Wang will perform the following main tasks: focus on supervision and management of the company's overall business, maximizing returns on investment; oversee the latest market trends, industry developments; maintain close contacts with the parent company; , seek new business investment projects according to the needs of the U.S. market; communicate with members of the Board to adjust the business plans; develop viable business objectives; and timely provide operational status reports and financial statements to the parent company.

After two years of development, the business department will be quite efficient in operating business and trade transactions. It will still need to continue to strengthen efforts to open up

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

markets, to seek more business orders. The business department will keep doing business with already established business partner relations, pay close attention to the latest customer needs concerning the use of products.

Company goals: Ruifeng Biztech Inc. will be in the business exploratory stage within one year after its establishment with the first year plan to achieve revenue of approximately $1.8 million; for the second year, the company expects to achieve revenues of approximately $ 3.2 million; for the third year, the company expects to achieve revenues of approximately $5.6 million; in 5 years the company targets $10 million revenues. The company's long-term goal is to become an integrated multinational corporation.


Board Chairman/President: Wang Gang (Signature)


Heilongjiang Rui Xing Hongye Trade Co., Ltd.

February 8, 2014

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001598



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　　公司网站：www.wgyrf.com

# 商业发展计划书

## 一、投资方—黑龙江睿兴鸿业经贸有限公司介绍

　　黑龙江睿兴鸿业经贸有限公司是依据{中华人民共和国工商管理法}，{中华人民共和国企业促进法}经哈尔滨市工商管理局登记注册的经贸公司。

　　黑龙江睿兴鸿业经贸有限公司成立于2011年10月24日，公司注册资本金100万人民币，公司致力于石油商贸、科技开发领域的投资，公司以资本运营与直接投资相结合为主。黑龙江睿兴鸿业经贸有限公司2013年固定员工36人，销售额￥72233265.85元，利润￥6510289.32元，公司总资产￥60000000.00元。

　　主要经营；

　　石油产品——重油，公司是雀巢中国最佳供应商，雀巢中国采购重油以我公司为主。

　　煤化工产品——煤焦油，公司为内蒙古霍宁碳素有限公司供应煤焦油是内蒙古霍宁碳素有限公司最信赖的合作伙伴。

　　科研成果-{{无障碍任意通有线或无线电话}}等专利产品，{无障碍任意通有线或无线电话}是当今世界上最先进，简单，宜记最快捷的通讯方式，2011年中国专利局颁发了{无障碍任意通有线或无线电话}专利证书。

## 二、设立子公司的目的

　　为了实现公司可持续发展的需求，加强总公司与美国客户的沟通和交流，同时也为了拓展总公司在美国的业务，黑龙江睿兴鸿业经贸有限公司于2013年12月在美国加利福尼亚洲里士满市成立了全资子公司 –"睿丰商务科技公司"，位于2600 HILLTOP DRIVE，BUILDNG B.SUITE 333.RICHMOND.CA 94806。美国子公司经营项目：生物科技DNA测序、石油商贸等。

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY　　　　　　　　　　　　　　　　　　HU_00001599



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　公司网站：www.wgyrf.com

三、子公司的发展计划

(一)建立完善的公司治理结构

新成立的子公司实行总裁负责制，内设业务部，生物科技及财务行政部，并计划招聘员工十四名。

(二)拓展项目渠道多元化经营

美国子公司计划在生物科技开发、石油商贸等行业投资经营、使公司成为经营多元化的国际集团公司 。

四、可行性分析及商业计划陈述

(一)投资金额计划

中国母公司黑龙江睿兴鸿业经贸有限公司直接向其子公司"睿丰商务科技公司"分阶段投资300万美金。

结合前期投资、经营性费用、资金周转及准备金等因素，计划分期投资。

第一期投资，于2014年2月投资200万美元用于里士满市DNA测序已经到位。 第二期投资，于2015年2月投资100万美元用于DNA测序网点扩建。

(二)美国投资项目计划

1.黑龙江睿兴鸿业经贸有限公司美国子公司已经租赁了位于加利福尼亚洲RICHMOND实验室及办公楼，租赁价格每月5851.97美元，该实验室及办公楼公司租赁4300平方英尺，一部分房间700平方英尺用做美国子公司办公室，另外3600平方英尺做实验室。

2.投资DNA测序可行性分析

美国《福布斯》于2010年12月底正式出刊，本期封面文章标题为"基因测序科技突飞猛进"。文章对基因创业企业家JonathanRothberg和他发明的功能强大的基因测序仪器做了介绍。这项发明可能会在医药、食品、能源，甚至消费产品上的一场革命，由此形成规模可达1000亿美元的科技市场。

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY　　　　　　　　　　　HU_00001600



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　公司网站：www.wgyrf.com

### 3. DNA测序前期投资成本

实验室及办公楼，租赁价格每月5851.97美金，设备投资，购买DNA测序仪80万美金，DNA测序周转资金10万美金，DNA测序前期投资控制在100万美金。人员安置费等投资100万美金。

### 4. DNA测序经营成本

经营一个面积4300平方英尺DNA测序实验室，需要在美国当地聘请12名员工，每月员工工资98000美金，实验室及办公楼租赁价格每月5851.97美元，试剂等耗材每月21360美元，合计每月消耗125211.97美金。

### 5. DNA测序预计销售收入

每个月营业额大约20万美元，扣除实验室及办公楼租赁费每月5851.97美金，试剂等耗材每月21360美金，每月大约毛利润172788.03美金。

### 6. DNA测序利润

每月DNA测序利润：毛利润172788.03美金—月员工工资98000美金=74788.03美金/每月

每年DNA测序利润：月利润74788.03X12个月=897456.36美金/年

### 7. DNA测序纯利润

DNA测序企业所得税：年利润897456.36美金/年X30%税率=269236.908美金/年

DNA测序每年纯利润：年利润897456.36美金/年-269236.908美金/年=628219.452美金/年

DNA测序纯利润每年628219.452美金，可向政府纳税269236.908美金，可解决14名美国人就业，总投资200万美金，DNA测序年投资回报率31.5%。

黑龙江睿兴鸿业经贸有限公司计划2015年2月增加投资100万美金，用于美国子公司在波士顿建实验室。五年内睿丰商务科技公司达到每年利润124万多美金，可向政府纳税

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001601



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　　公司 网站：www.wgyrf.com

52万多美金，年利润41.33%，长期用工28人以上。

由于庞大的DNA测序市场，高利润的回报，公司将根据实际情况逐步在纽约，华盛顿，北卡来罗那州投资，扩大经营规模。

黑龙江睿兴鸿业经贸有限公司具有一定的经营管理能力和经济实力，能够为公司和子公司的发展保障提供经营管理经验和资金支持，为公司和子公司的良好发展打下了坚实的基础。

## 五、外派人员王刚友先生介绍

美国睿丰商务科技公司的总经理将由投资方派遣王刚友先生出任。王刚友1982考入黑龙江大学学习经济学专业，1986年毕业，获得学士学位。

1986年8月，王刚友先生由学校分配到黑龙江省哈尔滨市久隆商贸公司任职员。主要工作负责起草合资公司章程合同和公司的各项文件，在工作中，王刚友先生勤学好问，迅速熟悉了公司的业务运作，从行政部调至市场部从事市场调研工作，为广告创意和策划提供前期参考和后期效果评估。在从事客户服务，广告销售等市场拓展工作中，王刚友先生对具有挑战性的市场开拓工作充满了激情。熟悉了产品的市场推广与营销。1988年2月，王刚友先生因为能力表现十分突出在黑龙江省哈尔滨市久隆商贸公司担任业务副经理。该公司从事工业盐销售。

王刚友先生在黑龙江省哈尔滨市久隆商贸公司工作的11年间，王刚友先生负责开拓了50多家新客户，并与这些客户建立了良好的合作关系。负责的业务销售收入达500多万元人民币。

1997年1月，王刚友先生为了能够更好发展离开了黑龙江省哈尔滨市久隆商贸公司。王刚友先生以多年的销售经验和对市场前景的准确预估，于1997年2月成立了哈尔滨市腾飞物资供应处驻潍坊海化开发区腾飞盐场，王刚友先生担任董事长。以优秀的业务能力与哈尔滨第一机床厂、哈尔滨拖拉机制造厂、哈尔滨东安发动机制造公司等50多家企业客户建立了友好贸易关系。王刚友先生成功地建立了更广泛的业务合作网络。公司业务实现销售收入350万元人民币。

2003年7月，王刚友先生凭着自己多年的销售经验与积累，创立了哈尔滨市隆兴物资供应处，担任董事长职务。公司主要从事燃料油销售，为雀巢双城工厂、齐齐哈尔造纸厂、齐齐哈尔第一重型机器厂、黑龙江省龙涤集团提供重油，并建立了良好的合作关

[4]

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001602



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　公司网站：www.wgyrf.com

系。2006年2月，王刚友先生创建了黑龙江隆兴伟业经贸有限公司。2008年8月王刚友先生创建了黑龙江隆睿经贸有限公司。

2011年10月创建了黑龙江睿兴鸿业经贸有限公司。随着黑龙江睿兴鸿业经贸有限公司在业内口碑的不断提升，客户网络的不断建立与完善，公司接受了很多客户的业务。

## 六、王刚友先生在中国母公司的主要职责

王刚友先生主要负责黑龙江睿兴鸿业经贸有限公司的全面管理工作。主要职责包括：
1、召集和主持股东会会议，组织讨论和决定公司的发展战略和投资项目等重大事项；
2、拟订和组织实施公司全局业务发展规划、年度经营计划，并根据市场环境的变化进行适时的调整，负责完成年度经营目标。
3、全面主持公司的日常经营活动。
4、负责公司业务团队的管理，带领业务团队完成全年的目标贸易额。
5、负责大客户的维护与联络，开拓新客户，开拓新市场。
6、率团赴欧洲、法国、德国、意大利、荷兰等十多国考察洽谈业务合作，熟悉海外市场的产品需求和贸易环境。

王刚友先生熟悉企业运作、市场开拓，"黑龙江睿兴鸿业经贸有限公司"董事会经研究决定派遣王刚友先生担任美国睿丰商务科技公司的总经理。其主要原因如下：

（一）创业方面的经验

王刚友先生从1997年自主创业，成功创立了哈尔滨市腾飞物资供应处驻潍坊海化开发区腾飞盐场。王刚友先生对于企业的运营与发展有着深刻的体会。他的创业经历会帮助他迅速地开展美国市场的工作，较快启动公司的业务。

（二）具有极强的市场开拓能力。

王刚友先生在市场开拓和产品营销方面积累了丰富的经验。他的每一段工作经历都与市场开拓有关。在担任经理时，王刚友先生主持市场策略的制定与执行，拟定产品营销、市场开发方面的发展规划，熟悉商品的美国市场需求及未来发展趋势。

（三）市场机遇分析能力

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001603



王刚友先生通过近 17 年的创业，具有敏锐的市场机遇分析能力，擅于针对全球的经济环境的分析，在不断变化的市场中寻求到适合的商业机会。王刚友先生对市场机遇的分析能力，对商业机会的准备把握。将会促进公司的良好发展。

## 七、王刚友先生在美国子公司的主要职责

王刚友先生在美国子公司的主要职责如下：
1. 执行董事会决议，实施董事会批准的子公司年度经营计划和目标；
2. 主持公司的日常经营管理工作，保证经营目标的实现；
3. 研究审核公司发展方向；
4. 对公司重大投资项目进行跟踪检查，解决实施过程中实际问题，协调各方关系；
5. 制定并监督实施公司总体发展战略；
6. 进行市场调研，完善公司管理体制；
7. 监督、指导、协调各部门的工作；
8. 维护、联络老客户，开拓新客户；
9. 拟定公司的基本管理制度；
10. 聘任新雇员，制定雇员的薪酬绩效体系，建立子公司的管理团队；
11. 定期将公司的经营状况报告提交给董事会。

## 八、美国公司的未来发展计划

美国子公司计划在生物科技DNA测序全部走上正常以后发展美国太阳能光电器材的供应，使公司成为经营多元化的国际集团公司 。美国睿丰商务科技公司成立的最初三年将是公司发展的重要时间，为此总公司为美国公司制定以下三年发展任务：

第一年（2013年11月-2014年10月）

主要完成公司在美国的注册，办公室租赁，子公司的筹建，招聘新雇员以及团队建立，拜访合作客户及业务开拓等。

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001604



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　　公司 网站：www.wgyrf.com

王刚友先生将赴美国公司担任总经理职务，根据公司业务发展需要，确定所需人员编制、面试、聘用和培训新雇员，制定部门的职责分配、目标。王刚友先生将通过网络、报纸发布公司的职位招聘信息，初步雇佣15名工作人员，分别为：管理人员3名、市场研究员1名、投资专员1名、业务代表2名，工程师人员3名、技术人员3名、行政财会人员1名。通过约二个月的时间完成公司团队的建立和公司前期运营的准备工作。中国母公司黑龙江睿兴鸿业经贸有限公司直接向其子公司美国睿丰商务科技公司分阶段投资200万美金，已经到位。

第二年（2014 年 11 月-2015 年 11 月）

美国睿丰商务科技公司经过一年的发展，业务在逐渐扩大，公司熟悉了美国的市场。总经理王刚友将对业务拓展进行考核，选择具有管理能力的业务代表升职为部门经理。业务拓展部也将根据业务发展需要继续招聘业务代表。增加雇佣 3-4 名工作人员，分别为：业务代表 2-3 名，研究人员 1 名。

由于业务拓展部已经对美国市场的贸易情况、客户情况、市场情况有了较为熟悉的了解，所以，可以通过之前已经建立的销售网络和客户渠道推广，业务拓展部也将通过参加行业展览会推广产品，寻求新的商业合作伙伴，开拓新的销售渠道。

总经理王刚友先生主要行使对子公司全面工作的指导、监督、管理的权力，最大限度地提高投资、提高效率，以实现公司利益的最大化。总经理将与其它公司的官员协商制定商业目标；根据商业环境的变化，与董事会成员沟通协商调整商业计划书，及时向母公司提交子公司的业务发展报告和财务报表；指导、协调各部门有序地开展工作。

第三年（2015 年 12 月-2016 年 12 月）

公司经过两年的发展，公司运营已逐渐步入正轨，和美国的商业合作伙伴建立了较为稳定的合作关系，公司将扩大规模，细分部门与职能，将设立客户服务部，为客户提供完善的技术支持服务。同时，业务拓展部在在维护老客户的基础上，将继续加强新市场的开拓力度，寻求更多的商业合作伙伴，实现销售目标。

总经理主要工作内容：重点是监督和管理公司的全面业务，最大限度地提高投资收

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY　　　　　　　　　　　　　　　　　HU_00001605



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号    邮编：150049
邮箱：bwgs@163.com    电话：0451-87964388    公司网站：www.wgyrf.com

益。随时关注市场最新动态，行业发展方向，与母公司保持紧密联系，根据美国市场的需求，寻求新的商业投资项目，与董事会成员沟通调整商业计划书，制定可行的商业目标，并及时向母公司提供子公司的运营状况报告及财务报表。

经过两年的发展，业务拓展部对操作进出口业务已相当熟悉，但仍需继续加强市场的开拓力度，寻求更多的贸易订单。业务拓展部将与已经建立业务往来的商业合作伙伴保持紧密的联系，随时关注客户的最新需求，关注产品的使用情况。

公司目标：美国睿丰商务科技有限公司成立后一年内，公司业务尚处于探索阶段，第一年计划实现营业收入约 180 万美元；第二年，公司预计实现营业收入约 320 万美元；第三年，公司预计实现营业收入约 560 万美元；5 年后年营业收入 1000 万美元，公司的长远目标是成为综合性的跨国企业。


董事长：王 刚 友


黑龙江睿兴鸿业经贸有限公司
2014年2月8日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001606

中华人民共和国外交部请各国军政机关对持照人予以通行
的便利和必要的协助。

*The Ministry of Foreign Affairs of the People's Republic of China
requests all civil and military authorities of foreign countries to allow the
bearer of this passport to pass freely and afford assistance in case of need.*

| 护 照 PASSPORT | 类型 / Type P | 国家码 / Country Code CHN | 护照号 / Passport No. G33673387 |
| --- | --- | --- | --- |



姓 / Surname
**王 / WANG**

名 / Given names
**刚友 / GANGYOU**

性别 / Sex
**男 / M**

出生日期 / Date of birth
**13 FEB 1963**

签发日期 / Date of issue
**13 MAR 2009**

签发机关 / Authority
**公安部出入境管理局**

出生地点 / Place of birth
**黑龙江 / HEILONGJIANG**

签发地点 / Place of issue
**黑龙江 / HEILONGJIANG**

有效期至 / Date of expiry
**12 MAR 2019**

Exit & Entry Administration
Ministry of Public Security

350100021

POCHNWANG<<GANGYOU<<<<<<<<<<<<<<<<<<<<<<<<
G336733872CHN6302131M19031201920230 1<<<<<84

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



G33673387 备注 OBSERVATIONS 02392611

本护照根据中华人民共和国第G09426416号护照换发。

This passport is issued to replace the passport
of the P.R.C.

23001

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



签证 Visas

G33673387

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



VISA

Issuing Post Name
SHENYANG

Control Number
20131510360022

Surname
WANG

Given Name
GANGYOU

Passport Number
G33673387

Sex
M

Visa Type/Class
R ... B1/B2

Birth Date
13FEB1965

Nationality
CHN

Entries
M

Issue Date
03JUN2013

Expiration Date
30MAY2014

0101

Annotation

H5303268

VNUSAWANG<<GANGYOU<<<<<<<<<<<<<<<<<<<<<<<<<
G336733872CHN6302131M1405303B3SNY077NN362936



U.S. Customs and Border Protection
Securing America's Borders

OMB No. 1651-0111
Expiration Date: 11/30/2014

### Admission (I-94) Number Retrieval

Admission (I-94) Record Number: 18775099930

Admit Until Date: 2014 August 01

Details provided on Admission (I-94) form:

| | |
|---|---|
| Last/Surname: | WANG |
| First (Given) Name: | GANGYOU |
| Birth Date: | 1963 February 13 |
| Passport Number: | G33673387 |
| Passport Country of Issuance: | China |
| Most Recent Date of Entry: | 2014 February 02 |
| Class of Admission: | B2 |

► Effective April 26, 2013, DHS began automating the admission process. An alien lawfully admitted or paroled into the U.S. is no longer required to be in possession of a preprinted Form I-94. A record of admission printed from the CBP website constitutes a lawful record of admission. See 8 CFR § 1.4(d).

► If an employer, local, state or federal agency requests admission information, present your admission (I-94) number along with any additional required documents requested by that employer or agency.

► Note: For security reasons, we recommend that you close your browser after you have finished retrieving your I-94 number.

For inquiries or questions regarding your I-94, please click here

Accessibility

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                          HU_00001611

(Certified Translation)

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address: 1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049
Email: bwgs@163.com
Company Web: www.wgyrf.com
Telephone: 0086-451-87964388

## Letter of Appointment

Upon discussion and deliberation at the Board of Director's meeting on September 8, 2013, it is approved to establish a solely owned foreign subsidiary corporation in California, USA. The goal is to develop this company's international trade and other business. We have decided to appoint President Mr. Gangyou Wang of this company to be the President and Chief Financial Officer of our U.S. subsidiary company. He will be in charge of the overall business management, budgeting, investment, and market research operations,. His term is for five years (from November 8, 2013 to November 7, 2018), at an annual salary of US$ 100,000.

Administration and HR Manager: Xu Zhao (Signature)

Heilongjiang Rui Xing Hongye Trade Co., Ltd.
(Official Seal)

November 8, 2013

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号  邮编：150049
邮箱：bwgs@163.com  电话：0451-87964388    公司 网站 www.wgyrf.com

# 委 任 书

经黑龙江睿兴鸿业经贸有限公司 2013 年 9 月 8 日股东讨论并决定，在美国加利福尼亚州设立境外企业，以开拓本公司的国际贸易业务。 现经讨论决定委派中方董事长王刚友先生出任美国子公司总裁兼财务主管，负责管理美国公司的全面管理， 包括财务预算投资，商业投资、市场调研，任期五年 （2013 年 11 月 8 日至 2018 年 11 月 7 日），年薪为 100000 美元。

特此决议

行政人事经理：赵旭　签字：赵旭

公司印章：

黑龙江睿兴鸿业经贸有限公司
2013 年 11 月 8 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001613

# Ruifeng BizTech Inc.

2600 HILLTOP DRIVE, BUILDING B, SUITE 333, RICHNOMD, CA 94806     **Phone:** 510-685-4066

## Mr. Gangyou Wang's Managerial Duties with U.S. Company

As President and CFO of the U.S. company, Mr. Wang will be directly responsible to the Chinese parent company management. By working closely with the company local financial, legal and business consultants, Mr. Wang will direct and manage overall business development, biotech lab, financial and investment operations of U.S. company. The following are his specific managerial duties with approximate percentage of time to be spent on each category of duties:

Mr. Wang will establish company's financial, budgetary, investment, and business plans and policies for the corporate management and department managers to implement. He will direct the department managers in the establishment and improvement of systematized company biotech and business products and equipment investment and financing, procurement, purchase, export, promotion, marketing and distribution of these products. He will direct lower company officers in planning business objectives and financial goals for his review and approval against the changing market conditions to maximize returns on company's initial capital investment. (30%)

Mr. Wang will be formulating hiring plans with professional assistance from local job agencies and other sources such as local newspaper job networks, and hire department managers and initial employees for the company's initial setup and biotech lab business operations. He will then supervise and evaluate performance of the department managers in compliance with company business policies and objectives.    Based on the company increasing revenues, he will determine employee benefits plans such as 401K and health insurance benefits.    He will review and approve bonus and other incentives to employees with outstanding job performance to be reviewed and assessed by him.    He will then accordingly promote, demote or dismiss employees based on specific job performances. He will assign other minor recruitment specific tasks and decisions to the administrative manager for implementation. (20%)

In his daily management of the US Subsidiary, Mr. Wang will allocate and divide supervisory responsibilities to department managers regularly through conferences and meetings according to the company general business plan and Chinese company's directives. Through such meetings he will also listen or review business reports or briefings from department managers regarding each department's business strategies, progress, personnel changes, and budget. He will also direct coordination of intracompany transactions among these departments and Chinese company regarding specific budgetary and business development and operations. (20%)

Mr. Wang will also regularly review, comment and approve or disapprove business activity progress reports and business documents submitted to him by the department managers and independent financial, business and legal consultants. Mr. Wang will also direct further marketing efforts into related business projects and establishing other offices in the United States. Mr. Wang will develop this company's research and development, marketing management, administrative, business and financial policies by approving or disapproving various business investment and financial proposals prepared by the managers and outside

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                                        HU_00001614

professional investment and financial consultants. He will confer or meet with them to review company financial and investment performance and make spending and investment decisions. And he will also confer with Chinese parent company through phone, email and visits to establish, adjust and improve intracompany marketing operations and decision making procedures and systems between them. (20%)

Meanwhile, Mr. Wang will develop and conduct major corporate public relations and promotion strategies, policies and procedures for US company's business operations, such as attending high level industrial and management conferences, management seminars, meeting his peers from other local companies, receiving media interview, networking with other businesses and local government officials, sponsoring communities activities on behalf of the company. He will also perform other miscellaneous managerial functions such as contacting and networking with local biotech and/or business product manufacturers, suppliers or trade associations for business opportunities and arrangements through attending trade conferences and expositions. (10%)

As you may see from the above, Mr. Wang's duties are primarily managerial and executive in nature, qualifying him for the managerial transfer.

### Proposed Number of Employees under Beneficiary's Supervision

As illustrated in the proposed organizational chart below, Mr. Wang will direct three subordinate department managers to oversee the daily operations of US Subsidiary, which consists of such departments as the Business/Investment Department, the Biotech Engineering Department, the Financial/Administration Department. For its initial 1-2 years operations, about 14 professional employees will be hired to fill the positions such as Market Researcher, Investment Specialist, Biotech Engineers, Lab Technicians, Sales Representatives, Accounting and HR Specialist.

**Board of Directors**
**President**
**Gangyou Wang**

**Chief Financial Officer**
**Gangyou Wang**

**Corporate Secretary**
**Qun Shan**

| Business/Investment Dept. | Biotech Engineering Dept. | Financial/Administrative Dept. |
|---|---|---|
| Manager (1) | Manager (1) | Manager (1) |
| Market Researcher (1) | Biotech Engineers (3) | Accounting/HR Specialist (1) |
| Property/Investment Specialist (1) | Lab Technicians (3) | |
| | Sales Representatives (2) | |

In addition, to ensure the job quality and saving costs, some of the US company's tax and accounting, financial, biotech engineering, business, investment and legal matters will be temporarily outsourced and handled by professionals in these fields which will be hired from time to time on an independent contract basis for specific business projects. The above-proposed number and type of employees would be further increased or modified with further development of this company in response to changes in market and business conditions.

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

Terms of Employment

We propose to transfer Mr. Wang to the United States for a temporary period of three years at an initial annual salary of $100,000 plus usual corporate benefits. We understand the temporary nature of his assignment, and have informed Mr. Wang of the condition of his transfer.

We sincerely request the USCIS to give favorable consideration of our petition.

Sincerely yours,

Qun Shan
Corporate Secretary

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address: 1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049
Email: bwgs@163.com
Company Web: www.wgyrf.com
Telephone: 0086-451-87964388

## Employment Certification

This is to certify that Mr. Gangyou Wang has been employed as the President of Heilongjiang Rui Xing Hongye Trade Co., Ltd. since October 2011. His job duties include directing and managing the company's department managers regarding the overall daily business and administrative operations of this company. He works 40 hours a week at an annual salary of RMB 600,000 yuan.

Administration and HR Manager: Xu Zhao (Signature)

Heilongjiang Rui Xing Hongye Trade Co., Ltd.
(Official Seal)

November 8, 2013

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号   邮编：150049
邮箱：bwgs@163.com   电话：0451-87964388   公司 网站 www.wgyrf.com

# 任 职 证 明

　　王刚友先生于 2011 年 10 月受聘于黑龙江睿兴鸿业经贸有限公司工作，职务为本公司董事长，具体指导并全面管理本公司部门经理的各项公司日常经营工作。他每周工作 40 小时，年薪为￥600000 人民币。

　　特此证明

行政人事经理：赵旭　　签字：赵旭

公司印章：

黑龙江睿兴鸿业经贸有限公司
2013 年 11 月 8 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY
HU_00001618

(Certified Translation)

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address: 1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049
Email: bwgs@163.com
Company Web: www.wgyrf.com
Telephone: 0086-451-87964388

## THE PRESIDENT'S JOB DUTIES

Mr. Gangyou Wang of Heilongjiang Rui Xing Hongye Trade Co., Ltd. In China has performed the following detailed job duties:

1)    He carries out the Board of Directors' resolutions, presides over the company overall work to ensure realization of business objectives. Organizes and implements the company's annual business plan and financial revenues and expenditure plans approved by the Board. Executes daily administration, business documents.  Regularly attends the board meetings, submits annual written report to the Board on the work of company at shareholders' meetings, participates in company's decision-making process, accepts board of directors' supervision. (15% of annual working hours )

2)    Responsible for formulating the company's development strategy and business strategy, such as determining the company's business philosophy and corporate planning; decides the next five to ten years of long-term development goals, objectives and approves the Company's annual operating plans; tracking the implementation of the strategy and implementation.

3)    Approves the company significant financial matters such as deciding on the company final business plans and budget programs; decides on profit distribution plans and loss recovery plans. For instance, on July 8, 2013, the company President Mr. Gangyou Wang directed and approved the Transportation Department's contract management system which directly reduced spending of 300,000 yuan a year after its implementation. Approves the decisions to increase or decrease the registered capital programs; decides to invest in company's capital expansion program. (10% of annual working hours)

4)    In the capacity of President and the legal representative of the company, signs the major agreements, contracts and dealing with other business matters on behalf of the company, including signing the compnay's important economic contracts. (10% of annual working hours )

5)    Establishes and improves a unified, efficient organization system and work system. Directs the general manager office to arrange for company meetings and presides over these meetings to decide matters relating to the various functions of the company.  Appoints and dismisses lower managers and other senior management personnel, determining remuneration, rewards and punishment for employees. Assesses and evaluates management system and performance based on company and employee reward system, supervises the levels of implementation of the responsibility regimes, determines rewards, wage increases and promotions, as well as disciplinary actions against the staff employees for their poor or derelict

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

work performance, including dismissals. Fosters good teamwork building, improves public relations, establishes a good social image for the company. (15% of annual working hours )

6)      Strengthens the management of daily operations of the company, give full play to the roles of the department managers, meets weekly with them to study the work to be carried out, the main problems and solutions. Handles company's major emergencies. Leads and organizes managers and workers to seriously implement national policies and related laws, regulations. Directs them to emphasize the quality of the supply of products with the "quality first" management concepts, responsible for quality of products and the company's operations. (15% of annual working hours )

7)      Organizes the company's quality management leadership teams, establishes rules and regulations and improves the quality management system, the progressive realization of the company's standardized, scientific, systematic, modern management models. Reviews and approves company management, investment, renovation, reconstruction projects, working capitals, loans under the annual plan guidelines. Improves company financial management and strengthens financial disciplines, improves and increases revenues, cuts costs, to ensure the preservation and appreciation of existing assets. (15% of annual working hours)

8)      Other duties of the President includes directing the division and coordination of work assignments between the departments; learns and oversees the work implementation progress at the company high-level meetings; prevents loopholes and problems that exist in the internal operations; monitors procurement, finance, budgeting, inventory, production capacity and sales conditions according to market conditions; oversees the overall direction of the corporate culture, training, seminars, entrepreneurs exchanges, visits by foreign important guests and clients, such as hosting receptions and visits. (20% of the annual working time)

Administration and HR Manager: Xu Zhao (Signature)

Heilongjiang Rui Xing Hongye Trade Co., Ltd.
(Official Seal)

November 8, 2013



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭东街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　公司网站 www.wgyrf.com

认真执行国家有关的政策、法规、条例，抓好供应产品的质量，在"质量第一"的思想指导下进行经营管理，并对本公司所经营的产品质量负主要责任。（年度工作时间的 15%）

7) 组织公司质量管理领导小组，建立规章制度和完善质量管理体系，逐步实现公司的规范化、科学化、制度化、现代化管理模式。审查批准年度计划内的经营、投资、改造、重建项目和流动资金贷款、使用。健全财务管理，严格财经纪律，搞好增收节支和开源节流工作，保证现有资产的保值和增值。（年度工作时间的 15%）

8) 总裁需要完成的重要工作，如各事业部之间工作协调与指导；公司高层会议工作落实执行情况的了解；内部运营中存在的漏洞与问题；根据市场情况检查采购、财务、预算、库存、产能及销售状况；企业文化整体方向的构建，参加培训、研讨会，企业家交流会、参观等；对外重要嘉宾和客户的接待和拜访等。（年度工作时间的 20%）

特此证明

行政人事经理：赵旭　签字：赵旭

公司印章：

黑龙江睿兴鸿业经贸有限公司
2013 年 11 月 8 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# 黑龙江睿兴鸿业经贸有限公司
### Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号　邮编：150049
邮箱：bwqs@163.com　电话：0451-87964388　　公司网站：www.wgyrt.com

# 董事长工作职责

王刚友先生在中国黑龙江睿兴鸿业经贸有限公司详细职责描述及说明如下：

1) 执行董事会决议，主持公司全面工作，保证经营目标的实现。组织实施经董事会批准的公司年度经营计划和财务收支计划。签署日常行政、业务文件。定期出席公司董事会议，每年向董事会、股东大会书面汇报公司经营工作，参与公司决策，接受董事监督。（年度工作时间的 15%）

2) 负责组织制定公司发展战略和经营战略，如决定公司的经营理念和企业规划；决定公司未来五年到十年的长期发展目标、审批公司年度经营目标及规划；跟踪各项战略的落实及执行情况。

3) 核准公司重大财务事项。如决定公司经营计划及预决算方案；决定公司利润分配方案和弥补亏损方案"2013 年 7 月 8 日董事长王刚友决定公司运输部实行部长承包管理制每年直接减少开支 30 万元人民币"，决定公司增加或减少注册资本方案；决定公司投资扩建方案。（年度工作时间的 10%）

4) 在董事长权限内、以法人代表的身份代表公司签署有关协议、合同、合约和处理有关事宜。签署公司重要经济合同。（年度工作时间的 10%）

5) 建立健全公司统一、高效的组织体系和工作体系。负责召集和主持总经理办公会议，决定各职能部门和所属公司经理以及其他高级管理人员的任免、报酬、奖惩等事宜。依据公司考核管理制度及员工奖惩制度，检查各级各项责任制度的执行情况，决定对成绩显著的员工予以奖励、调资和晋级及对违纪员工的处分，直至辞退。抓好员工队伍建设，搞好社会公共关系，树立公司良好的社会形象。（年度工作时间的 15%）

6) 抓好公司的日常各项经营管理工作，充分发挥各部门经理的作用，每周召开一次会议，研究工作开展情况、存在的主要问题及解决措施。负责处理公司重大突发事件。领导和组织部门经理和职工

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

(Certified Translation)

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address:   1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049
Email: bwgs@163.com
Company Web: www.wgyrf.com
Telephone: 0086-451-87964388

## SUBORDINATE MANAGERS UNDER MR. GANGYOU WANG
## WITH THEIR MANES, JOB TITLES, DETIES AND EFUCATION

| NAME | TITLE | DEPT | DUTIES | SALARY /MO | EDUCATION |
|------|-------|------|--------|------------|-----------|
| GANGYOU WANG | PRESIDENT /CHAIRMAN OF BOARD | | Carries out Board' resolutions, presides over company overall work to ensure realization of business objectives. Organizes and implements annual business plan and financial revenues and expenditure plans approved by the Board. Executes daily administration, business documents. Regularly attends the board meetings, submits annual written report to the Board on the work of company at shareholders' meetings, participates in company's decision-making process, accepts board of directors' supervision. formulating company's development and business strategy, determine company business philosophy and corporate planning; decides five to ten years long-term development goals, objectives and approves annual operating plans; tracking implementation of strategy. Approves company significant financial matters such as deciding on the final business plans and budget programs; decides on profit distribution plans and loss recovery plans. Approves the decisions to increase or decrease the registered capital programs; decides to invest in company's capital expansion program. signs major agreements, contracts and dealing | 600,000 YUAN | COLLEGE |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

| | | | with other business matters e.g. signing important economic contracts. Establishes and improves unified, efficient organization system and work system. Directs general manager office to arrange for meetings and presides over these meetings to decide matters re: various functions of the company. Appoints/ dismisses lower managers/other senior management personnel, determines remuneration, rewards/punishment for employees. Assesses/evaluates management system and performance based on employee reward system, supervises implementation of responsibility regimes, determines rewards, wage increases/promotions, disciplinary actions against employees for poor/derelict work performance, including dismissals. Fosters good teamwork building, improves public relations, establishes a good social image for the company. Strengthens management of daily operations, give full play to the roles of department managers, meets weekly with them to study work to be carried out, main problems and solutions. Handles company's major emergencies. Leads and organizes managers and workers to seriously implement national policies and related laws, regulations. Directs them to emphasize the quality of the supply of products with the "quality first" management concepts, responsible for quality of products and the company's operations. Organizes quality management leadership teams, establishes rules and regulations and improves the quality management system, the progressive realization of company's standardized, scientific, systematic, modern management models. Reviews and approves company management, investment, renovation, reconstruction projects, working capitals, loans under the annual plan guidelines. Improves company financial management and strengthens financial disciplines, improves and increases revenues, cuts costs, to ensure preservation and appreciation of existing assets, etc. | | |
|---|---|---|---|---|---|
| YAOHUI ZHANG | SUPERVISOR | | supervises the daily operations of the company and its management, authorized by the Board of Directors to sign foreign contracts and processing business; oversees organization of management team, proposes appointment of candidates for vice presidents, the department managers and other senior staff for approval by the Board of Directors, etc. | 25,000 YUAN | COLLEGE |
| XU ZHAO | ASSISTANT | ADMINISTR | Responsible for preparing the responsibilities of | 20,000 | COLLEGE |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

| | PRESIDENT/ MANAGER | ATION AND HR DEPT | various departments, work standards and the rules and regulations of the company; supervise/inspect departments to carry out the implementation of the directives of superiors, the general manager of a good job to help the company focus; urge relevant departments in charge of information and the need to handle higher the work program, summary or report, drafted various periods comprehensive work plan for the company, company written notices, circulars, notifications and other documents; responsible for developing internal audit plan; responsible for routine or emergency meeting notices, venues, meetings preparation, organize meeting minutes, supervision, inspection of the implementation of the conference decisions and timely report to their superiors; assist President to develop company policies, objectives ; according to regulations, prepare statistical reports regularly and carry out statistical analysis; timely and accurately report on implantation of company's production and operations plans and provide data for decision-making by President; responsible for assessing employees'job responsibilities and revising, reviewing, improves distribution system and work systems. Responsible for hiring employees, contract employees, job leave approval, monthly assessment, rewards, the education and training of the staff; prepare planning, organizing relevant departments to train, examine, establish relevant personnel records; coordinate with government and privates entities and arrange reception and meeting with staff from these entities; arrange for office supplies and household items procurement and their distribution, custody, control and registration matters. Dealing with employees violating company regulations; handling emergencies. Responsible for environmental protection and energy management to promote rational use and conservation of water and electricity; handle external coordination, maintain contact with the government, offer support in the workplace. Report monthly to the management representative on the summary of goal achievement, human resource status, etc. | YUAN | |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| QINGLONG MENG | VICE PRESIDENT | LEGAL AFFAIRS AND BUSINESS WITH NESTLE | Responsible for assisting President in his effective company management in various fields. Monitor and control company business developments and report to President; offer suggestions or comments as a good advisor and assistant to President. Manages the company's legal affairs and business operations of the Nestle business department; evaluate and examine contract responsibility system and work assignments. Responsible for coordinating activities of management, organization, implementation and inspection. Coordinate the relationship between the authorities and other departments to assist President in establishing and improving the company uniform, efficient organization and work systems. Complete other tasks assigned by President. | 20,000 YUAN | COLLEGE |
| HAOJI ZHANG | VICE PRESIDENT | MARKETIG AND TRANSPORT ATION | Achieve corporate sales objectives; develop and implement marketing plans; sales management, sales policy formulation and implementation, sales force management; market research and marketing budgets; planning, monitoring and evaluation of sales job performance. Direct transportation department to better serve the after-sale work by other departments. Responsible for service work management, providing and organizing release, delivery, post-delivery service for sold products. And collect, solicit and handle customer feedbacks, and responsible for customer satisfaction measurement and monitoring. Direct various departments to offer good service work, etc.. | 18,000 YUAN | COLLEGE |
| HONGMING YANG | VICE PRESIDENT | BUSINESS DEPT | Responsible for research, planning and site survey of various projects involving agriculture, forestry, fish farming products and services; and oversee their management, implementation and monitoring. Responsible for the overall business outcome of company's farming business. Appoint managerial condidates for the projects, specifically responsible for the construction of various projects planned, their coordination, management and implementation to make project managers responsible for results. General manager or authorized person responsible for approving the project designs, engineering, construction, design plans. Responsible for the procurement of materials required for these projects. | 18,000 YUAN | COLLEGE |
| NA WANG | MANAGER | FINANCES | Responsible for overall management of company accounting, financial reporting, and budgeting; responsible for developing plans on corporate profits, capital investments, financial planning, sales prospects, estimates of | 3,800 YUAN | COLLEGE |

| | | | expenditure or cost criteria; tax policy formulation and management of programs and procedures. Establish a sound internal accounting organization, guidance and data management system, as well as accounting and financial management rules and regulations; organize relevant departments to carry out economic activity analysis, preparing company's financial planning, cost planning, efforts to reduce costs, increase revenue and improve efficiency. Develop company-wide staffing plans; regularly assess, evaluate, organize managers at all levels and recommend talents to the company leadership for promotion; Organize activities to determine company-wide job performance assessment work; etc. | | |
|---|---|---|---|---|---|

Administration and HR Manager:    Xu Zhao (Signature)

Heilongjiang Rui Xing Hongye Trade Co., Ltd.
        (Official Seal)

November 8, 2013

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　　公司网站：www.wgyrf.com

## 王刚友下属管理人员姓名职称和职责

| 姓名 | 职称 | 部门 | 职　责 | 月工资 | 学历 |
|------|------|------|--------|--------|------|
| 王刚友 | 董事长 | | 执行董事会决议，主持公司全面工作，保证经营目标的实现，组织实施经董事会批准的公司年度经营计划和财务收支计划。签署日常行政、业务文件。定期出席公司董事会议，每年向董事会、股东大会书面汇报公司经营工作，参与公司决策，接受董事监督。负责组织制定公司发展战略和经营战略；决定公司未来五年到十年的长期发展目标、审批公司年度经营目标及规划；跟踪各项战略的落实及执行情况。核准公司重大财务事项，如决定公司经营计划及预决算方案；决定公司利润分配方案和弥补亏损方案。以法人代表的身份代表公司签署有关协议、合同、合约和处理有关事宜。签署公司重要经济合同。建立健全公司统一、高效的组织体系和工作体系。负责召集和主持总经理办公会议，决定各职能部门和所属公司经理以及其他高级管理人员的任免、报酬、奖惩等事宜。依据公司考核管理制度及员工奖惩制度，检查各级各项责任制度的执行情况，决定对成绩显著的员工予以奖励、调资和晋级及对违纪员工的处分，直至 | 6万 | 大学 |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

| | | | | | |
|---|---|---|---|---|---|
| | | | 辞退，抓好员工队伍建设，搞好社会公共关系，树立公司良好的社会形象。抓好公司的日常各项经营管理工作，充分发挥各部门经理的作用，每周召开一次会议，研究工作开展情况、存在的主要问题及解决措施。负责处理公司重大突发事件。领导和组织部门经理和职工认真执行国家有关的政策、法规、条例，抓好供应产品的质量，在"质量第一"的思想指导下进行经营管理，并对本公司所经营的产品质量负主要责任。组织公司质量管理领导小组，建立规章制度和完善质量管理体系，逐步实现公司的规范化、科学化、制度化、现代化管理模式。审查批准年度计划内的经营、投资、改造、重建项目和流动资金贷款、使用。健全财务管理，严格财经纪律，搞好增收节支和开源节流工作，保证现有资产的保值和增值。 | | |
| 张耀辉 | 监事 | | 负责公司日常业务的经营管理，经董事会授权，对外签订合同和处理业务；组织经营管理班子，提出任免副总经理、部门经理等高级职员的人选，并报董事会批准 | 2.5万 | 大学 |
| 赵旭 | 董事长助理 | 行政人事部 | 负责编制各部门之职责、工作标准和公司综合性之规章制度；监督、检查各部门、对上级指示之贯彻执行情况，协助总经理抓好公司重点工作；负责督促有关部门办理上级需要之资料以及工作计划、工作总结或报告，草拟公司各个时期综合性工作计划、总结；撰写公司内通知、通告、通报等公文；负责制定年内部审核计划；负责公司例行或紧急会议通知、会场布置，作好会议记录、整理会议纪要，督促、检查会议决定之执行情况，及时向上级汇报；协助总经理制定公司经营方针、目标；按规定、定期编制统计报表，开展统计分析，及时正确地反映企业生产经营计划执行情况，为总经理决策提供数据；负责公司各项经济责任制之考核工作，参与经济责任制之修订、审查工作，完善分配制度、工作制度。负责员工报名、合同签订，员工迟到、早退、每月考核、奖惩之统计，负责编制员工教育培训之计划，组织相关部门培训、考试，建立相关记录；负责对外公共单位联络，处理相关事宜以及外来人员之接待工作；建立相应制度，负责办公用品、生活用品、账表单的采购、印发、分发、保管、登记事项之管制。处理员工违规违纪行为；对公司内突发事件之处理。负责公司环境保护和能源管理工作；负责公司水、电的合理使用及节约措施之推广；对外协调，与政府部门保持联系，争取在工作中得到支持。每月向管理者代表提供本部门目标达成情况总结、人力资源现状分析总结报告。 | 2万 | 大专 |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

| | | | | | |
|---|---|---|---|---|---|
| 孟庆龙 | 副总经理 | 法务及雏巢部 | 对总经理负责、协助总经理抓好各项工作。熟悉和掌握公司情况并及时向总经理反映；提出建议或意见，当好总经理的参谋和助手。具体抓好公司的法律事务、雏巢部的运营和经营承包责任制的考核工作。负责规范管理工作的组织、实施、检查和考核工作。协调主管部门与其他部门之间的关系，协助总经理建立健全公司统一、高效的组织体系和工作体系。完成总经理交办的其他任务。 | 2万 | 大专 |
| 张好臣 | 副总经理 | 市场及运输部 | 实现企业销售目标；制定和实施销售计划；销售管理、销售政策的制定与施行、销售人员管理；市场调研与市场预算；策划、销售工作的监察与评估。运输部为责任部门服务，负责服务工作的管理，提供和组织放行、交付、交付后服务。并收集、征求、处理顾客意见，负责顾客满意程度的测量和监视。各有关部门配合搞好服务工作。 | 1.8万 | 大学 |
| 杨洪明 | 副总经理 | 业务部 | 负责工农林鱼养殖用户需求调研、现场勘查及总体工程项目的策划、管理、执行和监督，并对养殖场总体结果负责。指定项目执行人，具体负责各类工程项目的施工计划、协调、管理和实施，项目执行人对其结果负责。总经理或授权人负责批准工程设计方案、工程施工组织设计计划书。负责所需物料的采购。 | 1.8万 | 大学 |
| 丁娜 | 部长 | 财务部 | 总管公司会计、报表、预算工作；负责制定公司利润计划、资本投资、财务规划、销售前景、开支预算或成本标准；制定和管理税收政策方案及程序；建立健全公司内部核算的组织、指导和数据管理体系，以及核算和财务管理的规章制度；组织公司有关部门开展经济活动分析，组织编制公司财务计划、成本计划、努力降低成本、增收节支、提高效益。<br>组织拟定全公司机构的人员编制计划；定期组织对各级管理人员的考核、评议，向公司领导推荐优秀人才；组织全公司系统内的职称评定工作； | 3800元 | 大学 |

行政人事经理：赵旭　　签字：赵旭

公司印章：

黑龙江睿兴鸿业经贸有限公司
2013 年 11 月 8 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address: 1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049

Email: bwgs@163.com

Company Web: www.wgyrf.com

Telephone: 0086-451-87964388

## Mr. Gangyou Wang's Salary Statement for 2013-2014

| Month | Name | Department | Basic Salary | Position Salary | Bonus | Subsidy | Actual Paid | Signature |
|---|---|---|---|---|---|---|---|---|
| 01/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 02/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 03/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 04/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 05/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 06/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 07/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 08/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 09/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 10/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 11/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 12/2013 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |
| 01/2014 | Gangyou Wang | President | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | Gangyou Wang |

Administration and HR Manager: Xu Zhao (Signature)

Heilongjiang Rui Xing Hongye Trade Co., Ltd.

(Official Seal)

Feb 10, 2014

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY


**黑龙江睿兴鸿业经贸有限公司**
Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号 邮编：150049
邮箱：bwgs@163.com 电话：0451-87964388 公司 网站：www.wgyrf.com

# 王刚友先生 2013 年工资表

| 月份 | 姓名 | 所属部门 | 基本工资 | 岗位工资 | 奖金 | 补贴 | 实领工资 | 签字 |
|---|---|---|---|---|---|---|---|---|
| 2013 年 1 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 2 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 3 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 4 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 5 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 6 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 7 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 8 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 9 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 10 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 11 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
| 2013 年 12 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# 黑龙江睿兴鸿业经贸有限公司
## Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号　邮编：150049

邮箱：bwgs@163.com　电话：0451-87964388　　公司 网址：www.wgyrf.com

| 2014 年 1 月 | 王刚友 | 董事长 | 20000.00 | 10000.00 | 10000.00 | 10000.00 | 50000.00 | 王刚友 |
|---|---|---|---|---|---|---|---|---|

行政人事经理：赵旭　　签字：*赵旭*

公司印章：

黑龙江睿兴鸿业经贸有限公司

2014 年 02 月 10 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address: 1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049
Email: bwgs@163.com
Company Web: www.wgyrf.com
Telephone: 0086-451-87964388

## Resume of Gangyou Wang

| | |
|---|---|
| 09/1975-07/1978 | Zhoujia Middle School, Shuangcheng County, Heilongjiang |
| 09/1978-07/1982 | Zhoujia High School, Shuangcheng County, Heilongjiang |
| 09/1982-07/1986 | Graduated from Heilongjiang University |
| 08/1986-01/1988 | Clerk, Jiulong Commerce and Trading Co., Harbin, Heilongjiang |
| 02/1988-01/1997 | Deputy Manager, Jiulong Commerce and Trading Co., Harbin, Heilongjiang |
| 02/1997-02/2002 | President, Tengfei Salt Field, Huifang Ocean Industry Development Zone, Tengfei Materials Supplying Department, Harbin |
| 03/2002-06/2003 | Director, Harbin Bei Auo Trade Co., Ltd. |
| 07/2003-01/2006 | President, Harbin Longxing Materials Supplying Department; |
| 02/2006-07/2008 | President, Heilongjiang Longxing Weiye Trade Co., Ltd |
| 08/2008-09/2011 | President, Heilongjiang Longrui Trade Co., Ltd |
| 10/2011-Present | President/Baord Chairman, Heilongjiang Rui Xing Hongye Trade Co., Ltd. |

**Signed: Gangyou Wang**
**Date: January 12, 2014**

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# 黑龙江睿兴鸿业经贸有限公司
Heilongjiang Rui Xing Hongye Trade Company Limite

地址：哈尔滨市香坊区旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　　公司 网站：www.wgyrf.com

## 王 刚 友 履 历

| | |
|---|---|
| 1975年9月--1978年7月 | 黑龙江省双城县周家中学初中毕业。 |
| 1978年9月--1982年7月 | 黑龙江省双城县周家中学高中毕业。 |
| 1982年9月--1986年7月 | 黑　龙　江　大　学　毕　业。 |
| 1986年8月--1988年1月 | 黑龙江省哈尔滨市久隆商贸公司任职员。 |
| 1988年2月--1997年1月 | 黑龙江省哈尔滨市久隆商贸公司任副经理。 |
| 1997年2月--2002年2月 | 哈尔滨市腾飞物资供应处驻潍坊海化开发区腾飞盐场董事长。 |
| 2002年3月--2003年6月 | 哈尔滨北沃经贸有限公司董事。 |
| 2003年7月--2006年1月 | 哈尔滨市隆兴物资供应处董事长。 |
| 2006年2月--2008年7月 | 黑龙江隆兴伟业经贸有限公司董事长。 |
| 2008年8月--2011年9月 | 黑龙江隆睿经贸有限公司董事长。 |
| 2011年10月--至　　今 | 黑龙江睿兴鸿业经贸有限公司董事长。 |

签 字：王刚友

2014年1月12日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001635

(CERTIFIED TRANSLATION)


# GRADUATION CERTIFICATE
## Of
### General Highter Education Institute of the People's Republic of China


[Photo]

Student Gangyou Wang, male, Han nationality, born in February 1963, is a native of Shuangcheng, Heilongjiang Province. He studied the Economics Department with a major in Economics of this university from September 1982 to July 1986. He completed and passed the four year bachelor's degree curriculum and is allowed to graduate. Upon verification and in compliance with the degree regulations of the People's Republic of China, he is conferred the Bachelor's Degree.


President: Xulan Xu (Seal)

Heilongjiang University
(Official Seal)

August 10, 1986

Graduation Certificate No.:

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# 毕业证书

学生 _____ 性别 女 民族 汉 一九六三
年 三 月生，系 _____ 省 _____ (市) _____ 县(市)
人，一九八二年九月至一九八六年 七 月 _____ 专业
在本校 _____ 系 _____ 专业 四年制本科
二年期，本科修业期满，学完教学计划
规定的全部课程，考试成绩合格，准予毕
业，经审核符合《中华人民共和国学位条
例》的规定，授予 学士学位。

_____ 学校 校长 _____

一九八六年 八 月 十 日

毕业证书登记：第 _____ 号



3622711

| ARTS-GS | **Articles of Incorporation of a General Stock Corporation** |
|---|---|

To form a **general stock corporation** in California, you can fill out this form or prepare your own document, and submit for filing along with:

- A **$100** filing fee.

- A separate, non-refundable **$15** service fee also must be included, if you drop off the completed form or document.

*Important!* Corporations in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

Note: *Before submitting the completed form,* you should consult with a private attorney for advice about your specific business needs.

**FILED**
**Secretary** of State
**State** of California

**DEC 03 2013**

This Space For Office Use Only

**For questions about this form, go to www.sos.ca.gov/business/be/filing-tips.htm.**

**Corporate Name** (List the proposed corporate name. Go to www.sos.ca.gov/business/be/name-availability.htm for general corporate name requirements and restrictions.)

① The name of the corporation is **RUIFENG BIZTECH INC.**

**Corporate Purpose**

② The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

**Service of Process** (List a California resident or an active 1505 corporation in California that agrees to be your initial agent to accept service of process in case your corporation is sued. You may list any adult who lives in California. You may not list your own corporation as the agent. Do not list an address if the agent is a 1505 corporation.)

③ a. **QUN SHAN**
    *Agent's Name*

   b. **2600 HILLTOP DRIVE, BUILDING B, SUITE 333, RICHMOND**    **CA 94806**
    *Agent's Street Address (if agent is not a corporation)*    *City (no abbreviations)*    *State*   *Zip*

**Corporate Addresses**

④ a. **2600 HILLTOP DRIVE, BUILDING B, SUITE 333,**     **RICHMOND, CA**   **94806**
    *Initial Street Address of Corporation*    *City (no abbreviations)*    *State*   *Zip*

   b. _____
    *Initial Mailing Address of Corporation, if different from 4a*    *City (no abbreviations)*    *State*   *Zip*

**Shares** (List the number of shares the corporation is authorized to issue. Note: Before shares of stock are sold or issued, the corporation must comply with the Corporate Securities Law of 1968 administered by the California Department of Corporations. For more information, go to www.corp.ca.gov or call the California Department of Corporations at (213) 576-7500.)

⑤ This corporation is authorized to issue only one class of shares of stock.

The total number of shares which this corporation is authorized to issue is _____ **1,000,000** .

This form must be signed by each incorporator. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of incorporation.

▶ *Gang you Wang*      **GANGYOU WANG**
*Incorporator - Sign here*      *Print your name here*

| Make check/money order payable to: **Secretary of State** | **By Mail** | **Drop-Off** |
|---|---|---|
| Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | Secretary of State Business Entities, P.O. Box 944260 Sacramento, CA 94244-2600 | Secretary of State 1500 11th Street, 3rd Floor Sacramento, CA 95814 |

Corporations Code §§ 200-202 et seq., Revenue and Taxation Code § 23153
ARTS-GS (REV 01/2013)

2013 California Secretary of State
www.sos.ca.gov/business/be

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# State of California
## Secretary of State

| | **S** |
|---|---|

## Statement of Information
### (Domestic Stock and Agricultural Cooperative Corporations)
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**1. CORPORATE NAME**

RUIFENG BIZTECH INC.

**2. CALIFORNIA CORPORATE NUMBER**

3622711

This Space for Filing Use Only

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to Item 17.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | 2600 HILLTOP DRIVE, BUILDING B, SUITE 333 | RICHNOMD | CA | 94806 |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | 2600 HILLTOP DRIVE, BUILDING B, SUITE 333 | RICHNOMD | CA | 94806 |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | CITY | CA | ZIP CODE |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | GANGYOU WANG | 2600 HILLTOP DR, BUILDING B, #333 | RICHNOMD | CA | 94806 |
| 8. SECRETARY | QUN SHAN | 2600 HILLTOP DR, BUILDING B, #333 | RICHNOMD | CA | 94806 |
| 9. CHIEF FINANCIAL OFFICER/ | GANGYOU WANG | 2600 HILLTOP DR, BUILDING B, #333 | RICHNOMD | CA | 94806 |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 10. NAME | GANGYOU WANG | 2600 HILLTOP DR, BUILDING B, #333 | RICHNOMD | CA | 94806 |
| 11. NAME | | ADDRESS | CITY | STATE | ZIP CODE |
| 12. NAME | | ADDRESS | CITY | STATE | ZIP CODE |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS

QUN SHAN

| 15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2600 HILLTOP DRIVE, BUILDING B, SUITE 333, | RICHNOMD | CA | 94806 |

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

INTERNATIONAL TRADE AND INVESTMENT

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 12/06/2013 | GANGYOU WANG | PRESIDENT | _Signature_ |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-200 (REV 01/2013) | APPROVED BY SECRETARY OF STATE |
|---|---|

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

MINUTES OF ACTIONS OF BOARD OF DIRECTORS OF

RUIFENG BIZTECH INC.

a California Corporation

TAKEN BY UNANIMOUS WRITTEN CONSENT WITHOUT A MEETING

The undersigned, all directors of the board of directors of this corporation, acting by unanimous written consent without a meeting pursuant to section 307 (b) of the California Corporations Code and the Bylaws of the corporation, hereby take the following action by unanimous consent to perfect the organization of the corporation:

Report of Articles Filed

1.     The directors acknowledged that the corporation was incorporated on December 3, 2013, the date on which the articles of incorporation were filed by the Secretary of State. The secretary of the corporation is directed to insert it in the corporation's minute book.

Appointment of Agent for Service of process

2.     Qun Shan, a resident of California, whose address is 2600 Hilltop Drive, Building B, Suite 333, Richmond, CA 94806 was designated as this corporation's agent for service of process in California as required by section 1502 of the California Corporations Code.

Adoption of Bylaws

3.     a.     The bylaws attached hereto are adopted as bylaws for this corporation;

        b.     The secretary of this corporation is authorized and directed to execute a certificate of the adoption of those bylaws, to insert those bylaws as so certified in the minute book of this corporation, and to cause a copy of those bylaws, as they may be amended from time to time, to be kept and maintained at the principal executive office of this corporation, in accordance with Section 213 of the California Corporations Code.

Election of Officers

4.     a.     The following persons are elected to the officers set forth opposite their names.

        Name                        Officer

        Gangyou Wang          President
        Gangyou Wang          Chief Financial Officer
        Qun Shan                  Secretary

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

b.    For purposes of giving any reports or executing any documents requiring the signature of the "treasurer," the chief financial officer is deemed to be also the treasurer of this corporation.

Adoption of Corporate Seal

5.    The seal affixed at the last page of this minutes is adopted as the seal of this corporation.

Adoption of Share Certificate Form

6.    The form of share certificates, a specimen of which is annexed to these minutes, is adopted as the certificate representing shares of the corporation.

Selection of Annual Accounting Period

7.    The fiscal year of this corporation shall be from the 1st day of December to the last day of November.

Establishing Principal Executive Office

8.    a.    The principal executive office of this corporation shall be temporarily located at 2600 Hilltop Drive, Building B, Suite 333, Richmond, CA 94806.

b.    The proper officer is authorized to negotiate an agreement concerning the lease of the principal executive office and/or other office and warehouse space on such terms and conditions as are in the corporation's best interests and the corporation's proper officers are authorized to execute all documents necessary to effectuate said agreement.

Filing of Annual Statement

9.    The proper officer of this corporation is authorized and directed to prepare and to file or cause to be filed with the Secretary of State of the State of California the necessary statement in compliance with section 1502 of the California Corporations Code.

Establishing Bank Accounts

10.    a.    The president or chief financial officer of this corporation is authorized to establish in the name of the corporation one or more deposit accounts with the bank of the president or chief financial officer's choice and with the terms and conditions as agreed on with the bank.

b.    That the President is authorized to designated as depositaries of this corporation's funds in one or more other banks, trust companies, or other financial institutions, and to

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

open, keep, and close general and special accounts in such depositaries.

c.    Any officer of the corporation is authorized to endorse checks, drafts, or other evidences of indebtedness made payable to the corporation, but only for the purpose of deposit.

d.    All checks, drafts, and other instruments obligating the corporation to pay money, including instruments payable to officers or other persons authorized to sign them, shall be signed on the corporation's behalf by the following officers: President and/or the Chief Financial Officer.

## Payment of Expenses of Incorporation

11.    a.    The chief financial officer is authorized and directed to pay the expenses of incorporation and organization and to reimburse the persons advancing funds to the corporation for this purpose.

b.    The chief financial officer are authorized to elect on the first federal tax return to deduct the foregoing expenses ratably, commencing with the first month of business and extending for a period of sixty months pursuant to IRC section 248, as amended.

## Qualification of Stock Under IRC Section 1244

12.    a.    This corporation intends to qualify its common stock for treatment under section 1244 of the Internal Revenue Code, Pursuant to which the corporation plan that its total equity capital and paid-in surplus shall not in any event exceed $1,000,000, that it shall be largely an operating company, with less than 50 percent of its gross receipts coming form passive sources (royalties, rents, dividends, interest, annuities, and sales or exchanges of stocks or securities), and that it shall conform in all other respects to the requirements necessary to qualify its common stock for treatment under Section 1244 of the Internal Revenue Code, as amended.

b.    The secretary of this corporation is authorized and directed to keep all records, prepare all reports and returns, and take all other steps as may be necessary to qualify this corporation's common stock for treatment under section 1244 of the Internal Revenue code, as amended.

## Authorization of Issuance of Shares

13.    a.    The corporation shall issue and sell a total of 500,000 shares of its authorized common stock to the following person, in the number and for the consideration set forth opposite their names, respectively:

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

| Name and Address | Consideration | FMV | Number of Shares |
|---|---|---|---|
| HEILONGJIANG RUIXING HONGYE TRADE COMPANY, LTD. Harbin, Heilongjiang, China | $500,000 | $500,000 cash | 500,000 |

Said shares shall be evidenced by share certificate number one.

b.    The issuance of shares are to qualify under the exemption if Corp. Code Sec. 25102(f). The proper officer of the corporation are authorized and directed to prepared and file a Notice of Transaction Pursuant to Corporation Code Sec. 25102(f) with the Commissioner of Corporations.

c.    Upon receipt of the consideration described herein, if not already received, the proper officers of the corporation shall issue the shares to the proposed shareholder for the consideration, as set forth above.

d.    Those shares shall be sold and issued by this corporation strictly in accordance with the terms of the Limited Offering Exemption from qualification of these shares as provided for in Sec. 25102(f) of the California Corporation Code.

e.    The appropriate officers of this corporation are hereby authorized and directed to take such action and execute such documents as they may deem necessary or appropriate to effectuate the sale and issuance of such shares for such consideration.

Dated: 3/4/2014

X _E(A)/R_____
Director: Gangyou Wang

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

CERTIFICATE OF THE ADOPTION OF THE BY-LAWS

RUIFENG BIZTECH INC.

A CALIFORNIA CORPORATION

The undersigned, Secretary of the corporation, hereby certifies that the foregoing is a true and correct copy of the By-Laws of the corporation adopted by the Board of Directors of the corporation.

Dated:    3/5/14

X _____
Secretary: Qun Shan

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# BUSINESS CERTIFICATE
## The City of Pride and Purpose

LICENSE: **4004-8850**

**EXPIRES: 12-16-2014**

Current Employees: 1

POST IN A CONSPICUOUS PLACE
- NON TRANSFERABLE -

RUIFENG BIZTECH INC
2600 HILLTOP DR BLDG B STE 333
RICHMOND, CA 94806-1971

LICENSE TYPE: ANNUAL LICENSE          TYPE OF BUSINESS: PROFESSIONAL SVS

City of Richmond • 450 CIVIC CENTER PLAZA • RICHMOND, CA 94804 • (510) 620-6742

## DETACH YOUR BUSINESS LICENSE CERTIFICATE
## FROM ABOVE AND POST IN PUBLIC VIEW

Renew your license prior to the end of the effective date listed below.
You are required by City Ordinance RMC 7.04 to have a valid Business License Certificate if your
business is located in the City of Richmond, or if you perform work within the City.

Prepared in accordance to the Administrative Policy and Procedures manual POLICY NUMBER: AP 516

LICENSE NUMBER: 4004-8850          EFFECTIVE DATE: 12/17/2013 TO 12/16/2014

Owners(s):

GANGYOU WANG

NO OTHER OWNERS

| Fees Paid - This is not a bill | CURRENT LICENSE | |
|---|---|---|
| | Qty /Employees | Fees |
| Annual License Fees | 0 | 280.80 |
| Due to State GOV/SB1186 | 0 | 1.00 |
| BUS - Bldg License Inspection | 0 | 91.00 |
| BUS - Fire License Inspection | 0 | 91.00 |
| BUS - Zoning Compliance | 0 | 27.00 |

**Receipt for Current License Fees**
Receipt No: R17133
**Payment Date: 12/17/2013**
Paid by: GANGYOU WANG

Method : CHECKS

Check no: 0998

| | TOTAL | 490.80 |
|---|---|---|

Not a Bill

AP-08-99

For Information contact the City of Richmond Business License Office
**450 CIVIC CENTER PLAZA • RICHMOND, CA 94804 • (510) 620-6742**
www.ci.richmond.ca.us

IT-12-10

**Business Mailing Address / Account:**

Owner/Address:
Account: 40048850

RUIFENG BIZTECH INC
2600 HILLTOP DR BLDG B STE 333
RICHMOND, CA 94806-1971

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                    HU_00001645

 veri**z**on wireless

PO BOX 4005
ACWORTH, GA 30101-9006

| Manage Your Account & View Your Usage Details | Account Number | Date Due |
|---|---|---|
| My Verizon at www.verizonwireless.com | 842034665-00001 | Past Due |
| Address Changed? – go to vzw.com/changeaddress | Invoice Number | 9718578408 |

10000572 01 MB 0.402 **AUTO T4 0 5718 94806-197100 E NCNV1804

RUIFENG BIZTECH INC.
2600 HILLTOP DR
SUITE 333
HILLTOP MALL, CA 94806-1971

**2014 Resolution -- Go Paperless**
Sign up for paperless billing and save
postage, reduce clutter and help the
environment. Visit go.vzw.com/gogreen
to learn more.

## Quick Bill Summary          Dec 19 – Jan 18

| | |
|---|---|
| Previous Balance *(see back for details)* | $26.56 |
| No Payment Received | $.00 |
| **Balance Forward Due Immediately** | **$26.56** |
| Account Charges and Credits | |
| Includes Late Fee of $5.00 | $5.00 |
| **Monthly Charges** | **$19.99** |
| Usage and Purchase Charges | |
| Voice | $.00 |
| Verizon Wireless' Surcharges and Other Charges & Credits | $1.97 |
| Taxes, Governmental Surcharges & Fees | $3.17 |
| **Total Current Charges Due by February 13, 2014** | **$30.13** |

| **Total Amount Due** | **$56.69** |
|---|---|

Our records indicate your account is past due. Please send payment now to avoid service disruption.



| Pay from Wireless | Pay on the Web | | Questions: |
|---|---|---|---|

VB

 veri**z**on wireless

RUIFENG BIZTECH INC.
2600 HILLTOP DR
SUITE 333
HILLTOP MALL, CA 94806-1971

| Bill Date | January 18, 2014 |
|---|---|
| Account Number | 842034665-00001 |
| Invoice Number | 9718578408 |


Please Recycle

## Total Amount Due

will be submitted to credit card on 01/25/14
DO NOT MAIL PAYMENT

**$56.69**

PO BOX 660108
DALLAS, TX 75266-0108

☐ Check here and fill out the back of this slip if your billing address
has changed or you are adding or changing your email address.

9718578408010842034665000010000030130000056693

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                    HU_00001646

 **verizon**wireless

| Get Minutes Used | Get Data Used | Get Balance |
|---|---|---|
| #MIN # SEND | #DATA # SEND | #BAL # SEND |

## Explanation of Charges

### Verizon Wireless' Surcharges

Verizon Wireless' Surcharges include (i) a Regulatory Charge (which helps defray various government charges we pay including government number administration and license fees); (ii) a Federal Universal Service Charge (and, if applicable, a State Universal Service Charge) to recover charges imposed on us by the government to support universal service; and (iii) an Administrative Charge, which helps defray certain expenses we incur, including charges we or our agents pay local telephone companies for delivering calls from our customers to their customers, fees and assessments on our network facilities and services, and costs and charges associated with proceedings related to cell sites, local number portability, and other government mandates. Please note that these are Verizon Wireless charges, not taxes. These charges, and what's included, are subject to change from time to time.

### Taxes, Governmental Surcharges and Fees

Includes sales, excise and other taxes and governmental surcharges and fees that we are required by law to bill customers. These taxes, surcharges and fees may change from time to time without notice.

### Late Fee Information

A late payment applies for unpaid balances. The charge is the greater of $5 or 1.5% per month, or as permitted by law.

### Verizon Wireless' Other Charges and Credits

Includes charges for products and services, and credits owing.

## Payments

| | |
|---|---|
| **Previous Balance** | **$26.56** |
| No Payment Received | |
| **Total Payments** | **$.00** |
| **Balance Forward Due Immediately** | **$26.56** |

Total Amount Due will be submitted to your card provider on 01/25/14

## Account Charges and Credits

| | |
|---|---|
| Late Fee | 5.00 |
| **Subtotal** | **$5.00** |
| Local Tax | .48 |
| **Total Account Charges and Credits** | **$5.48** |

---

**Correspondence Address: Verizon Wireless Attn: Correspondence Team PO Box 5029 Wallingford, CT 06492**

Automatic Payment Enrollment for Account: 842034665-00001 RUIFENG BIZTECH INC.

By signing below, you authorize Verizon Wireless to electronically debit your bank account each month for the total balance due on your account. The check you send will be used to setup Automatic Payment. You will be notified each month of the date and amount of the debit 10 days in advance of the payment. I understand and accept these terms. This agreement does not alter the terms of your existing Customer Agreement. I agree that Verizon Wireless is not liable for erroneous bill statements or incorrect debits to my account. To withdraw your authorization you must call Verizon Wireless. Check with your bank for any charges.

   1. Check this box.     2. Sign name in box below, as shown on the bill and date.     3. Return this slip with your payment. Do not send a voided check.

 ☐  

Changing your billing address for Account: 842034665-00001 RUIFENG BIZTECH INC.

Use this space or sign in to My Verizon at vzw.com/changeaddress to change the mailing address where we send your bill. If we do not have your most recent email address, provide it below and we'll use it to tell you important information about your Verizon Wireless service. Allow 2 billing cycles for the address change to take effect.

New Address _____

City _____

State/Zip _____

Work Phone _____   Home Phone _____

Email _____

**Confirming or changing your service address**

For each of your mobile numbers, in order to bill taxes and surcharges correctly we need a service address - which is a street address (not a PO Box) that is the home or primary business address of the person who uses that number. To confirm or change the service address for any of your mobile numbers, sign in to My Verizon at vzw.com/serviceaddress

Order #: 5718  Copy #: 04
Control #:10000572-00001993

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

**verizon**wireless

## Summary for Gangyou Wang: 510-685-4066

### Your Plan

**Home Phone Connect Unlimited**
$19.99 monthly charge
Unlimited monthly minutes

**PAYU MB With EVDO**

**M2M National Unlimited**
Unlimited monthly Mobile to Mobile

**UNL Night & Weekend Min**
Unlimited monthly OFFPEAK

Have more questions about your charges? Get details for usage charges at www.verizonwireless.com. Sign into My Verizon to View Online Bill and click on Calls, Messages & Data.

### Monthly Charges

| | | |
|---|---|---|
| Home Phone Connect Unlimited | 01/19 – 02/18 | 19.99 |
| | | **$19.99** |

### Usage and Purchase Charges

| Voice | | Allowance | Used | Billable | Cost |
|---|---|---|---|---|---|
| Calling Plan | minutes | unlimited | 119 | -- | -- |
| Mobile to Mobile | minutes | unlimited | 24 | -- | -- |
| Night/Weekend | minutes | unlimited | 18 | -- | -- |
| Total Voice | | | | | $.00 |
| **Total Usage and Purchase Charges** | | | | | **$.00** |

| **Verizon Wireless' Surcharges** | |
|---|---|
| Fed Universal Service Charge | .83 |
| Regulatory Charge | .21 |
| Administrative Charge | .90 |
| CA State PUC Fee | .03 |
| | **$1.97** |

| **Taxes, Governmental Surcharges and Fees** | |
|---|---|
| CA State 911 Fee | .16 |
| CA State High Cost Fund (B) | .05 |
| CA Teleconnect Fund Surchg | .09 |
| CA State High Cost Fund (A) | .03 |
| Lifeline Surcharge – CA | .18 |
| CA Advanced Srvcs Fund (CASF) | .03 |
| CA Relay Srvc/Comm Device Fund | .03 |
| Richmond City UUT | 2.12 |
| | **$2.69** |

| **Total Current Charges for 510-685-4066** | **$24.65** |
|---|---|

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001648


CALIFORNIA
ASSOCIATION
OF REALTORS®

# COMMERCIAL LEASE AGREEMENT
### (C.A.R. Form CL, Revised 4/13)

Date (For reference only): **December 16, 2013**
**Biorichland LLC** ("Landlord") and
**Ruifeng Biztech, Inc.** ("Tenant") and agree as follows:

1. **PROPERTY:** Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as:
**ROOM C330,C334,C336,C338,C333,C337,C356 OF BLDG B, 2600 Hilltop Drive, Richmond, CA** ("Premises"), which
comprise approximately _____5_____ % of the total square footage of rentable space in the entire property. See exhibit ___A___ for a further description
of the Premises.

2. **TERM:** The term begins on (date) **January 01, 2014** ("Commencement Date").
**(Check A or B):**
☒ A. **Lease:** and shall terminate on (date) **December 31, 2018** at **23:59** ☐ AM ☒ PM. Any holding over after the
term of this agreement expires, with Landlord's consent, shall create a month-to-month tenancy that either party may terminate as specified
in paragraph 2B. Rent shall be at a rate equal to the rent for the immediately preceding month, payable in advance. All other terms and
conditions of this agreement shall remain in full force and effect.
☐ B. **Month-to-month:** and continues as a month-to-month tenancy. Either party may terminate the tenancy by giving written notice to the other at
least 30 days prior to the intended termination date, subject to any applicable laws. Such notice may be given on any date.
☐ C. **RENEWAL OR EXTENSION TERMS:** See attached addendum

3. **BASE RENT**
A. Tenant agrees to pay Base Rent at the rate of (CHECK ONE ONLY):
☐ (1) $_____ per month, for the term of the agreement.
☐ (2) $_____ per month, for the first 12 months of the agreement. Commencing with the 13th month, and upon expiration of
each 12 months thereafter, rent shall be adjusted according to any increase in the U.S. Consumer Price Index of the Bureau of Labor
Statistics of the Department of Labor for All Urban Consumers ("CPI") for _____
(the city nearest the location of the Premises), based on the following formula: Base Rent will be multiplied by the most current CPI
preceding the first calendar month during which the adjustment is to take effect, and divided by the most recent CPI preceding the
Commencement Date. In no event shall any adjusted Base Rent be less than the Base Rent for the month immediately preceding the
adjustment. If the CPI is no longer published, then the adjustment to Base Rent shall be based on an alternate index that most closely
reflects the CPI.
☐ (3) $_____ per month for the period commencing _____ and ending _____ and
$_____ per month for the period commencing _____ and ending _____ and
$_____ per month for the period commencing _____ and ending _____.
☐ (4) In accordance with the attached rent schedule.
☒ (5) Other: **Base Rent is $3,408.91 per month for the first 12 months.**
**Common area maintenance fee is $2,272.61 per month for the first 12 months.**
**Base Rent for the first 12 months is waived.**
B. Base Rent is payable in advance on the 1st (or ☐ _____ ) day of each calendar month, and is delinquent on the next day.
C. If the Commencement Date falls on any day other than the first day of the month, Base Rent for the first calendar month shall be prorated based
on a 30-day period. If Tenant has paid one full month's Base Rent in advance of Commencement Date, Base Rent for the second calendar month
shall be prorated based on a 30-day period.

4. **RENT:**
A. **Definition:** ("Rent") shall mean all monetary obligations of Tenant to Landlord under the terms of this agreement, except security deposit.
B. **Payment:** Rent shall be paid to (Name) **Biorichland LLC** at (address)
**2600 Hilltop Drive,Richmond, CA 94806** or at any other
location specified by Landlord in writing to Tenant.
C. **Timing:** Base Rent shall be paid as specified in paragraph 3. All other Rent shall be paid within 30 days after Tenant is billed by Landlord.

5. **EARLY POSSESSION:** Tenant is entitled to possession of the Premises on **December 15, 2013**
If Tenant is in possession prior to the Commencement Date, during this time (i) Tenant is not obligated to pay Base Rent, and (ii) Tenant ☐ is
☒ is not obligated to pay Rent other than Base Rent. Whether or not Tenant is obligated to pay Rent prior to Commencement Date, Tenant is
obligated to comply with all other terms of this agreement.

6. **SECURITY DEPOSIT:**
A. Tenant agrees to pay Landlord $ **5,851.97** as a security deposit. Tenant agrees not to hold Broker responsible for its return.
(IF CHECKED) ☐ If Base Rent increases during the term of this agreement, Tenant agrees to increase security deposit by the same proportion
as the increase in Base Rent.
B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent, late charges,
non-sufficient funds ("NSF") fees, or other sums due, (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or
licensee of Tenant, (iii) broom clean the Premises, if necessary, upon termination of tenancy, and (iv) cover any other unfulfilled obligation of
Tenant. SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the
security deposit is used during tenancy, Tenant agrees to reinstate the total security deposit within 5 days after written notice is delivered to
Tenant. Within 30 days after Landlord receives possession of the Premises, Landlord shall: (i) furnish Tenant an itemized statement indicating the
amount of any security deposit received and the basis for its disposition, and (ii) return any remaining portion of security deposit to Tenant.
However, if the Landlord's only claim upon the security deposit is for unpaid Rent, then the remaining portion of the security deposit, after
deduction of unpaid Rent, shall be returned within 14 days after the Landlord receives possession.
C. No interest will be paid on security deposit, unless required by local ordinance.

Landlord's Initials ( **Z.G.** ) ( _____ )
Tenant's Initials ( **GW** ) ( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the
unauthorized reproduction of this form, or any portion thereof, by photocopy
machine or any other means, including facsimile or computerized formats.
Copyright © 1998-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                    HU_00001649

ROOM C330,C334,C336,C338,C333,C337,C356 of BLDG B,

Premises: 2600 Hilltop Drive, Richmond, CA 94806                      Date _December 16, 2013_

## 7. PAYMENTS:

| | TOTAL DUE | PAYMENT RECEIVED | BALANCE DUE | DUE DATE |
|---|---|---|---|---|
| A. Rent: From 01/01/2014 To 01/31/2014 | $ 2,272.61 | $ _____ | $ _____ | 01/01/2014 |
| B. Security Deposit................................... | $ 5,851.97 | $ _____ | $ _____ | 01/01/2014 |
| C. Other: _____ Category | $ _____ | $ _____ | $ _____ | |
| C. Other: _____ Category | $ _____ | $ _____ | $ _____ | |
| E. Total: ................................... | $ 8,142.58 | $ _____ | $ _____ | |

8. **PARKING:** Tenant is entitled to ___10___ unreserved and ___0___ reserved vehicle parking spaces. The right to parking ☒ is ☐ is not included in the Base Rent charged pursuant to paragraph 3. If not included in the Base Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used for parking operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked in parking spaces or on the Premises. Mechanical work or storage of inoperable vehicles is not allowed in parking space(s) or elsewhere on the Premises. No overnight parking is permitted.

9. **ADDITIONAL STORAGE:** Storage is permitted as follows: Not available. _____
The right to additional storage space ☐ is ☒ is not included in the Base Rent charged pursuant to paragraph 3. If not included in Base Rent, storage space shall be an additional $ _____ per month. Tenant shall store only personal property that Tenant owns, and shall not store property that is claimed by another, or in which another has any right, title, or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, or other dangerous or hazardous material. Tenant shall pay for, and be responsible for, the clean-up of any contamination caused by Tenant's use of the storage area.

10. **LATE CHARGE; INTEREST; NSF CHECKS:** Tenant acknowledges that either late payment of Rent or issuance of a NSF check may cause Landlord to incur costs and expenses. the exact amount of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 calendar days after date due, or if a check is returned NSF, Tenant shall pay to Landlord, respectively, $50.00 as late charge, plus 10% interest per annum on the delinquent amount and $25.00 as a NSF fee, any of which shall be deemed additional Rent. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any late charge, delinquent interest, or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of a late charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date Rent is due under paragraph 4, or prevent Landlord from exercising any other rights and remedies under this agreement, and as provided by law.

11. **CONDITION OF PREMISES:** Tenant has examined the Premises and acknowledges that Premise is clean and in operative condition, with the following exceptions: _____.
Items listed as exceptions shall be dealt with in the following manner: _____

12. **ZONING AND LAND USE:** Tenant accepts the Premises subject to all local, state and federal laws, regulations and ordinances ("Laws") Landlord makes no representation or warranty that Premises are now or in the future will be suitable for Tenant's use. Tenant has made its own investigation regarding all applicable Laws.

13. **TENANT OPERATING EXPENSES:** Tenant agrees to pay for all utilities and services directly billed to Tenant _The utilities of electricity, water, heating are included in the common area maintenance fee charged pursuant to paragraph 3._

14. **PROPERTY OPERATING EXPENSES:**
   A. Tenant agrees to pay its proportionate share of Landlord's estimated monthly property operating expenses, including but not limited to, common area maintenance, consolidated utility and service bills, insurance, and real estate taxes, based on the ratio of the square footage of the Premises to the total square footage of the rentable space in the entire property.

OR B. ☒ (If checked) Paragraph 14 does not apply. _All labs are for biology research and development. All office spaces_

15. **USE:** The Premises are for the sole use as _are for general office purpose only._
No other use is permitted without Landlord's prior written consent. If any use by Tenant causes an increase in the premium on Landlord's existing property insurance, Tenant shall pay for the increased cost. Tenant will comply with all Laws affecting its use of the Premises.

16. **RULES/REGULATIONS:** Tenant agrees to comply with all rules and regulations of Landlord (and, if applicable, Owner's Association) that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant do not, disturb, annoy, endanger, or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing, or transporting illicit drugs or other contraband, or violate any law or ordinance, or committing a waste or nuisance on or about the Premises.

17. **MAINTENANCE:**
   A. Tenant OR ☒ (If checked, Landlord) shall professionally maintain the Premises including heating, air conditioning, electrical, plumbing and water systems, if any, and keep glass, windows and doors in operable and safe condition. Unless Landlord is checked, if Tenant fails to maintain the Premises, Landlord may contract for or perform such maintenance, and charge Tenant for Landlord's cost.
   B. Landlord OR ☐ (If checked, Tenant) shall maintain the roof, foundation, exterior walls, common areas and _____

Landlord's Initials ( _Z.G._ ) ( _____ )          Tenant's Initials ( _GW_ ) ( _____ )

Copyright © 1998-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CL REVISED 4/13 (PAGE 2 OF 6)          | Reviewed by _____ Date _____ |

COMMERCIAL LEASE AGREEMENT (CL PAGE 2 OF 6)          2600 Hilltop Drive

ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Landlord's Initials  **Z.G.** /     Tenant's Initials  **G W** /

**37. JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this agreement, jointly with every other Tenant, and individually, whether or not in possession.

**38. NOTICE:** Notices may be served by mail, facsimile, or courier at the following address or location, or at any other location subsequently designated:

| Landlord: Hunter Guanghui Zhou | Tenant: Gangyou Wang |
|---|---|
| General Manager | President |
| Biorichland LLC | Ruifeng Biztech, Inc. |
| 2600 Hilltop Drive, Richmond, CA 94806 | 2600 Hilltop Drive, BLDG B - Suite C330 |
| Phone: (415) 867-0270 | Richmond, CA 94806 |

Notice is deemed effective upon the earliest of the following: (i) personal receipt by either party or their agent; (ii) written acknowledgement of notice, or (iii) 5 days after mailing notice to such location by first class mail, postage pre-paid.

**39. WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same breach or a waiver of any subsequent breach.

**40. INDEMNIFICATION:** Tenant shall indemnify, defend and hold Landlord harmless from all claims, disputes, litigation, judgments and attorney fees arising out of Tenant's use of the Premises.

**41. OTHER TERMS AND CONDITIONS/SUPPLEMENTS:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

The following ATTACHED supplements/exhibits are incorporated in this agreement: ☒ Option Agreement (C.A.R Form OA)

**42. ATTORNEY FEES:** In any action or proceeding arising out of this agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs from the non-prevailing Landlord or Tenant, except as provided in paragraph 34A.

**43. ENTIRE CONTRACT:** Time is of the essence. All prior agreements between Landlord and Tenant are incorporated in this agreement, which constitutes the entire contract. It is intended as a final expression of the parties' agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this agreement constitutes the complete and exclusive statement of its terms, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving this agreement. Any provision of this agreement that is held to be invalid shall not affect the validity or enforceability of any other provision in this agreement. This agreement shall be binding upon, and inure to the benefit of, the heirs, assignees and successors to the parties.

**44. BROKERAGE:** Landlord shall each pay to Broker(s) the fee agreed to, if any, in a separate written agreement. Neither Tenant nor Landlord has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as named in this agreement, in connection with any act relating to the Premises, including, but not limited to, inquiries, introductions, consultations, and negotiations leading to this agreement. Tenant and Landlord each agree to indemnify, defend and hold harmless the other, and the Brokers specified herein, and their agents, from and against any costs, expenses, or liability for compensation claimed inconsistent with the warranty and representation in this paragraph 42.

**45. AGENCY CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

Listing Agent: _____ (Print Firm Name) is the agent of (check one):
☐ the Landlord exclusively, or ☐ both the Tenant and Landlord.

Selling Agent: _____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☒ the Tenant exclusively; or ☐ the Landlord exclusively, or ☐ both the Tenant and Landlord.

Real Estate Brokers are not parties to the agreement between Tenant and Landlord.

Landlord's Initials ( **Z.G.** ) ( _____ )     Tenant's Initials ( **G W** ) ( _____ )

Reviewed by _____ Date _____

Copyright © 1998-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CL REVISED 4/13 (PAGE 5 of 6)



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY     HU_00001651

Landlord and Tenant acknowledge and agree that Brokers: (i) do not guarantee the condition of the Premises; (ii) cannot verify representations made by others; (iii) will not verify zoning and land use restrictions; (iv) cannot provide legal or tax advice; (v) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this agreement, Brokers: (vi) do not decide what rental rate a Tenant should pay or Landlord should accept; and (vii) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance, and other desired assistance from appropriate professionals.

Tenant _____                    Date 12/17/2013
Gangyou Wang, Ruifeng Biztech, Inc.
(Print Name)
Address    2600 Hilltop Drive, BLDG B-C330        City Richmond        State CA    Zip 94806

Tenant _____                    Date _____

(Print Name)
Address _____  City _____  State _____  Zip _____

☐ GUARANTEE: In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: (i) guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.
Guarantor (Print Name) _____
Guarantor _____  Date _____
Address _____  City _____  State _____  Zip _____
Telephone _____  Fax _____  Email _____

Landlord agrees to rent the Premises on the above terms and conditions.

Landlord _____  Guanghui Zhou, General Manager, Biorichland LLC    Date 12/16/2013
(owner or agent with authority to enter into this agreement)
Address    2600 Hilltop Drive        City  Richmond        State  CA    Zip  94806

Landlord _____                    Date _____
(owner or agent with authority to enter into this agreement)
Address _____  City _____  State _____  Zip _____

Agency relationships are confirmed as above. Real estate brokers who are not also Landlord in this agreement are not a party to the agreement between Landlord and Tenant.

Real Estate Broker (Leasing Firm) _____  DRE Lic. # _____

By (Agent) _____  DRE Lic. # _____  Date _____

Address _____  City _____  State _____  Zip _____

Telephone _____  Fax _____  Email _____

Real Estate Broker (Listing Firm) _____  DRE Lic. # _____

By (Agent) _____  DRE Lic. # _____  Date _____

Address _____  City _____  State _____  Zip _____

Telephone _____  Fax _____  Email _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.) NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____  Date _____

CL REVISED 4/13 (PAGE 6 of 6)

COMMERCIAL LEASE AGREEMENT (CL PAGE 6 OF 6)                    2600 Hilltop Drive

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                    HU_00001652

# STOCK TRANSFER LEDGER

| NAME OF STOCKHOLDER | PLACE OF RESIDENCE | TIME BECAME OWNER | CERTIFICATES ISSUED | | FROM WHOM SHARES WERE TRANSFERRED (If Original Issue Enter As Such) | AMOUNT PAID THEREON | DATE OF TRANSFER OF SHARES | TO WHOM SHARES ARE TRANSFERRED | CERTIFICATES SURRENDERED | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | CERTIF. NOS. | NO. SHARES | | | | | CERTIF. NOS. | NO. SHARES |
| Heilongjiang Ruixing Hongye Trade Co., Ltd. | Harbin, China | 3/4/4 | 1 | 500,000 | Original Issue | $500,000 | | | | |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001653

Certificate No. 1 For 500,000 Shares

Issued to HEILONG RUIXING HONGYE TRADE COMPANY,

LTD.

Dated MARCH 4 , 2014

From whom transferred

HEILONG RUIXING HONGYE TRADE COMPANY, LTD.

Dated ,

| NO. ORIGINAL<br>CERTIFICATE | NO. ORIGINAL<br>SHARES | SHARES<br>TRANSFERRED |
|---|---|---|
| | | |

Received Certificate No.

for

this day of ,

SHARES

500,000

RUIFENG BIZTECH INC.

AUTHORIZED 3,000,000 SHARES COMMON STOCK

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA
DECEMBER 1, 2011

This Certifies that HEILONGJIANG RUIXING HONGYE TRADE COMPANY LTD. is the

registered holder of ***** Five Hundred Thousand ***** Shares

of the above named Corporation transferable only on the books of the Corporation by the

holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed

by its duly authorized officers and its Corporate Seal to be hereunto affixed

this 4TH day of MARCH A.D. 2014

Jun Shen

SECRETARY

Gangyou Wang

PRESIDENT

© 2011 Attorneys Corporation Service, Inc.

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# Bank of America 🏦

SERVICE

H

```
 ┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈┈
WX 0000        906 039382 ##01 FP 0.460
    RUIFENG BIZTECH INC
    2600 HILLTOP DR
    BUILDING B- 333
    SAN PABLO CA 94806-1971
```

DATE: 02/14/14
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: 325026262112

---

HE FOLLOWING WIRE WAS CREDITED TODAY:                USD AMOUNT $2,000,000.00

| | | |
|---|---|---|
| RANSACTION REF: | 2014021400118864 | SERVICE REF: 000781 |
| ENDER'S REF: | F1S1402145542800 | |
| MAD: | 20140214B1Q8153C000781 | |
| RIGINATOR: | 1/HEILONGJIANG RUIXING HONGYE TRADE | ID: 3500042111200011972 |
| RIGINATOR'S BANK: | INDUSTRIAL AND COMMERCIAL BANK OF C | ID: ICBKCNBJHLJ |
| ENDING BANK: | THE BANK OF NEW YORK MELLON | ID: 021000018 |
| ENEFICIARY: | RUIFENG BIZTECH INC | ID: 325026262112 |
| AYMENT DETAIL: | /ACC//FTS/ PLEASE PAY IN FULL | |

---

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                HU_00001655

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

**ICBC 中国工商银行**

**境 外 汇 款 申 请 书**
APPLICATION FOR FUNDS TRANSFERS (OVERSEAS)

致: TO:

日期 Date: _2014 2 14_

☑ 电汇 T/T ☐ 票汇 DD ☐ 信汇 M/T

发电等级 Priority ☑ 普通 Normal ☐ 加急 Urgent

| 申报号码 BOP Reporting No. | 3 0 1 0 0 | 0 0 1 2 | 7 5 | 1 4 0 9 1 9 | 4 0 0 7 |
|---|---|---|---|---|---|

| 20 | 银行业务编号 Bank Transac. Ref No. | | 收汇行／付款行 Receiver/Drawn on | 略行电工行 |

| 32A | 汇款币种及金额 Currency & Interbank Settlement Amount | U(D) 7000 000 00 | 金额大写 Amount in Words | 柒万美元元整 |

| 其中 | 现汇金额 Amount in FX | 0.00 | 账号 Account No./Credit Card No | 3400 03 111 2000 1173 (ICBC OK-E ) |
| | 购汇金额 Amount of Purchase | U(D) 7000 000 00 | 账号 Account No./Credit Card No | |
| | 其他金额 Amount of Others | | 账号 Account No./Credit Card No | |

| 50a | 汇款人名称及地址 Remitter's Name & Address | Heilongjiang Rui Xing Hongye Trade Company LIMITED XUSHING CERT 1-1-7 Xing Fong Pro...ie ...ie Peng CHANG |
| ☑财公 组织机构代码 Unit Code | F 7 3 0 0 7 1 7 2 - 6 | ☐对私 | 个人身份证件号码 Individual ID NO. ☐中国居民个人 Resident Individual ☐中国非居民个人 Non-Resident Individual |

| 54/56a | 收款银行之代理行名称及地址 Correspondent of Beneficiary's Bank Name & Address | |

| 57a | 收款人开户银行 名称及地址 Beneficiary's Bank Name & Address | 收款人开户银行在其他银行账号 Bene's Bank A/C No SWIFT CODE BOFAUS6S Bank of America 116 solana ave Albany ca 497 6 |

| 59a | 收款人名称及地址 Beneficiary's Name & Address | 收款人账号 Bene's A/C No 325 02161 2 112 BUIFENG BIZTECH INC. 2600 Hill TUP DR SUIDING B-352 RICHMOND CA 908 E-1971 |

| 70 | 汇款附言 Remittance Information | 只限140个字位 Not Exceeding 140 Characters | 71A | 国内外费用承担 All Bank's Charges If Any Are To Be Borne By ☐汇款人 OUR ☑收款人 BEN ☐共同 SHA |

收款人常驻国家（地区）名称及代码 Resident Country/Region Name & Code  E(P)

请选择: ☐ 预付货款 Advance Payment ☐ 货到付款 Payment Against Delivery ☐ 退款 Refund ☐其他 Others

| 交易编码 BOP Transac. Code | | 相应币种及金额 Currency & Amount | U(D) 7000 000 00 | 交易附言 Transac. Remark | 境外投资 |

本笔款项是否为保税货物项下付款 ☐是 ☐否  合同号  发票号

外汇局批件号／备案表号／业务编号

| 银行专用栏 For Bank Use Only | | 申请人签章 | 银行签章 Bank's Signature |
|---|---|---|---|
| 购汇汇率 Rate | | 款并进行申报 is Remittance Subject To The | |
| 等值人民币 RMB Equivalent | | | |
| 手续费 Commission | | | |
| 电报费 Cable Charges | | | |
| 合计 Total Charges | | | |
| 支付费用方式 In Payment of the Remittance | ☐ 现金 by Cash ☐ 支票 by Check ☐ 账户 from Account | | 核准人签字 Authorized Person 日期 Date |
| 核印 Sig. Ver | | 经办 Maker | 复核 Checker |

填写前请仔细阅读各联背面条款及填报说明
Please read the conditions and instructions overleaf before filling in this application

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                                    HU_00001656

(Certified Translation)

# Certificate of Authorization of Foreign Investment by Enterprises

### Certificate No.: 2300201400016

The overseas investment proposed by Heilongjiang Rui Xing Hongye Trade Co., Ltd. as listed herein is found to be in conformity with the Rules on Overseas Investment Administration issued by the Ministry of Commerce in its 2009 Order No. 5.  Therefore, this Certificate of Authorization of Foreign Investment by Enterprises is hereby issued and granted.

The company with this certificate may process foreign exchange, sutoms, foreign affairs and other matters.  The certificate shall be valid for two years from the date of issuance, and will automatically become invalid if its holder has not engaged any stated oversea investment in these two years.

The company shall ensure that its overseas investment follow the laws and policies at home and abroad.

| | |
|---|---|
| Name of Overseas Business: | RUIFENG BIZTECH INC. |
| Country/Region: | USA |
| Manner of Establishment: | NEW COMPANY |
| Investing Party: | Heilongjiang Rui Xing Hongye Trade Co., Ltd. |
| Stock Ownership: | 100% |
| Registered Capital: | US $3,000,000 |
| Investment Amount: | US $3,000,000 |
| Cash Capital Transfer: | US $3,000,000 |
| Scope of Business: | Biotech DNA testing |
| Approval No.: | [2014] 00012 |

Ministry of Commerce of the People's Republic of China
(Official Seal)
Jan. 16, 2014

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY



# 企 业 境 外 投 资 证 书

商境外投资证第 2300201400016 号

黑龙江睿兴鸿业经贸有限公司

公司右页所列境外
投资符合《境外投资管理办法》（商务部2009年第5号令）有关
规定，现予以颁发《企业境外投资证书》。

公司持本证书办理外汇、海关、外事等相关手续。公司自
领取本证书之日起2年内，未从事右页所列境外投资，证书自动
失效。

公司开展境外投资业务应认真遵守境内外相关法律法规和
政策。



中华人民共和国商务部

二〇一四 年 月十六 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

| 境外企业<br>名 称 | 中文 | 睿丰商务科技公司 | | | |
|---|---|---|---|---|---|
| | 外文 | RUIFENG BIZTECH INC | | | |
| 国家/地区 | 中文 | 美国 | | | |
| | 外文 | United States | | | |
| 设立方式 | ☑新设 | | □并购 | | □其它 |
| 投 资<br>主 体 | 中方<br>名称 | 黑龙江睿兴鸿业经贸有限公司 | | 股比 | 100.0% |
| | 外方<br>名称 | | | 股比 | |
| 注册资本 | 300 | | 万美元 | 经营年限 | 30　年 |

| 投 资<br>总 额 | 中方 | 300 | 万美元 | 现汇 | 300 | 万美元 |
|---|---|---|---|---|---|---|
| | | | | 实物 | 0 | 万美元 |
| | 外方 | 0 | 万美元 | 现汇 | 0 | 万美元 |
| | | | | 实物 | 0 | 万美元 |

| 经营范围 | 生物科技　DNA测序 |
|---|---|
| 申报文号 | |
| 批准文号 | 黑境外投资[2014]00012号 |
| 备 注 | |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001659

(Certified Translation)

# Corporate Legal Entity Business License
## (Copy)

Registration No.: 230107100090918(1-1)

Name:                     Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address:                  1-1-1-3 Xusheng Street, Xiangfang District, Harbin

Legal Representative:     Gangyou Wang

Registered Capital:       One Million RMB Yuan

Actual Paid Capital:      One Million RMB Yuan

Type of Corporation:      Limited liability Company

Scope of Business:        General business products: sell and supply of: fuel oil (until June 19, 2014),
                          chemical industrial products, metals and hardware, construction materials
                          (excluding all products containing dangerous chemicals, remote control chemicals,
                          flammable chemicals, and food use chemicals).

Date of Establishment:    October 24, 2011

Operation Period:

Registration Authority: Harbin City Industrial and Commercial Administration Bureau, Xiangfang Branch
(Official Seal)

September 2, 2013

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# 企业法人营业执照

## （副 本）

注册号 23010710009091 8(1-1)

| 名　　称 | 黑龙江省兴鸿业经贸有限公司 |
|---|---|
| 住　　所 | 哈尔滨市香坊区（原动力区）通乡街3 － 1号通利小区1栋1单元商1、2、3号 |
| 法定代表人姓名 | 于湖友 |
| 注册资本 | 叁佰万元整 |
| 实收资本 | 人民币叁佰万元整 |
| 公司类型 | 有限责任公司(自然人投资或控股) |
| 经营范围 | （略） |

成　立　日　期 2011年10月24日

营　业　期　限 自年月日至年月日







哈尔滨市香坊区市场监督管理分局

二○一 年 月 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001661

(Certified Translation)

# Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Address: 1-1-1-3 Xusheng Street, Xiangfang District, Harbin, China, Postal Code: 150049
Email: bwgs@163.com
Company Web: www.wgyrf.com
Telephone: 0086-451-87964388

## Meeting Minutes of Hongye Heilongjiang Xing Rui Trade Co., Ltd.

## on the Establishment of the U.S. Ruifeng Biztech Inc.

Second Meeting of the Third Board of Heilongjiang Rui Xing Hongye Trade Co., Ltd. is held on November 6, 2013 at Heilongjiang Rui Xing Hongye Trade Co., Ltd. conference room.

1. Attended are two shareholders: Mr. Gangyou Wang, Hongming Yang. Also present: Yaohui Zhang (Heilongjiang Rui Xing Hongye Trade Co., Ltd. Supervisor), Xu Zhao (Heilongjiang Rui Xing Hongye Trade Co., Ltd. Assistant President), Qinglong Meng (Heilongjiang Xing Rui Trade Co., Ltd., VP), Long Chen Cheng (Heilongjiang Xing Rui Trade Co., Ltd., VP), Chao Wang (Heilongjiang Xing Rui Trade Co., Ltd., VP), Hongming Yang (Heilongjiang Xing Rui Trade Co., Ltd., VP), Na Wang (Manager of Finance Department of Heilongjiang Xing Rui Trade Co., Ltd.).

2. Meeting Presided by Mr. Gangyou Wang and recorded by: Jia Wang.

3. Meeting topics: Discussion and decision on the plan of Heilongjiang Xing Rui Hongye Trade Co., Ltd. (hereinafter referred to as Chinese parent company) to establish in the United States Ruifeng Biztech Inc. (hereinafter referred to as the U.S. branch) and other matters.

   ① President announced beginning of the meeting and read the agenda.

   ② On behalf of Heilongjiang Rui Xing Hongye Trade Co., Ltd., the meeting organizer reports to the general assembly the plan by Heilongjiang Xing Rui Trade Co., Ltd.to set up a U.S. branch for consideration by the participants. After deliberations, the plan stated in the organizer's report is unanimously approved and adopted at the meeting.

   ③ On behalf of Heilongjiang Rui Xing Hongye Trade Co., Ltd., the organizer introduced to the participants after the drafting of the articles of incorporation of American branch and its main contents, which is approved by unanimous vote of the meeting attendees.

④ On behalf of Heilongjiang Rui Xing Hongye Trade Co., Ltd., the organizer introduced and proposed to the general assembly the candidate for president of Ruifeng Biztech Inc.. After discussion and deliberations, Mr. Yougang Wang is appointed to serve as President of Ruifeng Biztech Inc. for a term of five years.

⑤ On behalf of Heilongjiang Rui Xing Hongye Trade Co., Ltd., the organizer introduced and proposed to the general assembly the U.S. branch investment budget and business plan with an investment budget of three million dollars, which is approved after discussion by the participants.

⑥ Participants listened to the report by President Mr. Gangyou Wang on his business filed studies during his two visits in July 2012 and Aug. 2013 in the United States; and his report analyzes the actual demand and feasibility of establishing a subsidiary in the United States.

4. Rresolutions of the meeting: to promote the sustainable development of our business, improve its international market position, to better promote China-US business and cultural exchanges, the meeting has reached the following resolution: to establish Ruifeng Biztech Inc. as a wholly owned subsidiary of Heilongjiang Rui Xing Hongye Trade Co., Ltd.; the meeting unanimously elects Mr. Gangyou Wang, president of Heilongjiang Rui Xing Hongye Trade Co., Ltd. to serve as Presidentof Ruifeng Biztech Inc. in the United States for 5 years, in full charge of the overall management of finance, personnel, marketing project development of the branch of the United States, to enter into agreements on behalf of the parent company in the United States. Mr. Wang will return to China after the five-year term expires when he will learn and bring back the advanced management experience to Chinese parent company, drawing the United States advanced management experience, and promote the development of China parent company.

Meeting adjourned, the shareholders agreed to General Assembly resolution by signing below:

Gangyou Wang (signature)

Hongming Yang (signature)

Hongye Heilongjiang Xing Rui Trade Co., Ltd.

November 8, 2013

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001663


# 黑龙江睿兴鸿业经贸有限公司
# 关于设立美国睿丰商务科技公司
# 股东会议纪要

黑龙江睿兴鸿业经贸有限公司第三届董事会第二次股东会议，于2013年11月6日在黑龙江睿兴鸿业经贸有限公司会议室召开。

1．应到股东人数2人，王刚友，杨洪明，实到股东人数2人。

列席：张耀辉（黑龙江睿兴鸿业经贸有限公司监事）、赵旭（黑龙江睿兴鸿业经贸有限公司董事长助理兼人事行政经理）(孟庆龙（黑龙江睿兴鸿业经贸有限公司副总经理）、张好臣（黑龙江睿兴鸿业经贸有限公司副总经理）、王超（黑龙江睿兴鸿业经贸有限公司副总经理）、杨洪明（黑龙江睿兴鸿业经贸有限公司副总经理）、王娜（黑龙江睿兴鸿业经贸有限公司财务部部长）。

2．会议主持人：王刚友，记录人：王佳。

3．会议议题：协商表决黑龙江睿兴鸿业经贸有限公司(以下简称中国母公司)在美国设立美国睿丰商务科技公司(以下简称美国子公司)等事宜。

① 主持人宣布大会开始，并宣读了会议议程。

② 发起人代表中国黑龙江睿兴鸿业经贸有限公司，向大会作了筹办美国子公司的报告，经与会人员审议，表决一致同意通过该筹办报告 。

③ 发起人代表中国黑龙江睿兴鸿业经贸有限公司向与会人员介绍美国子公司章程的起草经过和主要内容，一致表决通过该子公司章程。

④ 发起人代表中国黑龙江睿兴鸿业经贸有限公司向大会介绍了美国睿丰商务科技公司总裁人选，经与会人员讨论后，选举王刚友为美国睿丰商务科技公司总裁，任期5年。



黑龙江睿兴鸿业经贸有限公司
Heilongjiang Rui Xing Hongye Trade Company Limited

地址：哈尔滨市香坊区旭升街3-1号旭升小区1栋1单元1层3号　邮编：150049
邮箱：bwgs@163.com　电话：0451-87964388　　公司网址：www.wgsrf.com

⑤ 发起人代表中国黑龙江睿兴鸿业经贸有限公司向大会介绍美国子公司投资预算及商业计划，设立投资预算300万美金，经与会人员讨论后一致同意。

⑥与会人员听取了董事长王刚友、二0一二年七月——二0一三年八在美国考察的报告，分析了在美国设立子公司的实际需求及可行性。

4．会议决议：为促进本公司业务可持续发展，提高其国际市场地位，更好地促进中美商业文化交流，会议决议：成立美国睿丰商务科技公司，为黑龙江睿兴鸿业经贸有限公司全资子公司；会议一致选举黑龙江睿兴鸿业经贸有限公司董事长王刚友为美国睿丰商务科技公司总裁，派遣到美国工作5年，全面管理美国子公司的财务、人事、市场项目开发，代表中国母公司在美国签署合约，5年任期满后返回中国。王刚友将把在美国学习的先进管理经验带回中国母公司，借鉴美国先进的管理经验，促进中国母公司更好发展。

会议到此结束，同意大会决议股东签字：

黑龙江睿兴鸿业经贸有限公司
2013年11月8日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

(Certified Translation)

# Tax Registration Certificate
## (Copy)

Registration No.: 230110578095165

Tax Payer Name:        Heilongjiang Rui Xing Hongye Trade Co., Ltd.

Legal Representative:   Gangyou Wang

Address:               1-1-1-3 Xusheng Street, Xiangfang District, Harbin

Type of Registration:   Other Limited liability Company

Scope of Business:      General business products: sell and supply of: fuel oil (until June 21, 2013), chemical industrial products, metals and hardware, construction materials, etc.

Tax Deduction Liability:   Per regulations

Issuing Authority:  Heilongjiang Province National Tax Bureau (Official Seal)

July 27, 2012

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001666

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# 税务登记证（副本）

字 230110676095166 号

纳税人名称： 尼木江摩网络经营有限公司

法定代表人（负责人）： 王刚文

地 址： 哈尔滨市香坊区幸福乡新乡一号地丹小区1栋1单元1层3号

登记注册类型： 其他有限责任公司

经营范围： 一般经营项目：软硬件、配件销售（有效期至2015年06月21日）

批准设立机关： 哈尔滨市香坊区市场监督管理局幸福分局

主管税务机关： 哈尔滨市...

国家税务总局监制

| 总机构情况（由分支机构填写） | |
|---|---|
| 名 称 | |
| 纳税人识别号 | |
| 地 址 | |
| 经营范围 | |

| 分支机构设置（由总机构填写） | |
|---|---|
| 名 称 | |
| 地 址 | |
| 名 称 | |
| 地 址 | |
| 名 称 | |
| 地 址 | |
| 名 称 | |
| 地 址 | |
| 名 称 | |
| 地 址 | |

# Heilongjiang Rui Xing Hongye Trade

## Co., Ltd.

**Board of Directors**

**Supervisor: Yaohui**

**President: Gangyou Wang**

**Asst President: Xu Zhao**

**VP: Hongming Yang**

**Adm & HR Manager: Xu Zhao**

**Secretary: Jia Wang**

**Business Dept**
Manager: Gangying Wang
Assistant: Qingzi Zhang
Customer Rep: Hong Fan

CFO: Na Wang
Accountant: Ziqi Meng
Cashier: Ying Zhao

**VP: Haocheng Zhang**

**Transport Dept**
Manager: Yongmin He

Drivers:
Zijie Liu
Chuanyun Liu,
Benwei Li,
Shenglin Yang,
Xufeng Li,
Zijie Liu,
Jian Liu,
Chunyu Liu,
Zuoshun Fu,
Haijun He,
Bin Gao,
Beicang Yang

**Market Dept Manager:** Youyue Tan

Customer Reps:
Changshun Yu
Yanhong Li
Yan Chen
Najun Li

Adm Manager
Yingbo Li

**VP: Qinglong Meng**

**Legal Counsel: Cao Wang**

**Nestle Dept. Manager:** Zhigang Wang

Customer Rep: Zhengyu Zhang

Customer Executive: Jiaxing Liu

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001668

黑龙江睿兴鸿业经贸有限公司架构



董事会

监事 张耀辉

董事长 王 刚 友

副总经理 孟龙龙

重巢部部长 王刚志
法律事务部 顾问 王规

张振宇—客户经理
刘城兴—客户执行

副总经理 张好臣

市场部部长 覃优王

于长顺—客户经理
李艳红—客户经理
陈 言—客户执行
李万君—客户执行
李鹤波—行政管理

运输部部长 何承民

刘志杰—司机
刘传运—司机
李本伟—司机
杨森林—司机
零旭风—司机
刘志杰—司机
刘 健—司机
柳泰雨—司机
付作顺—司机
何海军—司机
商 彬—司机
杨百昌—司机

人事行政部 经理 赵旭

财务总监 王娜
会 计 孟子琪
出 纳 赵颖

秘书 王佳

副总经理 杨洪明

业务部部长 王刚印

张庆芝—助 理
范 红—客户执行

董事长助理 赵旭

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY　　　　　　　HU_00001669

(CERTIFIED TRANSLATION)

# Audit Report

......................★...........................

## HEILONGJIANG JINYUDA ACCOUNTANT OFFICE CO.LTD

## HARBIN CHINA

### HEILONGJIANG JINYUDA ACCOUNTANTS BUSINESS OFFICE CO.LTD

### JINYUDA REVIEW DOCUMENT NO. (2014) A011

To Heilongjiang Rui Xing Hongye Trade Co., Ltd.:

We have audited the attached financial statement of Heilongjiang Rui Xing Hongye Trade Co., Ltd., including the balance sheet of December 31, 2013, the annual income statement and the auditing notes.

...........

**3. Audit Recommendations**

In our opinion, the financial statement of Heilongjiang Rui Xing Hongye Trade Co., Ltd. has fully established based on the requirements and establishments of Enterprise Accounting Standards and <Enterprise Accounting System>. It fairly present in all material respects the financial condition of December 31, 2013 and the results of operation status of the year 2014.

HEILONGJIANG JINYUDA ACCOUNTANTS    HEILONGJIANG JINYUDA ACCOUNTANTS

BUSINESS OFFICE CO. LTD                BUSINESS OFFICE CO. LTD  (official seal)

CHINA HARBIN

CHINESE CERTIFIED PUBLIC ACCOUNTANT: (Seal)

CHINESE CERTIFIED PUBLIC ACCOUNTANT: (Seal)

DATE OF REPORT: January 15, 2014

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

Auditing Notes

1. Company Brief Discription

Heilongjiang Rui Xing Hongye Trade Co., Ltd. was established on October 24th, 2010, approved by Harbin State Administration of Industry and Commerce branch. The company's legal entity of enterprise with business license number: 230107100090918 (1-1). The address is: 1-1-1-3 Xusheng Street 3-1 Xiangfang District (original Yuandong District) in Harbin. Legal Representative is Yougang Wang. It has an initial registered Capital of one million RMB Yuan. The company registered Scope of Business includes fuel oil; chemical products; hardware and electrical equipment and construction material.

2. Principal accounting policies
1) Accounting system
The company executes "Enterprise Accounting Rules" and "Enterprise Accounting System"

2) Accounting year
The company accounting year is from January 1 to December 31.

3) Accounting principle and Accounting basis
Accounting principle is based on accrual basis, and accounting basis is based on actual cost.

4) Bookkeeping base currency and foreign currency conversion
Bookkeeping base currency is RMB. Unit: Yuan

5) Inventory accounting method
The inventory commodity accounting method is based on actual cost

6) Confirmation of income

Based on revenue realization is based on sold products, payments received, or received receipt of accounts receivable. (official seal)

3. Main related comments of the report

All units are RMW without special comments.

1) Monetary resources: Ending balance is 4,693,900.56 yuan
2) Accounts receivable: Ending balance is 3,341,824.34 yuan
3) Other receivables: Ending balance is 502,725.95 yuan
4) Inventory: Ending balance is 4,841,856.55 yuan
5) Fixed assets original value: Ending balance is 12,800.00 yuan
6) Net fixed assets: Ending balance is 12,800.00 yuan
7) Accounts payable: Ending balance is 2,191,534.34 yuan
8) Tax payable: Ending balance is 91,016.53 yuan
9) Paid in capital: Ending balance is 1,000,000.00 yuan
10) Undistributed profit: Ending balance is 10,110,556.53 yuan
11) Annual profit: Ending balance is 6, 608, 902.25 yuan                (official seal)

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# BALANCE SHEET

| Heilongjiang Ruixing Hongye Economic and Trade Development Co. LTD | | | December, 2013 | | Sheet 1 |
|---|---|---|---|---|---|
| Capital | Beginning Balance | Ending Balance | Liabilities and Euities (Shareholder Equities) | Beginning Balance | Ending Balance |
| Current Assets: | | | Current Liabilities: | | |
| Cash and Cash Equivaents | 139, 261. 18 | 4, 693, 900. 56 | Short-term Borrowing | | |
| Short Term Invesements | | | Notes Payable | | |
| Notes Receivable | | | Accounts Payable | 1, 879, 274. 64 | 2, 191, 534. 34 |
| Dividend Receivable | | | Prepaid Accounts | | |
| Interest Receivable | | | Wage Payabie | | |
| Accountants Receivable | 4, 546, 512. 20 | 3, 341, 824. 34 | Welfare Payable | | |
| Other Accountants Receivable | | 502, 725. 95 | Dividend Payable | | |
| Prepaid expenses | | | Tax Payable | 296, 226. 15 | 91, 016. 53 |
| Subsidies Receivable | | | Other Accounts Payable | | |
| Inventory | 8, 127, 183. 99 | 4, 841, 856. 55 | Other Payables | 6, 545, 060. 79 | |
| Deffered Expenses | 495, 071. 42 | | Accrued expenses | | |
| Long-term investment on bonds due within one year | | | Expected Liabilities | | |
| Other current assets | | | Long-Term Liabilities Due Within One Year | | |
| Total current assets | 13, 308, 028. 79 | 13, 380, 307. 40 | Other Current Liabilities | | |
| Long-term investment: | | | | | |
| Long-term equity investment | | | Total Current Liabilities | 8, 720, 561. 58 | 2, 282, 550. 87 |
| Long-term debt investment | | | Long-Term Liabilities: | | |
| Total long-term investment | | | Long-Term Loans | | |
| Fixed assets: | | | Bonds Payable | | |
| Fixed assets original value | 12, 800. 00 | 12, 800. 00 | Long-Term Payables | | |
| Less Accum. Depreciation | | | Special Payable | | |
| Net fixed assets value | 12, 800. 00 | 12, 800. 00 | Other Long-Term Liabilities | | |
| Less: Depreciation of Fixed Assets | | | Total Long-Term Liabilities | | |
| Net fixed assets | | 12, 800. 00 | Deferred Tax: | | |
| Construction materials | | | Deferred Tax Liabilities | | |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

| | | | | | |
|---|---|---|---|---|---|
| Construction in process | | | Total Liabilities | 8, 720, 561. 58 | 2, 282, 550. 87 |
| Fixed assets liquidation | | | | | |
| Total fixed assets | 12, 800. 00 | 12, 800. 00 | Owner's Equity (or Shareholders' Equity) | | |
| Intangible assets and other assets: | | | Paid-in Capital (or Stock Capital) | 1, 000, 000. 00 | 1, 000, 000. 00 |
| Intangible assets | | | Less Accum. Investment Returned | | |
| Long-term deferred expenses | | | Net Paid-in Capital (or Stock Capital) | 1, 000, 000. 00 | 1, 000, 000. 00 |
| Other long-term assets | | | Capital Reserve | | |
| Total intangible assets and other assets | | | Surplus Reserve | | |
| | | | Including: statutory public welfare fund | | |
| Deferred tax: | | | Undistributed Profit | 3, 600, 267. 21 | 10, 110, 556. 53 |
| Deferred tax assets | | | Total Owner's Equity (or Shareholders' Equity) | 4, 600, 267. 21 | 11, 110, 556. 53 |
| Total assets | 13, 320, 828. 79 | 13, 393, 107. 40 | Total Liabilities and Total Owner's Equity (or Shareholders' Equity) | 13, 320, 828. 79 | 13, 393, 107. 40 |

## HEILONGJIANG JINYUDA ACCOUNTANT OFFICE CO.LTD

(official seal)

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# BALANCE SHEET

Company:               2013-12        Unit: Yuan

Person in Charge:      Person in Charge of Accounting:   Tab:

| Assets | Line | Beginning of Year | End of Year |
|---|---|---|---|
| 1.Sales Income | 1 | 2482945. 96 | 61737834. 06 |
| Less: Cost of Sales | 2 | 2089358. 7 | 54112855. 26 |
| Operating Costs | 3 | 67950 | 1023205. 13 |
| Sales Tax | 4 | | |
| 2.Sales Income | 5 | 325637. 26 | 6601773. 67 |
| Plus: Other Operating Income | 6 | | |
| Less: Overheads | 7 | | |
| Financial Expenses | 8 | -2134. 68 | -7128. 58 |
| 3.Operating Income | 9 | 327771.94 | 6608902. 25 |
| Plus: Investment Income | 10 | | |
| Bonus Income | 11 | | |
| Non-operating Income | 12 | | |
| Less: Non-operating Expenses | 13 | | |
| Plus: Prior Year Income Adjustment | 14 | | |
| 4.Total Income | 15 | 327771.94 | 6608902. 25 |
| Less: Income Tax | 16 | 63199. 45 | 98612. 93 |
| 5.Net Income | 17 | 264572. 49 | 6510289. 32 |

**HEILONGJIANG JINYUDA ACCOUNTANT OFFICE CO.LTD**  (official seal)

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# 审 计 报 告 书

**黑龙江金誉达会计师事务所有限公司**

HEILONGJIANG JINYUDA ACCOUNTANT OFFICE CO.LTD

中国·哈尔滨

HAERBIN · CHINA

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001675



# 黑龙江金誉达会计师事务所有限公司
## HEILONGJIANG JINYUDA ACCOUNTANTS BUSINESS OFFICE CO. LTD

金誉达会审字（2014）A011 号

# 审 计 报 告

黑龙江睿兴鸿业经贸有限公司：

我们审计了后附的黑龙江睿兴鸿业经贸有限公司(以下简称贵公司)财务报表，包括 2013 年 12 月 31 日的资产负债表和 2014 年度的损益表以及财务报表附注。

一、管理层对财务报表的责任

按照企业会计准则和《企业会计制度》的规定编制财务报表是贵公司管理层的责任。这种责任包括：（1）设计、实施和维护与财务报表编制相关的内部控制，以使财务报表不存在由于舞弊或错误而导致的重大错报；（2）选择和运用恰当的会计政策；（3）作出合理的会计估计。

二、注册会计师的责任

我们的责任是在实施审计工作的基础上对财务报表发表审计意见。我们按照中国注册会计师审计准则的规定执行了审计工作。中国注册会计师审计准则要求我们遵守职业道德规范，计划和实施审计工作以对财务报表是否不存在重大错报获取合理保证。

审计工作涉及实施审计程序，以获取有关财务报表金额和披露的审计证据。选择的审计程序取决于注册会计师的判断，包括对由于舞弊或错误导致的财务报表重大错报风险的评估。在进行风险评估时，我们考虑与财务报表编制相关的内部控制，以设计恰当的审计程序，但目的并非对内部控制的有效性发表意见。审计工作还包括评价管理层选用会计政策的恰当性和作出会计估计的合理性，以及评价财务报表的总体列报。

我们相信，我们获取的审计证据是充分、适当的，为发表审计意见提供了基础。

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

# 会计报表附注

## 一、公司简介

黑龙江睿兴鸿业经贸有限公司于 2011 年 10 月 24 日经哈尔滨市工商行政管理局动力分局核准成立。企业法人营业执照注册号：230107100090918 (1-1)。住所：哈尔滨市香坊区（原动力区）旭升街 3-1 号旭升小区 1 栋 1 单元 1 层 3 号。法定代表人：王刚友。注册资本：壹佰万元。经营范围：一般经营项目：经销：燃料油、化工产品、五金交电、建筑材料。

## 二、主要会计政策

### 1、会计制度

本单位执行《企业会计准则》及《企业会计制度》

### 2、会计年度

本单位会计年度自公历 1 月 1 日至当年 12 月 31 日止。

### 3、记账原则和计价基础

以权责发生制为记账原则，以实际成本为计价基础。

### 4、记账本位币及外币换算

以人民币为记账本位币。单位：元。

### 5、存货核算方法：

本单位的存货库存商品采用实际成本核算。

### 6、收入的确认。

以产品已经销售，收到价款，或已取得收取款项的证据时，作为收入实现。

## 三、报表主要相关项目注释

以下附注无特别注释，金额单位均为人民币。

1. 货 币 资 金：期末余额为人民币 4,693,900.56 元

2. 应 收 账 款：期末余额为人民币 3,341,824.34 元

3. 其他应收款 ：期末余额为人民币 502,725.95 元

4. 存    货 ：期末余额为人民币 4,841,856.55 元

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

5.　固定资产原价：期末余额为人民币 12,800.00 元

6.　固定资产净值：期末余额为人民币 12,800.00 元

7.　应 付 账 款：期末余额为人民币 2,191,534.34 元

8.　应 交 税 金：期末余额为人民币 91,016.53 元

9.　实 收 资 本：期末余额为人民币 1,000,000.00 元

10.　未分配利润 ：期末余额为人民币 10,110,556.53 元

11.　本 年 利 润 ：期末余额为人民币 6,608,902.25 元

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

三、审计意见

我们认为，黑龙江睿兴鸿业经贸有限公司的财务报表已经按照企业会计准则和《企业会计制度》的规定编制，在所有重大方面公允反映了贵公司 2013 年 12 月 31 日的财务状况和 2014 年度的经营成果情况。



黑龙江金誉达会计师
事务所有限公司

中国　哈尔滨

中国注册会计师：张晓学

中国注册会计师：

报告日期：　2014 年 1 月 15 日

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY　　　　　　　　　　　　HU_00001679

资产负债表　　　　　　　　　　　2013年12月

| 资产 | 年初数 | 期末数 | 负债和所有者权益(或股东权益) | 年初数 | 期末数 |
|---|---|---|---|---|---|
| 流动资产: | | | 流动负债: | | |
| 货币资金 | 139,261.18 | 4,693,900.56 | 短期借款 | | |
| 短期投资 | | | 应付票据 | | |
| 应收票据 | | | 应付账款 | 1,879,274.64 | 2,191,534.34 |
| 应收股利 | | | 预收账款 | | |
| 应收利息 | | | 应付工资 | | |
| 应收账款 | 4,546,512.20 | 3,341,824.34 | 应付福利费 | | |
| 其他应收款 | | 502,725.95 | 应付股利 | | |
| 预付账款 | | | 应交税金 | 296,226.15 | 91,016.53 |
| 应收补贴款 | | | 其它应交款 | | |
| 存货 | 8,127,183.99 | 4,841,856.55 | 其他应付款 | 6,545,060.79 | |
| 待摊费用 | 495,071.42 | | 预提费用 | | |
| 一年内到期的长期债权投资 | | | 预计负债 | | |
| 其它流动资产 | | | 一年内到期的长期负债 | | |
| 流动资产合计 | 13,308,028.79 | 13,380,307.40 | 其它流动负债 | | |
| 长期投资: | | | 流动负债合计 | 8,720,561.58 | 2,282,550.87 |
| 长期股权投资 | | | 长期负债: | | |
| 长期债权投资 | | | 长期借款 | | |
| 长期投资合计 | | | 应付债券 | | |
| 固定资产: | | | 长期应付款 | | |
| 固定资产原价 | 12,800.00 | 12,800.00 | 专项应付款 | | |
| 减:累计折旧 | | | 其他长期负债 | | |
| 固定资产净值 | 12,800.00 | 12,800.00 | 长期负债合计 | | |
| 减:固定资产减值准备 | | | 递延税项: | | |
| 固定资产净额 | | 12,800.00 | 递延税款贷项 | | |
| 工程物资 | | | 负债合计 | 8,720,561.58 | 2,282,550.87 |
| 在建工程 | | | 所有者权益(或股东权益): | | |
| 固定资产清理 | | | 实收资本(或股本) | 1,000,000.00 | 1,000,000.00 |
| 固定资产合计 | 12,800.00 | 12,800.00 | 减:已归还投资 | | |
| 无形资产及其他资产: | | | 实收资本(或股本)净额 | 1,000,000.00 | 1,000,000.00 |
| 无形资产 | | | 资本公积 | | |
| 长期待摊费用 | | | 盈余公积 | | |
| 其它长期资产 | | | 其中:法定公益金 | | |
| 无形资产及其他资产合计 | | | 未分配利润 | 3,600,267.21 | 10,110,556.53 |
| 递延税项: | | | 所有者权益(或股东权益)合计 | 4,600,267.21 | 11,110,556.53 |
| 递延税款借项 | | | | | |
| 资产总计 | 13,320,828.79 | 13,393,107.40 | 负债和所有者权益(或股东权益)总计 | 13,320,828.79 | 13,393,107.40 |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

## 损益表

编制单位：                  2013-12                单位：元

单位负责人：        财会负责人：复核：        制表：

| 项 目 | 行次 | 本期数 | 本年累计数 |
|---|---|---|---|
| 一、主营业务收入 | 1 | 2482945.96 | 61737834.06 |
| 减：主营业务成本 | 2 | 2089358.7 | 54112855.26 |
| 营业费用 | 3 | 67950 | 1023205.13 |
| 主营业务税金及附加 | 4 | | |
| 二、主营业务利润 | 5 | 325637.26 | 6601773.67 |
| 加：其他业务利润 | 6 | | |
| 减：管理费用 | 7 | | |
| 财务费用 | 8 | -2134.68 | -7128.58 |
| 三、营业利润 | 9 | 327771.94 | 6608902.25 |
| 加：投资收益 | 10 | | |
| 补贴收入 | 11 | | |
| 营业外收入 | 12 | | |
| 减：营业外支出 | 13 | | |
| 加：以前年度损益调整 | 14 | | |
| 四、利润总额 | 15 | 327771.94 | 6608902.25 |
| 减：所得税 | 16 | 63199.45 | 98612.93 |
| 五、净利润 | 17 | 264572.49 | 6510289.32 |

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY          HU_00001681



**黑龙江睿兴鸿业经贸有限公司**
Heilongjiang Rui Xing Hongye Trade Co. Ltd.

| Home | Rui Xing Hongye | Main items | U.S. subsidiary | Fishing industry and agriculture projects | Contact Us |
|------|------|------|------|------|------|

**公司简介 /ABOUT US**



Hongye Heilongjiang Xing Rui Trade Co.,
Ltd. is based on the "People's Republic of
China Industrial and Commercial
Administration Law", "People's Republic
of China Enterprise Promotion Law" by
the Harbin City Administration for
Industry and Trade Company registered.
In the hall

**行业动态 /NEWS**



March 6, 2014 fuel ...
Initial production of heavy oil
The use of coal tar pitch
On the continuation of the
implementation of part of the stone ...
Chinese oil companies winning the
world's most ...

**美国子公司 USA FILME**



Business license
Business Advertising
American Rui Feng Company Profile

**工农渔项目**



Industrial projects

Agricultural projects

Fisheries Project


Wash oil


Off crystal anthracene oil


Anthracene oil


200 # solvent oil


120 # solvent oil


6 # solvent oil

Home About Us Main items U.S. subsidiary agricultural projects Contact us

Hongye Heilongjiang Xing Rui Trade Co., Ltd. Copyright ICP: Black ICP No. 14000191 Technical support: the Shanghai Science and Technology

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                                        HU_00001682



# 黑龙江睿兴鸿业经贸有限公司
Heilongjiang Rui Xing Hongye Trade Co. Ltd.

---

**Rui Xing Hongye**

Company Profile

Scientific and technological


联系我们 /CONTACT US

You are here:    Home > Rui Xing Hongye


2014 New Year message.


Company Profile


Future planning


Jobs


Company Pictures


Company license


Product Image


Company fleet

First   Previous   1   Next   Last Page

Home About Us Main items U.S. subsidiary agricultural projects Contact us

Hongye Heilongjiang Xing Rui Trade Co., Ltd. Copyright ICP: Black ICP No. 14000191 Technical support: the Shanghai Science and Technology

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001683



黑龙江睿兴鸿业经贸有限公司
**Heilongjiang Rui Xing Hongye Trade Co. Ltd.**

Homepage   Add to Favorites   Contact Us

| Home | Rui Xing | Main items | U.S. | Fishing | Contact Us |
|------|----------|------------|------|---------|------------|
| | Hongye | | subsidiary | industry and | |
| | | | | agriculture | |
| | | | | projects | |

---

### Main items

Main business description

Petroleum products

Coal chemical products


联系我们
/CONTACT US

You are here.    Home > Main projects


200 # solvent oil


120 # solvent oil


6 # solvent oil


Heavy oil


250 # fuel oil


M 100 fuel oil


VGO


180 # fuel oil

First   Previous   1   2   Next   Last

Home About Us Main items U.S. subsidiary agricultural projects Contact us

Hongye Heilongjiang Xing Rui Trade Co., Ltd. Copyright ICP: Black ICP No. 14000191 Technical support: the Shanghai Science and Technology

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY     HU_00001684



**黑龙江睿兴鸿业经贸有限公司**
Heilongjiang Rui Xing Hongye Trade Co. Ltd.

&#9998; Homepage   &#9923; Add to Favorites   &#9993; Contact Us

| Home | Rui Xing Hongye | Main Items | U.S. subsidiary | Fishing industry and agriculture projects | Contact Us |

---

**Main items**

Main business description

Petroleum products

Coal chemical products



**联系我们**
/CONTACT US

&#9873; You are here:    Home > Main projects




Wash oil


Off crystal anthracene oil


Anthracene oil


Coal tar pitch


Coal tar

Of 1 page 5 records

Home About Us Main items U.S. subsidiary agricultural projects Contact us

Hongye Heilongjiang Xing Rui Trade Co., Ltd. Copyright ICP: Black ICP No. 14000191 Technical support: the Shanghai Science and Technology

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY     HU_00001685



**黑龙江睿兴鸿业经贸有限公司**
Heilongjiang Rui Xing Hongye Trade Co. Ltd.

⌂ Homepage  ɦȿ Add to Favorites  ɦȿ Contact Us

| Home | Rui Xing | Main items | U.S. | Fishing | Contact Us |
|------|----------|------------|------|---------|------------|
|      | Hongye   |            | subsidiary | industry and | |
|      |          |            |      | agriculture | |
|      |          |            |      | projects | |

**Industry News**

Domestic industry

International Trade

联系我们
/CONTACT US

ɦ You are here:    Home> Company Profile

| | |
|---|---|
| March 6, 2014 fuel prices | 2014-03-07 |
| Heavy initial production process | 2014-03-07 |
| Use of coal tar pitch | 2014-03-07 |
| Notice on the continuation of the implementation of part of the naphtha fuel oil consumption tax policy | 2014-03-07 |
| China the world's largest oil companies bid offshore oilfield | 2013-12-26 |
| The country imports more than one million tons of fuel oil fell | 2014-03-07 |
| Coal tar historical development | 2014-03-07 |

Total 1 Page 7 records

Home About Us Main items U.S. subsidiary agricultural projects Contact us

Hongye Heilongjiang Xing Rui Trade Co., Ltd. Copyright ICP: Black ICP No. 14000191 Technical support: the Shanghai Science and Technology

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                    HU_00001686

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER WAC-14-110-51131 | | CASE TYPE I129 PETITION FOR A NONIMMIGRANT WORKER |
|---|---|---|
| RECEIPT DATE March 12, 2014 | PRIORITY DATE | PETITIONER RUIFENG BIZTECH INC |
| NOTICE DATE March 18, 2014 | PAGE 1 of 2 | BENEFICIARY WANG, GANGYOU |

| | |
|---|---|
| HENRY R HU<br>LAW OFFICES OF HENRY R HU<br>RE: RUIFENG BIZTECH INC<br>520 S EL CAMINO REAL STE 510<br>SAN MATEO CA 94402 | Notice Type: Approval Notice<br>Class: L1A<br>Valid from 03/18/2014 to 03/17/2015<br>Consulate: |

The above petition and change of status have been approved. The status of the named foreign worker(s) in this classification is valid as indicated above. The foreign worker(s) can work for the petitioner, but only as detailed in the petition and for the period authorized. Changes in employment or training may require you to file a new Form I-129 petition. Since this employment or training authorization stems from the filing of this petition, separate employment or training authorization documentation is not required. Please contact the IRS with any questions about tax withholding.

The petitioner should keep the upper portion of this notice. The lower portion should be given to the worker. He or she should keep the right part with his or her Form I-94, Arrival-Departure Record. The I-94 portion should be given to the U.S. Customs and Border Patrol when he or she leaves the United States. The left part is for his or her records. A person granted a change of status who leaves the U.S. must normally obtain a visa in the new classification before returning. The left part can be used in applying for the new visa. If a visa is not required, he or she should present it, along with any other required documentation, when applying for reentry in this new classification at a port of entry or pre-flight inspection station. The petitioner may also file Form I-824, Application for Action on an Approved Application or Petition, to request that we notify a consulate, port of entry, or pre-flight inspection office of this approval.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

The Small Business Regulatory Enforcement and Fairness Act established the Office of the National Ombudsman (ONO)

Please see the additional information on the back. You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL    CA    92607-0111
Customer Service Telephone: (800) 375-5283
Form I797A (Rev. 10/31/05)N

PLEASE TEAR OFF FORM I-94 PRINTED BELOW, AND STAPLE TO ORIGINAL I-94 IF AVAILABLE

Detach This Half for Personal Records

Receipt#   WAC-14-110-51131
I-94#   187750999 30
NAME WANG, GANGYOU
CLASS L1A

VALID FROM 03/18/2014 UNTIL 03/17/2015

PETITIONER: RUIFENG BIZTECH INC
2600 HILLTOP DR BLDG B 333
RICHMOND CA 94806

---

**187750999 30**

Receipt Number WAC-14-110-51131
United States Citizenship and Immigration Services

I-94
Departure Record    Petitioner: RUIFENG BIZTECH

| 14. Family Name WANG | |
|---|---|
| 15. First (Given) Name GANGYOU | 16. Date of Birth 02/13/1963 |
| 17. Country of Citizenship CHINA, PEOPLE'S REPUBLIC OF | |

Form I-797A (Rev. 10/31/05) N

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                                    HU_00001687

- *Please save the upper portion of this notice for your records. Please enclose a copy if you have to write us or a U. S. Consulate about this case, or if you file another application based on this decision.*

- *You will be notified separately about any other applications or petitions you have filed.*

## Additional Information

### GENERAL.

The filing of an application or petition does not in itself allow a person to enter the United States and does not confer any other right or benefit.

### INQUIRIES.

You should contact the office listed on the reverse side of this notice if you have questions about the notice, or questions about the status of your application or petition. *We recommend you call.* However, if you write us, please enclose a copy of this notice with your letter.

### APPROVAL OF NONIMMIGRANT PETITION.

Approval of a nonimmigrant petition means that the person for whom it was filed has been found eligible for the requested classification. If this notice indicates we are notifying a U.S. Consulate about the approval for the purpose of visa issuance, and you or the person you filed for have questions about visa issuance, please contact the appropriate U.S. Consulate directly.

### APPROVAL OF AN IMMIGRANT PETITION.

Approval of an immigrant petition does not convey any right or status. The approved petition simply establishes a basis upon which the person you filed for can apply for an immigrant or fiance(e) visa or for adjustment of status.

A person is not guaranteed issuance of a visa or a grant of adjustment simply because this petition is approved. Those processes look at additional criteria.

If this notice indicates we have approved the immigrant petition you filed, and have forwarded it to the Department of State National Visa Center, that office will contact the person you filed the petition for directly with information about visa issuance.

In addition to the information on the reverse side of this notice, the instructions for the petition you filed provide additional information about processing after approval of the petition.

For more information about whether a person who is already in the United States can apply for adjustment of status, please see Form I-485, *Application to Register Permanent Residence or Adjust Status*, or call our National Customer Service Center at **1-800-375-5283**.

### FORM I-94 ATTACHMENT.

The section of this notice below the perforation is a replacement Form I-94. After you have used this form to complete any necessary Form I-9, or other required documentation, tear off the bottom portion and give it to the alien. When you are looking at the front of the tear off, the alien should keep the right portion with his or her original Form I-94 and passport, if any, as evidence of the changes made to his or her status. A copy of it should be submitted with any subsequent application or petition.

The smaller portion on the left on the left of the tear off is for the alien to keep as a permanent record of this action. He or she should be advised to *not* keep this stub with his or her Form I-94. If he or she should ever lose the replacement Form I-94, a copy of this stub should be submitted with the application for a new replacement Form I-94.

**Warning:** A nonimmigrant who accepts unauthorized employment is subject to deportation.

**Important:** Retain this permit in your possession; you must surrender it when you leave the U.S. Failure to do so may delay your reentry into the U.S. in the future. You are authorized to stay in the U.S. only until the date written on this form. To remain past this date, without permission from immigration authorities, is a violation of the law.

**Surrender this permit when you leave the U.S.:**
— By sea or air, to the transportation line;
— Across the Canadian border, to a Canadian Official;
— Across the Mexican border, to a U.S. Official;
Students planning to reenter the U.S. within 30 days to return to the same school, see "Arrival–Departure" on Page 2 of Form I-20 prior to surrendering this permit.

**Record of Changes**

**ALIEN'S PERMANENT RECORD**

**Port:**     **Departure Record**
**Date:**
**Carrier:**
**Flight #  /Ship  Name:** _____

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                    HU_00001688

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER WAC-14-110-51131 | | CASE TYPE I129 PETITION FOR A NONIMMIGRANT WORKER |
|---|---|---|
| RECEIPT DATE March 12, 2014 | PRIORITY DATE | PETITIONER RUIFENG BIZTECH INC |
| NOTICE DATE March 18, 2014 | PAGE 2 of 2 | BENEFICIARY WANG, GANGYOU |

(continued)
at the Small Business Administration. The ONO assists small businesses with issues related to federal regulations. If you are a small business with a comment or complaint about regulatory enforcement, you may contact the ONO at www.ombudsman.sba.gov or phone 202-205-2417 or fax 202-481-5719.

NOTICE: Although this application/petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in this application, petition and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine whether revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal proceeding is initiated.



Please see the additional information on the back. You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL    CA    92607-0111
Customer Service Telephone: (800) 375-5283
Form I797A (Rev. 10/31/05)N

PLEASE TEAR OFF FORM I-94 PRINTED BELOW, AND STAPLE TO ORIGINAL I-94 IF AVAILABLE

Detach This Half for Personal Records    VOID    VOID    VOID

Receipt#
I-94#

NAME

CLASS

PETITIONER:

Receipt Number
United States Citizenship and Immigration Services

I-94
Departure Record    Petitioner

14. Family Name

15. First (Given) Name    16. Date of Birth

17. Country of Citizenship

Form I-797A (Rev. 10/31/05) N

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001689

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER | | CASE TYPE I539 APPLICATION TO EXTEND/CHANGE |
|---|---|---|
| WAC-14-110-51142 | | NONIMMIGRANT STATUS |
| RECEIPT DATE | PRIORITY DATE | APPLICANT |
| March 12, 2014 | | GAO, XIAOXIA |
| NOTICE DATE | PAGE | BENEFICIARY |
| March 18, 2014 | 1 of 1 | WANG, RUI |

HENRY R HU
LAW OFFICES OF HENRY R HU
RE: XIAOXIA GAO
520 S EL CAMINO REAL STE 510
SAN MATEO CA 94402

Notice Type: Approval Notice
Class: L2
Valid from 03/18/2014 to 03/17/2015

The above application for change of nonimmigrant status is approved. The new status is listed above. The length of authorized temporary stay in this status for the named applicant(s) is also listed above. The nonimmigrant status of the applicant(s) is based on the separate nonimmigrant status held by a principal alien who has authorized employment in the United States.

The lower portion of this notice should be attached to the previous Form I-94, Departure Record. The I-94 portion should be given to the U.S. Customs and Border Patrol when he or she leaves the United States. If any person included in this application must depart the U.S., he or she may wish to take this notice to facilitate his or her return to this status. If a visa is required, he or she must obtain a new visa in the new classification before returning to the U.S.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

NOTICE: Although this application/petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in this application, petition and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine whether revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal proceeding is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL    CA    92607-0111
**Customer Service Telephone: (800) 375-5283**
Form I797A (Rev. 10/31/05)N

PLEASE TEAR OFF FORM I-94 PRINTED BELOW, AND STAPLE TO ORIGINAL I-94 IF AVAILABLE

Detach This Half for Personal Records

Receipt#   WAC-14-110-51142
I-94#   046900848 30
NAME WANG, RUI
CLASS L2

VALID FROM 03/18/2014 UNTIL 03/17/2015

PETITIONER: GAO, XIAOXIA
922 TAYLOR ST
ALBANY CA 94706

**046900848 30**

Receipt Number WAC-14-110-51142
United States Citizenship and Immigration Services

I-94
**Departure Record**    Petitioner: GAO, XIAOXIA

| 14. Family Name | |
|---|---|
| WANG | |
| 15. First (Given) Name | 16. Date of Birth |
| RUI | 01/12/2008 |
| 17. Country of Citizenship | |
| CHINA, PEOPLE'S REPUBLIC OF | |

Form I-797A (Rev. 10/31/05) N

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY    HU_00001690

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>WAC-14-110-51142 | | CASE TYPE I539 APPLICATION TO EXTEND/CHANGE<br>NONIMMIGRANT STATUS |
|---|---|---|
| RECEIPT DATE<br>March 12, 2014 | PRIORITY DATE | APPLICANT<br>GAO, XIAOXIA |
| NOTICE DATE<br>March 18, 2014 | PAGE<br>1 of 1 | BENEFICIARY<br>GAO, XIAOXIA |

| | |
|---|---|
| HENRY R HU<br>LAW OFFICES OF HENRY R HU<br>RE: XIAOXIA GAO<br>520 S EL CAMINO REAL STE 510<br>SAN MATEO CA 94402 | **Notice Type:** Approval Notice<br>Class: L2<br>Valid from 03/18/2014 to 03/17/2015 |

The above application for change of nonimmigrant status is approved. The new status is listed above. The length of authorized temporary stay in this status for the named applicant(s) is also listed above. The nonimmigrant status of the applicant(s) is based on the separate nonimmigrant status held by a principal alien who has authorized employment in the United States.

The lower portion of this notice should be attached to the previous Form I-94, Departure Record. The I-94 portion should be given to the U.S. Customs and Border Patrol when he or she leaves the United States. If any person included in this application must depart the U.S., he or she may wish to take this notice to facilitate his or her return to this status. If a visa is required, he or she must obtain a new visa in the new classification before returning to the U.S.

THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

NOTICE: Although this application/petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in this application, petition and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine whether revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal proceeding is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL    CA    92607-0111
**Customer Service Telephone: (800) 375-5283**
Form I797A (Rev. 10/31/05)N

PLEASE TEAR OFF FORM I-94 PRINTED BELOW, AND STAPLE TO ORIGINAL I-94 IF AVAILABLE

Detach This Half for Personal Records

Receipt#   WAC-14-110-51142
I-94#   046906384 30
NAME GAO, XIAOXIA
CLASS L2

VALID FROM 03/18/2014 UNTIL 03/17/2015

PETITIONER: GAO, XIAOXIA
922 TAYLOR ST
ALBANY CA 94706

**046906384 30**

Receipt Number WAC-14-110-51142
United States Citizenship and Immigration Services

I-94
**Departure Record**    Petitioner: GAO, XIAOXIA

| 14. Family Name<br>GAO | |
|---|---|
| 15. First (Given) Name<br>XIAOXIA | 16. Date of Birth<br>07/16/1973 |
| 17. Country of Citizenship<br>CHINA, PEOPLE'S REPUBLIC OF | |

Form I-797A (Rev. 10/31/05) N

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY    HU_00001691

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER<br>WAC-14-110-51142 | | CASE TYPE I539 APPLICATION TO EXTEND/CHANGE<br>NONIMMIGRANT STATUS |
|---|---|---|
| RECEIVED DATE<br>March 12, 2014 | PRIORITY DATE | APPLICANT<br><br>GAO, XIAOXIA |
| NOTICE DATE<br>March 13, 2014 | PAGE<br>1 of 2 | |

| | |
|---|---|
| HENRY R HU<br>LAW OFFICES OF HENRY R HU<br>RE: XIAOXIA GAO<br>520 S EL CAMINO REAL STE 510<br>SAN MATEO CA 94402 | **Notice Type**: Receipt Notice<br>Amount received: $290.00 U.S.<br>Classes vary by individual |

**Receipt Notice**- This notice confirms that USCIS received your application or petition ("this case") as shown above. **If any of the** above information is incorrect, please immediately call 800-375-5283 to let us know. This will help avoid future problems.

This notice does not grant any immigration status or benefit, nor is it evidence that this case is still pending. It only shows that the application or petition was filed on the date shown.

**Processing time** - Processing times vary by case type. You can check our website at www.uscis.gov for our current "processing times" for this case type at the particular office to which this case is or becomes assigned. On our website's "case status online" page, you can also view status or sign up to receive free e-mail updates as we complete key processing steps on this case. During most of the time this case is pending, however, our systems will show only that the case has been received, and the processing status will not have changed, because we will be working on other cases that were filed earlier than this one. We will notify you by mail, and show in our systems, when we make a decision on this case or if we need something from you. If you do not receive an initial decision or update from us within our current processing time, check our website or call 800-375-5283. Please save this notice, and any other notice we send you about this case, and please make and keep a copy of any papers you send us by any means, along with any proof of delivery to us. Please have all these papers with you if you contact us about this case.

**If this case is an I-130 Petition** - Filing and approval of a Form I-130, Petition for Alien Relative, is only the first step in helping a relative immigrate to the United States. The beneficiaries of a petition must wait until a visa number is available before they can take the next step to apply for an immigrant visa or adjustment of status to lawful permanent residence. To best allocate resources, USCIS may wait to process I-130 forms until closer to the time when a visa number will become available, which may be years after the petition was filed. Nevertheless, USCIS processes I-130 forms in time not to delay relatives' ability to take the next step toward permanent residence once a visa number does become available. If, before final action on the petition, you decide to withdraw your petition, your family relationship with the beneficiary ends, or you become a U.S. citizen, call 800-375-5283.

**Applications requiring biometrics**- In some types of cases USCIS requires biometrics. In such cases, USCIS will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must WAIT for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are: a passport or national photo identification issued by your country, a drivers license, a military photo identification, or a state-issued photo identification card. If you receive more than one ASC appointment notice, even for different cases, take them both to the first appointment.

**If your address changes**- If your mailing address changes while your case is pending, call 800-375-5283 or use the "Online Change of Address" function on our website. Otherwise, you might not receive notice of our action on this case.

Applicants:

| Name | DOB | COB | Class | OCC |
|---|---|---|---|---|
| GAO, XIAOXIA | 07/16/1973 | CHINA, PEOPLE'S REPUBLIC | L2 | |
| WANG, RUI | 01/12/2008 | CHINA, PEOPLE'S REPUBLIC | | |

NOTICE: Pursuant to the terms of the United States Immigration & Nationality Act (INA), the information provided on and in support of applications and petitions is submitted under penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after adjudication to ensure conformity with applicable

---

Please see the additional information on the back. You will be notified separately about any other cases you filed.

U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL   CA   92607-0111
**Customer Service Telephone: (800) 375-5283**



HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY                                                    HU_00001692

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER<br>WAC-14-110-51142 | | CASE TYPE I539 APPLICATION TO EXTEND/CHANGE<br>NONIMMIGRANT STATUS |
|---|---|---|
| RECEIVED DATE<br>March 12, 2014 | PRIORITY DATE | APPLICANT<br>GAO, XIAOXIA |
| NOTICE DATE<br>March 13, 2014 | PAGE<br>2 of 2 | |

(continued)
laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine eligibility for the benefit sought. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal decision is made and/or proceeding is initiated.

U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL   CA   92607-0111
**Customer Service Telephone: (800) 375-5283**



**Please see the back of this notice for important information.**

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001693

# THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER WAC-14-110-51131 | | CASE TYPE I129 PETITION FOR A NONIMMIGRANT WORKER |
|---|---|---|
| **RECEIVED DATE** March 12, 2014 | **PRIORITY DATE** | **PETITIONER** RUIFENG BIZTECH INC |
| **NOTICE DATE** March 13, 2014 | **PAGE** 1 of 2 | **BENEFICIARY** WANG, GANGYOU |

| | |
|---|---|
| HENRY R HU<br>LAW OFFICES OF HENRY R HU<br>RE: RUIFENG BIZTECH INC<br>520 S EL CAMINO REAL STE 510<br>SAN MATEO CA 94402 | **Notice Type**: Premium Processing<br>Receipt Notice<br>Amount received: $2,050.00 U.S.<br>Class requested: L1A |

Thank you for choosing to use the U.S. Citizenship and Immigration Service's Premium Processing Program. The above petition or application has been received and accepted as a Premium Processing case. You should receive a notice regarding your case within 15 days from the date shown as the received date above. If the Service needs to contact you regarding your case they may do so by mail, telephone, facsimile or e-mail using the information you provided.

Please notify us immediately if any of the above information is incorrect.

If you need to contact us regarding your Premium Processing case you can do so using the information immediately below. The mailing address, e-mail address and phone number listed below are for use in relation to cases filed under the Premium Processing Service program only. You can obtain case status information from our automated system 24 hours a day with a touch-tone phone and the receipt number for this case shown above by calling the phone number listed below.

        CALIFORNIA SERVICE CENTER (CSC) Premium Processing:

        Routine Mail: P.O. Box 10825, Laguna Niguel, CA 92607-0825

        Courier Delivery Address: 24000 Avila Road, 2nd Fl., Room 2302, Laguna Niguel, CA 92677

        I-129 PP Fax: 949-389-3460
        PP Phone Number: 1-866-315-5718

        Email box: CSC-Premium.Processing@dhs.gov

This notice does not grant any immigration status or benefit, nor is it evidence that this case is still pending. It only shows that the application or petition was filed on the date shown.

**If this case is an I-130 Petition** - Filing and approval of a Form I-130, Petition for Alien Relative, is only the first step in helping a relative immigrate to the United States. The beneficiaries of a petition must wait until a visa number is available before they can take the next step to apply for an immigrant visa or adjustment of status to lawful permanent residence. To best allocate resources, USCIS may wait to process I-130 forms until closer to the time when a visa number will become available, which may be years after the petition was filed. Nevertheless, USCIS processes I-130 forms in time not to delay relatives' ability to take the next step toward permanent residence once a visa number does become available. If, before final action on the petition, you decide to withdraw your petition, your family relationship with the beneficiary ends, or you become a U.S. citizen, call 800-375-5283.

**Applications requiring biometrics**- In some types of cases USCIS requires biometrics. In such cases, USCIS will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must WAIT for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are: a passport or national photo identification issued by your country, a drivers license, a military photo identification, or a state-issued photo identification card. If you receive more than one ASC appointment notice, even for different cases, take them both to the first appointment.

**If your address changes**- If your mailing address changes while your case is pending, call 800-375-5283 or use the "Online Change of Address" function on our website. Otherwise, you might not receive notice of our action on this case.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL    CA    92607-0111
**Customer Service Telephone: (800) 375-5283**



Form I-797C 01/02/12 Y

**Please see the back of this notice for important information.**

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER<br>WAC-14-110-51131 | | CASE TYPE I129 PETITION FOR A NONIMMIGRANT WORKER |
|---|---|---|
| RECEIVED DATE<br>March 12, 2014 | PRIORITY DATE | PETITIONER<br><br>RUIFENG BIZTECH INC |
| NOTICE DATE<br>March 13, 2014 | PAGE<br>2 of 2 | BENEFICIARY<br><br>WANG, GANGYOU |

(continued)
NOTICE: Pursuant to the terms of the United States Immigration & Nationality Act (INA), the information provided on and in support of applications and petitions is submitted under penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after adjudication to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine eligibility for the benefit sought. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal decision is made and/or proceeding is initiated.

```
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL    CA    92607-0111
Customer Service Telephone: (800) 375-5283
```



**Please see the back of this notice for important information.**

Form I-797C  01/02/12 Y

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001695

# Exhibit C

# COLLABORATION  AGREEMENT

Party A: RUIFENG BIZTECH INC.

Party B: QUINTARA BIOSCIENCES

Through friendly negotiations, the two parties have agreed to jointly operate gene sequencing engineering project as below:

1. Party A shall invest 1 million U.S. dollars in the purchasing of new equipment and leasing office space for the joint project of Party A and B.

2. Party B shall use a part of its original equipment as its investment.

3. Party A shall own 51% shares of the new company, and manage the company's bank account.

4. Party B shall own 49% of the new company, and manage the company's operation.

5. An an overseas investor, Party A shall be responsible for all its personal expenses and expenses unrelated to the company's operation.

6. Party B shall achieve 3.5% annual profit, and increase number of employees by six more employees per year.

7.The collaboration between parties A and B shall last at least two years. Party B shall guarantee the annual profit of over 5%% should the collaboration lasts beyond two years.

8. Party B shall guarantee to maintain and increase the company's value in the course of operation. After the collaboration ends, Party B shall guarantee to return the full amount of Party A's 1 million U.S. dollars investment. Any shortage in the return of the investment shall be made up with Party B's personal assets.

8. Any matters that are not covered under the agreement shall be resolved through negotiation between the parties.


Signature: Wang, Gang You   Date: 12/28/2013

Ganyou Wang, President

Party A: RUIFENG BUZTECHINC


Signature: (Illegible)     Date: 12/28/2013

Qun Shan, President & CEO

Party B: QUINTARA BIOSCIENCES



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
TRIAL EXHIBIT 002A
Case No. 3:20-cv-04808
Date Entered_____
By_____
Deputy Clerk



EXHIBIT
04/22/21 DH
QB 2A

# **Exhibit D**

November 7, 2017

Dear US Immigration Officer,

My name is Alex Wong, the Sequencing Operations Manager for Ruifeng Biztech, Inc. I would like to clarify the miscommunication and misunderstanding that involved the site visit by an immigration officer on June 26, 2015, at then, the site of operations at the location of 170 Harbor Way, Suite 100, South San Francisco, CA 94080. I met the immigration officer during that site visit and provided some information about myself and my relationship to Mr. Wang. Please allow me to fully explain the situation my conversations with the officer.

I was originally employed by Dr. Qun Shan in 2007, who was then, the sole owner of Quintara Biosciences, as an Account Manager. It was a small company with only a handful of employees and there was not enough resources to hire a different person for different positions. So even though my title was an Account Manager, my duties varied to suit the needs of the company. I was soon involved with almost every facet of the operation of a DNA sequencing company, though I kept the same title throughout my employment at Quintara Biosciences. I was also working the swing-shift hours from early afternoon till late evening. At the end of 2013, we moved our operations up to Richmond, CA, at the site of 2600 Hilltop Drive, Building B, Suite C330. At the end of 2014, we again moved our operations, this time, to South San Francisco, the aforementioned site where the immigration officer's site visit occurred. The move to South San Francisco was for a better lab facility and for the proximity to the San Francisco International Airport. Being close to the airport facilitated our access to out of state customers, who would ship their samples to us for processing, using cargo shipments for a quicker delivery time. However, the facility lacked adequate office space so Mr. Wang had to keep his office back in Richmond. As such, I had less direct contact with our President Mr. Wang who had more contacts and management with our top manager.

Therefore, I'd like to confirm that I am under the employment of Ruifeng Biztech, Inc., as the Sequencing Operations Manager, which more accurately reflects my role in the company, since 2014 and Mr. Wang is the President of Ruifeng Biztech, Inc. Because sequencing operations are run under my managerial account, so I also address myself as an account manager which is more familiar to outsiders. I know this is very important to Mr. Wang and so I want to make sure that my statement is accurate and true. Another thing that occurred during the site visit is that I was given a business card of the immigration officer at the time, but unfortunately, I misplaced that card before I had the chance to give it to Mr. Wang. Since then, Mr. Wang did try to sought out that immigration officer at the San Francisco Immigrations Office, to try and clarify the situation himself, but he was unsuccessful in locating that officer.

I hope that I have fully explained my situation in providing an inaccurate statement during the site visit and I do apologize for the confusion that I may have caused. Please do consider my statement revision in support of Mr. Wang's appeal.

Thank you.

Sincerely,

Alex Wong
alex.wong@quintarabio.com
Sequencing Operations Manager

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
TRIAL EXHIBIT 006A
Case No. 3:20-cv-04808
Date Entered_____
By_____
Deputy Clerk

HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

HU_00001841

# Exhibit E

**Cooperation agreement**

Party A: RUIFENG BIZTECHINC
Party B: QUINTARA BIOSCIENCES

The two sides reached a cooperative business genetic sequencing work project through joint friendly consultations as follows:

1.  Party A invests 1 million US dollars for the purchase of new equipment and office space leasing for both parties.

2.  Party B shall use the equipment of Party B's original company to make investment funds.

3.  Party A accounts for 51% of the shares of the new company. The company's bank account is managed by Party A.

4.  Party B accounts for 49% of the shares of the new company. The company is operated and managed by Party B.

5.  Party A is an overseas investment. The expenses incurred in the course of business management, not related to the company, and the expenses incurred by Party A's personal shall be borne by Party A.

6.  Party B shall achieve an annual profit of 3.5% in the course of operation and management and increase the employment of more than 6 people each year.

7.  The cooperation time between Party A and Party B shall be at least 2 years. If the cooperation continues for more than 2 years, Party B guarantees an annual profit of more than 5%.

8.  Party B guarantees the value and value-added of the enterprise in the course of operation and management. After the expiration of the cooperation between Party A and Party B, Party B guarantees that Party A's investment of 1 million US dollars will be fully withdrawn, and the insufficient part will be supplemented by Party B's personal assets.

9.  If there are any unfinished matters in the agreement, both parties will resolve the dispute.

Signature: *Gangyou Wang*   Gangyou Wang, President          Date: 2/14/2019
Party A: RUIFENG BIZTECHINC

Signature: *[signature]*   Qun Shen, President & CEO          Date: 2/14/19
Party B: QUINTARA BIOSCIENCES

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
**TRIAL EXHIBIT 005**
Case No. 3:20-cv-04808
Date Entered_____
By_____
Deputy Clerk

# Exhibit F

09:50AM 1    FROM RUIFENG BIZTECH INCORPORATED; RIGHT?

09:50AM 2    A.   YES.

09:50AM 3    Q.   THEN WERE YOU AN EMPLOYEE OF RUIFENG BIZTECH INCORPORATED

09:51AM 4    IN 2019?

09:51AM 5    A.   2019?

09:51AM 6    Q.   YES.

09:51AM 7    A.   COULD YOU SAY THE QUESTION AGAIN?

09:51AM 8    Q.   WERE YOU AN EMPLOYEE OF RUIFENG BIZTECH INCORPORATED IN

09:51AM 9    2019?

09:51AM 10   A.   YES.

09:51AM 11   Q.   WAS QUINTARA BIOSCIENCES PAYING YOU IN 2019?

09:51AM 12   A.   YES.  QUINTARA -- 2019, YES.

09:51AM 13   Q.   SO YOU WERE AN EMPLOYEE FOR RUIFENG AND FOR QUINTARA IN

09:51AM 14   2019?

09:51AM 15   A.   THAT IS TRUE.

09:51AM 16   Q.   THE SQL DATABASE THAT YOU DESCRIBED YESTERDAY, WERE YOU

09:51AM 17   DEVELOPING IT BOTH AS RUIFENG AND QUINTARA'S EMPLOYEE IN 2019?

09:51AM 18   A.   NO.  I DEVELOPED THE DATABASE WHEN I WORKED FOR QUINTARA.

09:52AM 19        I WORKED FOR RUIFENG AS MR. WANG'S INTERPRETER AND

09:52AM 20   ASSISTANT.  HE COULD NOT READ ENGLISH.  I TRANSLATE FOR HIM.  I

09:52AM 21   READ THE DOCUMENT AND WHATEVER LETTER HE RECEIVED.  HE COULD

09:52AM 22   NOT UNDERSTAND ENGLISH.  HE PAY ME FOR THAT.

09:52AM 23        HE DID NOT PAY ME TO DO I.T. WORK FOR RUIFENG.  HE DID NOT

09:52AM 24   PAY ME FOR MY I.T. WORK FOR QUINTARA.

09:52AM 25   Q.   WHEN YOU SAY "MR. WANG," ARE YOU SAYING GANGYOU WANG?

09:52AM 1    A.   YEAH, MR. WANG, YES.

09:52AM 2    Q.   MR. WANG?

09:52AM 3    A.   YES.

09:52AM 4    Q.   SO MR. WANG PAID YOU UNDER RUIFENG'S W2, AND YOU WERE ALSO

09:52AM 5    DEVELOPING A CUSTOMER LIST FOR QUINTARA; RIGHT?

09:52AM 6    A.   HE'S NOT PAYING ME FOR DEVELOPING THE CUSTOMER LIST FOR

09:53AM 7    QUINTARA.

09:53AM 8         HE'S PAYING ME FOR MANAGING HIS STUFF, DOING THE LAB WORK,

09:53AM 9    BECAUSE I AM THE ONE TEACHING THEM HOW TO DO THE DNA

09:53AM 10   SEQUENCING.  I AM TEACHING THEM HOW TO DO THE DATA ANALYSIS.

09:53AM 11        AND I TRANSLATE FOR MR. WANG.

09:53AM 12   Q.   SO GANGYOU WANG FROM RUIFENG WAS PAYING YOU IN 2019 TO

09:53AM 13   TEACH THEM ABOUT DNA SEQUENCING AND DATABASE; RIGHT?

09:53AM 14   A.   TO TEACH THEM HOW TO DO THE LAB WORK, HOW TO PROCESS THE

09:53AM 15   DNA SAMPLE.  MR. WANG DOESN'T EVEN KNOW.  FOR DNA SEQUENCING

09:53AM 16   DIRECTION, WHAT OTHER THREE MAJOR COMPONENTS, WHAT MACHINE, HOW

09:53AM 17   MANY STEPS YOU HAVE, HOW DO YOU PERFORM?

09:54AM 18        SO IN THE CONTRACT FOR SERVICE AGREEMENT, QUINTARA NEED TO

09:54AM 19   TRAIN RUIFENG'S EMPLOYEE TO PERFORM THE LAB WORK.

09:54AM 20        THAT IS WHAT I AM DOING, I WAS DOING FOR THIS WORK.

09:54AM 21   Q.   AND WHO ARE THOSE EMPLOYEES AND THE PHASE THAT YOU WERE

09:54AM 22   REFERRING TO IN YOUR PRIOR ANSWERS?

09:54AM 23   A.   ALAN LI IS ONE OF THEM.

09:54AM 24   Q.   OKAY.

09:54AM 25   A.   RUIFENG'S EMPLOYEE, YES.

Page Separator – Page Intentionally Left Blank

09:52AM  1    A.    YEAH, MR. WANG, YES.

09:52AM  2    Q.    MR. WANG?

09:52AM  3    A.    YES.

09:52AM  4    Q.    SO MR. WANG PAID YOU UNDER RUIFENG'S W2, AND YOU WERE ALSO

09:52AM  5    DEVELOPING A CUSTOMER LIST FOR QUINTARA; RIGHT?

09:52AM  6    A.    HE'S NOT PAYING ME FOR DEVELOPING THE CUSTOMER LIST FOR

09:53AM  7    QUINTARA.

09:53AM  8          HE'S PAYING ME FOR MANAGING HIS STUFF, DOING THE LAB WORK,

09:53AM  9    BECAUSE I AM THE ONE TEACHING THEM HOW TO DO THE DNA

09:53AM 10    SEQUENCING.  I AM TEACHING THEM HOW TO DO THE DATA ANALYSIS.

09:53AM 11          AND I TRANSLATE FOR MR. WANG.

09:53AM 12    Q.    SO GANGYOU WANG FROM RUIFENG WAS PAYING YOU IN 2019 TO

09:53AM 13    TEACH THEM ABOUT DNA SEQUENCING AND DATABASE; RIGHT?

09:53AM 14    A.    TO TEACH THEM HOW TO DO THE LAB WORK, HOW TO PROCESS THE

09:53AM 15    DNA SAMPLE.  MR. WANG DOESN'T EVEN KNOW.  FOR DNA SEQUENCING

09:53AM 16    DIRECTION, WHAT OTHER THREE MAJOR COMPONENTS, WHAT MACHINE, HOW

09:53AM 17    MANY STEPS YOU HAVE, HOW DO YOU PERFORM?

09:54AM 18          SO IN THE CONTRACT FOR SERVICE AGREEMENT, QUINTARA NEED TO

09:54AM 19    TRAIN RUIFENG'S EMPLOYEE TO PERFORM THE LAB WORK.

09:54AM 20          THAT IS WHAT I AM DOING, I WAS DOING FOR THIS WORK.

09:54AM 21    Q.    AND WHO ARE THOSE EMPLOYEES AND THE PHASE THAT YOU WERE

09:54AM 22    REFERRING TO IN YOUR PRIOR ANSWERS?

09:54AM 23    A.    ALAN LI IS ONE OF THEM.

09:54AM 24    Q.    OKAY.

09:54AM 25    A.    RUIFENG'S EMPLOYEE, YES.

Page Separator – Page Intentionally Left Blank

1

2

3                     CERTIFICATE OF REPORTERS

4

5

6

7           WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16          _____
            IRENE RODRIGUEZ, CSR, CRR

17          CERTIFICATE NUMBER 8076

18          _____

19          LEE-ANNE SHORTRIDGE, CSR, CRR
            CERTIFICATE NUMBER 9595

20

21          DATED:  JULY 12, 2023

22

23

24

25

                     UNITED STATES COURT REPORTERS

# Exhibit G

08:43AM 1    BASICALLY TO DUMP THE CONTENT OF IT AND PROVIDE THAT BACK FOR

08:43AM 2    COUNSEL TO REVIEW.

08:43AM 3    Q.   OKAY.  AND WITH RESPECT TO YOUR SECOND REPORT, YOU SAID

08:43AM 4    THAT YOU EXAMINED COMPUTER IMAGES; IS THAT RIGHT?

08:43AM 5    A.   YES.

08:43AM 6    Q.   AND AT THE TIME THAT YOU WERE GIVEN THESE COMPUTER IMAGES,

08:44AM 7    DID YOU HAVE AN UNDERSTANDING AS TO WHOM THEY BELONGED?

08:44AM 8    A.   THE INFORMATION PROVIDED TO ME WAS THAT THE IMAGES WERE

08:44AM 9    CREATED BY THE EXPERT RETAINED BY THE OPPOSING COUNSEL IN THIS

08:44AM 10   CASE.

08:44AM 11       IT WAS MY UNDERSTANDING THAT THE COMPUTERS THEMSELVES WERE

08:44AM 12   THE PROPERTY OF QUINTARA, ALTHOUGH I SUPPOSE THAT WAS BEING

08:44AM 13   CONTESTED AT THE TIME AND PART OF THE PURPOSE OF THE

08:44AM 14   LITIGATION.

08:44AM 15   Q.   AND DURING -- WITHDRAWN.

08:44AM 16       WHEN CREATING YOUR REPORT, DID YOU ALSO LOOK AT IMAGES OR

08:44AM 17   INFORMATION PROVIDED NOT FROM DEFENDANTS' EXPERT, BUT FROM

08:44AM 18   QUINTARA ITSELF WHEN COMPARING INFORMATION?

08:44AM 19          MS. KAMATH:  OBJECTION.  COMPOUNDED.  VAGUE AND

08:44AM 20   AMBIGUOUS.

08:44AM 21          THE COURT:  IT'S NOT COMPOUND.  IT'S NOT VAGUE AND

08:44AM 22   AMBIGUOUS.

08:44AM 23       PLEASE ANSWER.

08:44AM 24          THE WITNESS:  I WAS PROVIDED INFORMATION THROUGH

08:44AM 25   COUNSEL FROM QUINTARA THAT WAS USED FOR COMPARATIVE PURPOSES

08:44AM  1    AND TO ASSIST ME IN MY ANALYSIS.

08:45AM  2    BY MS. RIDER:

08:45AM  3    Q.    AND WHAT STEPS DID YOU TAKE TO EXAMINE DEFENDANTS' IMAGES

08:45AM  4    THAT WERE PROVIDED TO YOU?

08:45AM  5    A.    THOSE IMAGES WERE PROVIDED TO ME ON A NUMBER OF SEPARATE

08:45AM  6    HARD DRIVES.  I COPIED THE CONTENTS OF THOSE TO MY ANALYSIS

08:45AM  7    SYSTEMS TO CONDUCT MY ANALYSIS, AND USING MOSTLY STANDARD

08:45AM  8    FORENSICS TOOLS, I EXAMINED THOSE FORENSIC IMAGES, SEARCHING

08:45AM  9    FOR ITEMS THAT WERE -- THE TOPICS OF THE ISSUES THAT I HAD BEEN

08:45AM 10    DISCUSSING WITH COUNSEL IN TERMS OF PARTICULAR TYPES OF FILES

08:45AM 11    OR CONTENT OF VARIOUS ONES.

08:45AM 12    Q.    AND DID YOU FORMULATE ANY OPINIONS BASED ON YOUR

08:45AM 13    EXAMINATION OF DEFENDANTS' COMPUTER IMAGES?

08:45AM 14    A.    THERE ARE A NUMBER OF OPINIONS THAT ARE DETAILED IN MY

08:45AM 15    REPORT.  BUT, AGAIN, MOST OF MY PURPOSE FOR THAT WAS TO EXTRACT

08:46AM 16    CONTENT AND HELP FILTER THAT CONTENT DOWN TO HOPEFULLY THE MOST

08:46AM 17    RELEVANT ITEMS AND ITEMS OF INTEREST FOR THE CASE, AND THEN

08:46AM 18    PROVIDE THAT INFORMATION TO COUNSEL SO THAT THEY COULD REVIEW

08:46AM 19    THAT FOR ITS CONTENT AND HELP ME REFINE THE SEARCH PROCESS.

08:46AM 20        MY WHOLE ANALYSIS PROCESS IS NOT TO TAKE EVERYTHING AND

08:46AM 21    DUMP THE ENTIRE CONTENT BACK ON MY CLIENT.  THAT WOULD BE AN

08:46AM 22    OVERWHELMING QUANTITY OF INFORMATION.  THERE ISN'T ENOUGH ROOM

08:46AM 23    IN THIS ROOM TO STORE HOW MUCH THAT WOULD BE IF YOU WERE TO PUT

08:46AM 24    IT TO PAPER.

08:46AM 25        SO MY GOAL IS TO FIND THE RELEVANT INFORMATION AND PROVIDE

08:46AM 1    IT IN A USEABLE FORM, AND AS I DO THAT, THE PROCESS IS OFTEN

08:46AM 2    I'LL PROVIDE A STACK OF INFORMATION AND ASK MY CLIENT TO SAY

08:46AM 3    WHAT HERE IS RELEVANT, WHAT YOU CARE ABOUT, WHAT IS NOT

08:46AM 4    RELEVANT, SO THAT WHEN I DO THE NEXT STEPS, I CAN FURTHER

08:46AM 5    REFINE THE PROCESS AND PROVIDE HOPEFULLY AS SMALL A QUANTITY OF

08:47AM 6    INFORMATION THAT IS MANAGEABLE, BUT YET STILL USEFUL FOR THE

08:47AM 7    CASE.

08:47AM 8    Q.    OKAY.  IN YOUR OPINION -- EXCUSE ME.

08:47AM 9          IN YOUR REPORT, YOU STATED THAT YOU HAD AN OPINION THAT

08:47AM 10   THERE WAS TRADE SECRET MISAPPROPRIATION.

08:47AM 11         DO YOU RECALL THAT?

08:47AM 12   A.    I DID, AND I WOULD CLARIFY IN THAT I DON'T MAKE A

08:47AM 13   DETERMINATION AS TO WHAT IS TRADE SECRET.  THAT'S FOR COUNSEL

08:47AM 14   AND THE COURT AND THE JUDGE AND JURY TO DECIDE.

08:47AM 15         I AM PROVIDED WITH INFORMATION OF THE KINDS OF THINGS THAT

08:47AM 16   COUNSEL IS SEEKING FOR THEIR CASE.  I PROVIDE THAT INFORMATION

08:47AM 17   AND SAY, THIS LOOKS LIKE THE KINDS OF THINGS THAT YOU WERE

08:47AM 18   TALKING ABOUT.

08:47AM 19         TO SAY THAT I REFER TO IT AS TRADE SECRET IS A

08:47AM 20   SIMPLIFICATION IN A WAY OF DEALING WITH THE QUANTITY OF

08:47AM 21   INFORMATION.

08:47AM 22         BUT, AGAIN, I DON'T MAKE THAT DETERMINATION MYSELF AS TO

08:47AM 23   WHAT IS A TRADE SECRET.

08:47AM 24   Q.    OKAY.  AND IN YOUR EXAMINATION OF DEFENDANTS' COMPUTER

08:48AM 25   IMAGES, AND ALSO THE INFORMATION PROVIDED TO YOU BY QUINTARA,

08:48AM 1    DID YOU FIND SUBSTANTIAL SIMILARITIES IN THE INFORMATION THAT

08:48AM 2    YOU DOCUMENTED?

08:48AM 3    A.   I'M NOT SURE I AM FOLLOWING YOU BY "SIMILARITIES."

08:48AM 4    Q.   I'M SORRY.  I JUST WANT TO ASK THE QUESTION AS TO WHEN YOU

08:48AM 5    MADE THE TWO COMPARISONS, DID YOU FIND SIMILARITIES WITH

08:48AM 6    RESPECT TO THE INFORMATION THAT YOU FOUND ON THE COMPUTERS?

08:48AM 7    A.   WELL, IN TERMS OF THE INFORMATION THAT I WAS ASKED TO

08:48AM 8    FIND, DID I FIND THAT INFORMATION?  THE ANSWER WOULD BE YES.

08:48AM 9    Q.   AND WHEN YOU CREATED THE REPORT ABOUT THE CELL PHONE AND

08:48AM 10   THEN YOU CREATED YOUR REPORT ABOUT THE FINDINGS OF THE COMPUTER

08:48AM 11   IMAGES, WERE THOSE MADE AT THE SAME TIME?

08:48AM 12   A.   NO.

08:48AM 13   Q.   OKAY.  WAS ONE PRESENTED BEFORE THE OTHER?

08:48AM 14   A.   IT WAS.

08:48AM 15   Q.   DO YOU RECALL THE REASON WHY ONE WAS LATER?

08:49AM 16   A.   WELL, THE RESULTS OF THE CELL PHONE EXTRACTION WAS A

08:49AM 17   FAIRLY QUICK PROCESS.  I PROVIDED THAT DATA BACK WITHIN A

08:49AM 18   COUPLE OF DAYS OF WHEN I HAD THE PHONE.

08:49AM 19       AT THAT POINT I DIDN'T HAVE ACCESS TO THE FORENSIC IMAGE

08:49AM 20   COPIES OF THE VARIOUS COMPUTERS.  IT WAS A COUPLE OF MONTHS

08:49AM 21   SEPARATE BETWEEN THOSE TWO ACTIVITIES.

08:49AM 22       SO BASICALLY MY INTERACTION WITH THE PHONE FROM MY

08:49AM 23   STANDPOINT WAS BRIEF.  I GOT THE PHONE, DID THE PROCESSING,

08:49AM 24   DUMPED THE INFORMATION AND PROVIDED THAT INFORMATION, AND THEN

08:49AM 25   BASICALLY THE NEXT STEP FOR ME WAS TO EXAMINE THE DATA FROM THE

Page Separator – Page Intentionally Left Blank

11:01AM  1    A.   YES.

11:01AM  2    Q.   AND YOU BECAME THE LAB MANAGER IN -- SOMETIME IN 2010; IS

11:01AM  3    THAT RIGHT?

11:01AM  4    A.   ABOUT THAT TIME, I GUESS.  I DON'T REMEMBER EXACTLY.

11:01AM  5    Q.   SO FROM 2010 TO 2020, ABOUT TEN YEARS, YOU WERE THE LAB

11:02AM  6    MANAGER OF QUINTARA; RIGHT?

11:02AM  7    A.   YES, IN TITLE.

11:02AM  8    Q.   SAY AGAIN.  I'M SORRY?

11:02AM  9    A.   IN TITLE, YES.

11:02AM 10    Q.   IN TITLE.  OKAY.

11:02AM 11         WHAT'S IN REALITY?  WERE YOU A LAB MANAGER AT QUINTARA?

11:02AM 12    A.   I WAS THE LAB MANAGER AT QUINTARA, BUT AT THE SAME TIME MY

11:02AM 13    PAYCHECKS WERE COMING FROM BOTH RUIFENG AND QUINTARA.

11:02AM 14    Q.   OKAY.  SO AT SOME POINT IN TIME, YOUR PAYCHECK WAS

11:02AM 15    SWITCHED TO RUIFENG'S PAYROLL; IS THAT RIGHT?

11:02AM 16         AND THAT HAPPENED SOMETIME IN 2015, 2016?

11:02AM 17    A.   AROUND THERE, 2015 --

11:02AM 18    Q.   2016?

11:02AM 19    A.   -- MAYBE.

11:02AM 20    Q.   AND THEN YOU WERE SWITCHED BACK AT THE END OF 2019 OR

11:03AM 21    BEGINNING OF 2020; RIGHT?

11:03AM 22    A.   YES.

11:03AM 23    Q.   SO THAT QUESTION WAS VAGUE.  YOU WERE SWITCHED BACK FROM

11:03AM 24    RUIFENG'S PAYROLL TO QUINTARA'S PAYROLL IN -- AT THE BEGINNING

11:03AM 25    OF JANUARY 2020; IS THAT RIGHT?

11:03AM  1    A.   YES.

11:03AM  2    Q.   AND WHEN YOU WERE LAB MANAGER FOR QUINTARA IN 2020, YOU

11:03AM  3    DRAFTED A PRIVACY AGREEMENT FOR ALL EMPLOYEES TO SIGN.

11:03AM  4         DO YOU REMEMBER THAT?

11:03AM  5    A.   IN 2020?  I DON'T THINK THAT WAS IN 2020.  IT COULD HAVE

11:03AM  6    BEEN EARLIER.

11:03AM  7    Q.   IT COULD HAVE BEEN EARLIER?

11:03AM  8    A.   YES.

11:03AM  9    Q.   SO EARLIER -- OR LET'S SAY IT WAS IN OR PRIOR TO 2020; IS

11:03AM  10   THAT RIGHT?

11:03AM  11   A.   YES.

11:03AM  12   Q.   OKAY.  AND THAT PRIVACY AGREEMENT YOU DRAFTED WAS

11:04AM  13   EVENTUALLY ADOPTED IN EARLY 2021 -- 2011; RIGHT?

11:04AM  14        THE COURT:  YOUR QUESTION HAD SO MANY DATES IT'S

11:04AM  15   CONFUSING.

11:04AM  16        PLEASE START OVER WITH A FRESH QUESTION AND DON'T DOUBLE

11:04AM  17   UP ON THE DATES.

11:04AM  18        MR. LI:  OKAY.

11:04AM  19   Q.   SO THE FIRST QUESTION IS, IN OR PRIOR TO 2010, YOU DRAFTED

11:04AM  20   A PRIVACY AGREEMENT FOR QUINTARA, FOR ALL OF THE EMPLOYEES OF

11:04AM  21   QUINTARA TO SIGN; CORRECT?

11:04AM  22   A.   YES.

11:04AM  23   Q.   AND YOU YOURSELF SIGNED THAT PRIVACY AGREEMENT IN EARLY

11:04AM  24   JANUARY 2011.

11:04AM  25        DO YOU REMEMBER THAT?

Page Separator – Page Intentionally Left Blank

11:04AM  1    A.   VAGUELY.  BUT, YES, I KIND OF REMEMBER THAT.

11:04AM  2    Q.   AND THAT PRIVACY AGREEMENT ALL EMPLOYEES WERE REQUIRED TO

11:04AM  3    SIGN CONTAINS A CLAUSE THAT PROHIBITS EMPLOYEE TO USE OR

11:05AM  4    DISCLOSE COMPANY'S CONFIDENTIAL INFORMATION OUTSIDE OF THEIR

11:05AM  5    WORK; RIGHT?

11:05AM  6    A.   YES.

11:05AM  7    Q.   OKAY.  AND ALL OF THE EMPLOYEES, WITHOUT EXCEPTION, ARE

11:05AM  8    REQUIRED TO SIGN THIS PRIVACY AGREEMENT UPON ENTERING QUINTARA

11:05AM  9    AS AN EMPLOYEE; RIGHT?

11:05AM  10   A.   SOME OF US WERE ALREADY EMPLOYED, BUT I GUESS EVERYONE DID

11:05AM  11   SIGN.

11:05AM  12   Q.   AND ALAN LI, DEFENDANT ALAN LI, JOINED QUINTARA AFTER YOU,

11:05AM  13   RIGHT, AFTER 2010 ACTUALLY?

11:05AM  14   A.   I DON'T REMEMBER THE EXACT YEAR, BUT IT'S -- I WOULD SAY

11:05AM  15   AFTER 2010.

11:05AM  16   Q.   AND AS A LAB MANAGER, AS A GENERAL RULE, MR. LI WAS

11:06AM  17   REQUIRED TO SIGN THIS PRIVACY AGREEMENT; RIGHT?

11:06AM  18   A.   YES.

11:06AM  19   Q.   WHEN YOU WERE SWITCHED TO QUINTARA -- TO RUIFENG'S PAYROLL

11:06AM  20   IN 2015 AND 2016, SOME OTHER PEOPLE OF QUINTARA'S EMPLOYEES

11:06AM  21   WERE ALSO SWITCHED TO RUIFENG'S PAYROLL.

11:06AM  22      DO YOU REMEMBER THAT?

11:06AM  23   A.   YES.

11:06AM  24   Q.   AND DURING THE DEPOSITION YOU COULD NOT RECALL WHO WERE ON

11:06AM  25   RUIFENG'S PAYROLL; RIGHT?

11:06AM 1    A.  RIGHT.  I WASN'T PRIVY TO ALL OF THE ACCOUNTING

11:06AM 2    INFORMATION.

11:06AM 3    Q.  OKAY.  SO YOU LEFT QUINTARA IN MAY 2020, AND YOU JOINED

11:07AM 4    RUIFENG AS A GENERAL MANAGER IN JUNE OF 2020; RIGHT?

11:07AM 5    A.  YES.

11:07AM 6    Q.  AFTER YOU JOINED QUINTARA, DID YOU ENCOUNTER AN ENTITY

11:07AM 7    CALLED RF BIOTECH, WHICH IS ALSO A DEFENDANT IN THIS CASE?

11:07AM 8    A.  I'M SORRY.  CAN YOU SAY THAT AGAIN?

11:07AM 9    Q.  HAVE YOU HEARD OF --

11:07AM 10   A.  YOU SAID AFTER JOINING QUINTARA?  OR AFTER --

11:07AM 11   Q.  OH, DID I SAY QUINTARA?

11:07AM 12       AFTER YOU JOINED RUIFENG, YOU ENCOUNTERED AN ENTITY CALLED

11:07AM 13   RF BIOTECH; RIGHT?

11:07AM 14   A.  YES.

11:07AM 15   Q.  AND RF BIOTECH IS MERELY A NAME UNDER WHICH RUIFENG DOES

11:08AM 16   ITS BUSINESS; RIGHT?

11:08AM 17   A.  YES.

11:08AM 18   Q.  WHEN YOU WERE LEAVING QUINTARA FOR RUIFENG IN MAY OF 2020,

11:08AM 19   THERE WERE EIGHT SANGER SEQUENCERS AT THE 3563 LOCATION; RIGHT?

11:08AM 20   A.  YES, I BELIEVE SO.

11:08AM 21   Q.  OKAY.  BEFORE YOU LEFT QUINTARA IN EARLY 2020, DEFENDANT

11:08AM 22   GANGYOU WANG WAS LOOKING TO BUY -- TO GO IT ALONE; RIGHT?  TO

11:08AM 23   DO THE SEQUENCING OPERATION WITHOUT QUINTARA; RIGHT?

11:09AM 24   A.  YES.

11:09AM 25   Q.  AND MR. WANG, IN EARLY 2020, WAS TRYING TO BUY SEQUENCERS,

Page Separator – Page Intentionally Left Blank

11:16AM 1    PUT THE PHONE BOOK AS CONFIDENTIAL, "THE SAN FRANCISCO

11:16AM 2    CHRONICLE" IF THEY COULD.

11:16AM 3          (LAUGHTER.)

11:16AM 4            THE COURT:  BUT THAT MEANS NOTHING.  ZERO.

11:16AM 5        BUT PLEASE GIVE US THE LINE AND PAGE YOU WANT US TO HEAR.

11:16AM 6            MR. LI:  PAGE 167, LINE 13, TO 168, LINE 3.

11:17AM 7            THE COURT:  ALL RIGHT.  SAY "QUESTION," AND THEN YOU

11:17AM 8    READ THE QUESTION EXACTLY.  SAY "ANSWER," AND THEN YOU READ THE

11:17AM 9    ANSWER EXACTLY.

11:17AM 10           MR. LI:  OKAY.

11:17AM 11       "QUESTION:  OKAY.  AND DO YOU REMEMBER WHO PROVIDED YOU

11:17AM 12   WITH EXHIBIT 4 -- EXHIBIT 3 -- EXHIBIT 4?  SORRY.  WAIT, THIS

11:17AM 13   IS EXHIBIT 3.  WAIT, I'M CONFUSED.  EXHIBIT 3.  YEAH.

11:17AM 14       "ANSWER:  THAT'S A GOOD QUESTION.  THAT I DON'T REMEMBER,

11:17AM 15   BUT THE LIKELY PERSON MAY HAVE BEEN SUE.

11:17AM 16       "QUESTION:  OKAY.  DO YOU REMEMBER WHETHER THIS COINCIDED

11:17AM 17   WITH THE SWITCH OF YOUR PAYROLL FROM QUINTARA TO RUIFENG?

11:17AM 18       "ANSWER:  UM, I MEAN, IT'S ALL ON OR ABOUT THAT PERIOD OF

11:18AM 19   TIME.  I JUST CAN'T PINPOINT THE EXACT TIME.

11:18AM 20       "QUESTION:  BUT IN ANY EVENT, BY THE TIME, SOMETIME IN

11:18AM 21   2016 OR MAYBE EVEN 2015, YOUR PAYROLL WAS SWITCHED TO RUIFENG,

11:18AM 22   YOU WOULD HAVE SEEN THE SERVICE AGREEMENT IN EXHIBIT 3;

11:18AM 23   CORRECT?"

11:18AM 24       AND THEN THERE'S AN OBJECTION.

11:18AM 25       THEN "THE WITNESS:  I MEAN, I WOULD HAVE SEEN THIS

11:18AM  1    DOCUMENT ABOUT THE SAME TIME, SURE."

11:18AM  2        OKAY.

11:18AM  3            THE COURT:  YOU DID READ IT CORRECTLY; CORRECT?

11:18AM  4            MR. LI:  YES.

11:18AM  5            THE COURT:  THAT COUNTS AS EVIDENCE IN THE CASE EVEN

11:18AM  6    THOUGH IT WAS A LAWYER READING IT BECAUSE HE READ IT EXACTLY.

11:18AM  7        ALL RIGHT.  NOW, WHAT IS YOUR NEXT FOLLOW-UP QUESTION?

11:18AM  8    BY MR. LI:

11:18AM  9    Q.   AND DOES THIS REFRESH YOUR MEMORY THAT YOU DID SEE

11:19AM 10    EXHIBIT 3 AT OR AROUND THE TIME YOU SWITCHED TO RUIFENG'S

11:19AM 11    PAYROLL?

11:19AM 12    A.   YES.

11:19AM 13    Q.   AND AT THE TIME, YOU DID NOT THINK THE SWITCH HAD ANY

11:19AM 14    MEANING OR ANY IMPACT ON YOUR WORK AT QUINTARA; RIGHT?

11:19AM 15    A.   CORRECT.

11:19AM 16    Q.   AND YOU STILL CONTINUED TO USE THE TITLE OF GENERAL LAB

11:19AM 17    MANAGER AT QUINTARA; RIGHT?

11:19AM 18    A.   YES.

11:19AM 19    Q.   AND YOU STILL HELD OUT YOURSELF INSIDE OF QUINTARA,

11:19AM 20    OUTSIDE OF QUINTARA AS LAB MANAGER OF QUINTARA, NOT RUIFENG;

11:19AM 21    RIGHT?

11:19AM 22    A.   YES.

11:19AM 23    Q.   AND I'D LIKE TO DIRECT YOUR ATTENTION TO THE SECOND

11:20AM 24    PARAGRAPH OF EXHIBIT 3 WHERE IT SAYS, QUOTE, "RUIFENG BIZTECH

11:20AM 25    SHALL PROVIDE STAFF SERVICES TO QUINTARA BIOSCIENCES, WHICH

11:20AM 1    INCLUDE RECRUITING NINE LAB TECHNICIANS FOR

11:20AM 2    QUINTARA BIOSCIENCES IN 2014, AND SIX PART OR FULL-TIME

11:20AM 3    TECHNICIANS IN 2015."

11:20AM 4        DO YOU SEE THAT?

11:20AM 5    A.   WELL, IT'S SIX THOUGH.  OKAY.

11:20AM 6    Q.   AT THAT TIME AFTER YOU SWITCHED TO RUIFENG'S PAYROLL, YOU

11:20AM 7    DID NOT THINK THAT BEING AT RUIFENG IN ANY WAY AFFECTED YOUR

11:21AM 8    WORK DUTY, DESPITE THE FACT THAT YOU HAD TO BE PUT ON PAYROLL

11:21AM 9    OF RUIFENG; CORRECT?

11:21AM 10   A.   CORRECT.  I WAS TOLD TO JUST KEEP DOING WHAT I WAS DOING

11:21AM 11   AND DON'T WORRY ABOUT IT, AND I SAW THAT MY PAYCHECK WAS STILL

11:21AM 12   COMING REGULARLY, SO REALLY NOTHING HAD CHANGED.

11:21AM 13   Q.   OKAY.  SO YOU DID NOT CARE WHETHER THE PAYROLL -- THE

11:21AM 14   PAYCHECK CAME FROM RUIFENG OR FROM QUINTARA?

11:21AM 15   A.   NO, I DID NOT CARE.

11:21AM 16   Q.   YOUR JOB REMAINED THE SAME?

11:21AM 17   A.   YES.

11:21AM 18   Q.   SO YOU DID NOT MAKE ANY EFFORT ON BEHALF OF RUIFENG TO

11:21AM 19   COMPLY WITH SERVICE AGREEMENT IN EXHIBIT 3; RIGHT?

11:21AM 20   A.   I'M SORRY, WHAT DOES THAT MEAN?  I DIDN'T --

11:21AM 21        THE COURT:  THAT QUESTION IS NOT CLEAR.  PLEASE --

11:21AM 22   IN CONTEXT, IT'S HARD TO FOLLOW.  SO TRY IT AGAIN A DIFFERENT

11:21AM 23   WAY.

11:21AM 24        MR. LI:  OKAY.

11:21AM 25   Q.   DESPITE THE FACT THAT YOU HAVE ON THE PAYROLL OF RUIFENG

Page Separator – Page Intentionally Left Blank

11:20AM 1       INCLUDE RECRUITING NINE LAB TECHNICIANS FOR

11:20AM 2       QUINTARA BIOSCIENCES IN 2014, AND SIX PART OR FULL-TIME

11:20AM 3       TECHNICIANS IN 2015."

11:20AM 4           DO YOU SEE THAT?

11:20AM 5       A.   WELL, IT'S SIX THOUGH.  OKAY.

11:20AM 6       Q.   AT THAT TIME AFTER YOU SWITCHED TO RUIFENG'S PAYROLL, YOU

11:20AM 7       DID NOT THINK THAT BEING AT RUIFENG IN ANY WAY AFFECTED YOUR

11:21AM 8       WORK DUTY, DESPITE THE FACT THAT YOU HAD TO BE PUT ON PAYROLL

11:21AM 9       OF RUIFENG; CORRECT?

11:21AM 10      A.   CORRECT.  I WAS TOLD TO JUST KEEP DOING WHAT I WAS DOING

11:21AM 11      AND DON'T WORRY ABOUT IT, AND I SAW THAT MY PAYCHECK WAS STILL

11:21AM 12      COMING REGULARLY, SO REALLY NOTHING HAD CHANGED.

11:21AM 13      Q.   OKAY.  SO YOU DID NOT CARE WHETHER THE PAYROLL -- THE

11:21AM 14      PAYCHECK CAME FROM RUIFENG OR FROM QUINTARA?

11:21AM 15      A.   NO, I DID NOT CARE.

11:21AM 16      Q.   YOUR JOB REMAINED THE SAME?

11:21AM 17      A.   YES.

11:21AM 18      Q.   SO YOU DID NOT MAKE ANY EFFORT ON BEHALF OF RUIFENG TO

11:21AM 19      COMPLY WITH SERVICE AGREEMENT IN EXHIBIT 3; RIGHT?

11:21AM 20      A.   I'M SORRY, WHAT DOES THAT MEAN?  I DIDN'T --

11:21AM 21            THE COURT:  THAT QUESTION IS NOT CLEAR.  PLEASE --

11:21AM 22      IN CONTEXT, IT'S HARD TO FOLLOW.  SO TRY IT AGAIN A DIFFERENT

11:21AM 23      WAY.

11:21AM 24            MR. LI:  OKAY.

11:21AM 25      Q.   DESPITE THE FACT THAT YOU HAVE ON THE PAYROLL OF RUIFENG

11:22AM  1    AND YOU KNEW ABOUT THIS CONTRACT --

11:22AM  2    A.   UH-HUH.

11:22AM  3    Q.   -- SPELLING OUT RUIFENG'S DUTY --

11:22AM  4    A.   OH.

11:22AM  5    Q.   -- YOU DID NOT MAKE AN EFFORT OF TRYING TO COMPLY WITH

11:22AM  6    THIS DUTY ON BEHALF OF RUIFENG; CORRECT?

11:22AM  7    A.   CORRECT.  I FELT LIKE REALLY NO ONE HAD ANYTHING TO KIND

11:22AM  8    OF ENFORCE THIS.

11:22AM  9    Q.   DID YOU EVER CONSIDER AT THE TIME THAT YOU WERE THE LAB

11:22AM  10   MANAGER FOR RUIFENG?

11:22AM  11   A.   AT THAT TIME, NO, BECAUSE OUTSIDE OF THE COMPANY, I DON'T

11:22AM  12   THINK ANYONE KNEW ABOUT RUIFENG.

11:22AM  13   Q.   OUTSIDE OF QUINTARA, NOBODY KNEW ABOUT RUIFENG; IS THAT

11:23AM  14   WHAT YOU'RE SAYING?

11:23AM  15   A.   CORRECT.

11:23AM  16   Q.   NO CUSTOMER KNEW ABOUT RUIFENG; RIGHT?

11:23AM  17        AND MR. WANG, AS THE HEAD OF RUIFENG, DID NOT INSTRUCT YOU

11:23AM  18   AS THE LAB MANAGER TO COMPLY WITH THE DUTIES SET FORTH IN

11:23AM  19   EXHIBIT 3; CORRECT?

11:23AM  20   A.   CORRECT.

11:23AM  21        THE COURT:  NOW, THE WITNESS I DON'T THINK EVER

11:23AM  22   ANSWERED THE QUESTION "NO CUSTOMER KNEW ABOUT RUIFENG; RIGHT?"

11:23AM  23        YOU ASSUMED THAT -- THE COURT REPORTER GOT NO ANSWER.

11:23AM  24        SO WHAT WAS THE ANSWER TO THAT QUESTION?

11:23AM  25        THE WITNESS:  UM, CAN YOU REPEAT THAT QUESTION.

11:23AM 1      MR. LI:  I HEARD HIS ANSWER, BUT I'LL RE-ASK THE

11:23AM 2    QUESTION.

11:23AM 3    Q.   OUTSIDE OF QUINTARA -- NO.

11:23AM 4      NO CUSTOMER OF QUINTARA AT THE TIME KNEW ABOUT RUIFENG IN

11:23AM 5    ANY WAY; CORRECT?

11:23AM 6    A.   CORRECT.

11:23AM 7    Q.   AND I'LL DIRECT YOUR ATTENTION TO FOURTH PARAGRAPH OF

11:24AM 8    EXHIBIT 3.

11:24AM 9      IT SAYS, "RUIFENG BIZTECH SHALL INVOICE

11:24AM 10   QUINTARA BIOSCIENCES FOR THE SERVICES THAT IT HAS PROVIDED TO

11:24AM 11   QUINTARA BIOSCIENCES QUARTERLY DURING THE TERM OF THE

11:24AM 12   CONTRACT."

11:24AM 13     WHEN YOU WERE THE LAB MANAGER, YOU WERE NOT AWARE OF ANY

11:24AM 14   INVOICES SENT BY RUIFENG TO QUINTARA; CORRECT?

11:24AM 15   A.   CORRECT, I WASN'T AWARE.

11:24AM 16   Q.   SOMETIME IN 2017, THE LEASE OF 3563, THE LAB, WAS SWITCHED

11:25AM 17   FROM QUINTARA TO RUIFENG; RIGHT?

11:25AM 18   A.   I DID NOT KNOW ANYTHING ABOUT THAT.

11:25AM 19   Q.   AT THE TIME YOU DID NOT.

11:25AM 20     BUT 2017, WAS THERE ANY CHANGES IN HOW THE COMPANY

11:25AM 21   OPERATED, HOW QUINTARA OPERATED IN 2017?

11:25AM 22   A.   OTHER THAN MOVING TO HAYWARD, THERE WASN'T ANY CHANGES TO

11:25AM 23   THE, LIKE, STRUCTURE OR ANYTHING.

11:25AM 24   Q.   OKAY.  SO YOU WERE NOT EVEN AWARE THAT THERE WAS A LEASE

11:25AM 25   SWITCH?

Page Separator – Page Intentionally Left Blank

12:23PM   1      A.   YES.   THEY USE THIS INFORMATION -- BECAUSE LIKE WHEN YOU

12:23PM   2   BUILD THE DATABASE, YOU NEED TO INPUT THE INFORMATION INTO THE

12:23PM   3   DATABASE.

12:23PM   4      SO IF THEY GET THESE AND INPUT INTO THE DATABASE, THEY

12:23PM   5   HAVE EVERYTHING.

12:23PM   6      Q.   SO DID QUINTARA BUILD THIS DATABASE CUSTOMER BY CUSTOMER?

12:23PM   7      A.   YES.   AT ONE TIME WE HIRE A LOT OF COLLEGE STUDENT TO HELP

12:23PM   8   ME TO CORRECT ALL OF THE MISSPELLING ON THE DATA THAT WE HAVE

12:23PM   9   IN THERE, LIKE A COMMA, A DASH, AND SOMETHING WRONG IN THE

12:23PM  10   EMAIL ADDRESS.

12:23PM  11      AND AFTER THEY CLEAN IT UP, I GETS TONS OF EXCEL FILE

12:23PM  12   WHICH I NEED TO COMBINE, MERGE THEM, EXTRACT THE INFORMATION I

12:23PM  13   NEED, AND THEN PUT IT IN A COMPUTER TERM WHAT I NEED TO STORE

12:23PM  14   IN THERE, YES.   WE SPENT A LOT OF TIME AND EFFORT TO COME UP

12:23PM  15   WITH THIS.

12:23PM  16      Q.   AND FOR ANYBODY TO ACCESS, JUST TO READ, JUST TO DO A

12:24PM  17   QUERY ON A DATABASE, SOME PART OF A DATABASE, DOES THIS PERSON

12:24PM  18   NEED TO BE AN EMPLOYEE OF QUINTARA?

12:24PM  19      A.   YES.

12:24PM  20      Q.   IS THIS PERSON REQUIRED TO HAVE LOG IN AND PASSWORD?

12:24PM  21      A.   IT HAS TO.

12:24PM  22      Q.   OKAY.

12:24PM  23      A.   AND THEN THEY NEED TO HAVE A LOG IN AND PASSWORD.   THEY

12:24PM  24   NEED TO BELONG TO THE GROUP WITH PRIVILEGE.

12:24PM  25      Q.   SO NEXT I'M GOING TO ASK YOU ABOUT THE COMPUTER SYSTEM,

Page Separator – Page Intentionally Left Blank

01:08PM  1        SECOND --

01:08PM  2              THE COURT:  WELL, WAIT.  HE SAID THERE WAS $350,000

01:08PM  3    WORTH OF SALES BY THE DEFENDANTS TO SOMEBODY, THEIR FORMER

01:08PM  4    CUSTOMERS.

01:08PM  5              MS. KAMATH:  THAT GOES TO MY NEXT POINT.

01:09PM  6         IN 2019, QUINTARA TERMINATED THE COLLABORATION, AND PRIOR

01:09PM  7    IN TIME, UNTIL MARCH 9TH, 2020, THEY TERMINATED THE

01:09PM  8    COLLABORATION.  SO TECHNICALLY THEY TOOK RUIFENG'S CUSTOMERS

01:09PM  9    AWAY AND THEN RUIFENG LOST BUSINESS, RUIFENG LOST PROFITS.

01:09PM 10              THE COURT:  WELL, HOW DID RUIFENG EVEN PROFIT FROM

01:09PM 11    THE COLLABORATION?  WHAT WAS IN IT FOR RUIFENG?

01:09PM 12              MS. KAMATH:  RUIFENG WAS MAKING PROFIT OFF OF THE

01:09PM 13    SALES TO EACH OF THOSE CUSTOMERS.

01:09PM 14              THE COURT:  HOW?

01:09PM 15              MS. KAMATH:  THEY WERE GETTING MONEY FOR THE SALES.

01:09PM 16              THE COURT:  RUNNING THE LAB TESTS?

01:09PM 17              MS. KAMATH:  YEAH, FOR ALL OF THE DNA PROCESS

01:09PM 18    SAMPLES THAT THEY DID WITH THEIR MACHINE IN THE 3563 INVESTMENT

01:09PM 19    BOULEVARD, HAYWARD.

01:09PM 20         ULTIMATELY, RUIFENG FROM 2014 UNTIL ABOUT THE END OF 2019,

01:09PM 21    WAS MAKING PROFIT.  IT WAS -- I MEAN, AND THEN THE THIRD POINT

01:09PM 22    IS THAT IF THEY'RE SAYING IT'S A LOAN AND THERE ISN'T AN

01:10PM 23    INTEREST RATE, THEN WE JUST ESTABLISHED THE VALIDITY OF

01:10PM 24    EXHIBIT 2A BECAUSE THE INTEREST RATE IS STATED SPECIFICALLY IN

01:10PM 25    EXHIBIT 2A.

01:10PM 1    THE COURT:  ALL RIGHT.  YOU JUST -- YOUR

01:10PM 2 EXPLANATION, FOR THE FIRST TIME A LIGHT BULB WENT OFF IN MY

01:10PM 3 HEAD, AND MAYBE THE JURY, IT HASN'T GONE OFF IN THEIR HEAD YET.

01:10PM 4    BUT TELL ME IF YOU THINK THIS IS THE WAY IT WORKED.

01:10PM 5    ALL RIGHT.  SO WE HAVE QUINTARA INTERFACES WITH THE

01:10PM 6 CUSTOMERS AND INVOICES THE CUSTOMERS AND LET'S SAY GETS $1,000

01:10PM 7 FOR A DNA TEST TO BE RUN FROM, LET'S SAY, M.I.T.

01:10PM 8    THEN IN COMES THE BLOOD SAMPLE, OR WHATEVER SAMPLE IT IS,

01:10PM 9 AND QUINTARA HANDS THAT OVER TO THE LAB NEXT DOOR, WHICH IS

01:11PM 10 RUIFENG.

01:11PM 11    AND RUIFENG THEN CHARGES QUINTARA, LET'S SAY, $850 -- OR

01:11PM 12 YOU TELL ME THE RIGHT NUMBER -- TO RUN THE TEST AND TO GENERATE

01:11PM 13 THE TEST RESULTS, AND THEN GIVES THAT TO QUINTARA WHO THEN

01:11PM 14 GIVES THAT TO M.I.T.

01:11PM 15    MS. KAMATH:  NO, YOUR HONOR.

01:11PM 16    THE COURT:  IS THAT THE WAY IT WORKED?

01:11PM 17    MS. KAMATH:  NO, NOT AT ALL.

01:11PM 18    THE COURT:  OKAY.  RUN THROUGH THE SEQUENCE SO I CAN

01:11PM 19 UNDERSTAND WHO IS MAKING MONEY AT WHICH STAGE.

01:11PM 20    MS. KAMATH:  SO STARTING IN 2014, IT WAS CLEAR, AND

01:11PM 21 RICHARD QUN SHAN HAS ESTABLISHED THIS IN WRITING AND WE WILL

01:11PM 22 PROVE THIS IN OUR CASE, THAT RUIFENG/QUINTARA WAS A JOINT

01:11PM 23 COLLABORATION, THAT QUINTARA DID THE BUSINESS AND SALES AND

01:11PM 24 MARKING, AND RUIFENG DID THE BACK END PROCESSING OF THE DNA

01:11PM 25 SAMPLING.  THAT WAS THE COLLABORATION.  THEY WERE PARTNERS,

51/49.

AND ONE SIDE OF THIS, QUINTARA -- AND THERE'S ALSO
ACTUALLY RUIFENG.  THERE'S NO RUIFENG AND QUINTARA.

IF YOU LOOK AT THAT, THE WAY RUIFENG IS SET UP, RUIFENG IS
THE CHINA COMPANY AND QUINTARA IN PARTNERSHIP.  THAT IS
RUIFENG.

AND I CAN PROVE THIS BECAUSE IN ABOUT END OF 2013,
DECEMBER 2013, QUN SHAN, RICHARD SHAN, IS LISTED AS COMPANY
SECRETARY FOR RUIFENG, AND GANGYOU WANG IS LISTED AS THE CEO.

SO THIS ENTIRE TIME RUIFENG IS THE COMPANY FROM CHINA THAT
INVESTED THE $1 MILLION, AND QUINTARA -- SO QUINTARA WAS A
49 PERCENT OWNER, AND THE COMPANY FROM CHINA WAS THE 51 PERCENT
OWNER.

AND THEREAFTER, THERE ARE BOARD MINUTE MEETINGS WHERE
QUN SHAN, RICHARD, BECAME A SHAREHOLDER, AND GANGYOU WANG AS
WELL.  THEY EVEN ESTABLISHED OVER THE YEARS THE FINANCIAL
STATEMENTS FROM 2014, 2015, 2016.

THE COURT:  ARE ME AND THE JURY EVER GOING TO SEE
THOSE FINANCIAL STATEMENTS?

MS. KAMATH:  IN OUR CASE HOPEFULLY.

THE COURT:  ALL RIGHT.  DID THEY FIGURE OUT EACH
YEAR OR EACH QUARTER HOW MUCH PROFIT WAS MADE AND THEN SPLIT IT
51/49?

MS. KAMATH:  NO, BECAUSE I THINK THE WAY IT WORKED,
AND I THINK SUE ZHAO TESTIFIED THAT RUIFENG ACTUALLY INVOICED

01:13PM 1　THE CUSTOMERS.  I THINK SHE STATED THAT, BUT I'LL HAVE TO GO

01:13PM 2　BACK TO THE TRANSCRIPT.

01:13PM 3　　　　　THE COURT:  WHO'S "THEY"?  QUINTARA'S NAME?

01:13PM 4　　　　　MS. KAMATH:  I THINK IT SAID RUIFENG.  I THINK I

01:13PM 5　HAVE SOME INVOICE ORDERS THERE.

01:13PM 6　　　　　THE COURT:  SO YOU MEAN M.I.T. WOULD GET AN INVOICE

01:13PM 7　FROM RUIFENG?

01:13PM 8　　　　　MS. KAMATH:  YES.

01:13PM 9　　　　　MR. LI:  ABSOLUTELY NOT.  I MEAN, THERE'S NO SUCH --

01:13PM 10　　　　　THE COURT:  WAIT, WAIT, MR. LI.  I'M GOING TO GIVE

01:13PM 11　YOU YOUR TURN.

01:13PM 12　　　HE SAYS THAT THAT'S NOT TRUE, BUT DO YOU HAVE SOME -- DO

01:14PM 13　YOU HAVE ANY IN WRITING?

01:14PM 14　　　　　MS. KAMATH:  I THINK I HAVE SEEN SOME INVOICE ORDERS

01:14PM 15　THAT WERE PART OF DISCOVERY WHERE IT SAYS RUIFENG, AND THEN IT

01:14PM 16　SAYS, YOU KNOW, THE UNIVERSITY NAME AND/OR WHATEVER THAT

01:14PM 17　CUSTOMER IS.

01:14PM 18　　　AND THIS ENTIRE TIME IT WAS -- QUINTARA WAS THE BUSINESS

01:14PM 19　DEVELOPMENT, THE SALES AND MARKETING, AND THEY HAVE REITERATED

01:14PM 20　THAT RUIFENG WAS THIS BACK END DNA SEQUENCING.

01:14PM 21　　　SO THERE WAS NO RUIFENG AND QUINTARA.  IT WAS ALWAYS THE

01:14PM 22　COLLABORATION.

01:14PM 23　　　　　THE COURT:  WELL, HERE ARE SOME THINGS THAT COULD

01:14PM 24　GET TO THE TRUTH OF THE MATTER.  ONE WOULD BE, WAS QUINTARA THE

01:14PM 25　ONLY ONE HELD OUT TO THE CUSTOMER BASE, LIKE M.I.T. AND

01:14PM 1    WISCONSIN AND DAVIS AS WHO THEY WERE DEALING WITH, THE VENDOR,

01:14PM 2    SO THAT M.I.T. THOUGHT IT WAS DEALING WITH QUINTARA AND DID NOT

01:14PM 3    KNOW ABOUT THE ROLE OF RUIFENG?

01:15PM 4         AND SO THEN INTERNALLY, THERE MUST BE SOME RECORDS WITHIN

01:15PM 5    THE COMPANY OF QUINTARA THAT KEPT TRACK OF HOW MUCH MONEY WOULD

01:15PM 6    GO TO RUIFENG AND FOR WHAT.  LIKE, YOU DID THE 1300 DNA

01:15PM 7    SEQUENCINGS, AND FOR EACH ONE OF THOSE YOU GET PAID $850,

01:15PM 8    HERE'S THE MONEY.  THAT WOULD BE FOR WORK PERFORMED AND THEN

01:15PM 9    THAT WOULD BE PAID BY QUINTARA.

01:15PM 10        THAT WOULD BE INDICATIVE OF THE -- I GUESS MR. LI'S

01:15PM 11   VERSION.

01:15PM 12        BUT YOUR VERSION WOULD BE THAT THEY PULLED THE PROFITS AND

01:15PM 13   THEN THEY SPLIT IT UP AT THE END OF THE YEAR 51/49 AND THERE

01:16PM 14   WOULD BE DOCUMENTATION TO BACK THAT UP.

01:16PM 15        MS. KAMATH:  I DON'T THINK THE PROFITS WERE SO

01:16PM 16   NEATLY DELINEATED.  I THINK IT WAS -- AND THAT'S WHY THIS CASE,

01:16PM 17   AS YOU STATED, IS MESSY, BECAUSE SOMETIMES THEY WOULD CHARGE

01:16PM 18   RUIFENG FOR PURCHASING EQUIPMENT AND DNA SEQUENCERS, AND OTHER

01:16PM 19   TIMES RUIFENG WAS PAYING FOR EMPLOYEES.

01:16PM 20        SO I THINK THE WAY THIS COLLABORATION ACTUALIZED WAS A

01:16PM 21   COMPLETE MISHMASH.

01:16PM 22        HOWEVER, YES, THERE IS SOME EXCHANGE OF MONETARY VALUE

01:16PM 23   BETWEEN PARTIES BOTH WAYS.

01:16PM 24        THE COURT:  WELL, OKAY.  ALL RIGHT.

01:16PM 25        I'M GOING TO GIVE YOU -- YOU WANTED TO GIVE YOUR REPLY TO

Page Separator – Page Intentionally Left Blank

01:19PM 1    THEY MOVED TOGETHER, AND THE LEASE FOR 3563 BELONGED TO

01:19PM 2    RUIFENG AND GANGYOU WANG HAD A RIGHT TO PUT A LOCK ON THERE

01:19PM 3    WHEN HE SAW THAT THEY WERE EXTRACTING INFORMATION FROM 3563,

01:19PM 4    THE WORKSTATIONS, AND THE DNA SEQUENCING AND THE PROCESSING.

01:19PM 5         THE COURT:  OKAY.  ENOUGH RIGHT NOW.

01:19PM 6         I WANT TO MAKE A COMMENT HERE.  I'VE PRACTICED LAW FOR

01:19PM 7    ALMOST 25 YEARS.  IT'S, LIKE, 23.  I'VE BEEN IN THIS JOB FOR

01:20PM 8    23.  THAT'S CLOSE TO 50 YEARS.

01:20PM 9         I THOUGHT I HAD SEEN EVERY KIND OF A CASE, BUT I HAVE

01:20PM 10   NEVER SEEN A BUSINESS CASE LIKE THIS -- THIS IS A BUSINESS

01:20PM 11   CASE -- WHERE A REASONABLE AMOUNT OF MONEY WAS INVOLVED AND

01:20PM 12   THERE WERE NOT MORE CLEARCUT DOCUMENTS, AGREEMENTS BETWEEN THE

01:20PM 13   PARTIES EXPLAINING WHAT THEIR ARRANGEMENT WAS SO THAT YOU COULD

01:20PM 14   BE IN A POSITION WHERE NOW YOU'RE FIGHTING OVER DIAMETRICALLY

01:20PM 15   OPPOSED -- I MEAN, REALLY, THEY'RE NOT EVEN CLOSE, THE THEORIES

01:20PM 16   OF WHAT THE ARRANGEMENT WAS.

01:20PM 17        SO I JUST DON'T KNOW HOW THIS OUGHT TO COME OUT.  IT'S

01:20PM 18   GOING TO BE UP TO THE JURY.  IT'S NOT UP TO ME.

01:21PM 19        BUT I AM WORRIED ABOUT THE INSTRUCTIONS.

01:21PM 20        BY THE WAY, WE'RE GOING TO TRY TO GIVE YOU A SET OF THE

01:21PM 21   INSTRUCTIONS TOMORROW IN DRAFT FORM, BECAUSE WE MAY BE ARGUING

01:21PM 22   THIS CASE ON -- I HAVE A FEELING YOU'LL RUN OUT OF TIME ON

01:21PM 23   THURSDAY, AND WHEN YOU RUN OUT OF TIME, WE WILL PROCEED TO THE

01:21PM 24   CLOSING ARGUMENTS.

01:21PM 25        SO WE NEED TO -- YOU NEED TO SEE THE INSTRUCTIONS AND GET

Page Separator – Page Intentionally Left Blank

```
 1
 2
 3                    CERTIFICATE OF REPORTERS
 4
 5
 6
 7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE
 8   UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
 9   CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10   HEREBY CERTIFY:
11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13   ABOVE-ENTITLED MATTER.
14
15
16        _____
          IRENE RODRIGUEZ, CSR, CRR
17        CERTIFICATE NUMBER 8076
18
19        _____
          LEE-ANNE SHORTRIDGE, CSR, CRR
20        CERTIFICATE NUMBER 9595
21        DATED:  JULY 11, 2023
22
23
24
25
```

# Exhibit H

**From:** Reshma Kamath <reshmakamath2021@gmail.com>
**Sent:** Wednesday, July 5, 2023 5:01 PM
**To:** lij@lilaw.us
**Cc:** Daniel Peterson; Richard Lambert; Tamara Rider; Ting Jiang
**Subject:** Re: QUINTARA V. RUIFENG- SHORT STATEMENT OF THE CASE

I will file this on behalf of Ruifeng, because he requested this today.

If you have a draft, then please circulate and we can edit.


Sincerely,


*Reshma Kamath*


# Law Office of Reshma Kamath

Counselor-at-Law | 2022 Elite Lawyer | Lawyers of Distinction

Address:   Law Office of Reshma Kamath

700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025

Phone:     650 257 0719 |  E-mail:     reshmakamath2021@gmail.com  |

LinkedIn: www.linkedin.com/in/globalcitizenwithjd/ |

Website:   www.myinstalawyer.com |






*Selected to Rising Stars: 2023*

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. Thank you for your cooperation. To ensure compliance with Internal Revenue Service Circular 230, we inform you that any tax advice contained in this communication is not intended or written to be used, and cannot be used for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

On Wed, Jul 5, 2023 at 4:59 PM lij@lilaw.us <lij@lilaw.us> wrote:

That's the wrong format. It should be a short narrative to be read to the potential jurors to aid jury selection. I will send you a draft of ours soon.

 **J. James Li, Ph.D.**

LiLaw Inc., 1905 Hamilton Ave., Suite 200, San Jose, CA

650.521.5956. www.lilaw.us.

---

**From:** Reshma Kamath <reshmakamath2021@gmail.com>
**Sent:** Wednesday, July 5, 2023 4:50 PM
**To:** lij@lilaw.us; Daniel Peterson <petersond@lilaw.us>; Richard Lambert <lambertr@lilaw.us>; Tamara Rider <ridert@lilaw.us>; Ting Jiang <jiangt@lilaw.us>
**Subject:** QUINTARA V. RUIFENG- SHORT STATEMENT OF THE CASE

Hello all:

Please check attached SHORT STATEMENT OF THE CASE.

If you do not agree, I will file today on Ruifeng's behalf.

Sincerely,

*Reshma Kamath*

# Law Office of Reshma Kamath

Counselor-at-Law | 2022 Elite Lawyer | Lawyers of Distinction

Address:   Law Office of Reshma Kamath

700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025

Phone:      650 257 0719 |  E-mail:      reshmakamath2021@gmail.com   |

LinkedIn:  www.linkedin.com/in/globalcitizenwithjd/  |

Website:   www.myinstalawyer.com  |

  

 *Selected to Rising Stars: 2023*

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. Thank you for your cooperation. To ensure compliance with Internal Revenue Service Circular 230, we inform you that any tax advice contained in this communication is not intended or written to be used, and cannot be used for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

Email Attachment: "SHORT STATEMENT-RESHMA KAMATH"

**LAW OFFICE OF RESHMA KAMATH**

Reshma Kamath, Cal. Bar No. 333800

700 El Camino Real, Suite 120, #1084

Menlo Park, California 94025, United States

Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com

COUNSEL FOR **DEFENDANTS**

**RUIFENG BIZTECH INC.; GANGYOU WANG;**

**ALAN LI; AND, RF BIOTECH LLC**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., a California corporation, | Case No. 3:20-cv-04808-WHA |
| Plaintiff, v. | *[Assigned to presiding Judge William H. Alsup]* |
| RUIFENG BIZTECH INC., a California corporation, GANGYOU WANG, an individual, ALEX WONG, an individual, ALAN LI, an individual, RUI SHAO, an individual, and RF BIOTECH LLC, a California limited liability company, | **SHORT STATEMENT OF THE CASE** |
| Defendants. | |

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD, HEREIN:*

*SHORT STATEMENT OF THE CASE*

## SHORT STATEMENT OF THE CASE

Pursuant to Honorable William H. Alsup's direct orders on the final pre-trial conference hearing date, parties jointly submit:

1. Plaintiff Quintara Biosciences, Inc. is a corporation organized under the laws of the State of California having its principal places of business in Hayward, California and Cambridge, Massachusetts

2. Defendant Ruifeng Biztech Inc. is a corporation organized under the laws of the State of California with its principal place of business in Hayward, California

3. Defendant Gangyou Wang is an individual residing in Palo Alto, California.

4. Defendant Alan Li is an individual residing in San Ramon, California.

5. Defendant RF Biotech LLC is a limited liability company organized under the laws of the State of California with its principal place of business in Hayward, California.

6. Quintara was established in April 2005, specializing in the business of DNA sequence analysis and related fields, serving customers in both academic and commercial settings.

7. In 2013, Quintara was an established company with 36 employees and annual revenue of more than $3 million.

8. In 2013, Gangyou Wang and Quintara entered into a business collaboration which they both referred to as "cooperation."

9. In 2013, Gangyou Wang and Quintara executed the joint cooperation agreement where Gangyou Wang provided $ 1 million USD to Quintara and agent Richard Shan. This was written in the Chinese language.

10. On December 3, 2013, Ruifeng registered in the United States.

11. Ruifeng placed approximately $1 million into Quintara's DNA sequencing operation.

12. The parties dispute the nature of the $1 million dollar investment.

13. Quintara contends that the $1 million was a loan which was fully repaid.

14. Ruifeng contends that the $1 million USD was never repaid to this undersigned date and on-going. As of today, the interest on the $1 million USD was unpaid.

15. For that purpose of memorializing the agreement between Gangyou Wang and Quintara, a cooperation agreement was signed between the agreement between Defendant Wang and Quintara on December 28, 2013 (the "2013 cooperation agreement"), with Defendant Ruifeng owning 51%, and Quintara 49%, of the partnership tentatively named the "new company."

16. Less than two months following the 2013 cooperation agreement, on February 21, 2014, Gangyou Wang and Quintara entered into a staff servicing agreement (the "2014 staff service agreement").

17. The 2014 staff service agreement called for Ruifeng to be a contractor for providing Quintara with "staff services" which included "recruiting 6 lab technicians ... in 2014" and "6 part or full time technicians in 2015."

18. The 2014 staff service agreement called for Quintara to "provide technical training and supervise the staff."

19. Gangyou Wang submitted a document entitled "Contract for Services" as part of his

submission to the USCIS on March 9, 2015 (the "2015 service contract").

20. The 2015 service contract describes the general business arrangement whereby Ruifeng processes DNA samples for Quintara via joint collaboration, concurrently acts as a contractor and is reimbursed for the resources expended via invoicing process.

21. In the summer of 2017, Quintara moved its laboratory to 3563 Investment Boulevard, Suite 2, Hayward, California (the "3563 Lab").

22. Initially, Ruifeng only subleased a single room for Wang's office inside the 3563 Lab, but then leased a smaller office space next to the 3563 Lab with the address of 3583 Investment Boulevard, Suite 2, Hayward, California (the "3583 Office").

///

**LAW OFFICE OF RESHMA KAMATH**

**DATED: August 10, 2023**

/S/ Reshma Kamath

Reshma Kamath,
Counsel for Defendants and Counter
Complainants,
RUIFENG BIZTECH INC.; GANGYOU
WANG; ALAN LI; and, RF BIOTECH LLC

## CERTIFICATE OF SERVICE

F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260.

I am employed in, the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business/mailing address is: 700 El Camino Real, Suite 120, #1084, Menlo Park, California 94025, United States; and, e-mail address is reshmakamath2021@gmail.com for electronic-service. On July 05, 2023, I sent the following documents via the below method of service. SEE ATTACHED SERVICE LIST.

**SHORT STATEMENT OF THE CASE;**

**CERTIFICATE OF SERVICE.**
///

Via **ELECTRONIC SERVICE**: In electronically transmitting courtesy copies of the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list per the electronic service agreement between the parties' counsel. To my knowledge, the transmission was reported as complete and without error. [Notice of Electronic-Service pursuant to California Code of Civil Procedure § 1010.6.]
///

I declare under penalty of perjury of the laws of the State of California, and the laws of the United States of America that the foregoing is true and correct. Executed on July 05, 2023.

*Sincerely,*

*/S/ Reshma Kamath*
Reshma Kamath

## SERVICE LIST

Daniel Robert Peterson
Email: petersond@lilaw.us

Richard D Lambert
Email: lambertr@lilaw.us

Tamara Rider
Email: ridert@lilaw.us

J. James Li
LiLaw, Inc.
1905 Hamilton Avenue Suite 200 San Jose, CA 95125
650-521-5956 Fax: 650-521-5955 Email: lij@lilaw.us
ATTORNEY TO BE NOTICED
ATTORNEYS FOR PLAINTIFF QUINTARA BIOSCIENCES, INC.

Ting Jiang, LiLaw, Inc./Quintara's Legal assistant
E.: jiangt@lilaw.us

*RE*: RESPONSE TO MAGISTRATE JUDGE THOMAS S. HIXSON'S OSC