**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800
700 El Camino Real, Suite 120, #1084,
Menlo Park, California 94025, United States
Phone-number: 650 257 0719
E-mail address: reshmakamath2021@gmail.com
**COUNSEL FOR DEFENDANTS RUIFENG
BIZTECH INC.; GANGYOU WANG;
ALAN LI; AND, RF BIOTECH LLC.**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

QUINTARA BIOSCIENCES,
INC., a California corporation,

    Plaintiffs,

    v.

RUIFENG BIZTECH INC., a
California corporation,
GANGYOU WANG, an
individual, ALEX WONG, an
individual, ALAN LI, an
individual, RUI SHAO, an
individual, and RF BIOTECH
LLC, a California limited liability
company,

    Defendants.

**Case No.:  3:20-cv-04808-WHA**

*[Assigned to presiding Article III Senior
District Judge Honorable William Haskell
Alsup]*

**REPLY IN SUPPORT OF THE
PREVAILING PARTIES' NOTICE OF
MOTION AND MOTION/REQUEST
FOR REASONABLE ATTORNEYS'
FEES PURSUANT TO DEFEND TRADE
SECRETS ACT [DTSA] PURSUANT TO
18 U.S.C. § 1836 *ET SEQ.*; REQUESTS
FOR COSTS INCURRED UNDER FED.
*RUL. CIV. PROC. RULE* 54 *ET SEQ.*
DURING THE COURSE OF DEFEND
TRADE SECRETS ACT LITIGATION**

**HEARING:**

    DATE:    **SEPTEMBER 14, 2023**
    TIME:    **08:00 A.M. PDT**
    DEP'T:   **COURTROOM 12, 19TH
             FLOOR**

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF
RECORD, HEREIN:*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **REPLY**

During the pendency of Ruifeng *et al's* motion, Quintara filed an appeal. Perfecting of which, ***stays*** any and all civil matters in the federal trial court, and gives the inferior court limited-to-no jurisdiction only to correct some errors. The power of the trial court is suspended to proceed further in the cause when the appeal was perfected. *Supreme Court in Hovey v. McDonald*, 109 U.S. 150, 3 S.Ct. 136, 140, 27 L.Ed. 888.

However, since the motion is pending and the reply is due August 17, 2023, in the interest of having a fully-briefed motion, Ruifeng *et al* via the undersigned counsel submit the Reply in support of the motion for attorneys' fees.

The attorneys' fees provision of the DTSA provides that,

> "a court may, ... if a claim of [trade secret] misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, award reasonable attorney's fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D).

Relying on the definition of prevailing party in Black's Law Dictionary, the Honorable Court must conclude "a `prevailing party' is one who has been awarded some relief by the court." *Id.* at 603, 121 S.Ct. 1835; *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The key inquiry is whether some court action has created a "material alteration of the legal relationship of the parties." *Id.* at 604, 121 S.Ct. 1835 (internal quotation marks omitted); *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008) citing *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835.

*Procedurally*, Quintara has circumvented motion-filing rules repeatedly. It has tried to squeeze in with font size 12 in a federal briefing when the required font size 14 would have taken Quintara over the page-limit. The Court often overlooks such transgressions of Quintara and its attorneys. Ruifeng has offered additional pages to write the opposition, so Ruifeng will not fuss over this issue.

*Substantively*, even after itself *staying* the motion for attorneys' fees, Quintara continues to ramble on in its Opposition.

In making conclusory allegations, Quintara "presented substantial evidence as to its sole and exclusive ownership of the customer database," *Opp.* at p.2; 1-2, Quintara concludes that it presented such evidence at trial. Quite the contrary! At trial, there was overwhelming documentary and testimonial evidence of joint ownership between parties wherein even Richard Shan and Sue Zhao, agents of Quintara admitted it was a "collaboration" between parties with a "collaboration agreement" and that Ruifeng paid Quintara/Ruifeng employees the W-2 even in the year 2019.

[*Opening Statement of Plaintiff's Counsel,* pgs. *Vol. 2*, pg. 243, ln. 1, 7, 10, 18; p. 244, pg. 7, 10, 12, 18, 22; pg. 245 pg. 1, 5; pg. 246, ln. 5

"BUT THE COLLABORATION DID NOT END UNTIL 2019."; pg. 307, ln. 5, "THE COURT: CAN I ASK A QUESTION THAT MAY BE THE JURY IS WONDERING? I THOUGHT THE WITNESS SAID THERE WAS NO COLLABORATION AND THE COLLABORATION AGREEMENT NEVER CAME INTO EFFECT. BUT NOW THE QUESTIONS AND ANSWERS ARE ASSUMING THAT THE COLLABORATION DID, IN FACT, OCCUR."; pg. 310, ln. 5-9, "YOU TALKED ABOUT TOWARD THE END OF 2019 THE COLLABORATION WAS TERMINATED. NOW I WANT TO GET DETAILS ABOUT THAT. OKAY? SO WHEN IN 2019 DID YOU AND MR. WANG FIRST TALK ABOUT ENDING THE

COLLABORATION APPROXIMATELY? A. EARLY IN 2019. PROBABLY SOME TIME IN Q1."]

These are just selective excerpts of *Volume 2* of the trial transcript. In all five volumes of the trial, Quintara and its attorneys had reiterated and conceded to "collaboration" between parties. Thus, they **knew and should have known** that this collaboration as to ownership existed; and, there can be no doubt as to both objective, and subjective bad-faith in **wanton, oppressive and harassing conduct** from Quinatra and its attorneys to litigants and undersigned counsel.

Quintara even admitted there was atleast one million dollars ($1,000,000) that Ruifeng, specifically, Gangyou Wang, paid Richard and Sue of Quintara. Richard and Sue then admitted that they bought some equipment such as the Oligo machine with $100,000 of Gangyou Wang's investment.

*Shan Cross by Ms. Kamath*, *Vol. 2,* pg. 356, Ln. 10-11,

"A. I DON'T EXACTLY REMEMBER WHICH WAS RUIFENG'S, BUT SOME OF THE SEQUENCER PROBABLY WE BOUGHT USING RUIFENG'S MONEY."

ln. 19-22,

Q. SO IF THERE WERE EIGHT SEQUENCERS, YOU BOUGHT TWO OF THEM; RIGHT? A. WE BOUGHT SIX OF THEM, AND PROBABLY RUIFENG BOUGHT TWO OF THEM."; pg. 357, Ln. 19-24; 358, 1-5, "Q. YOU STATED RUIFENG BOUGHT SOME OF THE THAT DNA EQUIPMENT IN 63. CAN YOU DESCRIBE WHAT IT WAS? A. I THINK PROBABLY DNA SEQUENCER, BECAUSE THAT'S THE MACHINE THAT WE'RE USING MOST. Q. SO RUIFENG BOUGHT THE DNA SEQUENCER? A. YES. Q. WITH RUIFENG'S MONEY?"; "A. YES. Q. AND HOW MUCH WAS THAT DNA SEQUENCER THAT RUIFENG BOUGHT WITH RUIFENG'S MONEY? A. I DON'T REMEMBER. BUT I THINK A NEW ONE PROBABLY COST 300,000. A USED ONE, PROBABLY AROUND 100,000."

Sometimes, they characterized this payment as a "loan." However, it was undisputed at trial that a payment of atleast $1,00,000 was made between the years, December 2013-December 2019. *Vol. 2*, Pg. 360,

"Q. SO THE OLIGO SYNTHESIZER YOU SPENT $100,000; RIGHT? A. YES. Q. AND NOW THAT LEAVES 900,000 OF THE MILLION DOLLARS OF THE ALLEGED LOAN TO YOU; RIGHTS? A. UH-HUH. Q. SO OUT OF THE 900,000, WHO WERE THE EMPLOYEES THAT YOU
PAID? A. I DON'T REMEMBER ALL OF THE NAMES, BUT PROBABLY ALAN LI. Q. ALAN LI YOU STATED? A. YEAH. Q. SO YOU PAID ALAN LI OUT OF THE 900,000 HIS WAGES; RIGHT? A. YEAH. Q. AND ARE YOU STATING YOU, AS IN QUINTARA, PAID ALAN LI HIS WAGES? A. LET ME STEP BACK A LITTLE BIT. Q. OKAY. A. SO THE MONEY THAT -- THE MONEY WE GOT FROM MR. WANG WE ARE USING FOR TWO PURPOSES. Q. UH-HUH.
A. ONE IS THAT WE'RE USING TO PURCHASE SOME LAB EQUIPMENT, AND ANOTHER IS WE ARE USING TO PAY THE TECHNICIAN WE ALLOCATE TO RUIFENG'S PAYROLL SO THAT MR. WANG HAS A SIZEABLE OPERATION FOR HIS RUIFENG COMPANY."

Even Quintara Exhibits 406 and 408 that Quintara enlarged in a board had the words "collaboration" between parties specifically stated on them.

The objective bad-faith lies in the fact that Quintara and its attorneys knew and/or should have known that this payment was made, a collaboration existed, and it spanned from the years 2013-2019. Yet, in further objective bad-faith, Quintara and its attorneys continued to misrepresent this entire joint-ownership between parties as an "immigration sham."

In addition, Quintara, and its agent, Richard and Sue, had "office" and "lab" locations that coincided from the years 2013-2019 with Ruifeng; worked in Ruifeng's DNA lab "across" the street; and, their employees worked in the "office" of Quintara and "lab" of Ruifeng during those years.

It can hardly be a coincidence that both Ruifeng and Quintara were located in Richmond in the year 2014; then, in South San Francisco in the years 2015-2016; and, then in Hayward on Investment Boulevard from the years 2017-December 2019.

*Vol. 3 Zhao Cross by Ms. Kamath*, pg. 449, ln. 15-25; 450, ln. 1-2,

"SO IN RICHMOND IN 2014, RUIFENG AND QUINTARA OPERATED TOGETHER ON THE SAME CUSTOMER LIST; RIGHT? A. YES. Q. AND THEN WHEN YOU MOVED TO SOUTH SAN FRANCISCO, RUIFENG AND QUINTARA THEN WORKED FROM THE SAME CUSTOMER LIST THAT YOU ARE CURRENTLY USING TODAY; RIGHT? A. YES. Q. AND THEN YOU AND -- OR RUIFENG AND YOU, UNTIL ABOUT 2019 WHEN THE COLLABORATION TERMINATED, ALSO USED THE SAME CUSTOMER LIST; RIGHT? A. YES. BUT THE CUSTOMER LIST ARE VERY DIFFERENT AT THE YEAR 2019 VERSUS 2014 BECAUSE WE KEEP ADDING CUSTOMERS AND SOME CUSTOMERS LEFT."

The bad-faith lies in the objective standard that Quintara and its attorney had the afore-stated facts *prior* to the commencement of litigation, and even more so *prior* to trial for **three years**. Quintara and its attorney *knew, and/or should have known* that lease agreements, office/DNA lab addresses, employees' workplace, and the collaboration were intermingled and intertwined between the parties. There was no clear demarcation as to who owned the work-product of Quintara and/or Ruifeng.

Subjectively, the facts do not change. Quintara and its attorneys seem to think that because the legal standard changes from objective to subjective, somehow different facts have to be pled. No. The same facts can prove both objective/subjective/and/or one or the other.

*Re* Jon Berryhill, the retained expert for Quintara, specifically stated under oath that "primarily, Mr. Li" informed him what to look for. *Vol. 3*, pg. 511, ln. 9-12,

"Q. OKAY. SO YOU WERE NOT NECESSARILY ON YOUR OWN THINKING YOU WERE LOOKING FOR TRADE SECRETS, BUT ONLY ASSISTING JAMES LI LOOK FOR INFORMATION THAT HE HAD PROVIDED TO YOU IN A LIST? A. IN A BROAD SENSE, YES."

Jon Berryhill even testified that he was not any kind of trade secret expert. There was absolutely nothing in Mr. Berryhill's testimony whether he had found "things that look like trade secrets." *Vol. 3*, pg. 519: ln.14-18,

"Q. IS IT POSSIBLE THAT ANY NATURAL PERSON COULD HAVE LOGGED INTO ANY OF THOSE WORKSTATIONS AND SAVED AND/OR CREATED ANY EXCEL SPREADSHEET? A. I HAVE NO INFORMATION ABOUT WHAT INDIVIDUAL USERS MAY HAVE BEEN ACCESSING PARTICULAR MACHINES."

*Re* Sue Zhao, the alleged agent of Quintara, who provided **perjured testimony** under oath that Quintara brought up in the Opposition on pg.14: "customer database at issue was developed by her only when she was employed by Quintara and never when she was being partially paid by Defendants. Id. at 716:16-20 ("Q. The SQL Database that you described yesterday, were you developing it both as Ruifeng and Quintara's employee in 2019? A. No. I developed the database when I worked for Quintara."); see also id. at 717:04-22." It was **clearly proven** that any customers during business development and marketing were a **joint-collaborative effort** of many different individuals, employees, and teams that Quintara and Ruifeng **jointly developed** and created. In fact, most of those employees were **paid by Ruifeng** under its W-2s and those tax documents were produced in court. Ruifeng **Exh. 506 (c)- (d)**. Even Sue testified that she was paid by Ruifeng. *Zhao Cross by Ms. Kamath, Vol. 3,* pg. 692 9-25-693:ln. 1-2,

"Q. SO THIS "WE" IS JUST YOU AND RICHARD SHAN?
A. NO, DON'T TRY TO MISUNDERSTAND MY WORDING.
WHEN I SAY "WE" -- I DON'T SAY I PROCESS DNA SAMPLE. I
SAID "WE." AS A COMPANY WE HAVE MANY PEOPLE WORKING, "WE."
THAT'S THE WORD THAT WE USE.
Q. THAT'S A GREAT, YOU KNOW, LEADERSHIP QUALITY IN YOU. I
MEAN, SAYING "WE" IS AMAZING THAT YOU FOCUS ON TEAM AND
LEADERSHIP.
AND WHO IS THAT "WE"? CAN YOU DESCRIBE WHO THAT "WE" IS?
A. SO WE, WHEN WE PROCESS, I MEAN QUINTARA. TECHNICIAN WORK
FOR QUINTARA. TECHNICIAN WORK FOR RUIFENG.
IF AT THAT PARTICULAR TIME I SEND DNA SAMPLE TO RUIFENG TO
BE PROCESSED --
Q. OKAY.
A. -- THEN IT MAY AT THAT PARTICULAR TIME.
Q. SO IT INVOLVES QUINTARA AND IT INVOLVES TECHNICIANS. IT
INVOLVES RUIFENG, IT INVOLVES RUIFENG'S TECHNICIANS FROM 2014 UP
UNTIL DECEMBER 2019; RIGHT? THAT'S THE "WE"?
A. YES, THAT'S THE "WE.""

*Vol. 4, Zhao Cross by Ms. Kamath*, pg. 693 ln. 19-25- pg. 694 ln.1-5;

"Q. FROM 2015 TO END OF 2019, DECEMBER SPECIFICALLY, WAS
ALAN LI, WHO HAD THE EMAIL ADDRESS ALAN@QUINTARABIO.COM, ON
RUIFENG'S W2?
A. THAT IS CORRECT.
Q. YET ALAN LI WAS CONSIDERED QUINTARA'S EMPLOYEE; RIGHT?
A. ALAN IS A RUIFENG EMPLOYEE. THAT'S THE LAW IS THAT RUIFENG
HAS TO PAY ITS EMPLOYEE.
Q. SO ALAN LI WAS RUIFENG'S EMPLOYEE?
A. YES, BECAUSE HE GET PAID FROM RUIFENG.
Q. YET ALAN LI HAD ALAN@QUINTARABIO.COM, AND YOU WORKED
WITH ALAN LI ON THE CUSTOMER LIST; RIGHT?
A. SO THAT'S PART OF THE COOPERATION, YOU WORK TOGETHER IN A
PROJECT, AND THEN YOU GET TO ACCESS, THE SAME PEOPLE HAVE
ACCESS TO THE SAME THE PROJECT. THE PROJECT ITSELF, YOU NEED TO
HAVE PERMISSION TO ACCESS SO YOU CAN COLLABORATE."

The requested amount is extremely reasonable [i] given the caliber of the

biotechnology DTSA trade secret litigation; the multiple parties involved; the DTSA

law firm, Buchalter involved with alleged prior trade secret attorney, Dylan Wiseman (this only incurred over $2.70 million of attorneys' fees); the number of experts; the translator; the federal court reporter; as well as the number of sleepless nights, undersigned counsel had to not only prepare the witnesses for trial, but also to sift, read and makes notes of each deposition, discovery, and e-mail produced. This included calling witnesses who were not even at trial such as Henry Hu, Alex Wong, MaryEllen Sebold, and Haystack ID Rene Novoa. Obviously, Quintara and are attorneys are making one more **conclusory allegation** that it was 7.70 hours per day. No. It was ten (10) hours one day; fourteen (14) hours another day; and, then even twenty (20) hours on several pre-trial and trial days. Such a work pattern for undersigned defense continued for months, weeks, and days. The days leading upto trial Mr. Gangyou Wang, Mr. Alan Li and the translator met with undersigned counsel (at her insistence) for over ten (10) hours per day – each of the litigants and counsel preparing around the clock for the trial. Quintara and its attorneys think the questions that undersigned counsel was asking came out of thin air without strategizing, and without reading case-law. Again, no, it came with undersigned counsel's planning and preparation for the afore-captioned case/DTSA, as well as reading judicial DTSA guidance, blogs, and even finding Dylan Wiseman's one article on trade secrets. The undersigned counsel's bill comes with a declaration (amended) of undersigned counsel, as well as with an administrative motion of the prior attorney with its bill attached. See also *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.,* No. 4:14-MD-2541-CW, 2017 WL 6040065,

at *9 (N.D. Cal. Dec. 6, 2017) (approving rates "within the range of $200 to $1080 charged by attorneys in California in 2015"); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (approving rates between $275 and $1,200 per hour). Thus, the burden is met.

*Very sadly*, for such an experienced attorney and a team of four competent attorneys, Quintara and its attorneys rely on CUTSA, and the California Code. **It, however, does not apply in this case**. DTSA has a federal code, and the federal statute applies. The standard for DTSA was codified in the year 2016. *See Defend Trade Secrets Act of 2016*, Pub. L. No. 114-153, § 2(e), 130 Stat. 376, 381 -82 (May 11, 2016). Only where the DTSA falls short is when the CUTSA comes in to fill-in-the-gaps. Quintara fails here, too. For example, California *Civil Code* Section 3426.4 on pg. 9 of the Qunitara Opposition does **not** apply. That is **not** the standard for DTSA. In the same vein, "See Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 95 Cal. 19 App. 4th 1249, 1261 (2002)" on the same page of the Quintara Opposition does not apply either. Even when the CUTSA and the DTSA overlap substantially in almost identical ways and are similar, the CUTSA deviates from the DTSA in very nuanced ways. In this case, the CUTSA was not pled by Quintara and its attorneys  –  thus, it does not apply no matter what degree of similarity there is. Thus, Quintara and its attorneys' reliance on CUTSA is flawed in this specific case. The court must determine attorneys' fees only under the DTSA legal standard – no matter how tempting it is for the court to go to

CUTSA to explain and justify its reasoning even if the same test is applied in both statutes.

At trial, Quintara and its attorneys failed in numerous ways in proving any kind of DTSA claim. Not just ownership.

*First*, Quintara failed to show protected customer secrets.

*Second*, Quintara and its attorneys failed to show reasonable measures to protect those customer-secrets. *Zhao Cross by Ms. Kamath, Vol. 5,* p. 735, ln. 1-4,

"ON THIS DATABASE, IF YOU WENT ON TO THE SCREEN AND LOOKED AT IT, IS THERE ANY PLACE IN THE ENTIRE DATABASE THAT HAS THE WORD "CONFIDENTIAL"?
THE WITNESS: NO.

ln. 9-24,

"Q. IN THE TITLE -- AND YOU CAN LOOK AT EXHIBIT 313 AS AN EXAMPLE -- ON THE TITLE WHERE IT SAYS DECEMBER-FEBRUARY 2020 CUSTOMER LIST, HAVE YOU PLACED WORDS SUCH AS "CONFIDENTIAL" AND/OR "PRIVATE INFORMATION" IN YOUR SQL DATABASE FROM 2015 UNTIL THE END OF 2019?
A. ON THIS DOCUMENT THERE'S NO CONFIDENTIAL WORDS ON IT.
Q. OKAY. AND ANYWHERE WITHIN THIS PARTICULAR DOCUMENT, 313, HAVE YOU MARKED IT AS CONFIDENTIAL AND/OR PRIVATE FROM DECEMBER 2015 TO END OF 2019, DECEMBER?
A. SO YOU'RE ASKING WHETHER I MARKED THIS DOCUMENT AS CONFIDENTIAL BETWEEN A TIME PERIOD?
Q. YES.
A. AND WHETHER I HAVE THE KEY WORDS OF CONFIDENTIAL ON THIS DOCUMENT?
Q. CONFIDENTIAL AND/OR PRIVATE?
A. NO."

*Third*, Quintara and its attorneys failed to show whether the customer list would be inevitably disclosed. *Zhao Cross by Ms. Kamath, Vol. 5,* Pg. 737, ln. 13-21,

"THE WITNESS: SHE'S ASKING ME WHETHER SOMEONE CAN READ THIS DOCUMENT. IS THAT THE QUESTION? ANYONE COULD HAVE READ THIS DOCUMENT.
BY MS. KAMATH: Q. ANYONE COULD HAVE READ THE DOCUMENT. OKAY. AND THEN ONLY TO MODIFY AND/OR EDIT THIS DOCUMENT THE EMPLOYEES OF RUIFENG AND/OR QUINTARA WOULD HAVE HAD TO CLICK ON ENABLE EDITING AND THEN EDIT THE DOCUMENT; RIGHT?
A. YES, THAT'S WHAT I SAY."

*Fourth*, Quintara and its attorneys failed to identify its alleged "trade secrets". There was constant confusion from Quintara and its attorneys whether it was a December 2019-February 2020 customer excel spreadsheet, and/or whether it was some kind of SQL database. Quintara Exhibits 311, 313, 316, and/or 317. Funnily, neither the spreadsheet, nor the SQL database was protected with reasonable measures by Quintara and/or its agents.

*Fifth*, Quintara and its attorneys did not establish that any type of NDA, privacy policy, and/or confidentiality agreement existed that Gangyou Wang and Alan Li had signed and executed at any time from the years 2013-2019. Even between Ruifeng, and Quintara there was no NDA. [*Vol.* 2, pg. 352; ln. 23-25- pg. 353: ln. 1-2, *Shan Cross by Ms. Kamath*,

"YOUR ANSWER ON PAGE 164, LINE 23 IS, "I DON'T REMEMBER WE HAVE ANY DOCUMENT PREVENT RUIFENG FROM COMPETING WITH QUINTARA." THAT IS YOUR ANSWER. DO YOU STAND BY THAT STATEMENT? A. YES.]

*Sixth*, and ultimately, the jury wisely decided that the entire matter turned on the issue of "ownership". That Quintara and its attorneys failed to prove with a preponderance of the evidence that Quintara allegedly owned the alleged and

enforceable trade secret. [W]here [an] employer has expended time and effort identifying customers with particular needs or characteristics," such information is a trade secret. *Morlife, Inc. v. Perry,* 56 Cal.App.4th 1514, 1521 (1997). However, Quintara and its attorney failed to establish who was the "employer" *Morlife, supra* based on the W2s produced of salary payments, as well as the testimonial evidence of Sue and Richard's admissions that Gangyou Wang and Ruifeng paid each of their salaries. *Zhao Cross by Ms. Kamath*, *Vol. 3,* pg. 693, ln. 5-7:

> "FROM JANUARY 2014 TO DECEMBER 2019, SEVERAL EMPLOYEES OF QUINTARA WERE UNDER RUIFENG'S W2; RIGHT? A. THAT IS CORRECT."

*Seventh*, and conveniently, Quintara and its attorneys, after three years of litigation in bad-faith and with ill-will dropped the "vendor database" alleged trade secret at the final pre-trial conference on June 28, 2023, because Quintara and its attorneys knew, and/or should have known that there was no trade secret there either.

*Eighth*, Quintara and its attorneys did not describe with "sufficient particularity" the alleged trade secret, and/or to permit the defendant "to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG,* No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted). Quintara and its attorneys - whether it was the direct of Jon Berryhill, and/or the questions related to the excel spreadsheet from December 2019-February 2020 – were vague, ambiguous, and constantly conflating the several isolated alleged customer secrets. "[Allegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally may qualify as

protectable trade  secrets are insufficient to state a claim." *Cisco Sys., Inc. v. Chung*, 462 F.Supp.3d 1024, 1048 (N.D. Cal. 2020) (internal quotation marks and quotation omitted) (emphasis in original).

Other courts have decided,

> "[a]fter surveying several cases, the Honorable Phyllis Hamilton identified the following allegations as insufficiently specific to allege a trade secret:
> • Allegations of "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements." Vendavo, 2018 WL 1456697, at *3-4.
> • Allegations of "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers." Space Data Corp., 2017 WL 5013363, at *2.
> • Allegations of "marketing strategy, product composition, packaging and manufacturing logistics," Five Star Gourmet Foods, Inc. v. Fresh Express, Inc., No. 19-cv-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020).
> Cisco, 462 F.Supp.3d at 1048." *Cisco, supra.*

*Ninth*, Defendants demonstrated during cross that the alleged customer list was readily ascertainable, and publicly available on search engines such as Google and public websites. *United States v. Chung*, 659 F.3d 815, 825 (9th Cir. 2011).

*Tenth*, Defendants demonstrated that the alleged customer list was not obtained and acquired via improper means. *Arthur J. Gallagher & Co. v. Tarantino*, 498 F.Supp.3d 1155, 1172 (N.D. Cal. 2020). It was accessible by any employee, and/or any individual who could sit at the computer at any time from the years 2013-2019. Quintara's witness, Alex Wong, testified as to this open lab policy during cross.

In terms of **objective bad-faith** (as elaborated in the Motion), throughout the litigation, Quintara and its attorneys have demonstrated bad-faith. Even until the final pre-trial conference, Quintara's lead attorney, James Li was confused whether he wanted to include the "vendor database" as a trade secret. The Court admonished James Li that this is a "trick" and James Li would later tell the court that he did not have "enough time." Prior to this, James Li was trying to find DTSA claims – nine of which were struck by the Court. Even the fraud claim was dismissed. Why James Li could not honestly admit that there was no DTSA claim instead of belaboring the unfounded and frivolous immigration sham issue during settlement conference and later at trial is completely in objective bad-faith. The amount of stress, anxiety and embarrassment that Gangyou Wang had to face because of this falsified "immigration sham" issue that Quintara and its attorney, specifically James Li brought up is willful, malicious and in objective bad-faith. The constant admonishment by the Court related to reporting immigration fraud to the INS and immigration authorities caused great distress to all defendants. Richard even agreed at trial that he is an intelligent individual and he signed the collaboration agreement knowingly. Yet, for Quintara and its attorney to come to the court trial at the federal DTSA, and blatantly misrepresent that the agreement was only a sham puts the objective and subjective bad-faith on Quintara, Richard and Sue. Then, for the attorneys not to dismiss the case when each of them learned of this misrepresentation, and had the evidentiary W-2 tax documents shows objective and subjective bad-faith.

In terms of subjective bad-faith, (as elaborated in the Motion), clearly, James Li relies on the settlement conference error of the court[ii]. Then, James Li submits a perjured declaration *re* a disturbing falsified COVID-19 non-existent illness – just for James Li to see what he can get away with the court and mostly white people – and to demonstrate how he can play the court. He did so successfully for three years with his falsified DTSA and immigration sham concoction. On pg. 22 of the Opposition, Quintara and its attorneys concede they acted in bad-faith. Also, as Quintara was losing during trial, Daniel Peterson knowingly trying to slam the swinging door in the courtroom onto undersigned counsel while poor Alan Li held it in the knick of time for it not to hurt undersigned counsel. At the start of the settlement conference, in the hallway seated alone, James Li acted extremely rude and curt when undersigned counsel took the initiative to introduce herself as opposing counsel.

Accordingly, Defendants as the prevailing party have proven their objective and subjective bad-faith with specific evidence for attorneys' fees incurred in the DTSA litigation - not only during trial, and but also pre-trial, and pre-litigation from Quintara and its attorneys' oppressive, wanton and willfully malicious conduct in harassing Ruifeng, Gangyou Wang, Alan Li, and RF Biotech LLC.

**LAW OFFICE OF RESHMA KAMATH**

**DATED:  August 17, 2023**        */S/ Reshma Kamath*

Reshma Kamath,
Counsel for Defendants RUIFENG BIZTECH
INC.; GANGYOU WANG; ALAN LI; and, RF
BIOTECH LLC

## CERTIFICATE OF SERVICE

F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260.

I am employed in, the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business/mailing address is: 700 El Camino Real, Suite 120, #1084, Menlo Park, California 94025, United States; and, e-mail address is reshmakamath2021@gmail.com for electronic-service. On August 17, 2023, I sent the following documents via the below method of service. SEE ATTACHED SERVICE LIST.

///

**REPLY IN SUPPORT OF THE PREVAILING PARTIES' NOTICE OF MOTION AND MOTION/REQUEST FOR REASONABLE ATTORNEYS' FEES PURSUANT TO DEFEND TRADE SECRETS ACT [DTSA] PURSUANT TO 18 U.S.C. § 1836 *ET SEQ.*; REQUEST FOR COSTS INCURRED UNDER FED. *RUL. CIV. PROC.* 54 *ET SEQ.* DURING THE COURSE OF DEFEND TRADE SECRETS ACT LITIGATION; CERTIFICATE OF SERVICE.**

///

Via **ELECTRONIC SERVICE**: In electronically transmitting courtesy copies of the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list per the electronic service agreement between the parties' counsel. To my knowledge, the transmission was reported as complete and without error. [Notice of Electronic-Service pursuant to California Code of Civil Procedure § 1010.6.]

I declare under penalty of perjury of the laws of the State of California, and the laws of the United States of America that the foregoing is true and correct. Executed on August 17, 2023.

*Sincerely*,
*/S/ Reshma Kamath*
Reshma Kamath

**SERVICE LIST**
Daniel Robert Peterson Email: petersond@lilaw.us
Richard D Lambert Email: lambertr@lilaw.us
Tamara Rider Email: ridert@lilaw.us
J. James Li LiLaw, Inc. 1905 Hamilton Avenue Suite 200 San Jose, CA 95125
650-521-5956 Fax: 650-521-5955 Email: lij@lilaw.us
ATTORNEYS FOR PLAINTIFF QUINTARA BIOSCIENCES, INC.
Ting Jiang, LiLaw, Inc./Quintara's Legal assistant E.: jiangt@lilaw.us
Evelyn Rojase, Tamara Rider's assistant, E.: rojase@lilaw.us

i   "The Court determines the reasonableness of attorneys' fees by calculating a "lodestar" and "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *McCown v. City of Fontana Fire Dep't*, 565 F.3d 1097, 1102 (9th Cir. 2009). The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983) (citations and quotation marks omitted). However, in calculating the lodestar, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434). Although district judges "need not, and should not, become green-eyeshade accountants," *Fox v. Vice*, 563 U.S. 826, 838 (2011), the court should provide some indication of how it arrived at its conclusions, *see Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("When the district court makes its award, it must explain how it came up with the amount."). This Court's local rules elaborate on factors the Court shall consider:

In fixing an award of attorneys' fees in those actions in which such an award is appropriate, the Court will consider the following criteria:

(1) the time and labor required of the attorney(s);
(2) the novelty and difficulty of the questions presented;
(3) the skill required to perform the legal service properly;
(4) the preclusion of other employment by the attorney(s) because of the acceptance of the action;
(5) the customary fee charged in matters of the type involved;
(6) whether the fee contracted between the attorney and the client is fixed or contingent;
(7) any time limitations imposed by the client or the circumstances;
(8) the amount of money, or the value of the rights involved, and the results obtained;
(9) the experience, reputation, and ability of the attorney(s);
(10) the "undesirability" of the action;
(11) the nature and length of the professional relationship between the attorney and the client;
(12) awards in similar actions; and
(13) such other matters as the Court may deem appropriate under the circumstances.
E. D. Cal. Local R. 293(c). On balance, the above factors favor the conclusion that Pharmaniaga's fee request is reasonable.
*E*HealthLine.com v. Pharmaniaga Berhad* (E.D. Cal., July 14, 2023, 2:18-cv-01069-MCE-EFB) [pp. 8-9]"

ii

**Rose Maher <Rose_Maher@cand.uscourts.gov>**

Wed, Nov 23, 2022, 9:22 PM

to chenc@lilaw.us, lij@lilaw.us, me

Hello Counsel:

I will schedule this Settlement Conference for 4/26/2023 at 10:00 a.m. by Zoom.

REPLY

RESHMA KAMATH

I will issue and Order scheduling it.

Rose, Judge Hixson's CRD

Rose Maher, Courtroom Deputy to
The Honorable Thomas S. Hixson
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Phone: 415-522-4708
Email: Rose_Maher@cand.uscourts.gov

**R**

**Rose Maher <Rose_Maher@cand.uscourts.gov>**                    Wed, Nov 23, 2022,
                                                                                                     9:35 PM
to chenc@lilaw.us, lij@lilaw.us, me

Counsel:

Attached is the Settlement Conference Order scheduling it for 4/26/2023 at 10:00 a.m., by
Zoom

Thank you, Rose

Rose Maher, Courtroom Deputy to
The Honorable Thomas S. Hixson
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Phone: 415-522-4708
Email: Rose_Maher@cand.uscourts.gov

**From:** chenc@lilaw.us <chenc@lilaw.us>
**Sent:** Friday, November 18, 2022 6:18 PM
**To:** Rose Maher <Rose_Maher@cand.uscourts.gov>
**Cc:** lij@lilaw.us; Reshma Kamath <reshmakamath2021@gmail.com>
**Subject:** 3:20-cv-04808-WHA Quintara Biosciences, Inc. v. Ruifeng Biztech Inc. et al.
Plaintiff's report re availability for settlement conference

CAUTION - EXTERNAL:

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**One attachment** • Scanned by Gmail

3:20-cv-04808-WHA Quintara Biosciences, Inc. v. Ruifeng Biztech Inc. et al.

**Reshma Kamath <reshmakamath2021@gmail.com>**                   Tue, Apr 18,
                                                                      5:58 PM
to TSHSettlement

Dear Clerk:

Please see attached:

**DEFENSE SETTLEMENT CONFERENCE STATEMENT**

Sincerely,

*Reshma Kamath*

# Law Office of Reshma Kamath

Counselor-at-Law | 2022 Elite Lawyer | Lawyers of Distinction
Address:   Law Office of Reshma Kamath
700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025
Phone:     650 257 0719 | E-mail:   reshmakamath2021@gmail.com |
LinkedIn: www.linkedin.com/in/globalcitizenwithjd/ |
Website:   www.myinstalawyer.com |

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. Thank you for your cooperation. To ensure compliance with Internal Revenue Service Circular 230, we inform you that any tax advice contained in this communication is

REPLY
🏛 RESHMA KAMATH

not intended or written to be used, and cannot be used for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

**One attachment** • Scanned by Gmail

## MAGISTRATE JUDGE THOMAS S. HIXSON

San Francisco Courthouse, Courtroom E —15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Log-in Information

### A.  Non-Public Hearings [Settlement Conferences]

**The court will use Zoom Meetings (as opposed to Zoom Webinars) for settlement conferences and other non-public hearings.  To join a meeting, click on the link below.  You will initially enter a "waiting room" and will be admitted into the meeting by court staff.**
https://cand-uscourts.zoomgov.com/j/1603176589?pwd=MHBxczJZbWdHWUlDaUhSUFVhZGNIdz09
Meeting ID: 160 317 6589
Password: 260711

(1)  Join a Meeting by Phone or Other Connection

Phone: (669) 254 5252
International numbers: https://cand-uscourts.zoomgov.com/u/aRANolBV0
H.323: 161.199.138.10 (US West) or 161.199.136.10 (US East)
SIP: 1603176589@sip.zoomgov.com

Sincerely,

Reshma Kamath

Law Office of Reshma Kamath

RESHMA KAM

**Reshma Kamath <reshmakamath2021@gmail.com>**                          Wed, Apr 26,
                                                                          9:06 AM
to Rose

Ms. Maher,

I will be appearing via the Zoom link for settlement conferences. The clients will be there in-person. Please notify the Magistrate Judge Hixson. Thank you.

REPLY

RESHMA KAMATH

21

Sincerely,

*Reshma Kamath*

# Law Office of Reshma Kamath

Counselor-at-Law | 2022 Elite Lawyer | Lawyers of Distinction
Address:   Law Office of Reshma Kamath
700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025
Phone:     650 257 0719 |  E-mail:     reshmakamath2021@gmail.com  |
LinkedIn:  www.linkedin.com/in/globalcitizenwithjd/  |
Website:   www.myinstalawyer.com |




**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. Thank you for your cooperation. To ensure compliance with Internal Revenue Service Circular 230, we inform you that any tax advice contained in this communication is not intended or written to be used, and cannot be used for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

**Reshma Kamath <reshmakamath2021@gmail.com>**
Wed, Apr 26, 10:05 AM

to Rose

Ms. Maher,

I have logged in via Zoom. Please allow me to appear for non-public hearing for settlement. Quintara v. Ruifeng matter.

Sincerely,

Reshma Kamath

Law Office of Reshma Kamath

REPLY
RESHMA KAMATH



**Reshma Kamath <reshmakamath2021@gmail.com>**

Wed, Apr 26,
11:21 AM

to Rose

## Please bring this to the Judge's attention.

Sincerely,

*Reshma Kamath*

# Law Office of Reshma Kamath

Counselor-at-Law | 2022 Elite Lawyer | Lawyers of Distinction
Address:   Law Office of Reshma Kamath
700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025
Phone:     650 257 0719  |  E-mail:     reshmakamath2021@gmail.com  |
LinkedIn: www.linkedin.com/in/globalcitizenwithjd/  |
Website:   www.myinstalawyer.com |



**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. Thank you for your cooperation. To ensure compliance with Internal Revenue Service Circular 230, we inform you that any tax advice contained in this communication is not intended or written to be used, and cannot be used for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

**One attachment** • Scanned by Gmail

REPLY
RESHMA KAMATH