**LAW OFFICE OF RESHMA KAMATH**

Reshma Kamath, Cal. Bar No. 333800

700 El Camino Real, Suite 120, #1084,

Menlo Park, California 94025, United States

Phone-number: 650 257 0719

E-mail address: reshmakamath2021@gmail.com

COUNSEL FOR DEFENDANTS

RUIFENG BIZTECH INC.; GANGYOU WANG;

ALAN LI; AND, RF BIOTECH LLC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RUIFENG BIZTECH INC., a California corporation, GANGYOU WANG, an individual, ALEX WONG, an individual, ALAN LI, an individual, RUI SHAO, an individual, and RF BIOTECH LLC, a California limited liability company,<br><br>Defendants. | Case No.:  3:20-cv-04808-WHA<br><br>*[Assigned to presiding Judge Honorable William Alsup]*<br><br>**RESHMA KAMATH'S NOTICE OF LAWSUIT** |

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD, HEREIN:*

**PLEASE TAKE NOTICE** the attached lawsuit is about to be filed shortly.

**LAW OFFICE OF RESHMA KAMATH**

**DATED:  September 24, 2023**

*/S/ Reshma Kamath*

Reshma Kamath,
Counsel for Defendants RUIFENG BIZTECH
INC.; GANGYOU WANG; ALAN LI; and, RF
BIOTECH LLC

# CERTIFICATE OF SERVICE
F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260.

I am employed in, the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business/mailing address is: 700 El Camino Real, Suite 120, #1084, Menlo Park, California 94025, United States; and, e-mail address is reshmakamath2021@gmail.com for electronic-service. On September 24, 2023, I sent the following documents via the below method of service. SEE ATTACHED SERVICE LIST.

///

**RESHMA KAMATH'S NOTICE OF LAWSUIT**

///

**RESHMA KAMATH'S NOTICE OF LAWSUIT AGAINST JUDGE WILLIAM ALSUP, THOMAS HIXSON, JAMES LI, DYLAN WISEMAN, BUCHALTER, AND DOES 1-10, INCLUSIVE**

///

**CERTIFICATE OF SERVICE.**

///

Via **ELECTRONIC SERVICE**: In electronically transmitting courtesy copies of the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list per the electronic service agreement between the parties' counsel. To my knowledge, the transmission was reported as complete and without error. [Notice of Electronic-Service pursuant to California Code of Civil Procedure § 1010.6.]

///

I declare under penalty of perjury of the laws of the State of California, and the laws of the United States of America that the foregoing is true and correct. Executed on September 24, 2023.

*Sincerely*,

*/S/ Reshma Kamath*
Reshma Kamath

Case No. 3:20-cv-04808-WHA
NOTICE OF LAWSUIT
RESHMA KAMATH

**SERVICE LIST**

Daniel Robert Peterson
E-mail: petersond@lilaw.us

Richard D Lambert
E-mail: lambertr@lilaw.us

Tamara Rider
E-mail: ridert@lilaw.us

J. James Li
LiLaw, Inc.
1905 Hamilton Avenue Suite 200 San Jose, CA 95125
650-521-5956 Fax: 650-521-5955
E-mail: lij@lilaw.us

ATTORNEYS FOR PLAINTIFF QUINTARA BIOSCIENCES, INC.

Ting Jiang, LiLaw, Inc./Quintara's Legal assistant
E-mail: jiangt@lilaw.us

Dylan Wiseman/Buchalter APC
E-mail: dwiseman@buchalter.com

FORMER ATTORNEY FOR DEFENDANTS

NOTICE OF LAWSUIT
RESHMA KAMATH

RESHMA KAMATH, PLAINTIFF
700 El Camino Real, Suite 120, #1084,
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
*in propria persona*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| RESHMA KAMATH, | Case No.: _____ [TBA] |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. INJUNCTIVE RELIEF;<br>2. DEFAMATION – SLANDER; |
| WILLIAM ALSUP; THOMAS HIXSON; JAMES LI; DYLAN WISEMAN; BUCHALTER, APC; AND, DOES 1-10, INCLUSIVE, | 3. RACIAL DISCRIMINATION UNDER 42 U.S.C. SECTION 1983;<br>4. GENDER DISCRIMINATION UNDER 42 U.S.C. SECTION 1983;<br>5. DECLARATORY RELIEF; AND,<br>6. DEFAMATION – LIBEL; |
| Defendants. | DEMAND FOR JURY TRIAL |

1

COMPLAINT

INTRODUCTION

1.      RESHMA KAMATH, [herein, "PLAINTIFF" and/or "PLAINTIFF RESHMA KAMATH"], who WON her first JURY TRIAL with an EIGHT-PERSON UNANIMOUS JURY VERDICT, has SUED DEFENDANT WILLIAM ALSUP; DEFENDANT THOMAS HIXSON; OPPOSING ATTORNEY, JAMES LI; FORMER ATTORNEY, DYLAN WISEMAN; AND, BUCHALTER. [collectively, herein, DEFENDANTS] for RACIAL MISOGYNY in them displaying:

(i) ANTI-INDIAN sentiments;

(ii) HINDU PHOBIA; and,

(iii) ANTI-IMMIGRANT sentiments towards INDIAN WOMAN, solitarily, *inter alia*.

It is completely possible, and plausible that individuals, who have worked hard in favor of certain racial, and/or ethnic groups, such as African-Americans and Native-Americans, such as DEFENDANT WILLIAM ALSUP harbor negative sentiments against other racial and/or ethnic groups, such as Indians, Middle-Easterners, and related; and, particularly, to immigrant women from such racial, and/or ethnic groups.

2.      Particularly, DEFENDANT WILLIAM ALSUP for bringing his JIM CROW SEGREGATIONIST/WHITE HOMOGENOUS notions against PLAINTIFF KAMATH; as well as, JUDGE THOMAS HIXSON together with JUDGE WILLIAM ALSUP bringing their hillbilly WHITE AMERICA sentiments in using law as a PRE-TEXT to promote DISCRIMINATION against newer minorities, INDIANS/INDIAN-AMERICANS, in the history of the UNITED STATES OF AMERICA.

2.A.    Whether and/or not, DEFENDANTS withdraw any motions they filed, any orders, and/or deem any moot/ without jurisdiction, this COMPLAINT holds muster and merit based on the incidents that have occurred herein.

///

2

## PARTIES

3.      RESHMA KAMATH is a lawyer licensed in the STATE OF CALIFORNIA. For the past

three years, RESHMA KAMATH has resided in the STATE OF ARIZONA in the COUNTY OF

MOHAVE, ARIZONA.

4.      RESHMA KAMATH operates with a mail-box address in MENLO PARK, CALIFORNIA

for her work as a lawyer in CALIFORNIA.

5.      DEFENDANT WILLIAM ALSUP is an Article III standing judicial officer in the STATE OF

CALIFORNIA who is around seventy-two years of age. Per information and belief, DEFENDANT

WILLIAM ALSUP was raised in a monotheistic Christian religion, and does not speak any other

languages fluently except English. It is unclear whether he has ever lived in any other country, except

the United States of America.

6.      DEFENDANT THOMAS HIXSON is a magistrate judicial officer in the STATE OF

CALIFORNIA.

7.      DEFENDANT JAMES LI is an attorney in SAN JOSE, CALIFORNIA.

8.      DEFENDANT DYLAN WISEMAN is an attorney in CALIFORNIA.

9.      DEFENDANT BUCHALTER is a law firm, where DEFENDANT WISEMAN is hired as an

attorney.

10.     PLAINTIFF presently remains unaware of the true names or capacities of Defendants named

herein as DOES 1-10, inclusive, and PLAINTIFF will seek leave of Court to allege their true names

and capacities after the same have been ascertained.

11.     DEFENDANTS DOES 1-10, inclusive, are sued under fictitious names. PLAINTIFF is

informed and believes, and on that basis alleges, that each of the defendants sued under fictitious

names is in some manner responsible for the wrongs and damages alleged below, in so acting was

functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the

actions mentioned below was acting within the course and scope of his or her authority as such agent,

servant, partner, and employee, with the permission and consent of the co-defendants. The named

defendants and DOE defendants are sometimes hereafter referred to, collectively and/or individually,

as "defendants."

12.     PLAINTIFF remains informed and believes and thereon alleges that each of the Defendants

herein, and are in some manner legally responsible for the acts and omissions alleged herein and

actually and legally caused and contributed to various injuries and damages alleged herein.

PLAINTIFF remains informed and believes and thereon alleges that at all times herein mentioned,

each of the Defendants was the agent, servant, partner, joint venturer, and/or employee of each of the

other Cross-Defendants, and in doing the things hereinafter alleged, were acting within the course

and scope of said agency and/or employment, and with the permission.

13.     ANY AND ALL DEFENDANTS were responsible for the events and damages alleged

herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant

times, one or more of the defendants was the agent or employee, and/or acted under the control or

supervision, of one or more of the remaining cross-defendants and, in committing the acts alleged,

acted within the course and scope of such agency and employment and/or is or are otherwise liable

for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest

between or among two or more of the defendants such that any individuality and separateness

between or among those defendants has ceased, and defendants are the alter egos of one another.

14.     Defendants exercised domination and control over one another to such an extent that any

individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.

Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate

privilege and would sanction fraud and promote injustice.

15.     All actions of all defendants were taken by employees, supervisors, executives, officers, and

directors during employment with all defendants, were taken on behalf of all defendants, and were

engaged in, authorized, ratified, and approved of by all other defendants.

4

16.     Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

FACTUAL BACKGROUND

17.     RESHMA KAMATH had not made any references to INDIA, her ethnic, and/or racial background in any part of the case for which she was retained, and/or prior to undersigned date where RESHMA KAMATH put a NOTICE OF LAWSUIT to DEFENDANTS. PLAINTIFF RESHMA KAMATH did not forget this fact, because nothing about the lawsuit had anything to do with "INDIA" as DEFENDANT ALSUP had stated.

18.     In May 1999, RESHMA KAMATH moved to the UNITED STATES OF AMERICA from INDIA at the age of fourteen years.

19.     In India, RESHMA KAMATH placed the top of her class having studied in a top-rated convent girl's school.

20.     In India, RESHMA KAMATH was part of her volleyball and table-tennis team even captaining it.

21.     In India, RESHMA KAMATH won many awards for her education as well as extra-curricular activities. In India, RESHMA KAMATH helped handicapped and disabled individuals, and had participated in tree-planting initiatives.

22.     After moving to the United States, RESHMA KAMATH continued to excel in her school work and sports. RESHMA KAMATH was part of JUNIOR VARSITY and VARSITY high-school sports, such as tennis and badminton. RESHMA KAMATH has also practiced martial arts, and kick-boxing. All in all, RESHMA KAMATH is highly professional, global, and has made people from literally all walks of life on a personal front without any sheltered life.

23.     Graduating *SUMMA CUM LAUDE* with a dual degree in psychology and global studies, as well as studying abroad for one year in post-apartheid SOUTH AFRICA in 2007, RESHMA KAMATH studied family law, international law, corporate law and isiZULU. This was part of a

5

GOLDEN KEY INTERNATIONAL HONOR SOCIETY scholarship, as well as other scholarships that RESHMA KAMATH had won during her collegiate years.

24.     While in college, RESHMA KAMATH was part of AMERICORPS working for Chinese and Vietnamese immigrants/senior citizens, as well as diversity initiatives as advocate for ASIAN/ASIAN PACIFIC ISLANDER groups on campus.

24.     RESHMA KAMATH was part of the residential life programs, and participated in Indian cultural dance, debate and volunteer activities on campus.

RESHMA KAMATH was even chosen as a STUDENT LEADER to go to MEXICO to participate in an LOS NINOS program helping local women build sustainable initiatives.

25.     These paragraphs are downplaying the effort, the number of activities, work and studying that RESHMA KAMATH did.

26.     RESHMA KAMATH moved to SOUTH KOREA – supposedly for one year to teach English, and thereafter, being interested in human rights and international development [having contemplated Peace Corps] joined the best university in SOUTH KOREA called SEOUL NATIONAL UNIVERSITY for a graduate degree in International Studies with International Co-operation. There too RESHMA KAMATH won several awards, participated in a plethora of activities, and graduated HIGH HONORS.

27.     RESHMA KAMATH was also selected to be a part of an environmental initiative to attend a graduate-program in CAMBODIA, as well as selected graduate leaders in JAPAN.

28.     After attending law school, which was quite reflecting of the legal profession and California courts, RESHMA KAMATH who always wanted to become a lawyer finally decided to pursue her endeavors and get licensed.

29.     In January-March 2021, RESHMA KAMATH became a lawyer licensed in the STATE OF CALIFORNIA.

6

30.     In 2021, RESHMA KAMATH took her OATH and was SWORN in as a lawyer in YUMA, ARIZONA. RESHMA KAMATH had also taken her STATE BAR EXAM while she was residing in YUMA, ARIZONA.

31.     In 2021, RESHMA KAMATH decided to be a sole proprietor and thereafter, worked under d/b/a LAW OFFICE OF RESHMA KAMATH.

32.     In 2021, RESHMA KAMATH was retained in a case where the above-named DEFENDANTS were participants.

33.     In 2023, RESHMA KAMATH appeared for the JURY TRIAL, and won a UNANIMOUS JURY VERDICT in an eight-person jury comprised of three African-American jury members, and seven women jurors who saw through the façade of the opposing attorney, DEFENDANT JAMES LI, while the jury made an evidentiary decision about the case in favor of clients of PLAINTIFF RESHMA KAMATH.

*DEFENDANT WILLIAM ALSUP*

34.     In 2021, there was a telephonic-call with DEFENDANT WILLIAM ALSUP. There he threatened RESHMA KAMATH repeatedly, and that he would report her to the STATE BAR. It was quite disturbing, because there was no basis for it.

35.     In 2023, at the final pre-trial hearing, DEFENDANT WILLIAM ALSUP made a comment about "INDIA."

36.     Nothing on- and off-the-record had anything to do with "INDIA." The comment came out of nowhere. Nothing in the entire court docket, and/or conversations had a thing to do with "INDIA."

37.     In 2023, after the final pre-trial hearing, while DEFENDANT ALSUP was walking into his chambers, DEFENDANT WILLIAM ALSUP looked at Plaintiff RESHMA KAMATH while she was getting water from a dispenser placed in the middle of the room, and looked at her backside making a disgusted facial expression.

7

38.     In 2023, at the trial, in the presence of DEFENDANT WILLIAM ALSUP, Plaintiff RESHMA KAMATH was assaulted where an interpreter touched her shoulder/neck area in a massaging motion, and then touched her buttock area with his hand. This was without RESHMA KAMATH's consent, and the interpreter had no friendly relationship with RESHMA KAMATH whatsoever.

39.     In fact, during several trial practice and coaching session, the interpreter was demeaning and condescending to RESHMA KAMATH. Moreover, RESHMA KAMATH does not like any unknown stranger male touching of her body.

40.     In 2023, at the trial, DEFENDANT WILLIAM ALSUP took no action. He may have even ignored it.

41.     In 2023, at the trial, DEFENDANT WILLIAM ALSUP always was eager to protect the opposing white female attorney in the courtroom while walking to and from the podium to the table.

42.     That kind of courtesy and protective behavior was not afforded to Plaintiff RESHMA KAMATH.

43.     In 2023, at the trial, and thereafter, DEFENDANT WILLIAM ALSUP often made comments to his clerk, staff and to other judges about "fat" "kid" "young" "unprofessional" "dangerous" and related when referring to Plaintiff RESHMA KAMATH.

44.     In 2023, DEFENDANT WILLIAM ALSUP's IT technician made a comment, "Are you ready?" to Plaintiff RESHMA KAMATH when referring to a VGI cable after the trial had ended that day.

45.     Plaintiff RESHMA KAMATH has to deal with all these MICRO-AGGRESSIONS and even with this WIN a JURY TRIAL in the best interests of her clients.

46.     Now, DEFENDANT WILLIAM ALSUP is considering JAIL-TIME, and placing Plaintiff RESHMA KAMATH on a no-fly zone based on his racial misogynistic abuse.

It is undisputed that DEFENDANT WILLIAM ALSUP did not grow up with Indians in his STATE OF MISSISSIPPI upbringing in Jim Crow segregationist laws.

47.     It is undisputed that DEFENDANT WILLIAM ALSUP barely has had any interaction with Indians in his entire lifetime of seventy-two years.

48.     DEFENDANT WILLIAM ALSUP, is typical of white male homogeneity, that have one and/or two people of an ethnic background/race hired in a subservient role, and/or in a limited non-friendly role, then claim they're not racist, and/or discriminatory because of that limited to minimal interaction.

49.     This is no different that Jim Crow segregationist America where women of color were often in subservient roles.

50.     DEFENDANT WILLIAM ALSUP may have touted his own horn in his book, "Won Over." It is unclear how much of the stories in the book are true, and how much of it is fictitious. It could have been a ploy to get into Harvard, and/or become a judge.

51.     Just because DEFENDANT WILLIAM ALSUP knew how to robotically place answers on a scantron does not mean he knows how to deal with issues in the year 2023, with immigrant women from India, how to read members of the Asian/Asian-American community, women of color from Asian and Indian backgrounds, what Indian women have to undergo both within their Indian communities, and outside with White/non-White America.

52.     Just because DEFENDANT WILLIAM ALSUP helped an African-American male member does not mean he knows how to extend that to women of color from different racial and ethnic backgrounds.

53.     Moreover, the two Indians that DEFENDANT WILLIAM ALSUP may boast of [Bhavna Sharma/Vince Chhabria] are both from North-Indian communities in India – from West Eurasian backgrounds. Often such cultures support white/light-skinned notions such as fairness ads and bleaches.

54.     Plaintiff RESHMA KAMATH is South Indian. Particularly, PLAINTIFF RESHMA KAMATH, who is a non-beef-eating, SOUTH INDIAN immigrant woman, fluent in more than five

languages, who is the only counsel in her law firm, and according to White America, Hindu individuals maybe seen as poly-theistic [even when it is mono-theistic ].

55.     DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is not doing this to DEFENDANT JAMES LI while he is flying overseas for his personal reasons.

56.     Moreover, DEFENDANT WILLIAM ALSUP is contemplating increasing the sanctions of DEFENDANT HIXSON that went from a "potential $100" to over "$5,000" to over hundreds of thousands of dollars. All this based on DEFENDANT JAMES LI's insistence.

57.     DEFENDANT WILLIAM ALSUP may have granted many a motions/requests of women of color/immigrants – however, all in the purview of white and/or male attorneys and law firms. For example, DEFENDANT WILLIAM ALSUP may tout his own horn that he granted some summary judgment motion of an African-American female lawyer. The question becomes did he award her any money, and/or did he do this when she was a sole proprietor. No.

58.     DEFENDANT WILLIAM ALSUP has not granted attorneys' fees to any immigrant woman of color sole proprietor who had won the jury trial, and a motion for attorneys' fees was timely made. This shows racial and misogynistic abuse that judicial immunity does not protect.

59.     That kind of crippling of monetary wealth, and making wealth-based, monetary decisions only on the basis of skin color, racial/ethnic background, heritage, immigrant status, and related are not protected under judicial immunity and constitutional protections of the Eleventh Amendment. Judges should not be allowed to do whatever they want as judges to continue their on-going abuses to lone women. For example, ANITA HILL, a lone African-American woman was abused by a group of men, including our now President Joe Biden. This is now on-going to newer minorities in the United States of America for Indians.

60.     DEFENDANT WILLIAM ALSUP blindly awarded his entire attorneys' fees in further promotion of racial and misogynistic abuse.

61.     DEFENDANT WILLIAM ALSUP is using LAW AS A PRE-TEXT for RACIAL AND MISOGYNISTIC ABUSE continuing the same INVIDUOUS and SYSTEMIC RACISM AND DISCRIMINATION that he sought to allegedly prevent in his youthful years.

62.     DEFENDANT WILLIAM ALSUP has become the perpetrator that he purportedly stood up against in his Mississippi years.

63.     That Southern racism has creeped up and never left DEFENDANT WILLIAM ALSUP, who is not only a white male privileged individual whom no one bothers and everyone treats with utmost respect and concern, but he also comes from allegedly a household where his parents where non-divorced, he did not undergo any racial, physical, sexual abuse, and/or violence in any context of his life.

64.     DEFENDANT WILLIAM ALSUP is part of that white, male homogenous culture that individuals and lawyers such as PLAINTIFF RESHMA KAMATH are forced to appear before, and deal with each day to advocate for their clients.

65.     DEFENDANT WILLIAM ALSUP in his ivory pedagogy does not know from his bench the realities of people, and life in the year 2023.

66.     DEFENDANT WILLIAM ALSUP was gracious in his conduct at trial as though a king from his throne is gracious to peasants temporarily.

67.     DEFENDANT WILLIAM ALSUP may claim he has helped some Malaysian woman on a flight, and/or DACA minors. DEFENDANT WILLIAM ALSUP first of all does not know Asian people much – he has barely interacted with Asians, does not know Asian culture, differences amongst and between them, cannot read them in the courtroom.

68.     Whereas for DACA, DEFENDANT WILLIAM ALSUP is just promoting more illegal immigrants who're leaching off of hard-working Americans' tax-payer dollars and getting paid in cash.

11

69.      DEFENDANT WILLIAM ALSUP has Hindu phobia, and festers anti-Indian sentiments. This was harbored towards PLAINTIFF RESHMA KAMATH in DEFENDANT WILLIAM ALSUP's speech, conduct, and decisions.

70.      How is it possible an eight-person diverse jury rules in one way, and DEFENDANT WILLIAM ALSUP sitting on his throne-like bench has a completely different read on the situation. DEFENDANT WILLIAM ALSUP even falsified what was on the court docket at the end of trial saying there was a "motion for sanctions" when he white, female clerk, and a white, female lawyer from the opposing side stood before him.

71.      Even when several of the above incidents did not occur in the presence of the jury and have no basis on the substantive decision of the trial – except when PLAINTIFF RESHMA KAMATH was felt up [ it was away from the jury, there was a wall behind plaintiff that a video can prove with the CAMERA PROJECT ], DEFENDANT WILLIAM ALSUP is responsible for any and all of the actions, conduct and omissions that occur in his courtroom.

72.      There is an unspoken rule in California courts that is prevalent – when immigrant, non-White women are placed against White, and/or Male attorney, the judicial officers almost always favor the White and/or Male attorney.

73.      The White Female is the most coddled attorney for what it is worth getting a *carte blanche* [ no pun intended ] of *tabula rasa* decisions from judges such as DEFENDANT WILLIAM ALSUP. Other judicial officers who have displayed such racial and misogynistic abuse in favor of WHITE LAWYERS, include but are not limited to Judge Jeffrey White, and Judge Yvonne Gonzalez Rogers [ who is married to a Caucasian/White individual].

*DEFENDANT THOMAS HIXSON*

74.      In 2022, DEFENDANT THOMAS HIXSON made a grave error via his white female clerk, ROSE MAHER. While he had informed parties telephonically that the mandatory settlement conference in 2023 would be held in-person, his white female clerk repeatedly on the court-docket

and via electronic-mail notified counsel, including Plaintiff RESHMA KAMATH that the mandatory settlement conference in 2023 would be held remotely.

75.     In 2023, DEFENDANT THOMAS HIXSON on his webpage stated that mandatory settlement conference would all be held remotely. Nothing about that announcement on the webpage of DEFENDANT HIXSON had changed.

76.     In 2023, DEFENDANT THOMAS HIXSON never apologized for his white, female clerk's grave error both on the court docket, and via e-mail.

77.     When Plaintiff RESHMA KAMATH contacted the white female clerk, ROSE MAHER about sending the ZOOM appearance link, there was no response.

78.     Apparently, only a court-docket filing was made half a day prior about the mandatory settlement conference to be held in Courtroom E.

79.     Because of Plaintiff RESHMA KAMATH's setting on the ECF.CAND profile, that only court-docket filing was received the next day at 12:01 p.m. PT, i.e., the same day of the the mandatory settlement conference.

80.     In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON oggled at the breasts of RESHMA KAMATH.

81.     In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON had a bruised ego when RESHMA KAMATH continued to speak to her client, about the state case that ran concurrently with the federal case.

82.     DEFENDANT THOMAS HIXSON had insinuated comments of "slut" to PLAINTIFF RESHMA KAMATH.

83.     DEFENDANT THOMAS HIXSON was hell bent on settling the case, and forcing to settle the case even when he didn't want to.

84.     The bro-code of THOMAS HIXSON/JAMES LI was clearly visible.

85.     DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

86.     DEFENDANT THOMAS HIXSON along with DEFENDANT WILLIAM ALSUP, and his courtroom clerk, ANGIE, laughingly made comments that PLAINTIFF RESHMA KAMATH should become a political representative rather than practicing law. DEFENDANT ALSUP also told her to "study" even when PLAINTIFF RESHMA KAMATH's forty-eight [48] page MOTION caused DEFENDANT ALSUP to award over a million dollars in attorneys' fees to DEFENDANT DYLAN WISEMAN for his two-page [2-page] motion.

87.     PLAINTIFF RESHMA KAMATH has no intentions to pursue any kind of political office anywhere. PLAINTIFF RESHMA KAMATH is only an attorney.

*DEFENDANT JAMES LI*

89.     DEFENDANT JAMES LI made perjurious and defamatory comments to the court both about his COVID-19 condition, as well as about Plaintiff RESHMA KAMATH.

DEFENDANT JAMES LI was an opposing attorney who had filed a falsified federal trade secrets case against the clients of RESHMA KAMATH.

90.     An eight-person jury comprised of three African-American jury members, and seven women jurors saw through his façade while making an evidentiary decision about the case.

91.     During the case, DEFENDANT JAMES LI started making perjurious comments about RESHMA KAMATH. Litigation privilege does not protect perjury.

92.     There was even comments between DEFENDANT JAMES LI, and his staff, whether she is "expecting."

*DEFENDANT DYLAN WISEMAN*

93.     Defendant Dylan Wiseman had made several derogatory remarks to RESHMA KAMATH in the year 2021.

94.     Then, in 2023, with no contact about the case, DEFENDANT DYLAN WISEMAN with a one-and-half page motion leached off of a motion for attorneys' fees that was non-compliant with the DTSA code, and/or any case law.

*DEFENDANT BUCHALTER APC*

95.     Defendant BUCHALTER APC is where DEFENDANT DYLAN worked, and is believed to be working.

96.     Defendant BUCHALTER APC is liable based on DEFENDANT DYLAN's tort and contractual conduct.

JURISDICTION & VENUE

97.     This Court has jurisdiction over this action because the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest, and that diversity exists because Plaintiff resides in the County of Mohave, State of Arizona. Jurisdiction over Defendants is proper.

98.     Venue is proper in this Judicial District, because the events giving rise to the claims in Arizona in the County of Mohave made herein occurred in this Judicial District. The predicate acts complained of herein did occur within the territorial boundaries of this court, and the corpus of the complaint centers on state law questions. Thus, jurisdiction is proper in this court.

CLAIMS FOR RELIEF

1. INJUNCTIVE RELIEF;

[AGAINST DEFENDANTS ALSUP, LI AND HIXSON]

99.     PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

100.    DEFENDANT WILLIAM ALSUP is contemplating JAIL time and increasing the frivolous sanctions based on DEFENDANT THOMAS HIXSON's racial and misogynistic abuse. That sanction went from a "potential $100" to over "$5,000" based on DEFENDANT LI's perjury, and now is at the

point of hundreds of thousands of dollars with DEFENDANT ALSUP contemplating a search and seizure warrant with immediate JAIL TIME.

101.    DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

102.    This is not just part of a case in California. DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is contemplating GARNISHING WAGES of an ATTORNEY based on DEFENDANT WILLIAM ALSUP's RACIAL and GENDER ABUSE.

103.    The ARIZONA court has jurisdiction, because such actions occurred to an ARIZONIAN resident, while residing in ARIZONA.

104.    Injunctive relief is afforded, because otherwise there will be IRREPARABLE HARM to PLAINTIFF RESHMA KAMATH, and such increasing sanctions/JAIL TIME/NO-FLY ZONE will be detrimental to imminent and immediate relief.

105.    There is a likelihood of success on the merits, because each DEFENDANT ALSUP and DEFENDANT HIXSON is a state actor to whom the 42 U.S.C. section 1983 relief applies as to PLAINTIFF RESHMA KAMATH.

106.    There is a public policy not to have judicial officers abuse their judicial authority and discretion exceeding any and all scope of judicial authority, and shocking the conscience.

107.    Thus, PLAINTIFF RESHMA KAMATH seeks injunctive relief against the actions, and/or omissions of DEFENDANT WILLIAM ALSUP.

///

///

///

///

## 2. DEFAMATION – SLANDER

### [AGAINST ANY AND ALL DEFENDANTS]

108.   PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

109.   DEFENDANT WILLIAM ALSUP had made comments about PLAINTIFF RESHMA KAMATH such as "fat" "kid" "jealous" "unprofessional" "young" with no basis, *inter alia.*

110.   DEFENDANT WILLIAM ALSUP is a state actor working in the federal court under ARTICLE III standing. DEFENDANT WILLIAM ALSUP does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

111.   This is not just part of a case in California. DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is contemplating GARNISHING WAGES of an ATTORNEY based on DEFENDANT WILLIAM ALSUP's RACIAL and GENDER ABUSE.

112.   DEFENDANT THOMAS HIXSON had insinuated comments of "slut" about PLAINTIFF RESHMA KAMATH.

113.   DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

114.   DEFENDANT THOMAS HIXSON is a state actor working in the federal court under ARTICLE III standing.

115.   DEFENDANT THOMAS HIXSON does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

116.   DEFENDANT THOMAS HIXSON along with DEFENDANT WILLIAM ALSUP, and his courtroom clerk, ANGIE, laughingly made comments that PLAINTIFF RESHMA KAMATH should become a political representative rather than practicing law. DEFENDANT ALSUP also told her to

"study" even when PLAINTIFF RESHMA KAMATH's forty-eight [48] page MOTION caused DEFENDANT ALSUP to award over a million dollars in attorneys' fees to DEFENDANT DYLAN WISEMAN for his two-page [2-page] motion.

117.    After PLAINTIFF RESHMA KAMATH won the case on the merits, DEFENDANT WILLIAM ALSUP and his staff, including his clerk, ANGIE, have made falsified comments that insinuate PLAINTIFF RESHMA KAMATH has used deceit and fraud in the court in the pursuit of the case.

118.    After PLAINTIFF RESHMA KAMATH won the case on the merits, DEFENDANT JAMES LI and his staff have made falsified comments that insinuate PLAINTIFF RESHMA KAMATH has used deceit and fraud in the court in the pursuit of the case.

Each publication and repetition of the defamatory and slanderous comments are a single act of defamation.

119.    DEFENDANT WILLIAM ALSUP, DEFENDANT JAMES LI, and DEFENDANT THOMAS HIXSON must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically, $1.50 million dollars.


3. RACIAL DISCRIMINATION UNDER 42 U.S.C. SECTION 1983;

[AGAINST ANY AND ALL DEFENDANTS]

120.    PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

121.    Defendant WILLIAM ALSUP made comments about "India" when nothing on the docket, and/or anything on and off the record had any references to "India."

122.    The case had no references to "India," and DEFENDANT WILLIAM ALSUP's comment was only intended to be a racial/ethnic/cultural/religious and demeaning comment to PLAINTIFF RESHMA KAMATH.

123.    Defendant WILLIAM ALSUP allowed the assault and abuse of PLAINTIFF RESHMA KAMATH in his courtroom during the trial. After PLAINTIFF RESHMA KAMATH had WON her first JURY TRIAL, Defendant WILLIAM ALSUP called PLAINTIFF "unprofessional" *inter alia*, [ based on opposing attorney, DEFENDANT JAMES' defamatory statements ] whereas DEFENDANT ALSUP called a white, female attorney who barely did any work at trial during the final pre-trial conference "a good attorney."

124.    PLAINTIFF RESHMA KAMATH did not allow any of the above-stated incidents to affect the substantive merits of her clients' case, because RESHMA KAMATH is a professional who is above and beyond the pettiness of white, male homogeneity in this country.

125.    Defendant WILLIAM ALSUP is a state actor working in the federal court under ARTICLE III standing. DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is contemplating GARNISHING WAGES of an ATTORNEY based on DEFENDANT WILLIAM ALSUP's RACIAL and GENDER ABUSE.

126. Defendant WILLIAM ALSUP does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer. DEFENDANT WILLIAM ALSUP made comments differentiating between a white, female attorney, while calling PLAINTIFF "unprofessional" *inter alia*. Defendant WILLIAM ALSUP's discrimination in preventing generational wealth and awardation of wealth to immigrant, sole proprietor, PLAINTIFF RESHMA KAMATH stems from Defendant WILLIAM ALSUP's anti-INDIA, HINDU PHOBIA, and anti-INDIAN women. Particularly, PLAINTIFF RESHMA KAMATH, who is a non-beef-eating, SOUTH INDIAN immigrant woman, speaking more than five languages, who is the only counsel in her law firm, and according to White America, Hindu individuals maybe seen as poly-theistic [even when it is mono-theistic ]. Defendant WILLIAM ALSUP has not grown up around any Indians, and/or cannot boast of close

19

friendships/professional relationships/teachers growing up in high-school/college with Indians, at least not with competent Indian women.

127.    Defendant WILLIAM ALSUP's discrimination based on awarding attorneys' fees based on the color of the skin, gender identity, and racial/ethnic/cultural identity; and, DEFENDANT WILLIAM ALSUP in using law as a PRE-TEXT [ even DEFENDANT ALSUP falsifying the law ] is ARBITRARY and CAPRICIOUS.

128.    This is not a bygone era – racial and ethnic abuse is witnessed each and every day with countless victims who're immigrants, and people with tanner/darker skin tones in the United States of America.

129.    In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON oggled at the breasts of RESHMA KAMATH.

130.    In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON had a bruised ego when RESHMA KAMATH continued to speak to her client, about the state case that ran concurrently with the federal case.

131.    DEFENDANT THOMAS HIXSON had insinuated comments of "slut" about PLAINTIFF RESHMA KAMATH.

132.    DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

133.    DEFENDANT THOMAS HIXSON is a state actor working in the federal court under ARTICLE III standing.

134.    DEFENDANT THOMAS HIXSON does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

135.   DEFENDANT WILLIAM ALSUP, DEFENDANT THOMAS HIXSON and DEFENDANT JAMES LI must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically, $1.50 million dollars.


4. GENDER DISCRIMINATION UNDER 42 U.S.C. SECTION 1983;

136.   PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

137.   Defendant WILLIAM ALSUP made comments about "India" when nothing on the docket, and/or anything on and off the record had any references to "India."

138.   The case had no references to "India," and DEFENDANT WILLIAM ALSUP's comment was only intended to be a racial/ethnic/cultural/religious and demeaning comment to PLAINTIFF RESHMA KAMATH.

139.   Defendant WILLIAM ALSUP allowed the assault and abuse of PLAINTIFF RESHMA KAMATH in his courtroom during the trial.

140.   Defendant WILLIAM ALSUP is a state actor working in the federal court under ARTICLE III standing.

141.   Defendant WILLIAM ALSUP does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

142.   In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON oggled at the breasts of RESHMA KAMATH.

143.   In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON had a bruised ego when RESHMA KAMATH continued to speak to her client about the state case that ran concurrently with the federal case.

144.   DEFENDANT THOMAS HIXSON had insinuated comments of "slut" to PLAINTIFF RESHMA KAMATH.

145.    DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

146.    DEFENDANT THOMAS HIXSON is a state actor working in the federal court under ARTICLE III standing.

147.    DEFENDANT THOMAS HIXSON does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

148.    DEFENDANTS HIXSON and LI look so innocent, and where PLAINTIFF RESHMA KAMATH can see through the façade of DEFENDANT LI -because PLAINTIFF RESHMA KAMATH has lived in the presence of so many Asian people particularly Chinese people, it is quite difficult to read DEFENDANT HIXSON in his racial and gender abuse.

149.    DEFENDANT WILLIAM ALSUP and DEFENDANT THOMAS HIXSON must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically, $1.50 million dollars.


5. DECLARATORY RELIEF;

[AGAINST ANY AND ALL DEFENDANTS]

150.    PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

151.    PLAINTIFF RESHMA KAMATH has STANDING to pursue the DECLARATORY RELIEF claim against each and every DEFENDANT in this case.

152.    PLAINTIFF RESHMA KAMATH alleges this case is RIPE and JUSTICIABLE.

153.    PLAINTIFF RESHMA KAMATH has rights and remedies under the UNITED STATES CONSTITUTION as an individual and as a woman that are and/or will be harmed as a result of DEFENDANT ALSUP, HIXSON, and JAMES' conduct.

154.    PLAINTIFF RESHMA KAMATH requests this neutral Honorable Court to declare her rights and remedies as to the DEFENDANTS.

6. <u>DEFAMATION – LIBEL</u>;

[<u>AGAINST ANY AND ALL DEFENDANTS</u>]

155.    PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

156.    DEFENDANT JAMES made several perjurious and defamatory comments about PLAINTIFF RESHMA KAMATH in writing that were memorialized in permanency upon his writing.

157.    DEFENDANT JAMES' comments have had and continue to have IRREPARABLE DAMAGE to the professional and personal reputation of PLAINTIFF RESHMA KAMATH.

158.    DEFENDANT JAMES' comments were made under oath and under penalty of perjury.

159.    This caused DEFENDANT HIXSON and DEFENDANT ALSUP to act in a certain way injurious to the professional and personal reputation of PLAINTIFF RESHMA KAMATH.

160.    DEFENDANT WILLIAM ALSUP had made comments about PLAINTIFF RESHMA KAMATH such as atleast "unprofessional" in writing with no basis, *inter alia.* However, to a white female attorney who barely did any work during trial, DEFENDANT WILLIAM ALSUP had a preconceived comment about "good attorney" at the pretrial conference. Both statements are recorded permanently in writing.

161.    The comments had permanency, because they are in writing.

162.    Each publication and repetition of the defamatory and slanderous comments are each a single act of defamation.

163.    DEFENDANT WILLIAM ALSUP and THOMAS HIXSON does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

164.    DEFENDANT WILLIAM ALSUP, DEFENDANT THOMAS HIXSON, and DEFENDANT JAMES LI must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically, $1.50 million dollars.


<u>PRAYER FOR RELIEF</u>

I.      That the HONORABLE COURT award INJUNCTIVE RELIEF immediately in any and all temporary and permanent injunctive relief against DEFENDANTS ALSUP, HIXSON, and LI;

II.     That the HONORABLE COURT award DECLARATORY RELIEF in the rights and remedies of PLAINTIFF RESHMA KAMATH;

III.    That the HONORABLE COURT award damages in the amount of $1.50 million in damages for EACH AND EVERY CAUSE OF ACTION individually against each DEFENDANT [according to proof at trial];

IV.     That the HONORABLE COURT award ACTUAL, GENERAL, SPECIAL, PROXIMATE, CONSEQUENTIAL, and EXPECTANCY damages in the amount of $1.50 million in damages for EACH AND EVERY CAUSE OF ACTION individually against each DEFENDANT [according to proof at trial];

V.      That the HONORABLE COURT award TREBLE and PUNITIVE damages in the amount of $1.50 million in damages for EACH AND EVERY CAUSE OF ACTION individually against each DEFENDANT [according to proof at trial];

VI.     That the HONORABLE COURT award REASONABLE ATTORNEYS' FEES AND COSTS;

VII.    That the HONORABLE COURT award PRE- AND POST-JUDGMENT INTEREST, HEREIN; and,

VIII.   That the HONORABLE COURT grant the DEMAND FOR JURY TRIAL on EACH AND EVERY CAUSE OF ACTION;

DATED: SEPTEMBER 24, 2023

*/S/ Reshma Kamath*

RESHMA KAMATH
PLAINTIFF, *IN PROPRIA PERSONA*