UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTARA BIOSCIENCES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RUIFENG BIZTECH INC., et al.,<br><br>Defendants. | Case No.  20-cv-04808-WHA   (TSH)<br><br>**ORDER REFERRING ATTORNEY RESHMA KAMATH TO THE STANDING COMMITTEE ON PROFESSIONAL CONDUCT** |

Civil Local Rule 11-4 provides that "[e]very member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must," among other things, "Maintain respect due to courts of justice and judicial officers," "Practice with the honesty, care, and decorum required for the fair and efficient administration of justice," and "Discharge all obligations to client(s) and the Court . . ."  Pursuant to Local Rule 11-6(a)(1), the Court refers attorney Reshma Kamath to the Court's Standing Committee on Professional Conduct for her failure to maintain the respect due to courts of justice and judicial officers, failure to practice with the care and decorum required for the fair and efficient administration of justice, and failure to discharge all obligations to the Court.

By way of background, the magistrate judge's November 28, 2022 "**AMENDED ORDER SCHEDULING SETTLEMENT CONFERENCE IN PERSON HEARING**" stated that "[t]he settlement conference is scheduled for **April 26, 2023 at 10:00 a.m., IN PERSON, in Courtroom G. 15th Floor, 450 Golden Gate Avenue, San Francisco, CA.**"  ECF No. 289 at 1.  The order reiterated that "**Counsel and Parties must attend the settlement conference IN-PERSON**."  *Id*. at 3.  The bold, all caps and underlining were in the order.  The magistrate judge later changed the courtroom where the settlement conference was to take place, stating "[t]he in-

1    person settlement conference on April 26, 2023, at 10:00 a.m., will take place in **Courtroom E**,

2    not G, on the 15th floor." ECF No. 293.

3          At about 12:20 a.m. on April 26, 2023, defense counsel filed a request to attend the

4    settlement conference remotely. ECF No. 294. The request stated, incorrectly, that the magistrate

5    judge's order at ECF No. 289 stated that the settlement conference would be by Zoom. Defense

6    counsel stated that she resides in Arizona and had canceled her plans to appear in person.

7    Plaintiff's counsel, Plaintiff's representatives, and Defendants and Defendant's representatives

8    appeared in person in Courtroom E on April 26, but Defendants' counsel was not present. *See*

9    ECF No. 296. Obviously, a settlement conference cannot proceed without defense counsel

10   present. Nor did the magistrate judge think it was fair to allow Defendants' counsel to appear

11   remotely when everyone had been ordered to appear in person, and when Plaintiff's counsel had

12   complied with that order. *See id.* Accordingly, he rescheduled the in-person settlement

13   conference for May 5, 2023 and ordered defense attorney Reshma Kamath to show cause why she

14   should not be sanctioned for her failure to appear at the in-person settlement conference. *Id.*

15         On May 4, 2023 – the day before the rescheduled in-person settlement conference –

16   Plaintiff's counsel filed a notice that he had tested positive for Covid-19. ECF No. 299. In light

17   of that development, the magistrate judge vacated the May 5 settlement conference, which was

18   subsequently rescheduled for May 22, 2023. ECF Nos. 300, 303.

19         Later in the day on May 4, Kamath filed her response to the order to show cause. ECF No.

20   302. The response began by ridiculing the magistrate judge for supposedly assuming that the

21   Defendants had shown up all on their own, when in reality Kamath had told her clients they

22   needed to be there in person: "MAGISTRATE JUDGE MAY ASSUME THAT DEFENDANTS

23   MAGICALLY SHOWED UP TO THE SETTLEMENT CONFERENCE – WITHOUT NOTICE

24   FROM DEFENSE COUNSEL." It continued: "The OSC of Judge Hixby [*sic*] states that all

25   parties were present. Somehow it alludes that defendants were in court on their own. No.

26   Defense Counsel was diligent and informed her clients repeatedly and several times since the

27   telephonic conference, i.e., IN-PERSON only. Thus, defendants appeared."

28         The response then went on the attack, devoting several paragraphs to criticizing the

magistrate judge and court staff for supposedly being unclear about whether the settlement conference was in-person or not. As the magistrate judge observed in awarding sanctions, this line of attack seemed inconsistent with Kamath's first argument, which is that she had told her clients to be there in person. ECF No. 310 ("[S]ince Defendants' counsel told her clients to attend in-person, and they did, it doesn't seem like there was any genuine confusion that this was an in-person settlement conference.")

The response continued: "SANCTIONS ARE NOT WARRANTED, BECAUSE NEITHER DID DEFENSE COUNSEL REQUEST A CONTINUANCE, NOR THE PARTIES; IT WAS **ONLY JAMES LI** AND THE MAGISTRATE JUDGE OBLIGED. Why Judge Hixby only spoke to Plaintiffs' counsel, James Li, is unfathomable. Judge Hixby should have conferred with defense counsel. This shows bias and prejudice towards Plaintiff, as well as creating a boys-club atmosphere."

The Court is not sure what this is a reference to. If it is a reference to the aborted April 26 settlement conference, the reason the magistrate judge was able to speak only to Plaintiff's counsel is very fathomable: Defense counsel did not show up in person as required. Alternatively, the reference to a request for a continuance that the magistrate judge "obliged" might be a reference to Plaintiff's counsel's notice that he tested positive for Covid-19, which caused the magistrate judge to continue the in-person settlement conference. The latter interpretation is bolstered by the repetition of the "boys' club" accusation on the next page of the response, now clearly in connection with the rescheduling of the May 5 in-person settlement conference.

In any event, the accusation of bias and prejudice towards Kamath and the assertion of creating a boys-club atmosphere is outlandish. Kamath's response to the OSC is basically just a tirade, ending in an all-caps vow that she will not pay any sanctions that may be awarded ("DEFENSE COUNSEL WILL NOT PAY SANCTIONS FOR JUDGE HIXBY AND THE COURT'S MISTAKE").

More of the same came in Kamath's objections filed after the magistrate judge awarded sanctions. ECF No. 311. Her first objection further accused him of bias. Her third falsely claimed that Kamath had no opportunity to respond to Plaintiff's counsel's declaration concerning

3

the amount of the sanctions to be awarded. In fact, the magistrate judge ordered Plaintiff to file a declaration by May 1 itemizing the expenses incurred in attending the aborted April 26 settlement conference, and ordered Kamath to respond to the OSC by May 4, so she would have the opportunity to respond to Plaintiff's declaration. ECF No. 296.

Her fourth objection again accused the magistrate judge of promoting a "boys' club." Her fifth objection seemed to accuse Plaintiff's counsel of lying when he said he had Covid, and the magistrate judge of dereliction of duty for believing him. Kamath rounded out her objections by accusing the magistrate judge of "prejudicial misogyny, and boys' club attitude," being "incredibly biased and prejudicial," and of "bias and prejudice . . . attacking minority women in the profession." She ended by denouncing "[t]he Salem Witch Hunt towards minority women in the legal profession" and vowing that "Defense counsel will NOT pay such prejudicial sanctions."

On July 21, 2023, the Court upheld the magistrate judge's award of sanctions and ordered Kamath to pay them within 14 days. ECF No. 374. In response, Kamath stated that the Court "not only mis-stated facts, it has also made erroneous findings," ECF No. 375, which is within the bounds of normal legal argument. But she then veered, again, into accusing the magistrate judge of "revengeful racial misogyny" and denouncing the sanctions order as "frivolous." *Id*.

Two months have now passed since the Court ordered Kamath to pay the sanctions within 14 days, and she has not paid them. Plaintiff has now filed a motion to hold her in civil contempt. ECF No. 405. In response Kamath again vowed that she "will NOT pay any sanctions even if doubled/tripled/quadrupled by this Court. Precisely, because that sanction, and re-sanctions/order stem from the racial misogyny, bias and prejudice laden in the California courts." ECF No. 406. She also stated that she "will NOT appear in person at any further hearings before this court." *Id*.

Following the Court's denial of Defendants' motion for attorneys' fees (ECF No. 407), things got even worse. Less than half an hour after the Court entered its order, Kamath filed a "further notice" (ECF No. 408) of the district judge's "racism and white homogeneity promoted in San Francisco federal courthouse." The notice stated that the district judge "has shown that he as the Article III judge promotes racial misogyny in his courthouse." *Id*. It accused him of "[a]busing an immigrant woman of color from the first telephonic call until today," contending

4

1  that this conduct is "**<u>racial misogyny personified.</u>**" *Id*. The notice went on to assert that

2  "denying a motion for attorneys' fees of an immigrant woman of color, and granting only a

3  defective two-page motion of a white, male attorney who did no work on the motion is **<u>PRE-</u>**

4  **<u>TEXT OF RACIAL MISOGYNY</u>**" by the district judge, contending that "[t]here is **<u>NO</u>**

5  **<u>JUDICIAL IMMUNITY</u>** for this kind of **<u>OPEN-DISPLAY OF RACSIM FROM</u>**" the district

6  judge "and the **<u>WHITE HOMOGENOUS CULTURE HE PROMOTES IN HIS</u>**

7  **<u>COURTHOUSE.</u>**" *Id*. Kamath concluded the notice by stating that she "will NOT appear, and

8  will NOT file any filings" concerning Plaintiff's motion for civil contempt, "even if it means" the

9  district judge "orders PRISON TIME based on his now outward and open racism." *Id*.

10        This was followed by a "supplemental, further notice," filed a little bit less than an hour

11  after the order denying attorneys' fees, of the district judge's "racism and white homogeneity

12  promoted in San Francisco courthouse." ECF No. 409. It was one paragraph long and stated:

13  "***PLEASE TAKE NOTICE*** that even if it means getting suspended and/or disbarred and/or

14  hundreds of thousands in judgment/sanctions/liens, because of" the district judge's "conduct.

15  Counsel RESHMA KAMATH will not tolerate racial and gender discrimination from" him

16  "and/or his staff/courthouse security/and/or any other person connected with the CALIFORNIA

17  COURTS. It wreaks of racial misogyny and gender bias towards intelligent women of color and

18  immigrants. RESHMA KAMATH has specific instances of" the district judge and the magistrate

19  judge's "racism and gender bias that she will bring in a lawsuit. No Eleventh Amendment

20  immunity will protect any judge from hatred, anger, and bias." *Id*.

21        Two days later Kamath filed an additional notice against the district judge, the magistrate

22  judge, Plaintiff's counsel, and her own predecessors as defense counsel "for RACIAL

23  MISOGYNY displaying (i) ANTI-INDIAN sentiments, (ii) HINDU PHOBIA, and, (iii) ANTI-

24  IMMIGRANT sentiments, *inter alia*. Particularly," the district judge "for bringing his JIM

25  CROW SEGREGATIONIST/WHITE HOMOGENOUS notions against PLAINTIFF KAMATH

26  into this case; as well as" both the magistrate judge and the district judge for "bringing their

27  hillbilly WHITE AMERICA sentiments in using law as a PRE-TEXT to promote

28  DISCRIMINATION against newer minorities, INDIANS/INDIAN-AMERICANS, in the history

of the UNITED STATES OF AMERICA." ECF No. 410. The notice attached the cover page of a civil complaint and asked the recipients to state whether and how they would accept service. *Id*. Later the same day Kamath filed a "notice of lawsuit," attaching a draft 25-page complaint against the same individuals. ECF No. 411.

Filings like these should not be filed. It's okay to disagree with the Court, even to disagree strongly. Sometimes courts do get things wrong, and that's why there is a Court of Appeals. But it's not okay to file baseless, angry tirades. When you lose a motion, it's not okay to threaten to sue the judge, your opponent, and your predecessor. It's not okay to call your opponent a liar when he says he's sick, unless you've got a good reason to think that. And it's not okay to repeatedly proclaim you won't pay court-ordered sanctions. You can appeal the sanctions order if you want to, but you don't get to just ignore it. Kamath's conduct in this case, beginning with her response to the OSC, continuing in her objections to the sanctions order and in her further filings after the sanctions order was upheld, and then reaching its apex in response to losing a motion for attorneys' fees, does not maintain the respect due to courts of justice and judicial officers. Her conduct does not show the care and decorum required for the fair and efficient administration of justice. And it certainly does not show that she intends to discharge her obligations to the Court.

To be clear, the issue is not Kamath's strong disagreement with the Court's orders. There is nothing wrong with that, and as we've explained, that's why there is a Court of Appeals. The issue is the flame-throwing content of her multiple filings, and their incompatibility with the respect and decorum required for court proceedings. Accordingly, the undersigned judges **REFER** Kamath to the Court's Standing Committee on Professional Conduct.

**IT IS SO ORDERED.**

Dated: September 25, 2023

WILLIAM ALSUP
Assigned United States District Judge

Dated: September 25, 2023

THOMAS S. HIXSON
United States Magistrate Judge